| | |
|---|---|
| BLANK ROME LLP<br>1271 Avenue of the Americas<br>New York New York 10020<br>Stephen E. Tisman<br>Rick Antonoff<br>Andrea M. Roberts<br>*Attorneys for DuPont Realty NY, LLC* | **Hearing Date and Time:**<br>April 20, 2021 at 11:30 a.m. |

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>DUPONT STREET DEVELOPERS, LLC,<br><br>                      Debtor. | Chapter 11<br><br>Case No.: 21-40664-nhl |

## OBJECTION TO MOTION FOR AN ORDER REJECTING CONTRACT OF SALE

TO THE HONORABLE NANCY HERSHEY LORD,
UNITED STATES BANKRUPTCY JUDGE:

DuPont Realty NY, LLC (the "Buyer") by its attorneys, Blank Rome LLP**,** respectfully submits this objection (the "Objection") to the motion (the "Motion") of Dupont Street Developers, LLC (the "Debtor") for an order rejecting the Debtor's Contract of Sale, as amended, dated March 30, 2018 (the "Sale Contract")[1] with the Buyer. In support thereof, the Buyer states:

### PRELIMINARY STATEMENT

Debtor seeks to reject a real property contract entered into in 2018 under which it agreed to sell to the Buyer real property located in Brooklyn, NY identified in the Motion as the "Property." The sale did not close *solely* due to the Debtor's inability to deliver clean, insurable title as required by the Sale Contract. Buyer made a $3 million down payment (the "Down Payment") and has spent over $4 million in improvements for the Property.

---

[1] A copy of the Sale Contract is attached as Exhibit A to the Motion.

Debtor now is attempting to make off with the Property, the Down Payment and the benefits of the invested monies claiming ---- without any inquiry or investigation ---- that Buyer could not close. But Buyer has never been the impediment to closing, and had Debtor sought to close and been able to deliver clean title, Buyer would have done so. Indeed, as recently as November 2020, the Debtor and the Buyer exchanged drafts of a second amendment to the Sale Contract contemplating a bankruptcy sale to the Buyer as a procedure to address the defects to title that the Debtor could not otherwise resolve.

This attempt now to reject the Sale Contract is not an exercise of sound business judgement. Instead it is a machination to (a) shield the Debtor's principal, Bo Jin Zhu ("Mr. Zhu") from his personal liability for return of the Down Payment and (b) avoid returning the Down Payment while taking advantage of the improvements paid for by the Buyer. "[Pursuing] a sale to a purchaser other than the Buyer" (Motion ¶ 7) is not a legitimate basis on which to seek bankruptcy protection.

The Buyer first became aware of the Motion on April 14, 2021 when a hard copy of the Motion was received by the responsible person at the Buyer's office. Notwithstanding that the Debtor and its counsel negotiated a second amendment to the Sale Contract with the undersigned counsel for the Buyer at Blank Rome LLP ("Blank Rome"), it does not appear that the Debtor's counsel served Blank Rome with the Motion (*see* Certificate of Service (ECF No. 24-4)) notwithstanding that the Motion claims to have done so (*see* Motion ¶ 18).

## BACKGROUND

1.      In March 2018, Buyer entered into the Sale Contract to acquire the Property for development. The original purchase price under the Sale Contract was $55 million and the Buyer paid a $3 million Down Payment to the Debtor.

2.  Under the Sale Contract, if the transaction failed to close, the Down Payment was to be returned to the Buyer. Mr. Zhu personally guaranteed the Debtor's obligation to return the Down Payment.

3.  At the time the Sale Contract was entered into, Debtor and its principal were engaged in litigation with the prior owner of the Property, and a lis pendens was filed against the Property title. Mr. Zhu was confident that the claims of the former owner were unfounded, and he would in short order be able to convey a clear title. However, multiple appeals and additional lawsuits delayed for years Debtor's ability to convey title in accordance with the Sale Contract.

4.  Over time, the Debtor succeeded in eliminating sufficient claims so that marketable title could be conveyed, and the transaction was scheduled for closing.

5.  As an incentive to close in January 2020, Buyer agreed to amend the Sale Contract to increase the Purchase Price from $55 million to $57 million, conditioned on, among other things, a closing on or about that time and there being no bankruptcy filing of the Debtor or its sole member. If the transaction did not close on or about that time, or if there was such a bankruptcy filing, the original contract controlled, and the price would be the lower pre-amendment price.

