ROBINSON BROG LEINWAND GREENE
 GENOVESE & GLUCK P.C.
875 Third Avenue
New York, New York 10022
A. Mitchell Greene
Robert M. Sasloff
*Attorneys for the Debtor and Debtor in Possession*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X

| | |
|---|---|
| In re: | Chapter 11 |
| **DUPONT STREET DEVELOPERS, LLC,** | Case No.: 21-40664-nhl |
| Debtor. | |

---------------------------------------------------------X

**MOTION PURSUANT TO 11 U.S.C. §§105, 361, 362,
363 AND 364 ORDER (I) AUTHORIZING DEBTOR TO
OBTAIN POST-PETITION FINANCING SECURED BY A SENIOR
<u>LIEN UNDER SECTION 364(c)(1) AND 364(d) OF THE BANKRUPTCY CODE</u>**

DuPont Street Developers, LLC, as debtor and debtor in possession (the "Debtor"), respectfully represents:

## <u>JURISDICTION</u>

1. This Court has jurisdiction over this Motion under 28 U.S.C. §1334. Venue of this proceeding is proper pursuant to 28 U.S.C. §1409. This is a core proceeding within the meaning of 28 U.S.C. §157(b)(2).

2. The statutory predicates for the relief requested herein are Sections 105, 361, 362, 363 and 364 of the Bankruptcy Code, Rule 4001 of the Federal Rules of Bankruptcy Procedure, and Rule 4001-5 of the Local Bankruptcy Rules.

## <u>BACKGROUND</u>

3. The Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on March 17, 2021 (the "Petition Date").

4.      The Debtor has continued in possession of its property and the operation and management of its business as a debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

5.      No trustee or examiner, and no official committee has been appointed in the Debtor's case.

6.      Debtor filed this case, amongst other reasons, to effectuate the sale of its property pursuant to a Plan of Reorganization. The Debtor owns the property located at 49-55 Dupont Street, Brooklyn, New York (the "Property"). The Property was formerly occupied by a factory, but presently is vacant and no businesses operate from the premises.

### Capital Structure.

7.      As set forth above, the Debtor owns the Property and had intended to develop it for mixed use purposes, residential with commercial. The Property is encumbered by a mortgage held by Dupont Street 1 LLC ("Secured Creditor") securing a claim evidenced by a note in the amount of approximately $55 million, which mortgage was in default prior to the filing of this case.

### Relief Requested

8.      By this Motion, the Debtor respectfully requests, pursuant to Sections 105, 361, 362, 363, and 364 of the Bankruptcy Code and Bankruptcy Rules 4001(b) and (c), the entry of a final order for the, *inter alia*:

> (a) authorization, under sections 364(c)(1) and 364(d) of title 11 of the United States Code, and Rule 4001 of the Federal Rules of Bankruptcy Procedure, for the Debtor to obtain postpetition financing (the "Postpetition Financing") in the form of a credit facility up to a maximum outstanding principal amount of $11,883,633 (the "Total Facility"), in accordance with the loan documents, among the Debtor, as borrower, and Secured Creditor, as lender (the "Lender"), substantially in the form of Exhibit "A" annexed to the Motion, the final order authorizing the Postpetition Financing (the "Final Financing Order") and all other agreements, documents and instruments at any time evidencing, guaranteeing or securing the

obligations or the Collateral[1] (as defined hereinafter) (collectively, the "Loan Documents");

(b) authorization to grant to the Lender assurances for the full and timely payment by and performance of the Obligations of the Debtor to the Lender in connection with such post-petition financing under the Loan Documents, including, without limitation, all principal, interest, costs, fees and expenses, all as set forth in the Loan Documents, by granting to the Lender (i) pursuant to section 364(c)(1) of the Bankruptcy Code, an administrative expense claim allowable under section 503(b) of the Bankruptcy Code having priority over any and all expenses and claims specified in any other section of the Bankruptcy Code, including, without limitation, sections 503(b) and 507(b) of the Bankruptcy Code, subject only to the Carve Out as defined herein and the fees payable to the Office of the United States Trustee; and (ii) pursuant to sections 364(d) of the Bankruptcy Code, a first priority senior security interest in and lien on all of the Debtor's assets, subject to the Carve Out, all as set forth in the Loan Documents;

## The Debtor's Efforts to Obtain Financing.

9. The Debtor does not currently have any available sources of funds other than the proposed post-petition financing (the "DIP Financing") to carry on the operation of its business. The Debtor requires capital to prepare the Property for sale, to initiate certain remedial steps regarding the environmental issues at the Property and start the process to prepare the Property for demolition and construction. The Debtor's ability to comply with its obligations is dependent on its ability to obtain the funds made available under the DIP Financing.

