**ROBINSON BROG LEINWAND GREENE**
 **GENOVESE & GLUCK P.C.**
875 Third Avenue
New York, New York 10022
A. Mitchell Greene
Robert M. Sasloff
*Attorneys for the Debtor and Debtor in Possession*

Hearing Date and Time:
**November 9, 2021 at 11:00 a.m.**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X

In re:                                                            Chapter 11

**DUPONT STREET DEVELOPERS, LLC,**          Case No.:  21-40664-nhl

                                Debtor.
----------------------------------------------------------X

## MOTION TO APPROVE SETTLEMENT WITH NEW
## YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION

TO THE HONORABLE NANCY H. LORD,
UNITED STATES BANKRUPTCY JUDGE:

　　　The debtor and debtor in possession, **DuPont Street Developers, LLC** (the "Debtor"),

by its attorneys, **Robinson Brog Leinwand Greene Genovese & Gluck P.C.**, pursuant to Rule

9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), seeks approval of

the Stipulation and Order Regarding Claim No. 12-1 Filed by New York State Department of

Environmental Conversation Against the Debtor (the "Stipulation") between the Debtor and New

York State Department of Environmental Conversation (the "DEC," and together with the

Debtor, the "Parties").  A copy of the Stipulation and the relevant exhibits thereto are attached to

the motion as **Exhibit A**.  In support thereof, the Debtor respectfully represents:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction of this application pursuant to sections 1334 and 157 of title 28 of the United States Code (the "Judicial Code")

2.       This motion has been referred to this Court for consideration pursuant to Section 157 of the Judicial Code and the *Standing Order of Referral of Cases to Bankruptcy Judges* (E.D.N.Y. August 28, 1986) (Weinstein, C.J.) as supplemented by the December 5, 2012, order of Chief Judge Carol Bagley Amon.

3.      This is a core proceeding arising under title 11 of the United States Code.  See 28 U.S.C. §157(b)(1).

4.      Venue of this application in this district is proper pursuant to section 1409 of the Judicial Code.  The statutory predicate for the relief sought herein are section 363 of the Bankruptcy Code and Bankruptcy Rule 9019.

## BACKGROUND

5.      The Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on March 17, 2021 (the "Petition Date").  The Debtor owns the property located at 49-55 Dupont Street, Brooklyn, New York (the "Property").

6.      On July 30, 2021, the Debtor filed its Motion Pursuant to 11 U.S.C. §§105, 361, 362, 363 and 365 for Order Authorizing Debtor to Obtain Post-Petition Financing Secured by a Senior Lien Under Section 364(c)(1) and 364(d) of the Bankruptcy Code and/or to authorize the secured lender to make advances (the "DIP Financing Motion") (ECF Doc. #49).

7.      The purpose of the DIP Financing Motion was to allow the Debtor to borrow up to $11,883,633 and to use the advances/loan proceeds to fund the operations of the Debtor including, preparing the Property for sale by remedying certain environmental obligations.  In

2

response to the DIP Financing Motion, the DEC filed an objection (the "DEC Objection") asserting essentially that the Debtor needed their prior approval to do any of the remediation work that the funds were being sought for and therefore the financing should be subject to their consent or agreement. (ECF Doc. # 52).

8.      DEC filed a proof of claim, designated as Claim No. 12-1 in the total amount of $32,973,212.50 (the "DEC Claim"), which it asserted part as an administrative expense but all as non-dischargeable.  Some portion of the claim also represented future costs.

9.      Since the filing of DEC's Objection, the Debtor, the senior secured creditor and the DEC have had extensive negotiations regarding resolving the DEC Objection and in conjunction therewith, discussions with regard to the DEC Claim.  Ultimately, the parties entered into the Stipulation, where among other things, the DEC Claim is to be allowed and fixed in the amount of $296,212.50 as administrative expenses and will be non-dischargeable.[1]  The allowed claim is to be separately classified under any plan filed and confirmed in this case and shall be paid in full after confirmation as set forth therein.

## RELIEF REQUESTED

10.     Pursuant to Bankruptcy Rule 9019, the Debtor seeks an Order of this Court approving the Settlement.

11.     The Bankruptcy Court "may approve a compromise or settlement" of the estates claims or disputes with third parties. Fed. R. Bankr. P. 9019(a).  Rule 9019(a) of the Bankruptcy Rules specifically provides that, "[o]n a motion by the trustee and after notice

---

[1] The summary of the Stipulation set forth herein is qualified by reference to the Stipulation itself, which is annexed to this Motion.  In the event of a conflict, the terms of the Stipulation will govern.  The Stipulation also contains exhibits which provide that the terms of a plan to be filed in this case shall contain provisions regarding the environmental aspects of the sale of Debtor's Property.  Debtor represents that the language of any plan or sale in this case shall include those provisions or provisions substantially similar.

{01119931.DOCX;1 }

and a hearing, the court may approve a compromise or settlement." The legal standard for determining the propriety of a bankruptcy settlement is whether the settlement is in the "best interests of the estate." In re Adelphia Communications Corp., 327 B.R. 143 (Bankr. S.D.N.Y. 2005) (citing In re Purified Down Prods. Corp., 150 B.R. 519, 523 (S.D.N.Y. 1993).

12.     The Supreme Court has set the standard for bankruptcy judges to follow in determining whether to approve compromises. Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424-25 (1968); see 10 Collier on Bankruptcy ¶9019.02[2] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.) (circuit courts have adopted a uniform standard for governing the approval of compromises based on TMT Trailer). In considering whether to approve a settlement, a bankruptcy judge should:

> apprise [itself] of all facts necessary for an intelligent and objective option of the probabilities of ultimate success should the claim be litigated. Further, the judge should form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties in collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise. TMT Trailer, 390 U.S. at 424-425.

13.     Approval of a proposed settlement is within the sound discretion of the bankruptcy court, See, In re Remsen Partners, Ltd., 294 B.R. 557, 565 (Bankr. S.D.N.Y. 2002) (citing Anaconda-Ericsson, Inc. v. Hessen (In re Teltronics Servs., Inc.), 762 F.2d 185, 189 (2d Cir. 1985)). This, however, does not require a trial, or mini-trial on the merits, but rather, in reviewing the proposed settlement, "[t]he Court's responsibility is to 'canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness.'" In re Drexel Burnham Lambert Group, Inc. 143 B.R. 493 (Bankr. S.D.N.Y.

4

1991); see also, In re Remsen Partners, Ltd., 294 B.R. at 565 (citing In re Ionosphere Clubs, Inc., 156 B.R. 414, 426 (S.D.N.Y. 1993)).

14.     In evaluating a proposed settlement courts look to several factors including: (1) the probability of success in the litigation, (2) the difficulties, if any, to be encountered in the matter of collection, (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it, and (4) the paramount interest of creditors and a proper deference to their reasonable views.  Id.  Other potentially relevant factors include (5) the competency and experience of the trustee and trustee's counsel, (6) the nature and breadth of releases to be issued as a result of the settlement, (7) the extent to which the settlement is not the product of fraud or collusion, and (8) whether the proposed settlement is supported by an adequate record.  Id.

