**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X

In re:                                                Chapter 11

**DUPONT STREET DEVELOPERS, LLC,**          Case No.:  21-40664-nhl

                                        Debtor.

----------------------------------------------------------X

**DISCLOSURE STATEMENT FOR AMENDED PLAN OF**
**LIQUIDATION OF DUPONT STREET DEVELOPERS LLC, AS MODIFIED**

**THIS IS NOT A SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE
PLAN FOR DUPONT STREET DEVELOPERS, LLC.   ACCEPTANCES OR
REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT
HAS BEEN APPROVED BY THE BANKRUPTCY COURT.  THIS DISCLOSURE
STATEMENT IS BEING SUBMITTED TO THE BANKRUPTCY COURT FOR
APPROVAL BUT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT.
THE INFORMATION CONTAINED HEREIN IS SUBJECT TO COMPLETION OR
AMENDMENT.**

**ROBINSON BROG LEINWAND GREENE**
  **GENOVESE & GLUCK P.C.**
875 Third Avenue
New York, New York 10022
Telephone:  (212) 603 6300
Robert M. Sasloff
rms@robinsonbrog.com
Attorneys for DuPont Street Developers LLC

**Dated:**  New York, New York
        February 16, 2022                    #

# DISCLAIMER

THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS INCLUDED HEREIN FOR PURPOSES OF SOLICITING ACCEPTANCES OF THE PLAN AND MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN. NO PERSON MAY GIVE ANY INFORMATION OR MAKE ANY REPRESENTATIONS OTHER THAN THE INFORMATION AND REPRESENTATIONS CONTAINED IN THIS DISCLOSURE STATEMENT REGARDING THE PLAN OR THE SOLICITATION OF ACCEPTANCES OF THE PLAN.

ALL CREDITORS AND HOLDERS OF INTERESTS SHOULD READ THIS DISCLOSURE STATEMENT AND ALL EXHIBITS HERETO, INCLUDING THE PLAN, BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. PLAN SUMMARIES AND STATEMENTS MADE IN THIS DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN AND THE EXHIBITS ANNEXED TO THE DISCLOSURE STATEMENT AND THE PLAN. THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE ONLY AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN. THE TRANSMISSION OF THIS DISCLOSURE STATEMENT SHALL NOT CREATE AN IMPLICATION THAT THERE HAS BEEN NO CHANGE IN THE INFORMATION STATED SINCE THE DATE HEREOF. AFTER THE DATE HEREOF, THERE CAN BE NO ASSURANCE THAT (A) THE INFORMATION AND REPRESENTATIONS CONTAINED HEREIN WILL BE MATERIALLY ACCURATE, AND (B) THIS DISCLOSURE STATEMENT CONTAINS ALL MATERIAL INFORMATION.

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND RULE 3016 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE, AND NOT NECESSARILY IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER NONBANKRUPTCY LAW. THIS DISCLOSURE STATEMENT WAS PREPARED TO PROVIDE HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE DEBTOR WITH "ADEQUATE INFORMATION" (AS DEFINED IN THE BANKRUPTCY CODE) SO THAT THEY CAN MAKE AN INFORMED JUDGMENT ABOUT THE PLAN.

THIS DISCLOSURE STATEMENT SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, AS A STIPULATION OR AS A WAIVER, BUT, RATHER, AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS. THIS DISCLOSURE STATEMENT SHALL NOT BE ADMISSIBLE IN ANY NON-BANKRUPTCY PROCEEDING INVOLVING THE DEBTOR OR ANY OTHER PARTY, NOR SHALL IT BE CONSTRUED TO BE CONCLUSIVE ADVICE ON THE TAX, SECURITIES, OR OTHER LEGAL EFFECTS OF THE LIQUIDATION OR THE PLAN ON HOLDERS OF CLAIMS AGAINST, OR INTERESTS IN, THE DEBTOR.

\#
\#

# SUMMARY

A glossary of terms frequently used in this amended disclosure statement, is set forth in Article 1 of the amended plan of liquidation filed with the Bankruptcy Court.

DuPont Street Developers, LLC (the "Debtor"), has filed its *Amended Plan of Liquidation of DuPont Street Developers, LLC, as Modified* dated February 16, 2022 (the "Plan"),[1] with the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court"). This *Disclosure Statement for Plan of Liquidation of DuPont Street Developers, LLC* (the "Disclosure Statement") has been approved by the Bankruptcy Court as containing adequate information pursuant to section 1125 of title 11 of the United States Code (the "Bankruptcy Code").

The treatment of Claims and Interests under the Plan provides Creditors and Interest Holders with payment on account of their Claims and Interests. Debtor submits that the Plan therefore provides Creditors and Interest Holders with at least as much as they would be entitled to receive in a chapter 7 liquidation.

## THE DEBTOR

On June 8, 1012, the Debtor entered into a Purchase and Sale Agreement to purchase the Property. The closing and transfer of title to the Debtor occurred on May 19, 2014. The Property, located in Brooklyn, New York, consisted of 10 contiguous tax lots bounded by DuPont Street, Franklin Street, and Clay Street with the intention of developing the Property as a mixed-use space. Because of litigation surrounding the Debtor's acquisition of the Property, the development project stalled. Ultimately, the litigation against the Debtor was resolved, however, the inability of the Debtor to develop the Property caused the Debtor to accrue significant debt with no ability to pay it back. Having abandoned its efforts to develop the Property, the Debtor on March 30, 2018, entered into a contract of sale (the "Prepetition Sale Contract") with DuPont Realty NY LLC ("DuPont Realty"). The original purchase price under the Prepetition Sale Contract was $55,000,000, but after subsequent amendments, the purchase price was ultimately increased to an amount in excess of $57,000,000.[2]

## THE PLAN

The Plan provides for a transfer of the Property and the Purchased Assets to the Dupont Lender in satisfaction of the Dupont Lender Claim and DIP Claim. As part of the Sale, DuPont Lender will provide sufficient Available Cash to fund distributions under the Plan and the necessary capital to complete the remediation and development of the Property.

The table below provides a summary of the classification and treatment of Claims and Interests under the Plan. The figures set forth in the table below represent the Debtor's best estimate of the aggregate amount of Allowed Claims in the Case. These estimates are based on

---

1 Capitalized terms not otherwise defined herein have the meaning ascribed to them in the Plan.
2 As explained below, the Debtor has moved to reject the Prepetition Sale Contract.

#
#

an analysis of the Schedules filed by the Debtor, the Proofs of Claims filed by Creditors, discussions with certain creditors and certain other documents of public record. There can be no assurance that Claims will be allowed by the Bankruptcy Court in the amounts set forth below. The aggregate amount of Allowed Claims may be significantly lowered from the amounts set forth below as the result of objections to Claims which may be brought by the Debtor or through stipulations which may be negotiated with various Creditors.

| Class and Estimated Amount[3] | Type of Claim or Interest | Summary of Treatment |
|---|---|---|
| $234,129.57[4] | Administrative Claims (excluding Claims for professional compensation and reimbursement and Administrative Tax Claims, but including post-petition ordinary course liabilities) | **Non-Voting.** (a) All Administrative Claims, other than Administrative Claims of professionals, must be filed and served no later than fourteen (14) days after entry of the Confirmation Order. Subject to the provisions of Article 8 of the Plan with respect to Disputed Claims, each Administrative Claim, to the extent not previously paid, shall be paid by the Disbursing Agent in Cash in full on (i) the later of (a) the Effective Date, (b) the date payment of such Claim is due under the terms thereof or applicable law, or (c) three (3) Business Days after such Claim becomes an Allowed Administrative Claim or (ii) as may be otherwise mutually agreed in writing between the Debtor and the holder of such Claim; provided, however, that any Administrative Claim incurred by the Debtor in the ordinary course of its business shall be paid in full in accordance with the terms and conditions of the particular transaction giving rise to such Administrative Claim and any agreements relating thereto. |

---

[3] Amount based upon scheduled amount and claims filed.
4 Includes DEC's $215,000 Administrative Claim due under the DEC Stipulation.

#
#

| $300,000.00 | Administrative Claims for Professional Compensation and Reimbursement[5] | **Non-Voting.** All Professionals shall file final applications for approval of compensation and reimbursement of reasonable and necessary expenses pursuant to Section 330 of the Bankruptcy Code no later than fourteen (14) days following the Confirmation Date. Any such application timely filed shall be deemed to be an Administrative Claim, subject to the entry of a Final Order by the Bankruptcy Court approving such application. Objections to any Professional's application for compensation or reimbursement must be timely filed and served upon such Professional, the Debtor and the Disbursing Agent in accordance with the Bankruptcy Rules or any order entered by the Bankruptcy Court. Upon entry of a Final Order approving such an application, the fees shall be paid on the later of seven days after the entry of such Order and the Effective Date or in accordance with this Plan or as otherwise agreed to by the Professional and the Dupont Lender. |
| $0.00 | Priority Tax Claims | **Non-Voting.** Subject to the provisions of Article 7 of the Plan with respect to Disputed Claims, all Allowed Priority Tax Claims shall be paid, in Cash from the Plan Fund, in full either (i) on the Effective Date, or as soon as practicable thereafter, or (ii) upon such other terms as may be agreed to, in writing, between the Debtor and such Governmental Units on the Effective Date or as soon as practicable thereafter. |

---

[5] Any agreement with respect to the waiver and/or modification of fees will be disclosed to the Court and the Office of the United States Trustee.