6.  However, after the amendment was executed, new title defects were uncovered and, as a result, a closing in January 2020 or any time thereafter did not occur. Moreover, on January 21, 2020 the Debtor's sole member, Clay Riverview LLC ("Clay Riverview") commenced a voluntary chapter 11 case in this Court. As a result, the Buyer was within its right to close at the pre-amendment lower purchase price of $55 million.

7.  In November 2020, the Debtor and the Buyer entered into negotiations for a second amendment to the Sale Contract that (a) contemplates the commencement of a voluntary chapter 11 case of the Debtor and a sale of the Property to the Buyer under a chapter 11 plan and (b) a $57

million purchase price notwithstanding the failure to close in January 2020 and the Clay Riverview bankruptcy filing.

8. On March 16, 2021, one day after the Debtor's lender notified the Buyer that it would not be providing financing to the Buyer, and one day before commencing its chapter 11 case, the Debtor delivered a letter to the Buyer (without copying Blank Rome) purporting to terminate the Sale Contract and asserting incorrectly (a) that the termination was due to the Buyer's alleged inability to obtain financing and (b) a right under the Sale Contract to retain the Down Payment. A copy of the March 16, 2021 letter is attached as Exhibit C to the Motion. These statements are particularly disingenuous in light of the fact that it was the Debtor's inability to deliver clear title that prevented a closing from occurring for more than three years.[2]

9. The Debtor never asked the Buyer if it has other sources of financing to close the sale or otherwise give the Buyer the opportunity to close. The Buyer has invested more than $7 million in the Property making it a likely interested buyer and should have been given the opportunity to close in accordance with the Sale Contract.

**There was no Exercise of Business Judgment**

10. The sale price of the Property negotiated well before the present COVID-19 economic disruption was $55 million in the original Sale Contract and $57 million in the amended Sale Contract. At the meeting of creditors pursuant to section 341 of the Bankruptcy Code conducted on April 16, 2021, Mr. Zhu, the Debtor's principal, stated under oath that he did not know the present value of the Property and that there is no recent appraisal. Accordingly, there is

---

[2] Debtor's Motion (¶ 8) refers to a mechanic's lien that "Buyer has caused" to be filed, allegedly in violation of the Sale Contract. However, that was not invoked by Debtor as a violation when it purported to give notice of termination, and in any event that could have been a curable default, if it was a default at all, and is wholly irrelevant to the Motion.

no basis to believe that the $55 million purchase price in the Sale Contract or the $57 million purchase price in the amended Sale Contract is not equal to or higher than the current market value. Accordingly, a "business, judgment" to walk away from that price ---- without any evidence of current value – cannot be based on sound business judgment or any judgment at all.

11. Further, the Debtor's Motion (¶ 7) speculates that because of financial difficulties of the Buyer's principal, "it will be unable to procure a replacement lender to close on the Sale Contract." However, Debtor did not even inquire of Buyer or give notice to trigger a closing. This too demonstrates an absence of business judgement.

12. To reject the contract without affording the Buyer the chance, with a new lender or investor, to fund the purchase and with no basis to believe that the Sale Contract is not advantageous to the Debtor and its estate, cannot pass muster.

13. Debtor has not shown, nor can it show, that it made a reasonable business judgment to benefit the Company or its estate.

### RESERVATION OF RIGHTS

14. In the event the Court grants this motion, Buyer reserves all rights as a secured and unsecured creditor, as the beneficiary of Mr. Zhu's personal guaranty, and under section 365(j) of the Bankruptcy Code to recover all amounts it has devoted to this transaction over the last 3 years, together with its attorneys' fees and expenses.

### REQUEST THAT THIS LATE FILING BE ACCEPTED AND CONSIDERED

15. Objections to this motion were due on April 14 – however, the service on Buyer was not received by the responsible individual until April 14. Counsel for Buyer was not given notice – not even a courtesy copy of the papers – even though counsel for Debtor knows that Blank Rome represents the Buyer because they spent months negotiating with Blank Rome for a second

amendment to the Sale Contract to permit a closing to occur. Therefore, as the Party most affected by the Motion, we respectfully ask, in the interest of justice and fairness, that the Court accept and consider this Objection.

WHEREFORE, Buyer asks that the Court deny this motion to reject the Sale Contract and grant such order and further relief as is just and proper.

Date:  New York, New York
       April 19, 2021

                                    BLANK ROME LLP
                                    1271 Avenue of the Americas
                                    New York New York 10020
                                    Attorneys for DuPont Realty NY, LLC

                                By:     /s/ Andrea M. Roberts_____
                                      Stephen E. Tisman
                                      Rick Antonoff
                                      Andrea M. Roberts