10. Debtor has not been able to take steps to prepare its Property because it has no operational. income or funds. In light of the foregoing, the Debtor has determined, in the exercise of its sound business judgment, that a post-petition credit facility, which permits the Debtor to obtain up to $11,833,633.00 in financing, and to use such credit to finance the operation of its business, is critical to its successful sale of the Property.

11. Prior to the Petition Date, the Debtor surveyed various sources of financing and was unable to procure any financing. The Debtor concluded that the debtor in possession financing offered by Lender, its current pre-petition Secured Creditor presents the best and most

---

[1] All terms not otherwise defined in this Motion shall have the meanings ascribed to them in the Loan Documents.

practical option available and would enable the Debtor to preserve its value. The Debtor submits that the proposal received from the Lender is competitive and addresses the Debtor's needs. Lender believes that by making this loan, it is also preserving the potential value of the Property, and thus the payment on account of its secured claim.

## Debtor in Possession Credit Agreement

12. Prior to the Petition Date and post-filing, the Debtor engaged in good-faith and extensive, arm's-length negotiations with Lender. These negotiations culminated in an agreement by the parties to provide post-petition financing on the terms and subject to the conditions to be set forth in the final Loan Documents. Additionally, a proposed form of the Final Financing Order is annexed hereto as Exhibit "B".

13. The significant elements of the DIP Financing[2] and Final Financing Order, is as follows:

    (a) **Debtor**. Dupont Street Developers, LLC

    (b) **Commitment and Availability.** The Debtor in Possession Credit Agreement provides for an available credit facility of $11,883.633.00 in the aggregate.

    (c) **Term.** Nine (9) months.

    (d) **Purpose**. To fund operations as set forth in the proposed budget agreed upon between the Debtor and the Lender as set forth in the Loan Documents. See proposed budget annexed hereto as Exhibit "C".

    (e) **Priority and Liens**. Pursuant to Sections 364(d) of the Bankruptcy Code, all of the Obligations shall be secured by a first priority priming lien on the Property subject to the Carve-Out.

    (f) **Super-priority Claim**. The Debtor has agreed to grant the Lender an allowed superpriority administrative claim pursuant to Section 364(c)(1) of the Bankruptcy Code, which claim will have priority in right of payment over any and all other obligations, liabilities and indebtedness of Debtor, now in existence or hereafter incurred by the Debtor and over any and all administrative expenses or priority claims of the kind specified in,

---

[2] This summary is qualified in its entirety by reference to the provisions of the Loan Documents.

      or ordered pursuant to, inter alia, Sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 364(c)(1) and/or 726 of the Bankruptcy Code (the "Superpriority Claim"), provided, however, that the Superpriority Claim will be subordinate to (i) the Carve-Out and (ii) the fees payable to the United States Trustee.

(g) **Carve Out**. All amounts payable to the United States Trustee pursuant to 28 U.S.C. Section 1930(a) and amounts awarded to counsel to the Debtor for professional fees and expenses under sections 330 and 331 of the Bankruptcy Code.

(h) **Interest Rate and Origination Fee.** The interest rate on the outstanding obligations shall be 12% and an origination fee of 2% shall be due Lender upon closing.

(i) **Negative Covenants.** No additional senior or secondary financing will be permitted during the term of the loan, either secured or unsecured.

### The Proposed DIP Financing Arrangement Should be Authorized

14. The Debtor's ability to sell its Property can be satisfied only if the Debtor is authorized to borrow up to $11,883,633.00 and to use such proceeds to fund the operations of the Debtor.

15. The credit provided herein will enable the Debtor to prepare the Property for sale, meet its environmental obligation and preserve and enhance the value of its assets for the benefit of all parties in interest. The borrowing will therefore help promote the Debtor's successful reorganization.