15.     The Debtor submits that approval of the Stipulation, which was negotiated by Debtor's counsel, counsel to the senior secured creditor and counsel to the DEC at arm's-length, is in the best interests of the Debtor and its estate and therefore should be approved.  The Stipulation in combination with negotiations that resolved the DEC Objection, fixes the DEC Claim, thus obviating, the need for future litigation between the parties with respect to any claim objection Debtor may have had.  The parties believe this is an appropriate compromise and exercise of the Debtor's business judgment because it provides a resolution to the DEC Objection on the DIP Financing Motion, certainty as to how to treat and how much to pay a large claim filed against the Debtor by resolving a contingent claim at minimal expense to the estate and thus will allow the Debtor to proceed to the next stage of this case, the sale and plan process.

16.     Accordingly, as the Stipulation fixes the DEC Claim at a reduced amount and provides how it will be paid, it also resolves the DEC Objection, permitting the Debtor to seek

5

authorization and approval of the DIP Financing Motion, which will be used to begin the remediation required at the Property thus enhancing the sale prospects.

**NOTICE**

17.    In accordance with Bankruptcy Rule 9019, the Debtor has given notice of this application to the Office of the United States Trustee and all creditors and parties who have appeared and requested notice. The Debtor has given notice by serving a copy of the notice of hearing and this motion by first class mail.

18.    No prior application for the relief sought herein has been made to this or any other court.

**WHEREFORE**, the Debtor requests that this Court approve the Stipulation, and that such other and further relief be granted as may be just and proper.

**DATED:**      New York, New York
             October 15, 2021


                        ROBINSON BROG LEINWAND GREENE
                         GENOVESE & GLUCK P.C.
                        Attorneys for Debtor
                        and Debtor in Possession
                        875 Third Avenue, 9th Floor
                        New York, New York 10022
                        Tel. No.:  212-603-6300

                        By: /s/ Robert M. Sasloff____
                            Robert M. Sasloff

# **EXHIBIT A**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X

In re:                                          Chapter 11

**DUPONT STREET DEVELOPERS, LLC**              Case No.:  21-40664-nhl


-----------------------------------------------------------X

### STIPULATION AND ORDER REGARDING
### CLAIM NO. 12-1 FILED BY NEW YORK STATE DEPARTMENT OF
### ENVIRNOMENTAL CONSERVATION AGAINST THE DEBTOR

This stipulation and agreed order (the "Stipulation"), is made by and between DuPont Street Developers, LLC ("Debtor"), and the New York State Department of Environmental Conservation (the "DEC," together with Debtor, the "Parties") with respect to proof of claim, number 12-1 filed by the DEC on May 26, 2021 (the "DEC Claim") against the Debtor.

### RECITALS

WHEREAS, prior to the filing of this case, Debtor's property located at 49 Dupont Street in Brooklyn, New York 11222 (the "Site"), was designated as Site No.224136 in DEC's Inactive Hazardous Waste Disposal Site Remedial Program;

WHEREAS, Debtor is obligated pursuant to an administrative order on consent with DEC (the "Consent Order," attached hereto as Exhibit A, which became effective as to Debtor on February 17, 2014) to implement certain environmental remediation actions among other obligations, and the Parties agree that any sale or transfer of the Site shall be conditioned on the successor in title becoming likewise subject to the requirements of the Consent Order;

WHEREAS, on March 17, 2021 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code");

{01120953.DOC;1 }

WHEREAS, the Debtor is currently operating their business and managing its affairs as a debtor-in-possession under sections 1107(a) and 1108 of the Bankruptcy Code;

WHEREAS, DEC is the holder of a claim, designated as Claim No. 12-1 in the total amount of $32,973,212.50 which asserts in part administrative expense status as to certain portions of the claim;

WHEREAS, the nature of the DEC Claim, if proven, would likely be non-dischargeable under applicable law;

WHEREAS, in informal discussions and extensive negotiations regarding the settlement of the DEC Claim, as well as the objection filed by the DEC in conjunction with the *Motion Pursuant to 11 U.S.C. §§ 104, 361, 362, 363 and 364 Order (I) Authorizing Debtor to Obtain Post-Petition Financing Secured by a Senior Lien Under Section 364(c)(1) and 364(d) of the Bankruptcy Code* [ECF No. 49] (the "DIP Motion"), the Debtor's senior lender, DuPont Street 1 LLC, the Debtor and the DEC, have agreed to resolve the objection filed by the DEC to the DIP Motion, and any issues the Debtor may have with the DEC Claim and DEC with regard to the funding for the payment of such claim by entering into this Stipulation;

WHEREAS, the Parties have agreed to avoid the risk and costs of litigating the DEC Claim and its dischargeability by reaching a settlement which will allow a specific amount as an unsecured claim as well as a specific amount as an administrative claim, both as non-dischargeable and with specific payment terms, and to submit this Stipulation which memorializes that agreement to the Court for approval as an Order; and

WHEREAS, the Parties desire to resolve any and all disputes relating to the amount of DEC Claim.

**NOW THEREFORE, THE PARTIES HEREBY STIPULATE AND AGREE, AND UPON THE BANKRUPTCY COURT'S APPROVAL, IT SHALL BE ORDERED AND BINDING ON ALL PARTIES IN INTEREST AS FOLLOWS**:

1.      This Stipulation and Order will become effective on the date that it is entered as an order of the Bankruptcy Court.

2.      The recitals above are incorporated by reference.

3.      The Parties agree to fix the DEC Claim in the cumulative amount of $296,212.50 (the "Allowed DEC Amount") and for said amount to be deemed non-dischargeable.  Any funds asserted in the DEC Claim in excess of this amount and for future contingent damages/cleanup costs are hereby expunged.

4.      The Allowed DEC Amount shall be deemed an allowed non-dischargeable administrative claim in the Debtor's bankruptcy case under section 503 of the Bankruptcy Code in the amount of $215,000 to resolve violations of the Consent Order and an allowed non-dischargeable unsecured claim in the amount of $81,212.50 for the payment of past costs expended by DEC at the Site.  Both components of the Allowed DEC Amount shall be paid in full upon the effective date of a confirmed plan of reorganization/liquidation ("Plan").  Debtor shall separately classify the unsecured portion of the Allowed DEC Amount from other unsecured claims due to its non-dischargeable nature and the continuing liability of the environmental clean-up costs as to the estate.   The Debtor agrees to incorporate the terms of this Stipulation into any Plan it files in this case.

5.      At least five days before the Plan's effective date, DEC shall provide the Debtor with wiring instructions for the two payments set forth in Paragraph 4.  The Debtor shall pay the amounts required in Paragraph 4 in accordance with the wiring instructions provided.

6.      The Debtor agrees to condition sale or transfer of the Site, in the Plan or otherwise, upon the purchaser and/or transferee becoming subject to the Consent Order and liable for implementing its terms.   To effectuate this provision the Debtor agrees to include the Sale Provisions attached hereto as Exhibit B as provisions of any proposed order it files in this case for approval of sale or transfer of title to the Site; and agrees to include the Plan Provisions attached hereto as Exhibit C as provisions of any Plan it files in this case.