\#
\#

| Class 1 $764,011.00 | Other Secured Claims | **Unimpaired.** The holders of the Allowed Class 1 Other Secured Claims will receive on account of such claims Available Cash sufficient to pay such Claims in full, with interest at the applicable rate, on the Effective Date or as soon thereafter as is reasonably practicable. |
|---|---|---|
| Class 2 $63,996,102.80[6] | DuPont Lender Claim | **Impaired.** The holder of an Allowed Class 2 Dupont Lender Claim will receive on account of and in full satisfaction of such Claim on or about the Effective Date the transfer of the Property free and clear of all liens, claims and encumbrances (subject to the Dupont Lender's mortgage, which, at the discretion of the Dupont Lender, may be assigned to a lender to the Dupont Lender). |
| Class 3 $0.00 | Priority Claims | **Unimpaired.** Subject to the provisions of Article 8 of this Plan with respect to Disputed Claims, and with the exception of holders of Priority Claims who waive any distribution under the Plan on account of their Class 3 Priority Claims against the Debtor, each holder of an Allowed Class 3 Priority Claim will receive on or about the Effective Date on account of such claim payment in full from Available Cash. |
| Class 4 $81,212.50 | DEC Claim | **Unimpaired.** The holder of the DEC Claim shall be paid in full from Available Cash on or about the Effective Date. |
| Class 5 $8,616,497.00 | General Unsecured Claims | **Unimpaired.** Subject to the provisions of Article 8 of this Plan with respect to Disputed Claims, and with the exception of holders of General Unsecured Claims who waive any distribution under the Plan on account of their Class 5 General Unsecured Claims against the Debtor, each holder of an Allowed Class 5 General Unsecured Claim will receive from the Available Cash on account of such claim payment in full of their Allowed Class 5 General Unsecured Claim, and simple interest at the Federal Judgment Rate as to Class 5 per annum from the Petition Date, with principal being paid in full prior to any payments being made on account of such interest. |

---

[6] Subject to final adjustment for post-petition interest and reasonable fees and expenses.

#
#

| Class 6 | Interests | **Unimpaired.** Holders of Allowed Class 6 Interests shall continue to retain and maintain such Interests in the Debtor and the Post-Confirmation Debtor following Confirmation of the Plan in the same percentages as existed as of the Petition Date. Such Interests may be cancelled by the Debtor upon a dissolution of the Debtor. |

## CONFIRMATION OF THE PLAN

Pursuant to sections 1125 and 1128 of the Bankruptcy Code, the United States Bankruptcy Court for the Eastern District of New York has scheduled a hearing to consider confirmation of the Plan on [], 2022 at []:00 a.m., Eastern Standard Time, in the United States Bankruptcy Court, 271-C Cadman Plaza East, Brooklyn, New York 11201, Courtroom 3577. Objections, if any, to confirmation of the Plan shall be filed and served on or before [], 2022 at 5:00 p.m. (the "Objection Deadline").

At the Confirmation Hearing, the Bankruptcy Court will determine whether the requirements of section 1129(a) of the Bankruptcy Code have been satisfied, in which event the Bankruptcy Court will enter an order confirming the Plan.    The Debtor intends to seek Confirmation of the Plan at the Confirmation Hearing.  **The Debtor believes that the Plan satisfies all applicable requirements of sections 1129(a) and 1129(b) of the Bankruptcy Code**.  Confirmation makes the Plan binding upon the Debtor, all Creditors and other parties regardless of whether they have accepted the Plan.

In accordance with section 1141, as of the Confirmation Date, all Holders of Claims against and Interests in Debtor will be precluded from asserting any Claim or Interest against the Debtor, the Property, or its other assets or other Interests in the Debtor based on any transaction or other activity of any kind that occurred before the Confirmation Date except as otherwise provided in the Plan.

## VOTING INSTRUCTIONS — SUMMARY

The following discussion summarizes more detailed voting instructions set forth in the section of this Disclosure Statement entitled "VOTING INSTRUCTIONS."  If you have any questions regarding the timing or manner of casting your ballot, please refer to the "VOTING INSTRUCTIONS" section of this Disclosure Statement and the instructions contained on the ballot that you received with this Disclosure Statement.

**General**.  The Debtor has sent to all of its known Creditors who are in Classes impaired under the Plan a ballot with voting instructions and a copy of this Disclosure Statement. Creditors may refer to the above chart to determine whether they are impaired and entitled to vote on the Plan.  Creditors should read the ballot carefully and follow the voting instructions. Creditors should only use the official ballot that accompanies this Disclosure Statement.

#
#

The Plan can be confirmed by the Bankruptcy Court and thereby made binding on you if it is accepted by (a) the holders of two-thirds in amount and more than one-half in number of claims in each class who actually vote on the Plan. In the event the requisite acceptances are not obtained, the Bankruptcy Court may nevertheless confirm the Plan if (i) the Bankruptcy Court finds that the Plan accords fair and equitable treatment, and does not discriminate unfairly, with respect to the class rejecting it and (ii) at least one impaired class of creditors excluding insiders has accepted the Plan. See "REQUIREMENTS FOR CONFIRMATION" and "EFFECT OF CONFIRMATION."

**As the preceding paragraph makes evident, a successful reorganization depends upon the receipt of a sufficient number of votes in support of the Plan. YOUR VOTE IS THEREFORE EXTREMELY IMPORTANT. Creditors and Interest Holders should exercise their right to vote to accept or reject the Plan.**

**Voting Multiple Claims and Interests**. A single form of ballot is provided for each Class of Claims. Any Person who holds Claims in more than one Class is required to vote separately with respect to each Class in which such Person holds Claims. However, any Person who holds more than one Claim in one particular Class will be deemed to hold only a single Claim in such Class in the aggregate amount of all Allowed Claims in such Class held by such Person. Thus each Person need complete only one ballot for each Class.

**Deadline for Returning Ballots**. The Bankruptcy Court has directed that, to be counted for voting purposes, ballots for the acceptance or rejection of the Plan must be received by the Debtor, no later than 5:00 p.m., Eastern Time, on [], 2022, at the following address:

**Robinson Brog Leinwand Greene Genovese & Gluck P.C.**
875 Third Avenue, 9th Floor
New York, New York 10022
**Attention: Robert M. Sasloff, Esq.**

**Voting Questions**. If you have any questions regarding the provisions or requirements for voting to accept the Plan or require assistance in completing your ballot, you may contact Robert M. Sasloff, Esq. at (212) 603-6329.

NOTICE TO HOLDERS OF CLAIMS AND INTERESTS

This Disclosure Statement and the accompanying ballots are being furnished by the Debtor to the Debtor's known Creditors pursuant to section 1125(b) of the Bankruptcy Code in connection with a solicitation of acceptances of a plan of reorganization by the Debtor. The Plan is filed with the Bankruptcy Court and is incorporated herein by reference. Parties in interest may view the Plan on the Internet at http://www.nyeb.uscourts.gov.[7]

The purpose of this Disclosure Statement is to enable you, as a Creditor whose

---

[7] A password is necessary for access to view documents on the Internet.###

#
#

Claim is in a Class impaired under the Plan, to make an informed decision in exercising your right to accept or reject the Plan.

**THIS DISCLOSURE STATEMENT HAS BEEN PREPARED BY THE DEBTOR. THE STATEMENTS AND OPINIONS SET FORTH HEREIN ARE THOSE OF THE DEBTOR, AND NO OTHER PARTY HAS ANY RESPONSIBILITY WITH RESPECT THERETO.**

**THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND RULE 3016 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE, AND NOT NECESSARILY IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER NONBANKRUPTCY LAW. THIS DISCLOSURE STATEMENT WAS PREPARED TO PROVIDE HOLDERS OF CLAIMS AGAINST THE DEBTOR WITH "ADEQUATE INFORMATION" (AS DEFINED IN THE BANKRUPTCY CODE) SO THAT THEY CAN MAKE AN INFORMED JUDGMENT ABOUT THE PLAN.**

**THE PLAN HAS NOT BEEN APPROVED OR DISAPPROVED BY ANY BANKRUPTCY COURT, THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION NOR HAS THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION PASSED UPON THE FAIRNESS OR MERITS OF THE PLAN OR UPON THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT. ANY REPRESENTATION TO THE CONTRARY IS UNLAWFUL.**

The historical information concerning the Debtor has been prepared using the Debtor's books and records and certain filings made with the Bankruptcy Court. The estimates of Claims set forth herein may vary from the final amounts of Claims allowed by the Bankruptcy Court. While every effort has been made to ensure the accuracy of all such information, except as noted in the Disclosure Statement, the information presented herein is unaudited and has not been examined, reviewed or compiled by the Debtor's independent public accountants.