### Approval Under Section 364(d) of the Bankruptcy Code.

16. The Debtor proposes to obtain financing under the Post-Petition Financing by providing security interests and liens as set forth above pursuant to Section 364(d) of the Bankruptcy Code. The statutory requirement for obtaining post-petition credit under Section 364(d) is a finding, made after notice and hearing, that the debtor is "unable to obtain such credit otherwise and there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted."

17. The Debtor bears the burden of proof on the issue of adequate protection with respect to the lien which is being primed. The Secured Creditor has requested and consented to this priming.

### The Debtor Does Not Have An Alternative to the DIP Facility.

18. As will be shown at the hearing, a working capital facility of the type needed in this case could not have been obtained on an unsecured basis or on a secured basis without the imposition of a priming lien. Alternative sources of proposed DIP Financing for the Debtor are extremely limited. None of the alternative potential sources of post-petition financing proposed a facility that would meet the Debtor's requirements. In these circumstances, "[t]he statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable." *In re Snowshoe Co*., 789 F.2d 1085, 1088 (4th Cir. 1986).

19. A debtor need only demonstrate "by a good faith effort that credit was not available without" the protections of Section 364(c) and (d). *Id*.; *see also In re Plabell Rubber Prods., Inc*., 137 B.R. 897, 900 (Bankr. N.D. Ohio 1992). Where there are few lenders likely to be able and willing to extend the necessary credit to the debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct an exhaustive search for financing." *In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), *aff'd*, 99 B.R. 117 (N.D. Ga. 1989). The Debtor submits that due to its current capital structure, that alternative credit on more favorable terms is unavailable to the Debtor.

20. Further, the Property, which is the Debtor's most valuable asset is worth approximately $55 million. Lender, the pre-petition Secured Creditor, holds a claim in the amount of $55 million (which claim will purportedly increase with the calculation of default interest). Lender has agreed to advance the necessary funds to permit Debtor to move forward, thus protecting its lien, but has requested that new money be on a priming lien basis.

**Application of the Business Judgment Standard.**

21. As described above, after appropriate investigation and analysis and given the exigencies of the circumstances, the Debtor has concluded that the DIP Financing is the only alternative available in the circumstances of this case. Bankruptcy courts routinely defer to the debtor's business judgment on most business decisions, including the decision to borrow money. *See Group of Institutional Investors v. Chicago Mil. St. P. & Pac. Ry.*, 318 U.S. 523, 550 (1943); *In re Simasko Prod. Co.*, 47 B.R. 444, 449 (D. Colo. 1985) ("Business judgments should be left to the board room and not to this Court."); *In re Lifeguard Indus., Inc.* 37 B.R. 3, 17 (Bankr. S.D. Ohio 1983) (same). "More exacting scrutiny would slow the administration of the debtor's estate and increase its costs, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially." *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985).

22. In general, a bankruptcy court should defer to a debtor's business judgment regarding the need for and the proposed use of funds, unless such decision is arbitrary and capricious. *In re Curlew Valley Assoc.*, 14 B.R. 506, 511-13 (Bankr. D. Utah 1981). Courts generally will not second-guess a debtor's business decisions when those decisions involve "a business judgment made in good faith, upon a reasonable basis, and within the scope of [its] authority under the Code." *Id*. at 513-14 (footnotes omitted).

23. The Debtor has exercised sound business judgment in determining that a post-petition credit facility is appropriate and has satisfied the legal prerequisites to borrow under the DIP Financing. The terms of the DIP Financing are fair and reasonable and are in the best interests of the Debtor's estate. Accordingly, the Debtor should be granted authority to enter into the DIP Financing and borrow funds from the Lender on the secured, administrative

superpriority basis described above, pursuant to Sections 364(c)(1) and 364(d) of the Bankruptcy Code, and take the other actions contemplated by the commitment letter and as requested herein.

24. Without the DIP Financing, the Debtor will be unable to proceed in this case with the necessary preparation of the Property. The Debtor has exercised its best business judgment in negotiating the DIP Financing that is presently before the Court.