7.      Once this Stipulation is approved by the Bankruptcy Court, DEC agrees that its objection to the DIP Motion shall be deemed withdrawn.

8.      This Stipulation may be executed in counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.   Electronic signatures shall have the same force and effect as original signatures.

9.      The construction or interpretation of this Stipulation shall be governed by laws of the state of New York, without reference to any conflict of laws provision and as if mutually drafted by all Parties.

10.     This Stipulation is expressly subject to Bankruptcy Court approval and once approved, this Stipulation shall be fully binding and enforceable against the Debtor and the DEC.  The Bankruptcy Court shall retain exclusive jurisdiction to hear all disputes arising from this Stipulation and Order.

Dated: October 8, 2021

ROBINSON BROG LEINWAND                 NEW YORK STATE DEPARTMENT OF
GREENE GENOVESE & GLUCK PC             ENVIRNOMENTAL CONSERVATION

By:     /s/ Robert M. Sasloff                            By:     /s/ Channing Wistar-Jones
        Robert M. Sasloff                                        Channing Wistar-Jones
        875 Third Avenue                                         New York State Law Dept.
        New York, New York 10022                                 28 Liberty Street, 19th Floor
        (212) 603-6329                                           New York, New York 10005
        rms@robinsonbrog.com                                     (212) 416-8082
                                                                 Channing.jones@ag.ny.gov

        *Counsel for Debtor*                                     *Attorneys for DEC*

**EXHIBIT A**

NEW YORK STATE DEPARTMENT OF
ENVIRONMENTAL CONSERVATION

| | |
|---|---|
| In the Matter of the Development and Implementation of a Remedial Program for an Inactive Hazardous Waste Disposal Site under Article 27, Title 13 of the Environmental Conservation Law<br><br>by<br><br>49 Dupont Realty Corp.<br>Dupont Street Developers LLC<br><br>Respondents. | **AMENDMENT TO ORDER ON CONSENT**<br>**and**<br>**ADMINISTRATIVE SETTLEMENT**<br><br>Index # R2-0654-11-10<br><br>Site #224136 |

**WHEREAS,**

1.      49 Dupont Realty Corp.("Dupont Realty") is an active domestic business corporation which has owned property at 280 Franklin Street, Brooklyn, NY 11222 (hereinafter the "Site") since 1983. The Site is located in the Greenpoint section of Brooklyn in a mixed industrial/commercial/ residential area. The approximately 1 acre site is described on the county tax map as Block No. 2487, Lots No. 1, 10, 12, 72 and 78. The dimensions of the site are approximately 240 feet by 200 feet. The building on the Site consists of a number of smaller buildings that have been joined together. Exhibit "A" is a map of the Site showing its general location.

2.      Dupont Realty consented to the issuance of Order on Consent, Index # R2-0654-11-10, dated January 18, 2011, by the New York State Department of Environmental Conservation (the "Department") (the"Order"). A copy of the Order is attached as Exhibit "B."

3.      The Site is currently listed in the *Registry of Inactive Hazardous Waste Disposal Sites in New York State* as Site Number 224136 with a Classification "2" pursuant to ECL 27-1305 and is named "Former NuHart Plastic Manufacturing."

4.      Dupont Street Developers LLC ("Dupont Street Developers"), a New York State limited liability company, with offices at 331 Rutledge Street, Suite 208, Brooklyn, New York 11211, is in contract to acquire the Site.

5.      By letter dated February 19, 2013, Dupont Street Developers requested to be added to the Order as a Co-Respondent to the Order.

6.      Subparagraph XIV(E) of the Order provides for modifications to be made in writing and subscribed by the parties to be bound.

**NOW**, having considered this matter and being duly advised, **IT IS ORDERED THAT**:

I.      Paragraph 2 of the Order is hereby revised to read as follows:

49 Dupont Realty Corp.("Dupont Realty") is an active domestic business corporation which has owned property at 280 Franklin  Street, Brooklyn, NY 11222 (hereinafter the "Site") since 1983.  The Site is located in the Greenpoint section of Brooklyn in a mixed industrial/commercial/ residential area. The approximately 1 acre site is described on the county tax map as Block No. 2487, Lots No. 1, 10, 12, 72 and 78. The dimensions of the site are approximately 240 feet by 200 feet. The building on the Site consists of a number of smaller buildings that have been joined together.  Exhibit "A" is a map of the Site showing its general location.  Dupont Street Developers LLC ("Dupont Street Developers"), a New York state limited liability company, with offices at 331 Rutledge Street, Suite 208, Brooklyn, New York 11211, is in contract to acquire the Site. Dupont Realty and  Dupont Street Developers will hereafter to be referred to "Respondents" unless otherwise noted.

II.                     Subparagraph VI(D) of the Order shall be revised to read as follows:

Such invoice shall be sent to Respondents at the following addresses:

> Mr. Joseph Folkman
> *c/o* 49 Dupont Realty Corporation
> P.O. Box 786
> Deer Park, NY 11729
>
> Joseph Brunner
> Dupont Street Developers LLC
> 331 Rutledge Street  - Suite 208
> Brooklyn, NY 11211

III.    Subparagraph XI(A)(2) of the Order is revised to read as follows:

Communication to be made from the Department shall be sent to:

Joseph Brunner
Dupont Street Developers LLC
331 Rutledge Street  - Suite 208
Brooklyn, NY 11211

and

*Mr. Joseph Folkman*
49 Dupont Realty Corporation
P.O. Box 786
Deer Park, NY 11729

with copies to:

James P. Rigano, Esq.
Rigano LLC
425 Broad Hollow Road – Suite 217
Melville, NY 11747

and

Paul Ciminello
Ecosystems Strategies, Inc.
24 Davis Avenue
Poughkeepsie, NY  12603

and

Lawrence P. Schnapf, Esq.
55 East 87th St. #8B
New York, NY 10128

and

Thomas Spiesman, Esq.
Porzio, Bromberg & Newman, P.C.
100 Southgate Parkway
P.O. Box 1997
Morristown, NJ  07962-1997

IV.    All references in the Order to "Respondent" are revised to read "Respondents".

V.    All other provisions of the Order remain in full force and effect and shall apply jointly and severally to both Respondents to the Order.

VI.    The effective date of this Amendment is the 10th Day after it is signed by the Commissioner or the Commissioner's designee.

DATED:

FEB 0 7 2014

JOSEPH J. MARTENS
Commissioner
New York State Department of
Environmental Conservation

By: _____

Robert W. Schick, Director
Division of Environmental Remediation

4

## CONSENT BY RESPONDENT

Respondent hereby consents to the issuing and entering of this Order, waives Respondent's right to a hearing herein as provided by law, and agrees to be bound by this Order.