Notwithstanding any provision of the Plan to the contrary, definitions and descriptions contained herein respecting pre-Petition Date documents, agreements, Claims or Interests are provided solely for the purpose of identification and classification thereof and do not constitute an admission by the Debtor of the existence, validity, allowance, or amount of any such Claim, Interest, document or agreement. The Debtor expressly reserves the right to challenge the existence, validity, allowance, or amount of any such Claim, Interest, document or agreement.

This Disclosure Statement contains a summary of certain provisions of the Plan and the transactions contemplated thereunder, as well as descriptions of certain other related documents. While the Debtor believes that these summaries are fair and accurate, such summaries are qualified to the extent that they do not set forth the entire text of such documents. Reference is made to the Plan and the documents referred to herein and therein for a complete statement of the terms and provisions thereof. In the event of any inconsistency between the

\#
\#

terms of the Plan and this Disclosure Statement, the terms of the Plan shall be controlling.  In reviewing the Plan and this Disclosure Statement, the reader should give special attention to "RISK FACTORS."  No statements or information concerning the Debtor, the Property, or its other assets, results of business operations or financial condition are authorized by the Debtor other than as set forth in this Disclosure Statement and the exhibits hereto (including the Plan).

The statements contained in this Disclosure Statement are made as of the date hereof unless another time is specified herein.  The delivery of this Disclosure Statement shall not create, under any circumstances, an implication that there has been no change in the facts set forth herein since the date hereof.

No Person has been authorized to use or promulgate any information concerning the Debtor or its business or the Plan, other than the information contained in this Disclosure Statement and the exhibits hereto.  You should not rely on any information relating to the Debtor or its business or the Plan other than that contained in this Disclosure Statement and the exhibits hereto.

### PROPONENT'S RECOMMENDATION

In the Debtor's opinion, the treatment of Creditors under the Plan provides a greater recovery than is likely to be achieved under any other alternatives, including liquidation under Chapter 7.  See "ALTERNATIVES TO THE PLAN."  In particular, the Debtor believes that in a Chapter 7 liquidation, administrative costs will be greater and the value of any distribution in a chapter 7 liquidation case will be discounted by the litigation and delays which will precede any such distribution, resulting in a decreased distribution, and potentially the Debtor's Secured Creditors being paid less than in full and all other creditors potentially getting no distribution at all.

## THE DEBTOR BELIEVES THAT CONFIRMATION OF THE PLAN IS IN THE BEST INTERESTS OF CREDITORS.

### SIGNIFICANT EVENTS IN THE CASE

On the Petition Date, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Eastern District of New York.  The following discussion is intended to highlight some of the more significant events which have occurred during the pendency of the Debtor's Case.

### RETENTION OF PROFESSIONALS

Section 327(a) of the Bankruptcy Code provides that a debtor, with the court's approval, may employ one or more accountants or other professional persons that do not hold or represent an interest adverse to the estate and that are disinterested persons to represent or assist the debtor in carrying out its duties under the Bankruptcy Code. 11 U.S.C. § 327(a).

#
#

On March 31, 2021, the Debtor sought authority from the Bankruptcy Court to retain Robinson Brog Leinwand Greene Genovese & Gluck P.C. as its counsel.  The application was granted pursuant to an order signed on May 2, 2021.

On June 15, 2021, the Debtor sought authority from the Bankruptcy Court to retain Rosewood Realty Group as its real estate broker.  The application was granted pursuant to an order signed on June 25, 2021

## CLAY RIVERVIEW CHAPTER 11 CASE

On January 21, 2020, Clay Riverview LLC, the Debtor's sole member, filed a chapter 11 case to stay the sale of its membership interest in the Debtor.  It is anticipated that upon confirmation of the Debtor's Plan, the Debtor will have no assets to administer.  As a result, because the Debtor will no longer have any assets, Clay Riverview's membership interest in the Debtor will have no value.  There is currently pending in Clay Riverview's chapter 11 case a motion to dismiss that the Debtor expects will be granted after the Debtor's case is confirmed.

## REJECTION OF PURCHASE AGREEMENT WITH DUPONT REALTY NY LLC

On March 31, 2021, the Debtor filed its motion to reject the Prepetition Sale Contract with DuPont Realty.  As explained in more detail in the motion to reject, the Debtor is seeking to reject the Prepetition Sale Contract on the basis that DuPont Realty cannot close on the sale of the Property and in order for the Debtor to pursue a sale of the Property, it is in the Debtor's best interests to reject the prepetition Sale Contract.  DuPont Realty has filed an objection to the motion to reject.  As of the date of this Disclosure Statement, the Court has yet to rule on the motion to reject.

Subsequently, Dupont Street 3 LLC, an affiliate of the Dupont Lender, acquired DuPont Realty's Claim.  Dupont Street 3 LLC and the Debtor have agreed that the contract can be rejected in connection with confirmation of the Plan.

## BAR DATE

In accordance with the requirements of section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, the Debtor filed its schedules of assets and liabilities, including schedules of all of its known Creditors and the amounts and priorities of the Claims the Debtor believes is owed to such creditors.  Pursuant to section 501 of the Bankruptcy Code, any Creditor may file a Proof of Claim and, unless disputed, such filed Proof of Claim or Proof of Interest supersedes the amount and priority set forth in the Debtor's schedules.  By order of the Bankruptcy Court entered on March 31, 2021, May 28, 2021 was set as the last day for Creditors to file Proofs of Claim in the Debtor's Case.

There can be no assurance that the Allowed Claims as determined by the Bankruptcy Court will be in the amounts and priorities stated in the Schedules filed by the Debtor or the Proofs of Claim filed by the Creditors.

\#
\#

**OPERATING REPORTS**

Pursuant to the requirements of the Office of the United States Trustee for the Eastern District of New York, the Debtor has been preparing and filing monthly operating reports with the Bankruptcy Court. Copies of such reports may be obtained (i) from the Bankruptcy Court during normal business hours, (ii) upon written request made to counsel for the Debtor, or (iii) from the Bankruptcy Court's Electronic Case Filing System ("ECF")[8] which may be accessed at the Bankruptcy Court's Internet website at www.nyeb.uscourts.gov.

**DIP FINANCING AND DEC STIPULATION**

On July 30, 2021, the Debtor filed its Motion Pursuant To 11 U.S.C. §§ 105, 361, 362, 363 And 364 Order (I) Authorizing Debtor To Obtain Post-Petition Financing Secured By A Senior Lien Under Section 364(c)(1) And 364(d) Of The Bankruptcy Code (the "DIP Financing Motion"), under which the Debtor sought to borrow approximately $11,833,633.00 from an entity affiliated with the Dupont Lender (the "DIP Lender"), which is the amount provided in the budget attached as an exhibit to the DIP Financing Motion. The funds to be borrower under this Debtor-in-Possession Financing (the "DIP Financing") shall be used by the Debtor to fund needed environmental remediation at the Property and shall be "borrowed" through protective advances made by the DIP Lender directly to the applicable contracts performing the remedial work. The DIP Financing loan shall bear an interest rate of the higher of LIBOR plus 11.75% and 12% per annum and matures on the earlier of 9 months from the date of the approval of the DIP Financing Motion or the Effective Date of the Plan. The DIP Financing shall be secured by a super-priority, first lien on the Property and amounts borrower under the DIP Financing shall constitute administrative expense claims.

A hearing was held on the DIP Financing Motion on August 17, 2021. Prior to the hearing, the DEC filed an objection to the DIP Financing Motion on the basis that any financing that would be used to remediate the Property would require DEC consent or agreement. In addition to their objection, the DEC also filed a proof of claim in the amount of $32,973,212.50. The Debtor, the Dupont Lender, and the DEC had extensive negotiations towards resolving the DEC Objection and DEC Claim. These negotiations resulted in the DEC Stipulation which fixed the DEC Claim in the total amount of $296,212.50, consisting of administrative expenses and non-dischargeable unsecured claims and provided for certain provisions to be included in the Plan, including that the Dupont Lender will become subject to a consent order regarding the environmental clean-up at the Property. The DEC Claims is to be separately classified and paid in full after Confirmation as set forth in the DEC Stipulation.

After an extensive hearing on November 9, 2021, on November 19, 2021, the Bankruptcy Court entered an order approving the DIP Financing Motion.

**SECURED CREDITOR ACQUISITION OF GENERAL UNSECURED CLAIMS**

---

[8]  Filing documents on the ECF requires a password which an attorney may obtain by contacting the Bankruptcy Court's technical assistance department, Monday through Friday, 9:00 a.m. to 4:00 p.m.

#
#

Dupont Street 3 LLC, an affiliate of Dupont Lender, the Debtor's primary secured creditor, has acquired nearly all of the General Unsecured Claims to which a proof of claim has been filed, along with any other scheduled General Unsecured Claim in this case and has or will shortly file the necessary forms under Bankruptcy Rule 3001(e).  Dupont Street 3 LLC has informed the Debtor that it intends to waive any distributions under this Plan, if confirmed.

SUMMARY OF THE PLAN

The following summary of the terms of the Plan is qualified in its entirety by reference to the provisions of the Plan, a copy of which is filed with the Clerk of the Bankruptcy Court and which is incorporated herein by reference.