### The DIP Facility Is Necessary to Effectively Preserve the Assets of the Debtor's Estate and to Operate its Business

25. No party in interest can seriously contend that the Debtor does not need immediate access to a working capital facility. The Debtor has no funds, no income. Accordingly, access to credit is necessary to meet the needs associated with preparing the Property and dealing with some of the environmental concerns. Access to sufficient cash is therefore critical to the Debtor. In the absence of immediate access to cash and credit, the Debtor will not be able to prepare the Property for sale. The inability of the Debtor to meet these obligations will negatively impact this case.

26. For these reasons, access to credit under the DIP Financing is critical. The Debtor's need for access to the DIP Financing therefore is immediate.

### The Terms of the DIP Facility Are Fair, Reasonable, and Appropriate and Provide Adequate Protection to Existing Lienholders.

27. The Debtor is unable to obtain unsecured credit allowable solely as an administrative expense. The Debtor is also unable to secure secured credit without offering to the Lender a senior lien on the Property and first priority security interests in the Collateral but as the Lender is also the pre-petition senior secured creditor, no parties will be impacted by this agreement as the Property may already be under water. The Debtor submits that proposed DIP Financing reflects the exercise of sound and prudent business judgment. The Debtor would not have been able to obtain financing on an unsecured basis, or otherwise and the prospect of

Lender's provision of financing provides the Debtor with assurance that it will be able to effectively and expeditiously reorganize in a manner that will be in the best interest of the Debtor's estate and its creditors. In the Debtor's business judgment, the DIP Financing is the best financing option available under the circumstances in this case.

28. The proposed terms of the DIP Financing are fair, reasonable and adequate in that these terms neither (a) tilt the conduct of this case and prejudice the powers and rights that the Bankruptcy Code confers for the benefit of all creditors, nor (b) prevent motions by parties in interest from being decided on their merits. The purpose of the DIP Financing is to enable the Debtor to meet ongoing expenses needed to prepare the Property for sale.

29. The proposed DIP Financing provides that the security interests and administrative expense claims granted to the Lender are subject to the Carve-Out. The bankruptcy court in *In re Ames Dep't Stores*, 115 B.R. 346 (Bankr. S.D.N.Y. 1990), found that such "carve-outs" are not only reasonable, but are necessary to insure that the debtor's estate will be assured of the assistance of counsel. *Id*. at 40.

30. Likewise, the various fees and charges required by the Lender under the DIP Financing are reasonable and appropriate under the circumstances. Indeed, courts routinely authorize similar lender incentives beyond the explicit liens and other rights specified in Section 364 of the Bankruptcy Code. *See In re Defender Drug Stores, Inc*., 145 B.R. 312, 316 (9th Cir. BAP 1992) (authorizing credit arrangement under Section 364, including a lender "enhancement fee").

31. The terms and conditions of the DIP Financing are fair and reasonable and were negotiated by the parties in good faith and at arm's length. Accordingly, the DIP Financing should be accorded the benefits of Section 364(e) of the Bankruptcy Code in respect of such agreement.

**Reservation of Rights**

32. Notwithstanding anything to the contrary set forth herein and the DIP Financing structure and documentation, the Lender and the Debtor reserve the right to structure the financing set forth in this motion as protective advances to be made under the existing Loan Documents which shall be added to the indebtedness thereunder in accordance with the terms thereof.

**Notice**

33. Pursuant to Sections 102(1), 363(c), and 364(c) of the Bankruptcy Code and Bankruptcy Rules 4001(b) and (c), notice of this Motion has been provided via regular mail to the Lender, the Debtor's 20 largest unsecured creditors, the United States Trustee, and all parties having filed notices of appearance.

**WHEREFORE**, the Debtor respectfully requests that the Court enter the Final Financing Order and grant the Debtor such other and further relief as is just and proper.

Dated: New York, New York
July 30, 2021

**ROBINSON BROG LEINWAND GREENE GENOVESE & GLUCK P.C**.

By:  /s/ A. Mitchell Greene
A. Mitchell Greene
Robert M. Sasloff
875 Third Ave, 9th Floor
New York, NY  10022-0123
(212) 603-6300
amg@robinsonbrog.com
*Attorneys for the Debtor*