49 Dupont Realty Corp.

By [signature]: _____

Print Name: Joseph Folkmer

Title: Pres

Date: 3/6/13

STATE OF NEW YORK    )
                   ) ss:
COUNTY OF           )

On the ___6___ day of ___March___, in the year 2013, before me, the undersigned, personally appeared _Joseph Folkmer_ personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Signature and Office of individual
taking acknowledgment

ROOPMARINE BHANRAJ
NOTARY PUBLIC STATE OF NEW YORK
NASSAU COUNTY
LIC. #01DH8077133
COMM. EXP. _6/15_

CONSENT BY RESPONDENT

Respondent hereby consents to the issuing and entering of this Order, waives Respondent's right to a hearing herein as provided by law, and agrees to be bound by this Order.

Dupont Street Developers LLC

By [signature]: _____

Print Name: _____ Joseph Brunner _____

Title: _____ Owner _____

Date: _____ 9|10|13 _____

STATE OF NEW YORK    )
                     ) ss:
COUNTY OF Kings      )

On the 10th day of September, in the year 2013, before me, the undersigned,

personally appeared Joseph Brunner , personally known to me or proved to me on the basis

of satisfactory evidence to be the individual(s) whose name is (are) subscribed to the within

instrument and acknowledged to me that he/she/they executed the same in his/her/their

capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the

person upon behalf of which the individual(s) acted, executed the instrument.

_____
Signature and Office of individual
taking acknowledgment

SHEILA MARIA GRANT
NOTARY PUBLIC, State of New York
No. 01GR6269680
Qualified in Kings County
Commission Expires October 01, 2016

6

EXHIBIT "A"

Map of Site

## Approximate Site Location



Former Nuhart Plastic Manufacturing

EXHIBIT "B"

Order On Consent

Index # R2-0654-11-10

January 18, 2011

NEW YORK STATE DEPARTMENT OF
ENVIRONMENTAL CONSERVATION

| | |
|---|---|
| In the Matter of the Development and Implementation of a Remedial Program for an Inactive Hazardous Waste Disposal Site under Article 27, Title 13 of the Environmental Conservation Law<br><br>by<br><br>49 Dupont Realty Corp.<br><br>Respondent. | **ORDER ON CONSENT**<br>**and**<br>**ADMINISTRATIVE**<br>**SETTLEMENT**<br><br>Index # R2-0654-11-10<br><br>Site #224136 |

**WHEREAS,**

1.    A.    The New York State Department of Environmental Conservation ("Department") is responsible for inactive hazardous waste disposal site remedial programs pursuant to Article 27, Title 13 of the Environmental Conservation Law ("ECL") and Part 375 of Title 6 of the Official Compilation of Codes, Rules and Regulations ("6 NYCRR") and may issue orders consistent with the authority granted to the Commissioner by such statute.

B.    The Department is responsible for carrying out the policy of the State of New York to conserve, improve and protect its natural resources and environment and control water, land, and air pollution consistent with the authority granted to the Department and the Commissioner by Article 1, Title 3 of the ECL.

C.    This Order is issued pursuant to the Department's authority under, *inter alia,* ECL Article 27, Title 13 and ECL 3-0301, and resolves Respondent's liability to the State as provided at 6 NYCRR 375-1.5(b)(5).

2.    49 Dupont Realty Corp.("Respondent") is an active domestic business corporation which has owned property at 280 Franklin Street, Brooklyn, NY 11222 (hereinafter the "Site") since 1983. The Site is located in the Greenpoint section of Brooklyn in a mixed industrial/commercial/ residential area. The approximately 1 acre site is described on the county tax map as Block No. 2487, Lots No. 1, 10, 12, 72 and 78. The dimensions of the site are approximately 240 feet by 200 feet. The building on the Site consists of a number of smaller buildings that have been joined together. Exhibit "A" is a map of the Site showing its general location.

3.     The Site is currently listed in the *Registry of Inactive Hazardous Waste Disposal Sites in New York State* as Site Number 224136 with a Classification "2" pursuant to ECL 27-1305 and is named "Former NuHart Plastic Manufacturing."

4.     Respondent consents to the issuance of this Order without (i) an admission or finding of liability, fault, wrongdoing, or violation of any law, regulation, permit, order, requirement, or standard of care of any kind whatsoever; (ii) an acknowledgment that there has been a release or threatened release of hazardous waste at or from the Site; and/or (iii) an acknowledgment that a release or threatened release of hazardous waste at or from the Site constitutes a significant threat to the public health or environment.

5.     Solely with regard to the matters set forth below, Respondent hereby waives any right to a hearing as may be provided by law, consents to the issuance and entry of this Order, and agrees to be bound by its terms. Respondent consents to and agrees not to contest the authority or jurisdiction of the Department to issue or enforce this Order, and agrees not to contest the validity of this Order or its terms or the validity of data submitted to the Department by Respondent pursuant to this Order.

NOW, having considered this matter and being duly advised, **IT IS ORDERED THAT**:

I.     Initial Submittal

Within thirty (30) Days after the effective date of this Order, Respondent shall submit to the Department a Records Search Report prepared in accordance with Exhibit "B" attached hereto. The Records Search Report can be limited if the Department notifies Respondent that prior submissions satisfy specific items required for the Records Search Report.

II.     Development, Performance, and Reporting of Work Plans

A.     Work Plans

All activities at the Site that comprise any element of an Inactive Hazardous Waste Disposal Site Remedial Program shall be conducted pursuant to one or more Department-approved work plans ("Work Plan" or "Work Plans") and this Order and all activities shall be consistent with the National Oil and Hazardous Substances Pollution Contingency Plan (NCP), 40 C.F.R. Part 300, as required under CERCLA, 42 U.S.C. § 9600 *et seq*. The Work Plan(s) under this Order shall address both on-Site and off-Site conditions and shall be developed and implemented in accordance with 6 NYCRR § 375-1.6(a). All Department-approved Work Plans shall be incorporated into and become enforceable parts of this Order. Upon approval of a Work Plan by the Department, Respondent shall implement such Work Plan in accordance with the schedule contained therein. Nothing in this Subparagraph shall mandate that any particular Work Plan be submitted.

Each Work Plan submitted shall use one of the following captions on the cover page:

       1.    Site Characterization ("SC") Work Plan: a Work Plan whose objective is to identify the presence of any hazardous waste disposal at the Site;

       2.    Remedial Investigation/Feasibility Study ("RI/FS") Work Plan: a Work Plan whose objective is to perform a Remedial Investigation and a Feasibility Study;

       3.    Interim Remedial Measure ("IRM")Work Plan: a Work Plan whose objective is to provide for an Interim Remedial Measure;

       4.    Remedial Design/Remedial Action ("RD/RA")Work Plan: a Work Plan whose objective is to provide for the development and implementation of final plans and specifications for implementing the remedial alternative set forth in the ROD; or

       5.    Site Management Plan: a Work Plan whose objective is to identify and implement the institutional and engineering controls required for the Site, as well as any necessary monitoring and/or operation and maintenance of the remedy.

      B.    <u>Submission/Implementation of Work Plans</u>

       1.    (a)    The RI/FS Work Plan shall be submitted to the Department within sixty (60) Days after the effective date of this Order.