**CLASSIFICATION OF CLAIMS AND INTERESTS**

Classification of Claims is governed, in part, by sections 1122 and 1123(a) of the Bankruptcy Code.  Section 1123(a) requires that a plan designate classes of claims, requires that the plan specify the treatment of any impaired class of claims, and requires that the plan provide the same treatment for each claim of a particular class, unless the holder of a claim receiving less favorable treatment consents to such treatment.  11 U.S.C. §1123(a)(1), (3) and (4).  Section 1122(a) of the Bankruptcy Code provides, subject to an exception for administrative convenience, that "a plan may place a claim or interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class."

Article 3 of the Plan classifies the various Claims against and Interests in the Debtor into four classes of Claims and one class of Interests:

**Class 1 – Other Secured Claims.** Class 1 consists of all Other Secured Claims. Unimpaired.

**Class 2 – Dupont Lender Claim.** Class 2 consists of the Dupont Lender Claim. Impaired.

**Class 3 – Priority Claims.**  Class 3 consists of all Priority Claims.  Unimpaired.

**Class 4 – DEC Claim.**  Class 4 consists of the DEC Claim.  Unimpaired.

**Class 5 – General Unsecured Claims.**  Class 5 consists of all General Unsecured Claims.  Unimpaired.

**Class 6 –Interests.**  Class 6 consists of all Interests in the Debtor.  Unimpaired.

As set forth in Article 2 of the Plan, pursuant to section 1123(a)(1) of the Bankruptcy Code, certain Administrative Claims, including the DIP Claim, against the Debtor have not been classified. See "SUMMARY OF THE PLAN -- Treatment of Non-Classified Claims**.**

\#
\#

Allowed Claims in Classes 1, 3, 4, and 5 and Allowed Interests in Class 6 are Unimpaired and are not entitled to vote on the Plan and are deemed to have accepted the Plan. Allowed Claims in Class 2 are Impaired and are entitled to vote to accept or reject the Plan.  The members of each Class shall receive the following treatment under the Plan in full satisfaction, release and discharge thereof.

**TREATMENT OF CLAIMS CLASSIFIED UNDER THE PLAN**

Article 4 of the Plan provide for the treatment of impaired and unimpaired Claims classified in Article 3 of the Plan as follows:

**Class 1 – Other Secured Claims.**  The holders of the Allowed Class 1 Other Secured Claims will receive on account of such claims Available Cash sufficient to pay such Claims in full, with interest at the applicable rate, on the Effective Date or as soon thereafter as is reasonably practicable.

**Class 2** – **Dupont Lender Claim.**  The holder of an Allowed Class 2 Dupont Lender Claim will receive on account of and in full satisfaction of such Claim on or about the Effective Date the transfer of the Property free and clear of all liens, claims and encumbrances (subject to the Dupont Lender's mortgage, which, at the discretion of the Dupont Lender, may be assigned to a lender to the Dupont Lender).

**Class 3 - Priority Claims.**  Subject to the provisions of Article 8 of this Plan with respect to Disputed Claims, and with the exception of holders of Priority Claims who waive any distribution under the Plan on account of their Class 3 Priority Claims against the Debtor, each holder of an Allowed Class 3 Priority Claim will receive on or about the Effective Date on account of such claim payment in full from Available Cash.

**Class 4 – DEC Claim.**  The holder of the DEC Claim shall be paid in full from Available Cash on or about the Effective Date.

**Class 5 - General Unsecured Claims.** Subject to the provisions of Article 8 of this Plan with respect to Disputed Claims, and with the exception of holders of General Unsecured Claims who waive any distribution under the Plan on account of their Class 5 General Unsecured Claims against the Debtor, each holder of an Allowed Class 5 General Unsecured Claim will receive from the Available Cash on account of such claim payment in full of their Allowed Class 5 General Unsecured Claim, and simple interest at the Federal Judgment Rate as to Class 5 per annum from the Petition Date, with principal being paid in full prior to any payments being made on account of such interest.

**Class 6 – Interests**.  Holders of Allowed Class 6 Interests shall continue to retain and maintain such Interests in the Debtor and the Post-Confirmation Debtor following

#
#

Confirmation of the Plan in the same percentages as existed as of the Petition Date.  Such Interests may be cancelled by the Debtor upon a dissolution of the Debtor.

## TREATMENT OF NON-CLASSIFIED CLAIMS

Pursuant to Section 1123(a)(1) of the Bankruptcy Code, the Plan does not classify Administrative Claims entitled to priority treatment under Section 507(a)(1) of the Bankruptcy Code or Claims of Governmental Units entitled to priority pursuant to Section 507(a)(8) of the Bankruptcy Code.  Article 2 of the Plan provides for the manner of treatment of such non-classified Claims.

**Statutory Fees.**  All fees and charges payable to the United States Trustee, including the Statutory Fees and any applicable interest thereon, that are due on or prior to the Effective Date, shall be paid no later than ten (10) days after the Effective Date from Available Cash.  Such fees, together with any applicable interest thereon, that may become due after the Effective Date shall be paid as they become due by the Dupont Lender until the entry of a final decree closing the Chapter 11 Case, or until the Chapter 11 Case is converted or dismissed, whichever occurs earlier from Available Cash.

**Administrative Claims.**  (a) All Administrative Claims, other than Administrative Claims of professionals, must be filed and served no later than fourteen (14) days after entry of the Confirmation Order.  Subject to the provisions of Article 8 of the Plan with respect to Disputed Claims, each Administrative Claim, to the extent not previously paid, shall be paid by the Disbursing Agent in Cash in full on (i) the later of (a) the Effective Date, (b) the date payment of such Claim is due under the terms thereof or applicable law, or (c) three (3) Business Days after such Claim becomes an Allowed Administrative Claim or (ii) as may be otherwise mutually agreed in writing between the Debtor and the holder of such Claim; provided, however, that any Administrative Claim incurred by the Debtor in the ordinary course of its business shall be paid in full in accordance with the terms and conditions of the particular transaction giving rise to such Administrative Claim and any agreements relating thereto.

(b) All Professionals shall file final applications for approval of compensation and reimbursement of reasonable and necessary expenses pursuant to Section 330 of the Bankruptcy Code no later than fourteen (14) days following the Confirmation Date.  Any such application timely filed shall be deemed to be an Administrative Claim, subject to the entry of a Final Order by the Bankruptcy Court approving such application.  Copies of any Professional's fee applications shall be served on the United States Trustees and any objections to any Professional's application for compensation or reimbursement must be timely filed and served upon such Professional, the Debtor, the United States Trustee and the Disbursing Agent in accordance with the Bankruptcy Rules or any order entered by the Bankruptcy Court.  Upon entry of a Final Order approving such an application, the fees shall be paid on the later of seven days after the entry of such Order and the Effective Date or in accordance with this Plan or as otherwise agreed to by the Professional and the Dupont Lender.

\#
\#

Upon approval of the Disclosure Statement, the Debtor will serve a notice of the Administrative Bar Date to all parties in interest.

**DIP Claim.**  The DIP Claim shall be paid through the transfer of the Property to the Dupont Lender as provided in section 4.2 of the Plan, in full satisfaction of the DIP Claim.

## DISPUTED CLAIMS AND INTERESTS

Article 7 of the Plan contains a mechanism for resolving disputes concerning the amount of certain Claims or Interests asserted against the Debtor by any Entity.

**Time to Object.**  Unless otherwise ordered by the Bankruptcy Court for cause, only the Liquidating Debtor may object to the allowance of any Claim, and such objection may be filed no later than the later to occur of (i) 60 days after the Effective Date and (ii) 60 days after the date proof of such Claim or Interest or a request for payment of such Claim is filed. Claims shall be deemed to be Disputed in their entirety if, (i) the amount specified in a Proof of Claim exceeds the amount of any corresponding Claim listed in the Schedules or (ii) there is a timely objection to such Claim.

## DISTRIBUTIONS UNDER THE PLAN

Article 7 contains provisions governing the making of distributions on account of Claims

**Disbursing Agent.**  The Disbursing Agent shall distribute all Cash or other property to be distributed under the Plan and may employ or contract such third parties as may be necessary to assist in or perform the distribution of Cash or other property under the Plan. Pending the final distribution of all sums distributable under the terms of the Plan (including the delivery to the Liquidating Debtor of unclaimed distributions pursuant to section 7.14 of the Plan), the Disbursing Agent shall have full authority to sign checks on any bank account of the Liquidating Debtor to the extent necessary to make any payment or distribution contemplated by the Plan.

**Timing of Distributions Under the Plan.**  Subject to sections 7.6 and 7.8 of the Plan, any payments, distributions or other performance to be made pursuant to the Plan on account of any Disputed Claim, shall be deemed to be timely made if made on or within five days following the later of (i) the expiration of any applicable objection deadline with respect to such Disputed Claim or (ii) such other times provided in the Plan.

**Method of Payment.**  Unless otherwise expressly agreed, in writing, all Cash payments to be made pursuant to the Plan shall be made by check drawn on a domestic bank in United States Dollars.

#
#

**Prosecution of Objections.**  After the Confirmation Date, only the Liquidating Debtor shall have authority to file, settle, compromise, withdraw or litigate to judgment objections to Disputed Claim.