           (b)    The Department may request that Respondent submit additional or supplemental Work Plans for the Site. Within thirty (30) Days after the Department's written request, Respondent shall advise the Department in writing whether it will submit and implement the requested additional or supplemental Work Plan or whether it elects to terminate this Order pursuant to Paragraph XIII. If Respondent elects to submit and implement such Work Plan, Respondent shall submit the requested Work Plan within sixty (60) Days after such election. If Respondent elects to terminate this Order or fails to make a timely election, this Order shall terminate pursuant to Paragraph XIII.

           (c)    Respondent may opt to propose one or more additional or supplemental Work Plans (including one or more IRM Work Plans) at any time, which the Department shall review for appropriateness and technical sufficiency.

           (d)    Any request made by the Department under Subparagraph II.B.1.(b) shall be subject to dispute resolution pursuant to Paragraph XII.

       2.    A Professional Engineer must stamp and sign all Work Plans other than SC or RI/FS Work Plans.

3.     During all field activities conducted under this Order, Respondent shall have on-Site a representative who is qualified to supervise the activities undertaken. Such representative may be an employee or a consultant retained by Respondent to perform such supervision as set forth in 6 NYCRR Part 375-1.6(a)(3).

C.     Modifications to Work Plans

The Department shall notify Respondent in writing if the Department determines that any element of a Department-approved Work Plan needs to be modified in order to achieve the objectives of the Work Plan as set forth in Subparagraph II.A or to ensure that the Remedial Program otherwise protects human health and the environment.  Upon receipt of such notification, Respondent shall, subject to Respondent's right to terminate pursuant to Paragraph XIII, provide written notification as provided at 6 NYCRR 375-1.6(d)(3)as to whether it will modify the Work Plan, or invoke dispute resolution.

D.     Submission of Final Reports and Annual Reports

1.     In accordance with the schedule contained in a Work Plan, Respondent shall submit a final report as provided at 6 NYCRR 375-1.6(b) and a final engineering report as provided at 6 NYCRR 375-1.6(c).

2.     Any final report or final engineering report that includes construction activities shall include "as built" drawings showing any changes made to the remedial design or the IRM.

3.     In the event that the final engineering report for the Site requires Site management, Respondent shall submit an annual report by the 1st Day of the month following the anniversary of the start of the Site management.  Such annual report shall be signed by a Professional Engineer or by such other qualified environmental professional as the Department may find acceptable and shall contain a certification as provided at 6 NYCRR 375-1.8(h)(3). Respondent may petition the Department for a determination that the institutional and/or engineering controls may be terminated.  Such petition must be supported by a statement by a Professional Engineer that such controls are no longer necessary for the protection of public health and the environment.  The Department shall not unreasonably withhold its approval of such petition.

E.     Review of Submittals other than Progress Reports and Health and Safety Plans

1.     The Department shall make a good faith effort to review and respond in writing to each submittal Respondent makes pursuant to this Order within sixty (60) Days.  The Department's response shall include an approval or disapproval of the submittal, in whole or in

part. All Department-approved submittals shall be incorporated into and become an enforceable part of this Order.

        2.    If the Department disapproves a submittal, it shall specify the reasons for its disapproval. Within fifteen (15) Days after the date of the Department's written notice that Respondent's submittal has been disapproved, Respondent shall, subject to Respondent's right to terminate pursuant to Paragraph XIII in the event the rejected submittal is a Work Plan submitted prior to the Department's approval of the RD/RA Work Plan, elect as provided at 6 NYCRR 375-1.6(d)(4), which includes the right to elect to invoke dispute resolution pursuant to Paragraph XII. If Respondent elects to modify the submittal, Respondent shall, within thirty (30) Days after such election, make a revised submittal that addresses all of the Department's stated reasons for disapproving the first submittal. In the event that Respondent's revised submittal is disapproved, the Department shall set forth its reasons for such disapproval in writing and Respondent shall be in violation of this Order unless it invokes dispute resolution pursuant to Paragraph XII and its position prevails. Failure to make an election or failure to comply with the election is a violation of this Order.

        3.    Within thirty (30) Days after the Department's approval of a final report, Respondent shall submit such final report, as well as all data gathered and drawings and submittals made pursuant to such Work Plan, in an electronic format acceptable to the Department. If any document cannot be converted into electronic format, Respondent shall submit such document in an alternative format acceptable to the Department.

    F .    Department's Issuance of a ROD

        Respondent shall cooperate with the Department and provide reasonable assistance, consistent with the Citizen Participation Plan, in soliciting public comment on the proposed remedial action plan ("PRAP"), if any. After the close of the public comment period, the Department shall select a final remedial alternative for the Site in a ROD. Nothing in this Order shall be construed to abridge any rights of Respondent, as provided by law, to judicially challenge the Department's ROD.

    G.    Release and Covenant Not to Sue

        Upon the Department's issuance of a Certificate of Completion as provided at 6 NYCRR 375-1.9 and 375-2.9, Respondent shall obtain the benefits conferred by such provisions, subject to the terms and conditions described therein.

III.    Progress Reports

        Respondent shall submit written progress reports to the parties identified in Subparagraph XI.A.1 by the 10th Day of each month commencing with the month subsequent to the approval of the first Work Plan and ending with the Termination Date, unless a different frequency is set forth in an approved Work Plan. Such reports shall, at a minimum, include: all actions taken

pursuant to this Order during the reporting period and those anticipated for the upcoming reporting period; all approved modifications to work plans and/or schedules; all results of sampling and tests and all other data received or generated by or on behalf of Respondent in connection with the Site during the reporting period, including quality assurance/quality control information; information regarding percentage of completion, unresolved delays encountered or anticipated that may affect the future schedule, and efforts made to mitigate such delays; and information regarding activities undertaken in support of the Citizen Participation Plan during the reporting period and those anticipated for the upcoming reporting period.

IV.    Penalties

       A.    1.    Respondent's failure to comply with any term of this Order constitutes a violation of this Order, the ECL, and 6 NYCRR 375-2.11(a)(4). Nothing herein abridges Respondent's right to contest any allegation that it has failed to comply with this Order.

           2.    Payment of any penalties shall not in any way alter Respondent's obligations under this Order.

       B.    1.    Respondent shall not suffer any penalty or be subject to any proceeding or action in the event it cannot comply with any requirement of this Order as a result of any Force Majeure Event as provided at 6 NYCRR 375-1.5(b)(4). Respondent must use best efforts to anticipate the potential Force Majeure Event, best efforts to address any such event as it is occurring, and best efforts following the Force Majeure Event to minimize delay to the greatest extent possible. "Force Majeure" does not include Respondent's economic inability to comply with any obligation, the failure of Respondent to make complete and timely application for any required approval or permit, and non-attainment of the goals, standards, and requirements of this Order.

           2.    Respondent shall notify the Department in writing within five (5) Days of the onset of any Force Majeure Event. Failure to give such notice within such five (5) Day period constitutes a waiver of any claim that a delay is not subject to penalties. Respondent shall be deemed to know of any circumstance which it, any entity controlled by it, or its contractors knew or should have known.