**No Distribution Pending Allowance.**  Notwithstanding any other provision of the Plan, no payment or distribution of any kind shall be made with respect to any portion of a Disputed Claim unless and until all objections to such Claim are resolved by Final Order.

**Escrow of Cash Distributions.**  (a) On any date that distributions are to be made under the terms of the Plan, the Liquidating Debtor shall make available any and all funds required under Plan to be disbursed on that date, and the Disbursing Agent shall deposit in one or more segregated accounts, Cash or property equal to 100% of the Cash that would be distributed on such date on account of Disputed Claims as if each such Disputed Claim were an Allowed Claim but for the pendency of a dispute with respect thereto, including, but not limited to (i) Disputed Claims that may be entitled to treatment as Administrative Claims or as Priority Non-Tax Claims pursuant to Sections 503 and 507 of the Bankruptcy Code, (ii) claims of Governmental Units for any tax, (iii) any disputed Cure Amount, and (iv) any amount due but not payable on the Effective Date on account of Administrative Claims or claims entitled to priority pursuant to Section 503 and 507 of the Bankruptcy Code.  The Disbursing Agent shall also segregate any interest, dividends or other proceeds of such Cash.  Such Cash together with any interest, dividends or proceeds thereof, be held in trust for the benefit of the Holders of all such Disputed Claims pending determination of their entitlement thereto.

(b)  The Liquidating Debtor shall have the right to seek an order of the Bankruptcy Court under Section 502(c) of the Bankruptcy Code, after notice and hearing, estimating or limiting the amount of Cash that must be so deposited on account of any Disputed Claim, including Administrative Expenses.  Any Creditor whose Claim is so estimated shall have no recourse to any assets theretofore distributed on account of any Allowed Claim if the Allowed Claim of that Creditor as determined by Final Order exceeds the amount so deposited.  Such Creditor shall have recourse to the undistributed assets in the Disputed Claims Reserve (on a Pro Rata basis with other Creditors of the same Class who are similarly situated) that exceed the aggregate amount of all Disputed Claims allowed by Final Order, or not yet resolved.

**Distribution After Allowance.**  Within 15 days after the entry of a Final Order resolving an objection to a Disputed Claim, the Disbursing Agent shall distribute all Cash or other property, including any interest, dividends or proceeds thereof, to which a Holder is then entitled with respect to any formerly Disputed Claim that has become an Allowed Claim.

**Investment of Segregated Cash.**  To the extent practicable, the Disbursing Agent may invest any Cash segregated on account of a Disputed Claim, disputed Interest, undeliverable distribution, or any proceeds thereof (i) in a manner that will yield a reasonable net return taking into account the safety of the investment or (ii) in any manner permitted by section 345 of the Bankruptcy Code; *provided, however,* that the Disbursing Agent shall be under no obligation to so invest such Cash or proceeds and shall have no liability to any party for any investment made or any omission to invest such Cash or proceeds.  Segregated Cash shall be maintained in an

#
#

authorized depository approved by the United States Trustee in the Eastern District of New York.

**Distribution After Disallowance.**  Subject to section 7.7 of the Plan, the Cash segregated on account of Disputed Claims, including the allocable portion of the net return yielded from any investment thereof, if any, remaining after all Disputed Claims have been resolved by Final Order shall revert to the Liquidating Debtor for distribution under the Plan.

**Surrender of Instruments; Execution of Satisfactions and Releases.**

(a)  Notwithstanding any other provision of the Plan, no Creditor, except Dupont Lender, that holds a note or other instrument evidencing such Creditor's Claim may receive any distribution with respect to such Claim unless and until the original note or other original instrument evidencing such Claim shall have been validly surrendered to the Disbursing Agent at the sole cost and expense of such Creditor.

(b)  Any Cash or property to be distributed pursuant to the Plan on account of any such Claim shall, pending such surrender, be treated as an undeliverable distribution pursuant to section 7.13 of the Plan.

(c)  In the event any Creditor is unable to surrender a note or other instrument evidencing a Claim against the Debtor that has been destroyed, lost or stolen, such entity may receive a distribution with respect to such Claim by presenting to the Disbursing Agent, in a form acceptable to the Disbursing Agent:  (i) proof of such entity's title to such Claim; (ii) an affidavit to the effect that the same has been lost and after diligent search cannot be located; and (iii) such indemnification as may be required by the Disbursing Agent and all other entities deemed appropriate by the Disbursing Agent from any loss, action, suit or any claim whatsoever which may be made as a result of such entity's receipt of a distribution under the Plan.

(d)  All questions as to the validity, form or eligibility of any note or other instrument evidencing a Claim so surrendered shall be resolved by Final Order of the Bankruptcy Court.  The Disbursing Agent shall not be under any duty to give notification of defects in such tender or shall incur liability for failure to give notification of such defects.

**Delivery of Distributions.**  Except as provided in sections 7.13, 7.14 and 7.15 of the Plan, distributions to Holders of Allowed Claims and Allowed Interests shall be made: (1) at the addresses set forth on the respective Proofs of Claim or Proofs of Interests filed by such Holders; (2) at the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related Proof of Claim; or (3) at the address reflected in the Schedules if no Proof of Claim or Proof of Interest is filed and the Disbursing Agent has not received a written notice of a change of address.

**Undeliverable Distributions.**  (a) If the distribution to the Holder of any Claim or Interest is returned to the Disbursing Agent as undeliverable, no further distribution shall be made to such Holder unless and until the Disbursing Agent is notified in writing of such Holder's

\#
\#

then current address.  Undeliverable distributions shall remain in the possession of the Disbursing Agent until the earlier of (i) such time as a distribution becomes deliverable or (ii) such undeliverable distribution becomes an unclaimed distribution pursuant to section 7.14 of the Plan.

(b)  Until such time as an undeliverable distribution becomes an unclaimed distribution pursuant to section 7.14 of the Plan, within 30 days after the end of each calendar quarter following the Effective Date, the Disbursing Agent shall make distributions of all Cash that has become deliverable during the preceding quarter.  Each such distribution shall include the net return yielded from the investment of any undeliverable Cash, from the date such distribution would have been due had it then been deliverable to the date that such distribution becomes deliverable.

(c)  Nothing contained in the Plan shall require the Liquidating Debtor  to attempt to locate any Holder of an Allowed Claim or an Allowed Interest.

**Unclaimed Distributions.**  Any Cash or other assets to be distributed under the Plan shall revert to the Liquidating Debtor if it is not claimed by the entity entitled thereto before the later of (i) one year after the Effective Date; (ii) one year after such scheduled payment to such entity under Article 4 of this Plan; or (iii) one year after an Order allowing the Claim of that entity becomes a Final Order, and such entity's Claim shall be reduced to zero.

**Set-offs.**  The Liquidating Debtor, as Disbursing Agent, may, but shall not be required to, set-off against the distributions to be made pursuant to the Plan, the claims, obligations, rights, causes of action and liabilities of any nature that the Liquidating Debtor may hold against the Holder of an Allowed Claim, *provided, however,* that neither the failure to effect such a set-off nor the allowance of any claim hereunder shall constitute a waiver or release by the Liquidating Debtor of any such claims, obligations, rights, causes of action and liabilities that the Debtor (or the Liquidating Debtor) has or may have against such Holder.  To the extent the Liquidating Debtor elect to effectuate a set-off, it shall notify the Holder of the Allowed Claim in writing at least ten (10) days prior to effectuating the set-off.  To the extent the Holder of an Allowed Claim objects to the set-off, a written objection shall be provided to the Liquidating Debtor, as Disbursing Agent, no later than three (3) days prior to the set-off date or the objection shall be waived.

## COMPLIANCE WITH TAX REQUIREMENTS

In connection with the Plan, the Disbursing Agent shall comply with all withholding and reporting requirements imposed by federal, state and local taxing authorities and distributions under the Plan shall be subject to such withholding and reporting requirements provided, however, that the transfer of any Cash, property or other interest under the Plan shall not be subject to any federal, state or local tax to the fullest extent provided under Section 1146 of the Bankruptcy Code.

\#
\#

**EFFECTIVE DATE**

The Effective Date of the Plan shall be the first Business Day after which all of the conditions to the Effective Date, specified in section 11.1 of the Plan, have been satisfied.

### TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**Treatment of Executory Contracts; Bar Date for Rejection Claims.**  Except for the Prepetition Sale Contract, which shall be rejected, all other Executory Contracts or Unexpired Leases to which the Debtor is a party as of the Effective Date shall be assumed by the Debtor and assigned to the Dupont Lender on or about the Effective Date in accordance with the provisions and requirements of Sections 365 and 1123 of the Bankruptcy Code, unless an Executory Contract or Lease is listed as rejected by a notice to be filed with the Bankruptcy Court (the "**Assumption Notice**"), with such notice being served by the Dupont Lender on the counterparty to each such Executory Contract or Unexpired Lease,  together with the Debtor and the U.S. Trustee, no later than twenty one (21) days prior to the Effective Date.