           3.    Respondent shall have the burden of proving by a preponderance of the evidence that (i) the delay or anticipated delay has been or will be caused by a Force Majeure Event; (ii) the duration of the delay or the extension sought is warranted under the circumstances; (iii) best efforts were exercised to avoid and mitigate the effects of the delay; and (iv) Respondent complied with the requirements of Subparagraph IV.B.2 regarding timely notification.

           4.    If the Department agrees that the delay or anticipated delay is attributable to a Force Majeure Event, the time for performance of the obligations that are affected by the

Force Majeure Event shall be extended for a period of time equivalent to the time lost because of the Force Majeure event, in accordance with 375-1.5(4).

5.    If the Department rejects Respondent's assertion that an event provides a defense to non-compliance with this Order pursuant to Subparagraph IV.B, Respondent shall be in violation of this Order unless it invokes dispute resolution pursuant to Paragraph XII and Respondent's position prevails.

V.    Entry upon Site

A.    Respondent hereby consents, upon reasonable notice under the circumstances presented, to entry upon the Site (or areas in the vicinity of the Site which may be under the control of Respondent) by any duly designated officer or employee of the Department or any State agency having jurisdiction with respect to matters addressed pursuant to this Order, and by any agent, consultant, contractor, or other person so authorized by the Commissioner, all of whom shall abide by the health and safety rules in effect for the Site, for inspecting, sampling, copying records related to the contamination at the Site, testing, and any other activities necessary to ensure Respondent's compliance with this Order. Upon request, Respondent shall (i) provide the Department with suitable work space at the Site, including access to a telephone, to the extent available, and (ii) permit the Department full access to all non-privileged records relating to matters addressed by this Order. Raw data is not considered privileged and that portion of any privileged document containing raw data must be provided to the Department. In the event Respondent is unable to obtain any authorization from third-party property owners necessary to perform its obligations under this Order, the Department may, consistent with its legal authority, assist in obtaining such authorizations.

B.    The Department shall have the right to take its own samples and scientific measurements and the Department and Respondent shall each have the right to obtain split samples, duplicate samples, or both, of all substances and materials sampled. The Department shall make the results of any such sampling and scientific measurements available to Respondent.

VI.    Payment of State Costs

A.    Within forty-five (45) Days after receipt of an invoice from the Department, Respondent shall pay to the Department a sum of money which shall represent reimbursement for past State Costs as provided at 6 NYCRR 375-1.5(b)(3).

B.    Within forty-five (45) Days after receipt of an itemized invoice from the Department, Respondent shall pay to the Department a sum of money which shall represent reimbursement for State Costs, other than those identified in Subparagraph VI.A, for work performed at or in connection with the Site through and including the Termination Date, as provided at 6 NYCRR 375-1.5(b)(3).

C.      Personal service costs shall be documented as provided by 6 NYCRR 375-1.5(b)(3)(ii). The Department shall not be required to provide any other documentation of costs, provided however, that the Department's records shall be available consistent with, and in accordance with, Article 6 of the Public Officers Law.

D.      Such invoice shall be sent to Respondent at the following address:

Mr. Joseph Folkman
*c/o* 49 Dupont Realty Corporation
P.O. Box 786
Deer Park, NY 11729

E.      Each such payment shall be made payable to the Department of Environmental Conservation and shall be sent to:

> Bureau of Program Management
> Division of Environmental Remediation
> New York State Department of Environmental Conservation
> 625 Broadway
> Albany, New York 12233-7012

F.      Each party shall provide written notification to the other within ninety (90) Days of any change in the foregoing addresses.

G.      Respondent may contest invoiced costs as provided at 6 NYCRR 375-1.5(b)(3)(v) and (vi).

VII.    Reservation of Rights

A.      Except as provided at 6 NYCRR 375-1.9 and 375-2.9, nothing contained in this Order shall be construed as barring, diminishing, adjudicating, or in any way affecting any of the Department's rights or authorities, including, but not limited to, the right to require performance of further investigations and/or response action(s), to recover natural resource damages, and/or to exercise any summary abatement powers with respect to any person, including Respondent.

B.      Except as otherwise provided in this Order, Respondent specifically reserves all rights and defenses under applicable law respecting any Departmental assertion of remedial liability and/or natural resource damages against Respondent, and further reserves all rights respecting the enforcement of this Order, including the rights to notice, to be heard, to appeal, and to any other due process. The existence of this Order or Respondent's compliance with it

shall not be construed as an admission of liability, fault, wrongdoing, or breach of standard of care by Respondent, and shall not give rise to any presumption of law or finding of fact, or create any rights, or grant any cause of action, which shall inure to the benefit of any third party. Further, Respondent reserves such rights as it may have to seek and obtain contribution, indemnification, and/or any other form of recovery from its insurers and from other potentially responsible parties or their insurers for past or future response and/or cleanup costs or such other costs or damages arising from the contamination at the Site as may be provided by law, including but not limited to rights of contribution under section 113(f)(3)(B) of CERCLA, 42 U.S.C. § 9613(f)(3)(B).

VIII.   Indemnification

Respondent shall indemnify and hold the Department, the State of New York, the Trustee of the State's natural resources, and their representatives and employees harmless as provided by 6 NYCRR 375-2.5(a)(3)(i).

IX.   Public Notice

A.   Within thirty (30) Days after the effective date of this Order, Respondent shall provide notice as required by 6 NYCRR 375-1.5(a). Within sixty (60) Days of such filing, Respondent shall provide the Department with a copy of such instrument certified by the recording officer to be a true and faithful copy.

B.   If Respondent proposes to transfer by sale or lease the whole or any part of Respondent's interest in the Site, or becomes aware of such transfer, Respondent shall, not fewer than forty-five (45) Days before the date of transfer, or within forty-five (45) Days after becoming aware of such conveyance, notify the Department in writing of the identity of the transferee and of the nature and proposed or actual date of the conveyance, and shall notify the transferee in writing, with a copy to the Department, of the applicability of this Order. However, such obligation shall not extend to a conveyance by means of a corporate reorganization or merger or the granting of any rights under any mortgage, deed, trust, assignment, judgment, lien, pledge, security agreement, lease, or any other right accruing to a person not affiliated with Respondent to secure the repayment of money or the performance of a duty or obligation.

X.   Environmental Easement

A.   If a Department-approved final engineering report for the Site relies upon one or more institutional and/or engineering controls, Respondent (or the owner of the Site) shall submit to the Department for approval an Environmental Easement to run with the land in favor of the State which complies with the requirements of ECL Article 71, Title 36, and 6 NYCRR 375-1.8(h)(2). Upon acceptance of Environmental Easement by the State, Respondent shall comply with the requirements of 6 NYCRR 375-1.8(h)(2).

9

B.    If the ROD provides for no action other than implementation of one or more institutional controls, Respondent shall cause an environmental easement to be recorded under the provisions of Subparagraph X.A.    If Respondent does not cause such environmental easement to be recorded in accordance with 6 NYCRR 375-1.8(h)(2), Respondent will not be entitled to the benefits conferred by 6 NYCRR 375-1.9 and 375-2.9.