**Claims Arising From Rejection, Expiration or Termination.**  Holders of Claims created by the rejection of executory contracts and unexpired leases or the expiration or termination of any executory contract or unexpired lease must file in the Bankruptcy Court and serve on the Dupont Lender a proof of claim within 21 days after service of the Assumption Notice.  Unless otherwise ordered by the Bankruptcy Court, all such Claims that are timely filed as provided herein shall be treated as General Unsecured Claims under the Plan, subject to objection by the Dupont Lender.  After receipt of such proof of claim, the Dupont Lender shall have 14 days to file an objection, failing which such Claim shall be an Allowed Claim.

### IMPLEMENTATION OF THE PLAN

**Implementation.**  (a) The Property shall be transferred free and clear of all liens, claims and encumbrances to the Dupont Lender (subject to subject to the Dupont Lender's mortgage, which, at the discretion of the Dupont Lender, may be assigned to a lender to the Dupont Lender), except that the Dupont Lender shall sign any administrative agreement necessary to become subject an administrative order on consent with the DEC that governs the environmental remediation of the Property, as amended by the DEC as may be necessary to add the Dupont Lender as a party to a "Consent Order" (as hereinafter defined) with respect to the Property.  Nothing in the Confirmation Order, which shall provide for the transfer of the Property, shall be free and clear of the DEC's role, interest, and/or future interests or claims for (i) any environmental liability to a governmental unit that is not a Claim; (ii) any environmental Claim of a governmental unit; (iii) any environmental liability to a governmental unit on the part of any entity as the owner or operator of the property after the Sale date; (iv) any matters related to any license, permit, registration, governmental authorization, administrative decision, or any consent order involving the State of New York and the Debtor and its affiliates; or (v) any liability to a governmental unit on the part of any entity other than the Debtor, including any purchasers or non-debtor operators. Nothing in the Confirmation Order shall limit, reduce, release, nullify, preclude, or enjoin the enforcement of any liability to a governmental unit under

\#
\#

police and regulatory statutes or regulations that any entity would be subject to as the owner or operator of property.

(b) The Dupont Lender will provide enough Available Cash to enable the distributions required by this Plan.

(c) The Confirmation Order shall contain appropriate provisions, consistent with Section 1142 of the Bankruptcy Code that, among other things: (A) directs the Debtor to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of the Property to the Dupont Lender and to perform any act, including the satisfaction of any Lien, that is necessary for the consummation of this Plan and if the Debtor refuses to execute or deliver or join in the execution or delivery of any such instrument, the Dupont Lender shall be authorized to execute, deliver or join in the execution or delivery of such instrument on the Debtor's behalf; (B) directs the Debtor to transfer all cash on hand to the Dupont Lender (subject to the right of the Dupont Lender to direct such cash to the Disbursing Agent to become Available Cash in fulfillment in whole or in part of the Dupont Lender's obligations under section 6.1(b) of the Plan; and (C) directs the Disbursing Agent, on or about the Effective Date, to make the payments required under this Plan to be made on or about the Effective Date.   Pursuant to Section 1146(a) of the Bankruptcy Code, the deed conveying the Property in accordance with the Sale and any deed further conveying the Property with two years following the Sale by the Dupont Lender Claim or its affiliate or designee shall be an instrument of transfer in connection with or in furtherance of the Plan shall not be subject to tax under any law imposing a stamp tax, real estate Transfer Taxes, mortgage recording tax or similar tax, and, to the extent provided by Section 1146(a) of the Bankruptcy Code, if any, shall not be subject to any state, local or federal law imposing sales tax.

**DEC Provisions.**  Any sale or transfer of Debtor's Property shall include the condition that within thirty days of the effective date of the Order for the sale of the Property, purchaser of the Property shall sign any administrative agreement necessary to become subject to an administrative order on consent ("Consent Order") with DEC that governs the environmental remediation of that portion of the Property subject to the existing consent order relating to the Property. .  As DEC and the purchaser may arrange, the Consent Order may be take the form of either (a) the consent order that currently governs a portion of the Property (see DEC Stipulation, Ex. A, incorporated by reference in the Plan) as amended to become applicable to the purchaser; or (b) a new consent order with materially the same terms as the existing consent order as applicable to the purchaser.  The Debtor, Dupont Street 1 and the DEC have agreed that signing a new consent order may be easier to accomplish than amending the current order to add the purchaser.

The Debtor, Dupont Street 1 and the DEC have agreed that signing a new consent order on similar terms to an amendment would be easier to accomplish

Nothing in the Order for the sale of Debtor's real property shall be free and clear of the State's role, interest, and/or future interests or claims for (i) any environmental liability to

#
#

a governmental unit that is not a "Claim" as defined in 11 U.S. C §101(5); (ii) any environmental Claim of a governmental unit; (iii) any environmental liability to a governmental unit on the part of any entity as the owner or operator of the property after the Sale date; (iv) any matters related to any license, permit, registration, governmental authorization, administrative decision, or any consent order involving the State of New York and the Debtor and its affiliates; or (v) any liability to a governmental unit on the part of any entity other than the Debtor, including any purchasers or non-debtor operators. Nothing in the Order limits, reduces, releases, nullifies, precludes, or enjoins the enforcement of any liability to a governmental unit under police and regulatory statutes or regulations that any entity would be subject to as the owner or operator of property.

**Plan Funding.** Except as set forth elsewhere in this Plan, all payments required to be made under this Plan shall be made by the Disbursing Agent in accordance with the terms of this Plan from Available Cash.

**Vesting of Assets.** Except as otherwise provided in the Plan, at the Closing, the Property and any other purchased assets, shall vest the Dupont Lender, free and clear of all Liens, Claims, and encumbrances (subject to the Dupont Lender's mortgage, which, at the discretion of the Dupont Lender, may be assigned to a lender to the Dupont Lender, and the various provisions involving the DEC discussed above). At the Closing, any and all Liens, Claims, and encumbrances that have not been expressly preserved under the Plan shall be deemed extinguished as of such date. Any remaining property of the Estate shall re-vest in the Liquidating Debtor who may operate, buy, use, acquire, and dispose of the property of the Estate and may settle and compromise any claims, interests and causes of action in accordance with the provisions of the Bankruptcy Code and the Bankruptcy Rules.

**Execution of Documents.** On the Effective Date, the Debtor, shall execute, release and deliver all documents reasonably necessary to consummate the transactions contemplated by the terms and conditions of this Plan. Pursuant to Sections 105, 1141(c) and 1142(b) of the Bankruptcy Code, the Debtor shall be authorized to execute any estoppel certificate, or any notice of satisfaction, release or discharge of any Lien, Claim or encumbrance not expressly preserved in this Plan and deliver such notices to any and all federal, state and local governmental agencies or departments for filing and recordation and if the Debtor refuses to execute or deliver any such documents or notices, the Dupont Lender shall be authorized to execute such documents and/or notices on the Debtor's behalf, and the Confirmation Order shall expressly so provide.

**Filing of Documents.** Pursuant to Sections 105, 1141(c) and 1142(b) of the Bankruptcy Code, each and every federal, state and local governmental agency or department, shall be directed to accept and record any and all documents and instruments necessary, useful or appropriate to effectuate, implement and consummate the transactions contemplated by this Plan, and any and all notices of satisfaction, release or discharge or assignment of any Lien, Claim or encumbrance not expressly preserved by the Plan.

\#
\#

**Distributions**.  Except as set forth elsewhere in the Plan, all payments required to be made under the Plan shall be made by the Disbursing Agent for disbursement in accordance with the terms of the Plan.

**Preservation of Rights of Action.**  On the Effective Date, all books and records of the Debtor shall be transferred to the Dupont Lender and, thereafter, the Dupont Lender shall have the right to use, maintain and/or dispose of the books and records as they see fit in their discretion.

**Transfer Taxes.**  Pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of any security and the making or delivery of any instrument of transfer in connection with or in furtherance of the Plan, (including any instrument executed in furtherance of the transactions contemplated by the Plan including the transfer of the deed conveying the Property in accordance with the Sale and any deed further conveying the property with two years following the Sale by the Successful Purchaser or its affiliate or designee), shall not be subject to tax under any law imposing a stamp tax, mortgage recording tax or similar tax, including any such taxes due on the financing or sale of the Property as contemplated by the Plan, and to the extent provided by Section 1146(a) of the Bankruptcy Code, if any, shall not be subject to any state, local of federal law imposing such tax.

**Post-Confirmation Management**.  The Debtor shall continue in existence as the Liquidating Debtor and continue to be managed by its current manager, without compensation, whose activities shall be limited to matters related to the implementation of the Plan and matters reasonably incidental thereto.  The Liquidating Debtor will have all of the rights, powers and duties necessary to carry out its responsibilities under the Plan As soon as practicable after the Closing, the Liquidating Debtor shall take all necessary steps to effectuate its dissolution in accordance with applicable law.

## MISCELLANEOUS PROVISIONS

### MODIFICATION AND REVOCATION OF THE PLAN

The Plan may be altered, amended or modified by the Debtor, in writing, signed by the Debtor, at any time before the substantial consummation of the Plan, as provided in Sections 1101 and 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, subject to the prior written consent of the Dupont Lender.  Any substantive modification shall require notice and a hearing before the Bankruptcy Court for approval of the proposed modification of the Plan. The Liquidating Debtor in its own capacity and as the Disbursing Agent shall be deemed a Plan proponent for purposes of Section 1127 of the Bankruptcy Code.  However, the Plan shall not be amended without the consent of Dupont Lender.