XI.    Communications

A.    All written communications required by this Order shall be transmitted by United States Postal Service, by private courier service, or hand delivered as follows:

1.    Communication from Respondent shall be sent to:

Bryan Wong
Division of Environmental Remediation
New York State Department of Environmental Conservation
47-40 21st Street
Long Island City, NY 11101
yywong@gw.dec.state.ny.us

Note: three hard copies (one unbound) of work plans are required, as well as one electronic copy.

with copies to:

Steven Bates
Bureau of Environmental Exposure Investigation
New York State Department of Health
Flanigan Square
547 River Street
Troy, New York 12180-2216
smb02@health.state.ny.us

and

Louis P. Oliva
Regional Attorney
New York State Department of Environmental Conservation
47-40 21st Street
Long Island City, NY 11101
lpoliva@gw.dec.state.ny.us

(Correspondence only)

10

    2.    Communication to be made from the Department shall be sent to:

*Mr. Joseph Folkman*
49 Dupont Realty Corporation
P.O. Box 786
Deer Park, NY 11729

with copies to:

Paul Ciminello
Ecosystems Strategies, Inc.
24 Davis Avenue
Poughkeepsie, NY  12603

and

Lawrence P. Schnapf, Esq.
55 East 87th St. #8B
New York, NY 10128

and

Thomas Spiesman, Esq.
Porzio, Bromberg & Newman, P.C.
100 Southgate Parkway
P.O. Box 1997
Morristown, NJ 07962-1997

    B.    The Department and Respondent reserve the right to designate additional or different addressees for communication upon written notice to the other.

    C.    Each party shall notify the other within ninety (90) Days after any change in the addresses in this Paragraph XI or in Paragraph VI.

XII.    Dispute Resolution

    In the event disputes arise under this Order, Respondent may, within fifteen (15) Days after Respondent knew or should have known of the facts which are the basis of the dispute, initiate dispute resolution in accordance with the provisions of 6 NYCRR 375-1.5(b)(2). Nothing contained in this Order shall be construed to authorize Respondent to invoke dispute resolution with respect to the remedy selected by the Department in the ROD or any element of

11

such remedy, nor to impair any right of Respondent to seek judicial review of the Department's selection of any remedy.

XIII.    Termination of Order

    A.    This Order will terminate upon the earlier of the following events:

        1.    Respondent's election to terminate pursuant to Subparagraphs II.B.1.b, II.C or II.E.2 so long as such election is made prior to the Department's approval of the RD/RA Work Plan. In the event of termination in accordance with this Subparagraph XIII.A.1, this Order shall terminate effective the 5th Day after the Department's receipt of the written notification terminating this Order or the 5th Day after the time for Respondent to make its election has expired, whichever is earlier, provided, however, that if there are one or more Work Plan(s) for which a final report has not been approved at the time of Respondent's notification of its election to terminate this Order pursuant to Subparagraphs II.B.1.b or II.E.2 or its failure to timely make such an election pursuant to Subparagraphs II.B.1.b or II.E.2, Respondent shall promptly complete the activities required by such previously approved Work Plan(s)consistent with the schedules contained therein. Thereafter, this Order shall terminate effective the 5th Day after the Department's approval of the final report for all previously approved Work Plans; or

        2.    The Department's written determination that Respondent has completed all phases of the Remedial Program (including Site Management), in which event the termination shall be effective on the 5th Day after the date of the Department's approval of the final report relating to the final phase of the Remedial Program.

    B.    Notwithstanding the foregoing, the provisions contained in Paragraphs VI and VIII shall survive the termination of this Order and any violation of such surviving Paragraphs shall be a violation of this Order, the ECL, and 6 NYCRR 375-2.11(a)(4), subjecting Respondent to penalties as provided under Paragraph IV so long as such obligations accrued on or prior to the Termination Date.

    C.    If the Order is terminated pursuant to Subparagraph XIII.A.1, neither this Order nor its termination shall affect any liability of Respondent for remediation of the Site and/or for payment of State Costs, including implementation of removal and remedial actions, interest, enforcement, and any and all other response costs as defined under CERCLA, nor shall it affect any defenses to such liability that may be asserted by Respondent. Respondent shall also ensure that it does not leave the Site in a condition, from the perspective of human health and environmental protection, worse than that which existed before any activities under this Order were commenced. Further, the Department's efforts in obtaining and overseeing compliance with this Order shall constitute reasonable efforts under law to obtain a voluntary commitment from Respondent for any further activities to be undertaken as part of a Remedial Program for the Site.

12

XIV.  Miscellaneous

A.    Respondent agrees to comply with and be bound by the provisions of 6 NYCRR Subparts 375-1 and 375-2; the provisions of such Subparts that are referenced herein are referenced for clarity and convenience only and the failure of this Order to specifically reference any particular regulatory provision is not intended to imply that such provision is not applicable to activities performed under this Order.

B.    The Department may exempt Respondent  from the requirement to obtain any state or local permit or other authorization for any activity conducted pursuant to this Order in accordance with 6 NYCRR 375-1.12(b), (c), and (d).

C.    1.    Respondent shall use best efforts to obtain all Site access, permits, easements, approvals, institutional controls, and/or authorizations necessary to perform Respondent's obligations under this Order, including all Department-approved Work Plans and the schedules contained therein.  If, despite Respondent's best efforts, any access, permits, easements, approvals, institutional controls, or authorizations cannot be obtained, Respondent shall promptly notify the Department and include a summary of the steps taken.  The Department may, as it deems appropriate and within its authority, assist Respondent in obtaining same.

2.    If an interest in property is needed to implement an institutional control required by a Work Plan and such interest cannot be obtained, the Department may require Respondent to modify the Work Plan pursuant to 6 NYCRR 375-1.6(d)(3) to reflect changes necessitated by Respondent's inability to obtain such interest.

D.    The paragraph headings set forth in this Order are included for convenience of reference only and shall be disregarded in the construction and interpretation of any provisions of this Order.

E.    1.    The terms of this Order shall constitute the complete and entire agreement between the Department and Respondent concerning the implementation of the activities required by this Order.  No term, condition, understanding, or agreement purporting to modify or vary any term of this Order shall be binding unless made in writing and subscribed by the party to be bound.  No informal advice, guidance, suggestion, or comment by the Department shall be construed as relieving Respondent of Respondent's obligation to obtain such formal approvals as may be required by this Order.  In the event of a conflict between the terms of this Order and any Work Plan submitted pursuant to this Order, the terms of this Order shall control over the terms of the Work Plan(s).   Respondent consents to and agrees not to contest the authority and jurisdiction of the Department to enter into or enforce this Order.

2.    i.    Except as set forth herein, if Respondent desires that any provision of this Order be changed, Respondent shall make timely written application to the Commissioner with copies to the parties listed in Subparagraph XI.A.1.