The Debtor, with the prior written consent of the Dupont Lender, may revoke or withdraw the Plan at any time prior to entry of the Confirmation Order.  If the Plan is revoked or withdrawn or if no Confirmation Order is entered, the Plan shall be null and void, and nothing contained in the Plan shall (i) constitute a waiver or release of any Claims by or against, or any

#
#

Interest in, the Debtor; or (ii) prejudice in any manner the rights of the Debtor or any other party in any further proceedings involving the Debtor or its Estate.

### RETENTION OF JURISDICTION

The Plan contains detailed provisions providing for the retention of jurisdiction by the Bankruptcy Court over the Case for the purposes of, *inter alia,* determining all disputes relating to Claims and other issues presented by or arising under the interpretation, implementation or enforcement of the Plan, and to determine all other matters pending on the date of confirmation.

## RISK FACTORS

Although the Debtor believes that it will be able to meet all of the obligations that it is undertaking pursuant to the Plan there can be no assurance that future events will not cause the Debtor to default on one or more of its obligations under the Plan or that the closing will occur.

### CONFIRMATION OF THE PLAN

All distributions to Creditors, along with the agreement to allow rejection of the Prepetition Sale Contract as discussed above, are contingent on the Plan being confirmed by this Court. Otherwise, the Debtor is not obligated, in any way, to make the payments required hereunder.

### OPERATIONAL/FUNDING RISKS

Since the Plan as proposed calls for all payments to be made to creditors at Closing, or by the Effective Date, the operational risks of a plan of reorganization that provides for payments over time are simply not present in this Plan. Thus, the Debtor does not believe the Plan entails any operational or funding risk to creditors.

## CONFIRMATION OF PLAN

### CONFIRMATION HEARING

The Bankruptcy Code requires that the Bankruptcy Court, after notice, hold a hearing to consider final approval of the Disclosure Statement and confirmation of the Plan**. The Confirmation Hearing is scheduled to commence on [], 2022, at []:00 p.m. in the United States Bankruptcy Court, 271-C Cadman Plaza East, Brooklyn, New York 11201, Courtroom 3577.** The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement made at the Confirmation Hearing.

#
#

**Objections, if any, to confirmation of the Plan shall be filed and served so as to be received on or before [], 2022 at 5:00 p.m.** Objections must be served upon (i) Robinson Brog Leinwand Greene Genovese & Gluck P.C., 875 Third Avenue, 9th Fl, New York, NY 10022, Attn.: Robert M. Sasloff, Esq., and (ii) United States Trustee, 201 Varick Street, Room 1006, New York, New York 10014 Attn: [], Esq. and filed electronically in accordance with the Court's ECF procedures.

## REQUIREMENTS FOR CONFIRMATION

At the Confirmation Hearing, the Bankruptcy Court will determine whether the requirements of Section 1129 of the Bankruptcy Code have been satisfied, in which event the Bankruptcy Court will enter an order confirming the Plan. These requirements include determinations by the Bankruptcy Court that: (i) the Plan has classified Claims in a permissible manner, (ii) the contents of the Plan comply with various technical requirements of the Bankruptcy Code, (iii) the Debtor has proposed the Plan in good faith, (iv) the Debtor has made disclosures concerning the Plan that are adequate and include information concerning all payments made or promised in connection with the Plan and the Case, (v) the Plan is in the "best interests" of all Creditors, (vi) the Plan is feasible, and (vii) the Plan has been accepted by the requisite number and amount of Creditors in each Class entitled to vote on the Plan, or that the Plan may be confirmed without such acceptances. The Debtor believes that all of these conditions have been or will be met prior to the Confirmation Hearing.

**Best Interest Test.** The so-called "best interest" test requires that each impaired Creditor and impaired Interest Holder either (a) accepts the Plan or (b) receives or retains under the Plan property of a value, as of the Effective Date of the Plan, that is not less than the value such entity would receive or retain if the Debtor was to be liquidated under chapter 7 of the Bankruptcy Code. The only impaired Class is the Class of the Dupont Lender's Claim. The Dupont Lender is receiving the Property in satisfaction of its Claims and has agreed to support the Plan. The Plan further provides for payment in cash in full to all classes of claims from the Available Cash, which is to be funded by the Dupont Lender.

**Liquidation Analysis.** The Plan provides for the Dupont Lender to receive the Property in satisfaction of its claims and all other creditors to receive payment in full on account of their claims. Accordingly, the Debtor believes that the Plan provides Creditors with at least as much as they would be entitled to receive in a chapter 7 liquidation, therefore, the Debtor has concluded that the Plan provides to each Creditor recovery with a present value at least equal to the present value of the distribution which such person would receive if the Debtor was liquidated under chapter 7 of the Bankruptcy Code.

The Debtor believes that in the event its assets were sold in chapter 7 liquidation, all of the proceeds would go to pay chapter 7 administrative claims, bankruptcy fees, chapter 11 Administrative Claims, and the Dupont Lender Claim. In such event, no funds would be remaining for distribution to any class of creditors junior to the Dupont Lender Claim As such, the Debtor believes that no Creditors or Interest Holders would receive a distribution in a chapter 7 case which is greater than the one they may be entitled to under the Plan.

\#
\#

The Debtor further believes that the net effect of a conversion of this case to chapter 7 would be to (i) increase the administrative expenses of the estate and (ii) decrease the funds available for non-administrative creditors.

The liquidation values stated herein assume that the Property would be liquidated in the context of a chapter 7 case and assumes the present values of such liquidation values as of January 31, 2022. The assumptions utilized in the analysis considered the estimated liquidation value of the Property and estimated amount of Claims that would be allowed, together with an estimate of certain administrative costs and other expenses which would likely result during the liquidation process. While the Debtor believes the assumptions underlying the liquidation analysis are reasonable, the validity of such assumptions may be affected by the occurrence of events, and the existence of conditions not now contemplated or by other factors, many of which will be beyond the control of the Bankruptcy Court, the Debtor and any trustee appointed for the Debtor. The actual liquidation value of the Debtor may vary from that considered herein and the variations may be material.

The Debtor has assumed that the Property would be sold within three months in a chapter 7 liquidation. It is assumed that cash proceeds of liquidating the Property would total approximately $42,750,000, assuming a valuation of $57,000,000.[9] This 25% discount in the purchase price for the Property is being utilized to take into account the negative impact on values attributed to the chapter 7 process. Upon consultation with its advisors, the Debtor assumes for the purposes of this analysis that the cash would be distributed as follows:]

**Available for distribution in the event of a chapter 7 liquidation:[10]**
**Cash Available for Distribution in a chapter 7 Liquidation:**

| | |
|---|---|
| Liquidation Proceeds From Property: | $42,750,000 |
| **Total Cash Available:** | **$42,750,000** |

**Claims to Be Paid in a chapter 7 Liquidation:**

Chapter 7 Administrative Claims:

| | |
|---|---|
| Chapter 7 trustee commissions and expenses (approximately 3% of total cash available) | $1,282,500 |
| Chapter 7 trustee's professionals (attorneys, appraisers, brokers, auctioneers accountants, etc.) | $9,000,000 |
| Dupont Lender Claim | $63,996,102.80 |
| Other Secured Claims | $764,011 |

---

9 Value of Property based on prepetition contract of sale.

10 Values based on amount scheduled. Estimated values do not take into account the affect a fire sale liquidation sale, however, the Debtor submits that the values would be significantly lower than what is set forth in the liquidation analysis.

#
#

| Chapter 11 Administrative Claims [11] | $534,130 |
| General Unsecured Claims | $8,616,497 |

**In a chapter 7 liquidation, there would be insufficient funds to satisfy the Dupont Lender Claim in full, resulting in no other funds available to pay any junior classes of claims. Additionally, under a Plan, Dupont Lender will fund sufficient Available Cash to pay Administrative Creditors and General Unsecured Claims.**

The Plan contemplates payment to more classes of creditors than in a chapter 7 liquidation where there would insufficient funds to satisfy all of the secured creditors and other classes of claims. Accordingly, the Debtor believes that the Plan provides Creditors with at least as much as they would be entitled to receive in a chapter 7 liquidation.

**Feasibility.** For the Plan to be confirmed, it must be demonstrated that consummation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor unless such liquidation is set forth in the Plan. The Plan calls for the Debtor's liquidation and distribution of Available Cash to pay Claims and after the Closing the Liquidating Debtor will be dissolved.

**Confirmation With the Acceptance of Each Impaired Class.** The Plan may be Confirmed, if each impaired Class of Claims accepts the Plan. Classes of Claims which are not impaired are deemed to have accepted the Plan. A Class is impaired if the legal, equitable or contractual rights attaching to the Claims of that Class are modified other than by curing defaults and reinstating maturities or by payment in full in cash.

Holders of Claims impaired by the Plan are entitled to file Ballots accepting or rejecting the Plan. Holders of Claims not impaired by the Plan, are deemed to accept the Plan, and may not vote to accept or reject the Plan. Holders of Claims that will neither receive nor retain any property under the Plan are deemed to reject the Plan.