13

        ii.    If Respondent seeks to modify an approved Work Plan, a written request shall be made to the Department's project manager, with copies to the parties listed in Subparagraph XI.A.1.

        iii.    Requests for a change to a time frame set forth in this Order shall be made in writing to the Department's project attorney and project manager; such requests shall not be unreasonably denied and a written response to such requests shall be sent to Respondent promptly.

F.    1.    If there are multiple parties signing this Order, the term "Respondent" shall be read in the plural, the obligations of each such party under this Order are joint and several, and the insolvency of or failure by any Respondent to implement any obligations under this Order shall not affect the obligations of the remaining Respondent(s) under this Order.

        2.    If Respondent is a partnership, the obligations of all general partners (including limited partners who act as general partners) under this Order are joint and several and the insolvency or failure of any general partner to implement any obligations under this Order shall not affect the obligations of the remaining partner(s) under this Order.

        3.    Notwithstanding the foregoing Subparagraphs XIV.F.1 and 2, if multiple parties sign this Order as Respondents but not all of the signing parties elect to implement a Work Plan, all Respondents are jointly and severally liable for each and every obligation under this Order through the completion of activities in such Work Plan that all such parties consented to; thereafter, only those Respondents electing to perform additional work shall be jointly and severally liable under this Order for the obligations and activities under such additional Work Plan(s). The parties electing not to implement the additional Work Plan(s) shall have no obligations under this Order relative to the activities set forth in such Work Plan(s). Further, only those Respondents electing to implement such additional Work Plan(s) shall be eligible to receive the Release and Covenant Not To Sue referenced in Paragraph II.G.

G..    Respondent shall be entitled to receive contribution protection and/or to seek contribution to the extent authorized by ECL 27-1421(6) and 6 NYCRR 375-1.5(b)(5).

H.    Unless otherwise expressly provided herein, terms used in this Order which are defined in ECL Article 27 or in regulations promulgated thereunder shall have the meaning assigned to them under said statute or regulations.

I.    Respondent's obligations under this Order represent payment for or reimbursement of response costs, and shall not be deemed to constitute any type of fine or penalty.

J.    Respondent and Respondent's successors and assigns shall be bound by this Order. Any change in ownership or corporate status of Respondent shall in no way alter Respondent's responsibilities under this Order.

K.        This Order may be executed for the convenience of the parties hereto, individually or in combination, in one or more counterparts, each of which shall be deemed to have the status of an executed original and all of which shall together constitute one and the same.

L.        The effective date of this Order is the 10th Day after it is signed by the Commissioner or the Commissioner's designee.

DATED:        1\18\1\

New York State Department of
Environmental Conservation

By: _____

Dale A. Desnoyers, Director
Division of Environmental Remediation

## CONSENT BY RESPONDENT

Respondent hereby consents to the issuing and entering of this Order, waives
Respondent's right to a hearing herein as provided by law, and agrees to be bound by this Order.

49 Dupont Realty Corp.

By [signature]: _____

Print Name: ___J. Folkmen___

Title: ___Pres.___

Date: ___1/5/11___

STATE OF NEW YORK ⎫
⎬ ss:
COUNTY OF ⎭

On the ___5___ day of ___JAN___, in the year 2011, before me, the undersigned,

personally appeared ___J. Folkmen___, personally known to me or proved to me on the basis

of satisfactory evidence to be the individual(s) whose name is (are) subscribed to the within

instrument and acknowledged to me that he/she/they executed the same in his/her/their

capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the

person upon behalf of which the individual(s) acted, executed the instrument.

_____
Signature and Office of individual
taking acknowledgment

**ROOPNARINE DHANRAJ**
Notary Public, State of New York
No. 01DH5077133
Qualified in Nassau County
Commission Expires May 5, **2011**

16

EXHIBIT "A"

Map of Site

17

## Approximate Site Location



Former Nuhart Plastic Manufacturing

EXHIBIT "B"

## RECORDS SEARCH REPORT

1.    Detail all environmental data and information within Respondent's or Respondent's agents' or consultants' possession or control regarding environmental conditions at or emanating from the Site.

2.    A comprehensive list of all existing relevant reports with titles, authors, and subject matter, as well as a description of the results of all previous investigations of the Site and of areas immediately surrounding the Site which are or might be affected by contamination at the Site, including all available topographic and property surveys, engineering studies, and aerial photographs.

3.    A concise summary of information held by Respondent and Respondent's attorneys and consultants with respect to:

    (i)    a history and description of the Site, including the nature of operations;

    (ii)    the types, quantities, physical state, locations, methods, and dates of  disposal or release of hazardous waste at or emanating from the Site;

    (iii)    a description of current Site security (i.e. fencing, posting, etc.); and

    (iv)    the names and addresses of all persons responsible for disposal of hazardous waste, including the dates of such disposal and any proof linking each such person responsible with the hazardous wastes identified.

# EXHIBIT B

**Sale Provisions**

Within thirty days of the effective date of this Sale Order, Purchaser shall sign any administrative agreement necessary to become subject to the terms of the administrative order on consent with DEC that governs the environmental remediation of the Site (the "Consent Order," attached hereto as Exhibit ___, which became effective as to Seller on February 17, 2014), amended by DEC as may be necessary to add Purchaser as a party to such Consent Order, and liable for implementing its terms.

Nothing in this Sale Order or in the Purchase Agreement releases, nullifies, or enjoins the enforcement of any liability, including any environmental liability, to a governmental unit under statutes or regulations that any entity, including Purchaser, would be subject to as the post-sale owner or operator of the Assets after the closing.  Nothing in this Sale Order or the Purchase Agreement authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization, or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable non-bankruptcy legal requirements and approvals under law governing such transfers or assignments.  Notwithstanding the foregoing sentence, for the avoidance of doubt, nothing in this Sale Order shall create for any governmental unit any substantive right that does not already exist under law.

**EXHIBIT C**

**Plan Provisions**

Any sale or transfer of Debtor's real property [or the Site if definition covers] shall include the condition that within thirty days of the effective date of the Order for the sale of Debtor's real property, purchaser of such property shall sign any administrative agreement necessary to become subject to the administrative order on consent with DEC that governs the environmental remediation of the Site (the "Consent Order," attached hereto as Exhibit __, which became effective as to Debtor on February 17, 2014), amended by DEC as may be necessary to add the purchaser as a party to such Consent Order.

Nothing in the Order for the sale of Debtor's real property shall be free and clear of the State's role, interest, and/or future interests or claims for (i) any environmental liability to a governmental unit that is not a "Claim" as defined in 11 U.S. C §101(5); (ii) any environmental Claim of a governmental unit; (iii) any environmental liability to a governmental unit on the part of any entity as the owner or operator of the property after the Sale date; (iv) any matters related to any license, permit, registration, governmental authorization, administrative decision, or any consent order involving the State of New York and the Debtor and its affiliates; or (v) any liability to a governmental unit on the part of any entity other than the Debtor, including any purchasers or non-debtor operators.  Nothing in the Order limits, reduces, releases, nullifies, precludes, or enjoins the enforcement of any liability to a governmental unit under police and regulatory statutes or regulations that any entity would be subject to as the owner or operator of property.