The Bankruptcy Code defines acceptance of a plan by a Class of Claims as acceptance by the holders of two-thirds in dollar amount and a majority in number of Claims of that Class. Only those Claims, the holders of which actually vote to accept or reject the Plan, are counted for the purpose of determining whether the requisite number and amount of acceptances have been received.

**Confirmation Without the Acceptance of Each Impaired Class**. The Dupont Lender Claim is the only impaired class and the Dupont Lender is voting in favor of the Plan.

INJUNCTION

**Except (i) as otherwise provided in this Plan, (ii) as otherwise provided under Final Order entered by the Bankruptcy Court, or (iii) with respect to the**

---

11 Includes Chapter 11 professional fees net of a pre-petition retainer.

\#
\#

Debtor's obligations under this Plan, the entry of the Confirmation Order shall forever stay, restrain and permanently enjoin on and after the Confirmation Date: (a) the commencement or continuation of any action, the employment of process, or any act to collect, enforce, attach, recover or offset from the any property of the Estate, including the Property sold under this Plan (except to the extent such Property is sold subject to the Dupont Lender's lien); or (b) the creation, perfection or enforcement of any lien or encumbrance against any property of the Estate, including the Property sold under this Plan (except to the extent such Property is sold subject to the Dupont Lender's lien). Since this Plan provides for the liquidation of all or substantially all of the property of the Estate, the Confirmation of the Plan will not result in a discharge of the Debtor's pre-Petition Date Claims.

### RELEASE

From and after the Effective Date, a copy of the Confirmation Order and this Plan shall constitute and may be submitted as a complete defense to any claim or liability released pursuant to this Article 9 of this Plan.

### RELEASE OF DUPONT LENDER AND DIP LENDER

From and after the Effective Date, the Debtor and any entity acting or purporting to act on its behalf, releases Dupont Lender, the DIP Lender, and their respective parents, subsidiaries, limited partners, general partners, affiliates, insurers, present and former officers, executives, directors, members, agents, contractors, subcontractors, investors or employees, predecessors and/or successors, from any and all claims, demands, damages, debts, liabilities, accounts, reckonings, obligations, costs, expenses, liens, attorneys' fees, and causes of action of any kind or nature whatsoever, including any counterclaims and affirmative defenses, that they now have, or hereafter can, shall or may have, whether now known or unknown, for, upon or by reason of any matter, cause or thing whatsoever from the beginning of the world to and including the Effective Date related to the DIP Loan, the Debtor, the Dupont Claim, or any document or matter related thereto.

### LIMITATION OF LIABILITY

The Dupont Lender and the Disbursing Agent, nor any of their respective, managers, members, nor any of their agents or employees (acting in such capacity) nor any professional person employed by them, shall have or incur any liability to any entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, prosecution, dissemination, Confirmation, consummation or administration of this Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into, or the distribution of property under this Plan, or any other action taken or omitted to be taken in connection with the Case or this Plan, except as may be expressly provided for in such agreements or documents, and except for willful misconduct or gross negligence, breach of

\#
\#

fiduciary duty, criminal conduct, ultra vires actions or the disclosure of confidential information that causes actual damages.  In addition, any release exculpation or limitation of liability provided for in this Plan shall not release any attorney from any obligations owed under Rule 1.8(h) of the New York Rules of Professional Conduct for malpractice liability.  Nothing in the Plan nor the Confirmation Order shall effect a release of any claim by the United States Government or any of its agencies or any state and local authority, including without limitation any claim arising the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against (i) the Debtor, (ii) any of the Debtor's members, shareholders, officers, directors, employees, attorneys, advisors, agents, representatives, and assigns; provided, however, that the DEC Stipulation and any related agreements shall continue to be valid and enforceable.  In addition, subject to Sections 524 and 1141 of the Bankruptcy Code, the releases, exculpations, and limitations of liability described herein shall not preclude police, federal tax, or regulatory agencies from fulfilling their statutory duties.

### ALTERNATIVES TO THE PLAN

If the Plan is not confirmed by the Bankruptcy Court, the alternatives may include (a) liquidation of the Debtor under chapter 7 of the Bankruptcy Code; (b) the formulation, promulgation and confirmation of an alternative plan of reorganization; or (c) dismissal of the Debtor' Case.

The Debtor believe that the Plan provides a recovery to all Creditors equal to or greater than would be obtainable in a chapter 7 liquidation.  See Liquidation Analysis.

The Debtor believes that the Plan enables Creditors to realize the most value under the circumstances.

### CERTAIN FEDERAL INCOME TAX CONSEQUENCES

The following summary of certain U.S. Federal income tax consequences is for informational purposes only and is not a substitute for careful tax planning and advice based upon the particular circumstances pertaining to each holder of an Allowed Claim. Each holder of an Allowed Claim is urged to consult his own tax advisors. This summary does not cover all potential U.S. federal income tax consequences that could possibly arise under the Plan and does not address the Plan's U.S. federal income tax consequences for any holder of an Allowed Claim that is a partnership (or other pass-through entity) or otherwise subject to special tax rules.

The Debtor has not requested any ruling from the Internal Revenue Service or any other taxing authority with respect to such matters nor will the Debtor, with respect to the federal income tax consequences of the Plan, obtain any opinion of counsel.  Consequently, there can be no assurance that the treatment set forth in the following discussion will be accepted by the IRS. The Debtor offers no statements or opinions that are to be relied upon by the creditors as to the

#
#

treatment of creditors' claims under the Plan.  Matters not discussed in this Disclosure Statement may affect the tax consequences of the Plan on any particular holder of a Claim or Interest

This summary is based upon the laws in effect on the date of this Disclosure Statement and existing judicial and administrative interpretations thereof, all of which are subject to change, possibly with retroactive effect. Holders of Allowed Claims should consult their own tax advisors as to the Plan's specific federal, state, local and foreign income and other tax consequences.

The tax consequences to Creditor and Interest Holders will differ and will depend on factors specific to each Creditor and Interest Holder, including but not limited to: (i) whether the Claim or Interest (or portion thereof) constitutes a claim for principal or interest; (ii) the origin of the Claim or Interest; (iii) the type of consideration received by the Creditor and Interest Holder in exchange for the Claim; (iv) whether the Creditor and Interest Holder is a United States person or foreign person for tax purposes; (v) whether the Creditor and Interest Holder reports income on the accrual or cash basis method; (vi) whether the Creditor and Interest Holder has taken a bad debt deduction or otherwise recognized loss with respect to a Claim.

**THERE ARE MANY FACTORS WHICH WILL DETERMINE THE TAX CONSEQUENCES TO EACH CREDITOR AND INTEREST HOLDER. FURTHERMORE, THE TAX CONSEQUENCES OF THE PLAN ARE COMPLEX, AND IN SOME CASES, UNCERTAIN. THEREFORE IT IS IMPORTANT THAT EACH CREDITOR AND INTEREST HOLDER OBTAIN HIS, HER OR ITS OWN TAX ADVICE REGARDING THE TAX CONSEQUENCES TO SUCH CREDITOR AND INTEREST HOLDER AS A RESULT OF THE PLAN.**

**THE DISCUSSION HEREIN IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY ANY CREDITOR AND INTEREST HOLDER FOR THE PURPOSE OF AVOIDING TAX PENALTIES THAT MAY BE IMPOSED ON A TAX PAYER. THE DISCUSSION HEREIN WAS WRITTEN TO SUPPORT THE TRANSACTIONS DESCRIBED IN THIS DISCLOSURE STATEMENT. EACH CREDITOR AND INTEREST HOLDER SHOULD SEEK ADVICE BASED UPON THE CREDITOR AND INTEREST HOLDER'S PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.**

### ADDITIONAL INFORMATION

Requests for information and additional copies of this Disclosure Statement and the other materials delivered together herewith and all deliveries, correspondence and questions, as the case may be, relating to the Plan should be directed to (i) the Debtor's counsel, Robinson Brog Leinwand Greene Genovese & Gluck P.C., 875 Third Avenue, 9th Fl., New York, New York 10022, Attn.:  Robert M. Sasloff, Esq. (212) 603-6329.

Copies of all pleadings, orders, lists, schedules, proofs of claims or other documents submitted in this case are on file in the Office of the Clerk of the United States

#
#

Bankruptcy Court at 271-C Cadman Plaza East, Brooklyn, New York 11201, and are available for public inspection Monday through Friday, between the hours of 9:00 a.m. and 4:00 p.m. and are also available for viewing on the Internet at http://www.nyeb.uscourts.gov.

\#
\#

## CONCLUSION

The Debtor believes that the Plan is in the best interests of all Creditors.

**Dated:**  New York, New York
February 16, 2022

**DUPONT STREET DEVELOPERS, LLC**


By:  **/s/ Bo Jin Zhu**
**Bo Jin Zhu**
**Manager**


**ROBINSON BROG LEINWAND GREENE**
  **GENOVESE & GLUCK P.C.**
875 Third Avenue
New York, New York 10022
Telephone:  (212) 603-6300
Robert M. Sasloff
Attorneys for the Debtor


By:  **/s/ Robert M. Sasloff**
**Robert M. Sasloff**

\#
\#