## CONSOLIDATED, AMENDED AND RESTATED NOTE

$28,000,000.00                                          Dated: As of August 11, 2017
                                                              New York, New York

   **THIS CONSOLIDATED, AMENDED AND RESTATED NOTE** (this "**Note**") made as of the 11th day of August, 2017, by **DUPONT STREET DEVELOPERS LLC**, a New York limited liability company, having an address at 87-10 Queens Boulevard, Elmhurst, New York 11373 ("**Maker**"), for the benefit of **DUPONT STREET 1 LLC**, a Delaware limited liability company, its successors and/or assigns, as their interests may appear ("**Payee**"), having offices at 825 Third Avenue, 37th Floor, New York, New York 10022.

   **FOR VALUE RECEIVED**, Maker promises to pay to the order of Payee, at 825 Third Avenue, 37th Floor, New York, New York 10022, or at such other place as Payee may designate to Maker in writing from time to time, the principal sum of Twenty Eight Million and 00/100 Dollars ($28,000,000.00), together with interest thereon at the Interest Rate (as defined below) or the Default Rate (as defined below), if applicable, calculated in accordance with the terms and conditions set forth in this Note, from and including the date of this Note to the date this Note is paid in full, as follows:

   A.  On the date hereof (the "**Closing Date**"), interest on the principal sum of this Note from (and including) the Closing Date to August 31, 2017 at the Interest Rate.

   B.  Thereafter, interest only at the Interest Rate on the Principal Balance (as defined below) shall be due monthly and shall be paid monthly in arrears, commencing on October 1, 2017, and monthly thereafter on the first (1st) day of each month (the "**Payment Date**") until the Maturity Date (as defined below) (each such monthly payment, a "**Monthly Payment**").

   C.  Thereafter, on the Maturity Date, the entire outstanding principal balance of this Note, together with all accrued and unpaid interest through the Maturity Date at the Interest Rate, and all other sums payable to the holder of this Note (whether pursuant to this Note or the Mortgage or Other Security Documents (as such terms are hereinafter defined)) shall become due and payable.

For the purposes of this Note, these terms shall be defined as follows:

   1.  "**Business Day**" shall mean a weekday, Monday through Friday, except a legal holiday or a day on which banking institutions in New York, New York are authorized by law to be closed.

   2.  "**Debt**" shall mean all principal, interest and other sums of any nature whatsoever, which may or shall become due to Payee in accordance with the provisions of this Note, the Mortgage or Other Security Documents.

   3.  "**Interest Period**" shall mean, initially, the period commencing on (and including) the Closing Date and ending on (and including) the last day of the

calendar month in which the Closing Date occurs. Thereafter, each Interest Period shall commence on (and include) the first day of each calendar month immediately following the last day of the previous Interest Period and end on (and include) the last day of such calendar month.

4.    **"Interest Rate"** as used in this Note shall mean interest at the annual rate equal to the greater of (a) Eight and 00/100 Percent (8.00%) per annum plus the Prime Rate (collectively, the **"Prime Based Rate"**), (b) Eleven and 01/100 Percent (11.01%) per annum plus LIBOR (collectively, the **"LIBOR Based Rate"**), and (c) Twelve and 00/100 Percent (12.00%) per annum (the **"Fixed Base Rate"**), adjusted for each Interest Period based upon the greater of the Prime Based Rate, the LIBOR Based Rate and the Fixed Base Rate at 11:00 a.m. (E.S.T.) two (2) Business Days prior to the Reset Date (as defined below) applicable to such Interest Period (or the date hereof with respect to the first Interest Period hereunder), which Interest Rate shall be applicable from the date of this Note to the Maturity Date, except as otherwise expressly provided herein.

5.    **"LIBOR"** shall mean the London Interbank Offered Rate (as defined below) for U.S. dollar deposits being delivered in the London interbank eurodollar market of one (1) month maturity (One Month LIBOR) as reported in the Money Rates Section of the Wall Street Journal (or such other commercially available source providing quotations of such London Interbank Offered Rate as may be designated by Payee from time to time) as of 11:00 a.m., E.S.T., on a Business Day (or if not so reported, then as determined by Payee from another recognized source of interbank quotation), rounded up to the nearest one-eighth of one percent (1/8%). A certificate made by an officer of Payee stating the LIBOR in effect on any given day, for the purposes hereof, shall be conclusive evidence of the LIBOR in effect on such day. The LIBOR is a base reference rate of interest adopted by Payee as a general benchmark from which Payee determines the floating interest rates chargeable on various loans to borrowers with varying degrees of creditworthiness, and Maker acknowledges and agrees that Payee has made no representations whatsoever that the LIBOR is the interest rate actually offered by Payee to borrowers of any particular creditworthiness.

6.    **"Loan Documents"** shall mean this Note, the Mortgage and all and any of the documents now or hereafter executed by Maker and/or others and by or in favor of Payee, which evidences, secures or guarantees all or any portion of the payments due under this Note or otherwise is executed and/or delivered in connection with this Note, the Mortgage, guarantees and agreements.

7.    **"London Interbank Offered Rate"** shall mean the London interbank offered rate administered by ICE Benchmark Administration Limited (or any other Person which takes over the administration of such rate).

8.    **"Maturity Date"** shall mean the earlier of (i) September 1, 2018, or (ii) such sooner date, by acceleration or otherwise, as may be applicable pursuant to the terms hereof, at which time the entire Debt shall become due and payable.

9.      "**Mortgage**" shall mean that certain Consolidated, Amended and Restated Mortgage and Security Agreement, dated as of the date hereof, in the principal amount of $28,000,000.00, encumbering premises designated as Block 2487, Lots 1, 10, 12, 17, 18, 20, 21, 57, 72, 78 and commonly known as 280 Franklin Street, Brooklyn, New York 11222; 10 Clay Street, Brooklyn, New York 11222; 14 Clay Street, Brooklyn, New York 11222; 22 Clay Street, Brooklyn, New York 11222; 26 Clay Street, Brooklyn, New York 11222; 30 Clay Street, Brooklyn, New York 11222; 32 Clay Street, Brooklyn, New York 11222; 93 Dupont Street, Brooklyn, New York 11222; 57 Dupont Street, Brooklyn, New York 11222; and 55 Dupont Street, Brooklyn, New York 11222, as more particularly described therein (collectively, the "**Property**").

10.     "**Other Security Documents**" shall mean any of the documents other than this Note or the Mortgage, now or hereafter executed by the Maker or others, and by or in favor of Payee, which wholly or partially secure or guarantee payment of this Note, or which otherwise pertain to the loan evidenced by this Note (the "**Loan**").

11.     "**Person**" shall mean an individual, a corporation, a partnership, a limited liability company, an association, a trust or any other entity or organization, including a government or political subdivision or an agency or instrumentality thereof.

12.     "**Prime Rate**" shall mean the annual rate of interest which is the highest prime lending rate of interest most recently in effect (as published in the Money Rates Section in The Wall Street Journal or if The Wall Street Journal fails to publish such rate, such other publication as Payee shall designate in its sole discretion). A certificate made by an officer of Payee stating the Prime Rate in effect on any given day, for the purposes hereof, shall be conclusive evidence of the Prime Rate in effect on such day. The Prime Rate is a base reference rate of interest adopted by Payee as a general benchmark from which Payee determines the floating interest rates chargeable on various loans to borrowers with varying degrees of creditworthiness and Maker acknowledges and agrees that Payee has made no representations whatsoever that the Prime Rate is the interest rate actually offered by Payee to borrowers of any particular creditworthiness. In the event that the concept of the Prime Rate shall no longer exist, then the Prime Rate shall be deemed to be the Prime Rate as last reported in The Wall Street Journal.

13.     "**Principal Balance**" shall mean the outstanding principal balance of this Note from time to time.

14.     "**Reset Date**" shall mean the first day of each Interest Period.

Any capitalized terms used herein but not defined shall have the meanings ascribed to them in the Mortgage or the Other Security Documents.

Interest shall be computed on the basis of a year of 360 days and actual days elapsed.

- 3 -

The failure to make any payment required under this Note or the occurrence of any Event of Default (as defined in the Mortgage or the Other Security Documents) shall constitute an Event of Default under this Note.

Upon the occurrence of an Event of Default: s(a) interest shall accrue hereunder at the Default Rate prior to and subsequent to the entry of a Judgment of Foreclosure and Sale; (b) Payee may, at its option, without any written notice given to the Maker (such notice being expressly waived), DECLARE AND DEMAND this Note and the Debt immediately due and payable; and (c) Payee may pursue all rights and remedies available hereunder or under Mortgage and the Other Security Documents. Payee's rights, remedies and powers, as provided in this Note, the Mortgage or the Other Security Documents are cumulative and concurrent, and may be pursued singly, successively or together against Maker, any Guarantor of the indebtedness evidenced hereby or against any collateral granted or pledged by Maker under any of the Loan Documents or any other collateral security given at any time to secure the payment hereof, all at the sole discretion of Payee. Additionally, Payee may resort to every other right or remedy available at law or in equity without first exhausting the rights and remedies contained herein, all in Payee's sole discretion. Failure of Payee, for any period of time or on more than one occasion, to DECLARE AND DEMAND this Note and the Debt immediately due and payable shall not constitute a waiver of the right to exercise the same at any time from and after any Event of Default.

A payment shall not be deemed to have been made on any day unless such payment has been received by Payee, at the required place of payment, in U.S. dollars by no later than 1:00 p.m. (New York time) on such day. Whenever any payment to Payee hereunder would otherwise be due (except by reason of acceleration) on a day that is not a Business Day, such payment shall instead be due on the next succeeding Business Day. If any installment of principal, interest or other sums due hereunder or under the Mortgage or any Other Security Document are not paid on the date on which same are due, the Maker shall pay to the Payee a late charge of ten percent (10.00%) of such unpaid installment as a late payment charge, such late charge to be immediately due and payable without demand by the Payee. Notwithstanding anything to the contrary, all payments due under this Note, the Mortgage and the Loan Documents shall be made by means of wire transfer to the order of Payee, as directed by Payee, and Payee shall have the absolute right to reject any payment not made by wire transfer. In addition, Maker shall pay to Payee the sum of $2,500.00 for any payment which is returned for any reason by Maker's bank unpaid.

As additional consideration to Payee for the making of the Loan, Maker shall remit to Payee, due, owing and earned on the earlier of (i) the Maturity Date, (ii) the date of the acceleration of the Principal Balance in accordance with the Loan Documents, or (iii) the date upon which this Note is prepaid in full, TIME BEING OF THE ESSENCE, in addition to the entire Principal Balance then remaining unpaid, all accrued and unpaid interest, any Prepayment Premium due and owing and all others sums due and owing under the Loan Documents, the sum equal to $280,000.00 (the "**Exit Fee**"). The Exit Fee is to be paid in accordance with the terms hereof in addition to, and separate from, any other fee, cost or sum due hereunder or under the Mortgage or Loan Documents, including the Prepayment Premium. Payment of the Exit Fee is an absolute obligation of the Maker, and the Exit Fee shall be paid regardless of whether the

- 4 -

Maturity Date is as stated herein, or earlier due to acceleration of the Principal Balance by Payee in accordance with the terms hereof and regardless of the amount actually advanced to Maker. Provided, however, if Exit Fee constitutes interest under applicable law, the amount of the Exit Fee will be automatically reduced to an amount that, when added to all other amounts due hereunder and under the other Loan Documents that constitute interest under applicable law, will not exceed the maximum amount of interest that may be contracted for, charged or received with respect to the Loan under applicable law for the actual period of time such loan is outstanding.

Amounts paid pursuant to the Exit Fee and the Prepayment Premium shall and are intended to be exclusive of each other, and payment of the Exit Fee and the Prepayment Premium shall not act as an offset or reduction of the other.

Subject to the following provisions, provided that, simultaneously with any prepayment of the Debt, Maker shall pay to Payee a prepayment premium in an amount equal to eight (8) Monthly Payments (excluding short term interest paid for the partial month of August, 2017) which would have been due and payable to Payee absent prepayment of the obligations hereunder (with the Interest Rate used to calculate the Prepayment Premium (as defined below) being that on the date of the Prepayment Notice (as defined below), if the Interest Rate is variable hereunder), less any Monthly Payments of interest actually paid in full by Maker and received by Payee, such that Payee shall have received not less than eight (8) full Monthly Payments hereunder (the "**Prepayment Premium**"), then Maker shall have the right to prepay the Principal Balance in whole only, along with interest, additional interest and any other sums due under this Note, the Mortgage or the Other Security Documents upon prior irrevocable written notice sent by Maker (the "**Prepayment Notice**") setting forth the intended prepayment date (the "**Prepayment Date**"), which Prepayment Notice must be received by Payee not more than sixty (60) days and not less than thirty (30) days prior to the Prepayment Date, and on the Prepayment Date Maker shall make prepayment as herein above provided, failure of which to timely prepay shall result in a $1,000 prepayment cancellation fee to compensate Payee for expenses associated with Maker's failure to comply with its request and is not a penalty. Notwithstanding anything to the contrary contained herein, unless prepayment is tendered on the first day of a calendar month and unless Maker has tendered the Monthly Payment for the month in which the prepayment of the Debt occurs, Maker shall along with the prepayment of the Debt pay the entire Monthly Payment due for the month in which the Prepayment Date occurs (which amount shall constitute additional consideration for the prepayment). **SUCH PREPAYMENT PREMIUM SHALL BE PAID WHETHER THE PREPAYMENT IS VOLUNTARY OR INVOLUNTARY, INCLUDING ANY PREPAYMENT AFFECTED BY THE ACCELERATION PROVISIONS CONTAINED IN THE NOTE OR THE OTHER LOAN DOCUMENTS. UPON ACCELERATION, THE PREPAYMENT PREMIUM SHALL BE CALCULATED BASED UPON THE AMOUNT OF THE PREPAYMENT DUE ON THE DATE OF SUCH ACCELERATION; PROVIDED, HOWEVER, IF SUCH PREPAYMENT PREMIUM CONSTITUTES INTEREST UNDER APPLICABLE LAW, THE AMOUNT OF SUCH PREPAYMENT PREMIUM WILL BE REDUCED TO AN AMOUNT WHICH, WHEN ADDED TO ALL OTHER AMOUNTS WHICH CONSTITUTE INTEREST UNDER APPLICABLE LAW, WILL NOT EXCEED THE MAXIMUM AMOUNT OF INTEREST WHICH MAY BE CONTRACTED FOR, CHARGED OR RECEIVED WITH RESPECT TO THE LOAN**

EVIDENCED HEREBY UNDER APPLICABLE LAW FOR THE ACTUAL PERIOD OF TIME THE LOAN IS OUTSTANDING.

Notwithstanding anything to the contrary contained herein, the Principal Balance of this Note may not be prepaid by Maker unless, simultaneously with such prepayment, the following is also prepaid in full:  that certain mezzanine loan originated as of the date of this Note (the **"Other Loan"**) in the principal amount of $4,850,000.00 from Payee's affiliate DUPONT STREET 2 LLC (**"Payee Affiliate"**) to Maker's sole member, CLAY RIVERVIEW LLC, a New York limited liability company (the **"Other Loan Borrower"**), as evidenced by that certain Mezzanine Promissory Note, dated as of the date of this Note (the **"Other Note"**), in the principal amount of $4,850,000.00 executed by the Other Loan Borrower in favor of Payee Affiliate, as evidenced by that certain Mezzanine Loan Agreement executed between the Other Loan Borrower and Payee Affiliate in the principal amount of $4,850,000.00, as secured by that certain Ownership Interests Pledge and Security Agreement encumbering the Other Loan Borrower's membership interest in Maker, as well as all guarantees, pledges and other documents executed in connection therewith.

Separate and in addition to all other payment obligations of Maker contained herein, Maker shall be required to pay a yearly servicing fee equal to the greater of (a) $2,500.00, and (b) ten (10) basis points per annum on the Principal Balance of this Note payable in monthly installments (the **"Servicing Fee"**).  The Maker acknowledges and agrees that a Servicing Fee shall be due on the date hereof (which shall prepay the first yearly Servicing Fee), and the obligation to pay the Servicing Fee shall be secured by the Mortgage.

Maker acknowledges that this Note and Maker's obligations under this Note are and shall at all times continue to be absolute and unconditional in all respects.  This Note, the Mortgage and the Other Security Document set forth the entire agreement and understanding of Payee and Maker.

Maker agrees to pay all costs and expenses of collection incurred by Payee, in addition to principal and interest (including, without limitation, reasonable attorneys' fees and disbursements), and including all costs and expenses incurred in connection with the pursuit by Payee of any of its rights or remedies hereunder or under the Mortgage and/or the Other Security Documents or the protection of or realization of collateral or in connection with any of Payee's collection efforts, whether or not any action or proceeding on this Note, on the Mortgage and/or the Other Security Documents or any foreclosure proceeding is filed, all such costs and expenses being payable on demand, together with interest at the Default Rate thereon and being secured by the Mortgage and the Other Security Documents.

The indebtedness herein evidenced by this Note is secured by the Mortgage and the Other Security Documents.

THIS NOTE HAS BEEN EXECUTED AND DELIVERED AT AND SHALL BE DEEMED TO HAVE BEEN MADE IN THE STATE OF NEW YORK AND THIS NOTE, THE MORTGAGE AND EACH OF THE OTHER SECURITY DOCUMENTS SHALL IN ALL RESPECTS BE GOVERNED, CONSTRUED, APPLIED AND ENFORCED IN ACCORDANCE WITH THE INTERNAL LAWS OF THE STATE OF NEW YORK

WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAW (OTHER THAN SECTION 5-1401 OF THE NEW YORK GENERAL OBLIGATIONS LAW).

Maker does hereby agree that upon the occurrence of an Event of Default, or upon the failure of Maker to pay the Debt in full on the Maturity Date, Payee shall be entitled to receive and Maker shall pay interest on the entire Debt at the rate of twenty-four percent (24%) per annum or at the maximum rate of interest which Maker may by law pay, whichever is lower (the "**Default Rate**"), to be computed from the occurrence of the Event of Default until the actual receipt and collection of the Debt, including all periods prior to or subsequent to the entry of a Judgment of Foreclosure and Sale.   This charge shall be added to the Debt, and shall be deemed secured by the Mortgage.  This clause, however, shall not be construed as an agreement or privilege to extend the date of the payment of the Debt, nor as a waiver of any other right or remedy accruing to Payee by reason of the occurrence of any Event of Default.  Maker shall have six (6) months from the date hereof to pay all outstanding Taxes, Other Charges (as such terms are defined in the Mortgage) and any other senior liens encumbering the Property.  If Payee fails to do so, the interest rate on the Loan shall retroactively accrue to the Default Rate from the date hereof, and it shall be an Event of Default

This Note is subject to the express condition that at no time shall Maker be obligated or required to pay interest on the Principal Balance at a rate which could subject Payee to either civil or criminal liability as a result of being in excess of the maximum rate which Maker is permitted by law to contract or agree to pay.  For the purposes of calculating the actual amount of interest paid and or payable, in respect of laws pertaining to usury or such other laws, all sums paid or agreed to be paid to Payee for the use, forbearance or detention of the indebtedness evidenced hereby shall, to the extent permitted by applicable law, be amortized, allocated and spread from the date of disbursement of the proceeds thereof until payment in full of the loan obligations, so that the actual rate of interest on account thereof is uniform throughout the term hereof.  If, by the terms of this Note, Maker is at any time required or obligated to pay interest on the Principal Balance at a rate in excess of such maximum rate, the rate of interest under this Note shall be deemed to be immediately reduced to such maximum rate, and interest payable hereunder shall be computed at such maximum rate and the portion of all prior interest payments in excess of such maximum rate shall be applied and shall be deemed to have been payments in reduction of the Principal Balance.

No delay on the part of Payee in exercising any right or remedy under this Note, the Mortgage or the Other Security Documents or failure to exercise the same shall operate as a waiver in whole or in part of any such right or remedy.  No notice to or demand on Maker shall be deemed to be a waiver of the obligation of Maker or of the right of Payee to take further action without further notice or demand as provided in this Note, the Mortgage and the Other Security Documents.

Each of Payee's rights and remedies under this Note shall be in addition to all of its other rights and remedies under the Mortgage, Other Security Documents and applicable law.

**TIME IS OF THE ESSENCE** with regard to Maker's performance of all the terms, covenants and conditions of this Note.

Any provision of this Note, the Mortgage or the Other Security Documents that is prohibited or unenforceable shall be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions thereof or affecting the validity or enforceability of such provision.

All of the provisions of this Note shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

Maker hereby warrants, represents and covenants that no funds disbursed hereunder shall be used for personal family or household purposes.

Maker (and the undersigned representative of Maker, if any) represents that Maker has full power, authority and legal right to execute and deliver this Note and that the Debt hereunder constitutes a valid and binding obligation of Maker.

All notices to be given under this Note shall be given in the same manner as provided in the Mortgage.

This Note, and any provisions hereof, may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Maker or Payee, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

Without limiting any other provisions of the Mortgage or the Loan Documents, Maker, for itself and all endorsers, guarantors and sureties of this Note, and their heirs, legal representatives, successors and assigns, hereby waives valuation, appraisement, presentment for payment, demand, notice of nonpayment, notice of dishonor, protest of any dishonor, notice of protest and protest of this Note, lack of diligence, delays in collection or enforcement of this Note, notice of the intention to accelerate, the benefit of all applicable law affording any right or redemption or cure and all other notices in connection with the delivery, acceptance, performance, default or enforcement of the payment of this Note, except as expressly provided herein or in the Mortgage or any of the Other Security Documents, and in connection with any suit, action or proceeding brought by Payee on this Note, any and every right it may have to (a) a trial by jury, (b) interpose any counterclaim therein (other than a counterclaim which can only be asserted in a suit, action or proceeding brought by Payee on this Note and cannot be maintained in a separate action), and (c) have the same consolidated with any other or separate suit, action or proceeding, and agrees that their respective liability shall be unconditional and without regard to the liability of any other party and shall not be in any manner affected by any indulgence, extension of time, renewal, waiver or modification granted or consented to by Payee. Maker, for itself and all endorsers, guarantors and sureties of this Note, and their heirs, legal representatives, successors and assigns, hereby consents to every extension of time, renewal, waiver or modification that may be granted by Payee with respect to the payment or other provisions of this Note, and to the release of any makers, endorsers, guarantors or sureties, and their heirs, legal representatives, successors and assigns, and of any collateral given to secure the payment hereof, or any part hereof, with or without substitution, and agrees that additional makers, endorsers, guarantors or sureties and their heirs, legal representatives, successors and assigns,

- 8 -

may become parties hereto without notice to Maker or to any endorser, guarantor or surety and without affecting the liability of any of them.

FOR ANY CLAIM, ACTION, OR DISPUTE ARISING UNDER, OR TO INTERPRET OR APPLY, THIS NOTE OR ANY OTHER SECURITY DOCUMENT, OR TO RESOLVE ANY DISPUTE ARISING UNDER THE FOREGOING OR THE RELATIONSHIP BETWEEN THE PARTIES, MAKER IRREVOCABLY SUBMITS TO THE NONEXCLUSIVE JURISDICTION OF THE COURTS OF THE STATE OF NEW YORK AND THE UNITED STATES DISTRICT COURT LOCATED IN THE BOROUGH OF MANHATTAN IN NEW YORK CITY, NEW YORK, AND APPELLATE COURTS FROM ANY OF SUCH COURTS. MAKER IRREVOCABLY WAIVES ANY OBJECTION THAT IT MAY HAVE AT ANY TIME TO VENUE OF ANY SUCH SUIT, ACTION, OR PROCEEDING BROUGHT IN ANY SUCH COURT, INCLUDING ANY CLAIM THAT ANY SUCH SUIT, ACTION OR PROCEEDING SO BROUGHT HAS BEEN BROUGHT IN AN INCONVENIENT FORUM. NOTHING IN THE MORTGAGE OR OTHER SECURITY DOCUMENTS SHALL BE DEEMED TO PRECLUDE PAYEE FROM BRINGING ANY SUIT, ACTION OR PROCEEDING RELATING TO ANY OTHER SECURITY DOCUMENT OR THE DEBT IN ANY OTHER JURISDICTION WHERE PAYEE COULD OTHERWISE PROPERLY BRING SUCH SUIT, ACTION, OR PROCEEDING. MAKER FURTHER CONSENTS AND AGREES TO SERVICE OF ANY SUMMONS, COMPLAINT OR OTHER LEGAL PROCESS IN ANY SUCH SUIT, ACTION OR PROCEEDING BY REGISTERED OR CERTIFIED U.S. MAIL, POSTAGE PREPAID, TO MAKER AT THE ADDRESS SET FORTH ON PAGE 1 HEREOF, AND CONSENTS AND AGREES THAT SUCH SERVICE SHALL CONSTITUTE IN EVERY RESPECT VALID AND EFFECTIVE SERVICE (BUT NOTHING HEREIN SHALL AFFECT THE VALIDITY OR EFFECTIVENESS OF PROCESS SERVED IN ANY OTHER MANNER PERMITTED BY LAW).

The parties intend that each of the Makers (if more than one) shall be fully liable, jointly and severally, for all of the Debt. Nonetheless, in case a court finds that any Maker is not such a primary obligor with respect to all or any part of such obligations, the Makers expressly waive the benefit of any and all defenses and discharges available to a guarantor, surety, endorser or accommodation party dependent on an obligor's character as such. Without limiting the generality of the foregoing, the liability of the Makers hereunder shall not be affected or impaired in any way by any of the following acts or things (which the Payee is hereby expressly authorized to do, omit or suffer from time to time without notice to or consent of anyone): (i) any acceptance of collateral security, guarantors, accommodation parties or sureties for any or all indebtedness arising under this Note, the Mortgage or the Other Security Documents; (ii) any extension or renewal of any such indebtedness (whether or not for longer than the original period) or any modification of the interest rate, maturity or other terms of any such indebtedness; (iii) any waiver or indulgence granted to either Maker, and any delay or lack of diligence in the enforcement of the indebtedness arising under this Note, the Mortgage or the Other Security Documents; (iv) any full or partial release of, compromise or settlement with, or agreement not to sue, either Maker or any guarantor or other person liable on any such indebtedness; (v) any release, surrender, cancellation or other discharge of any indebtedness arising under this Note, the Mortgage or the Other Security Documents, or the acceptance of any instrument in renewal or substitution for any instrument evidencing any such indebtedness; (vi) any failure to obtain collateral security (including rights of setoff) for any indebtedness arising under this Note, the

Mortgage or the Other Security Documents, or to see to the proper or sufficient creation and perfection thereof, or to establish the priority thereof, or to preserve, protect, insure, care for, exercise or enforce any collateral security for any such indebtedness; (vii) any modification, alteration, substitution, exchange, surrender, cancellation, termination, release or other change, impairment, limitation, loss or discharge of any collateral security for any such indebtedness; (viii) any assignment, sale, pledge or other transfer of any of the indebtedness arising under this Note, the Mortgage or the Other Security Documents; or (ix) any manner, order or method of application of any payments or credits on any indebtedness arising under this Note, the Mortgage or the Other Security Documents. Each Maker also hereby waives any right of contribution, subrogation, indemnification or other right arising as a result of any payment made toward the Debt of the other Maker.

Each of the Makers (if more than one) hereby waives, for the benefit of the Payee: (i) any right the Payee, as a condition of payment or performance by either Maker, to (A) proceed against the other Maker or any other person or entity, (B) proceed against or exhaust any collateral for the Debt held from the other Maker or any other person or entity, (C) proceed against or have resort to any balance of any deposit account, securities account, or credit on the books of the Payee in favor of the other Maker or any other person or entity, or (D) pursue any other remedy in the power of the Payee whatsoever; (ii) any defense arising by reason of the incapacity, lack of authority or any disability or other defense of the other Maker, including any defense based on or arising out of the lack of validity or the unenforceability of the Debt or any agreement or instrument relating thereto or by reason of the cessation of the liability of the other Maker from any cause other than payment in full of the Debt; (iii) any defense based upon any statute or rule of law which provides  that the obligation of a surety must be neither larger in amount nor in other respects more burdensome than that of the principal; (iv) any defense based upon the Payee's errors or omissions in the administration of the Debt; (v) (1) any principles or provisions of law, statutory or otherwise, which are or might be in conflict with the terms hereof and any legal or equitable discharge of its obligations hereunder, (2) the benefit of any statute of limitations affecting its liability hereunder or the enforcement hereof, (3) any rights to set-offs, recoupments and counterclaims, and (4) promptness, diligence and any requirement that the Payee protect, secure, perfect or insure any security interest or lien or any property subject thereto; (vi) notices, demands, presentments, protests, notices of protest, notices of dishonor and notices of any action or inaction, including acceptance hereof, notices of default thereunder or under this Note, the Mortgage or the Other Security Documents, any agreement or instrument related thereto, notices of any renewal, extension or modification of the Debt or any agreement related thereto, notices of any extension of credit to the other Maker and notices of any matters referred to in any guaranty securing this Note and any right to consent to any thereof; and (vii) any defenses or benefits that may be derived from or afforded by law which limit the liability of or exonerate sureties, or which may conflict with the terms hereof.

This Note consolidates, amends and restates in their entirety the following notes:

1.      Note dated as of May 19, 2014, made by DuPont Street Developers LLC to Maxim Credit Group, LLC, in the principal sum of $25,000,000.00.

2.        Gap Mortgage Note, dated as of the date hereof, in the principal amount of $3,000,000.00 made by Dupont Street Developers LLC to the order of Dupont Street 1 LLC, its successors and/or assigns, as their interests may appear.

Maker acknowledges and agrees that this Note hereby consolidates, amends and restates the previous notes in their entirety, and that this Note is not intended to, nor shall it be construed to, constitute a novation of the previous notes, or the obligations contained therein.

**[Remainder of Page Intentionally Left Blank]**

**IN WITNESS WHEREOF,** Maker has duly executed this Note the day and year first above written.

> **DUPONT STREET DEVELOPERS LLC,**
> a New York limited liability company
>
> By: _____
> Name: Bo Jin Zhu
> Title: Authorized Signatory

STATE OF NEW YORK      )
                                     )   ss.:
COUNTY OF NEW YORK   )

On the 10th day of August, in the year 2017, before me, the undersigned, a Notary Public in and for said State, personally appeared Bo Jin Zhu, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

MARIA DI TORO
Notary Public, State of New York
No. 01DI6325959
Qualified in New York County
My Commission Expires 06-08-2019

<table>
<tr><td>

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City
Register will rely on the information provided
by you on this page for purposes of indexing
this instrument. The information on this page
will control for indexing purposes in the event
of any conflict with the rest of the document.

</td><td>



**2017081701029003001E5802**

</td></tr>
</table>

| **RECORDING AND ENDORSEMENT COVER PAGE** | **PAGE 1 OF 47** |
|---|---|

**Document ID:** 2017081701029003     Document Date: 08-11-2017     Preparation Date: 08-17-2017
**Document Type:** AGREEMENT
**Document Page Count:** 45

| **PRESENTER:** | **RETURN TO:** |
|---|---|
| KENSINGTON VANGUARD NATIONAL LAND<br>39 WEST 37TH ST TITLE NO. 835217(S-NY-CR-KV)<br>HOLD FOR PICKUP / SEARCH NY<br>NEW YORK, NY 10018<br>212-532-8686<br>jrenaldo@KVNATIONAL.COM | DUPONT STREET 1 LLC<br>C/O MADISON REALTY CAPITAL<br>825 THIRD AVE 37TH FLR ATTN SHOSHANA CARMEL<br>NEW YORK, NY 10022 |

**PROPERTY DATA**

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 2487 | 1    Entire Lot | | 280 FRANKLIN STREET |
| **Property Type:** | INDUSTRIAL BUILDING | | | |

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 2487 | 10    Entire Lot | | 10 CLAY STREET |
| **Property Type:** | INDUSTRIAL BUILDING | | | |

☒ Additional Properties on Continuation Page

**CROSS REFERENCE DATA**

**CRFN:** 2014000176361
☒ Additional Cross References on Continuation Page

**PARTIES**

| **PARTY 1:** | **PARTY 2:** |
|---|---|
| DUPONT STREET DEVELOPERS LLC<br>87-10 QUEENS BOULEVARD<br>ELMHURST, NY 11373 | DUPONT STREET 1 LLC<br>C/O MADISON REALTY CAPITAL, 825 THIRD<br>AVENUE 37TH FLOOR<br>NEW YORK, NY 10022 |

**FEES AND TAXES**

| Mortgage : | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 28,000,000.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | 255 | | $ | 0.00 |
| TAXES:  County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |

| TASF: | $ | 0.00 | **RECORDED OR FILED IN THE OFFICE** |
|---|---|---|---|
| MTA: | $ | 0.00 | **OF THE CITY REGISTER OF THE** |
| NYCTA: | $ | 0.00 | **CITY OF NEW YORK** |
| Additional MRT: | $ | 0.00 | Recorded/Filed      08-23-2017 12:44 |
| TOTAL: | $ | 0.00 | City Register File No.(CRFN): |
| Recording Fee: | $ | 289.00 | **2017000314508** |
| Affidavit Fee: | $ | 8.00 | *City Register Official Signature* |

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



2017081701029003001C5A82

| RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION) | | **PAGE 2 OF 47** |
|---|---|---|
| **Document ID: 2017081701029003** | Document Date: 08-11-2017 | Preparation Date: 08-17-2017 |
| Document Type: AGREEMENT | | |

**PROPERTY DATA**

| Borough | Block Lot | | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 2487 12 | Entire Lot | | 14 CLAY STREET |
| | Property Type: INDUSTRIAL BUILDING | | | |
| Borough | Block Lot | | Unit | Address |
| BROOKLYN | 2487 17 | Entire Lot | | 22 CLAY STREET |
| | Property Type: INDUSTRIAL BUILDING | | | |
| Borough | Block Lot | | Unit | Address |
| BROOKLYN | 2487 18 | Entire Lot | | 26 CLAY STREET |
| | Property Type: INDUSTRIAL BUILDING | | | |
| Borough | Block Lot | | Unit | Address |
| BROOKLYN | 2487 20 | Entire Lot | | 30 CLAY STREET |
| | Property Type: INDUSTRIAL BUILDING | | | |
| Borough | Block Lot | | Unit | Address |
| BROOKLYN | 2487 21 | Entire Lot | | 32 CLAY STREET |
| | Property Type: INDUSTRIAL BUILDING | | | |
| Borough | Block Lot | | Unit | Address |
| BROOKLYN | 2487 57 | Entire Lot | | 93 DUPONT STREET |
| | Property Type: INDUSTRIAL BUILDING | | | |
| Borough | Block Lot | | Unit | Address |
| BROOKLYN | 2487 72 | Entire Lot | | 57 DUPONT STREET |
| | Property Type: INDUSTRIAL BUILDING | | | |
| Borough | Block Lot | | Unit | Address |
| BROOKLYN | 2487 78 | Entire Lot | | 55 DUPONT STREET |
| | Property Type: INDUSTRIAL BUILDING | | | |

**CROSS REFERENCE DATA**
Document ID: 2017081701029002

**DUPONT STREET DEVELOPERS LLC**
(Mortgagor)

and

**DUPONT STREET 1 LLC**
(Mortgagee)

---

## CONSOLIDATED, AMENDED AND RESTATED
## MORTGAGE AND SECURITY AGREEMENT

---

| | |
|---|---|
| Dated: | As of August 11, 2017 |
| Premises: | 280 Franklin Street, 10, 14, 22, 26, 30 and 32 Clay Street and 93, 57 and 55 Dupont Street Brooklyn, New York 11222 |
| Block: | 2487 |
| Lot: | 1, 10, 12, 17, 18, 20, 21, 57, 72, 78 |
| County: | Kings |

### RECORD AND RETURN TO:

DUPONT STREET 1 LLC
c/o Madison Realty Capital
825 Third Avenue, 37th Floor
New York, New York 10022
Attention: Shoshana Carmel

| | |
|---|---|
| Title No.: | 835217 |
| Title Co.: | Kensington Vanguard National Land Services, as agent for Stewart Title Insurance Company |

**THIS MORTGAGE DOES NOT COVER REAL PROPERTY PRINCIPALLY IMPROVED OR TO BE IMPROVED BY ONE OR MORE STRUCTURES CONTAINING IN THE AGGREGATE NOT MORE THAN SIX RESIDENTIAL DWELLING UNITS, EACH DWELLING UNIT HAVING ITS OWN SEPARATE COOKING FACILITIES.**

**THIS MORTGAGE SECURES A MAXIMUM PRINCIPAL INDEBTEDNESS OF $28,000,000.00 PLUS INTEREST AND COSTS.**

**[THIS DOCUMENT SERVES AS A FIXTURE FILING UNDER THE UNIFORM COMMERCIAL CODE.]**

**THIS CONSOLIDATED, AMENDED AND RESTATED MORTGAGE AND SECURITY AGREEMENT** (this "**Mortgage**") made as of the 11th day of August, 2017, between **DUPONT STREET DEVELOPERS LLC**, a New York limited liability company, having an address at 87-10 Queens Boulevard, Elmhurst, New York 11373 ("**Mortgagor**"), and **DUPONT STREET 1 LLC**, a Delaware limited liability company, its successors and/or assigns, as their interests may appear, having offices at 825 Third Avenue, 37th Floor, New York, New York 10022 ("**Mortgagee**").

## WITNESSETH:

**WHEREAS**, Mortgagor is the fee owner of the real property described in Schedule A attached hereto (collectively, the "**Premises**") and Mortgagee is the owner and holder of certain mortgages covering the fee estate of Mortgagor in the Premises, as more particularly described in Schedule B attached hereto (collectively, the "**Existing Mortgages**") and the notes, bonds or other obligations secured thereby (collectively, the "**Existing Notes**");

**WHEREAS**, there is now owing on the Existing Notes and the Existing Mortgages the unpaid principal sum of TWENTY EIGHT MILLION AND 00/100 DOLLARS ($28,000,000.00), and Mortgagor is the maker of that certain Note (as defined below) of even date herewith in favor of Mortgagee, as same now exists or may hereinafter be amended, modified, supplemented, extended, renewed, restated or replaced, in the principal sum of TWENTY EIGHT MILLION AND 00/100 DOLLARS ($28,000,000.00), together with interest (said principal sum, interest and all other sums which may or shall become due under the Note or under this Mortgage, being hereinafter, collectively, the "**Debt**");

**WHEREAS**, Mortgagor and Mortgagee have agreed in the manner hereinafter set forth (i) to spread the Existing Mortgages and the respective liens thereof over those portions of the Mortgaged Property (as hereinafter defined) not already covered thereby, (ii) to consolidate and coordinate the respective liens of the Existing Mortgages, as spread, and (iii) to modify the time and manner of payment and the terms and provisions of the Existing Notes and the Existing Mortgages;

**NOW, THEREFORE**, in consideration of the loan made as of the date hereof by Mortgagee to Mortgagor and other good and lawful consideration, the receipt and sufficiency of which are hereby acknowledged, to secure to Mortgagee (a) repayment of the Debt and all renewals, modifications and extensions thereof, (b) payment of all other sums advanced in accordance with the terms of the Note or this Mortgage in order to protect the security hereof, together with interest thereon, and (c) performance of the agreements of Mortgagor contained herein, it is agreed as follows:

A.    The Existing Mortgages and the respective liens thereof are hereby spread over those portions of the Mortgaged Property not already covered thereby and the Mortgagor hereby mortgages, grants, assigns, releases, transfers, pledges and sets over to Mortgagee and grants to Mortgagee a security interest in all of the right, title, interest and estate of Mortgagor, now owned, or hereafter acquired, in and to the following property, rights, interests and estates (such property, rights and interests being hereinbefore and hereinafter, collectively, the "**Mortgaged Property**"):

(a)    the Premises;

(b)    all buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and improvements now or hereafter located on the Premises (collectively, the "**Improvements**");

(c)    all easements, rights-of-way, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, air rights and development rights, all rights to oil, gas, minerals, coal and other substances of any kind or character, and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments and appurtenances of any nature whatsoever, in any way belonging, relating or pertaining to the Premises and the Improvements and the reversion and reversions, remainder and remainders, and all land lying in the bed of any street, road, highway, alley or avenue, opened, vacated or proposed, in front of or adjoining the Premises, to the center line thereof and all the estates, rights, titles, interests, dower and rights of dower, curtsey and rights of curtsey, property, possession, claim and demand whatsoever, both at law and in equity, of Mortgagor of, in and to the Premises and the Improvements and every part and parcel thereof, with the appurtenances thereto;

(d)    all machinery, furniture, furnishings, equipment, computer software and hardware, fixtures (including, without limitation, all heating, air conditioning, plumbing, lighting, communications and elevator fixtures) and other property of every kind and nature, whether tangible or intangible, whatsoever owned by Mortgagor, or in which Mortgagor has or shall have an interest, now or hereafter located upon the Premises and the Improvements, or appurtenant thereto, and usable in connection with the present or future operation and occupancy of the Premises and the Improvements and all building equipment, materials and supplies of any nature whatsoever owned by Mortgagor, or in which Mortgagor has or shall have an interest, now or hereafter located upon the Premises and the Improvements, or appurtenant thereto, or usable in connection with the present or future operation, enjoyment and occupancy of the Premises and the Improvements (collectively, the "**Equipment**"), including any leases of any of the foregoing, any deposits existing at any time in connection with any of the foregoing, and the proceeds of any sale or transfer of the foregoing, and the right, title and interest of Mortgagor in and to any of the Equipment that may be subject to any "security interests", as defined in the Uniform Commercial Code, as adopted and enacted by the State or States where any of the Mortgaged Property is located (the "**UCC**"), superior in lien to the lien of this Mortgage;

(e)    all awards or payments, including interest thereon, that may heretofore and hereafter be made with respect to the Premises and the Improvements, whether from the exercise of the right of eminent domain or condemnation (including, without limitation, any transfer made in lieu of or in

anticipation of the exercise of said rights), or for a change of grade, or for any other injury to or decrease in the value of the Premises and the Improvements;

(f)    all leases and other agreements or arrangements heretofore or hereafter entered into affecting the use, enjoyment or occupancy of, or the conduct of any activity upon or in, the Premises and the Improvements, including any extensions, renewals, modifications or amendments thereof (collectively, the "**Leases**") and all rents, rent equivalents, moneys payable as damages or in lieu of rent or rent equivalents, royalties (including, without limitation, all oil and gas or other mineral royalties and bonuses), income, fees, receivables, receipts, revenues, deposits (including, without limitation, security, utility and other deposits), accounts, cash, issues, profits, charges for services rendered, and other payment and consideration of whatever form or nature received by or paid to or for the account of or benefit of Mortgagor or its agents or employees from any and all sources arising from or attributable to the Premises and the Improvements (collectively, the "**Rents**") together with all proceeds from the sale or other disposition of the Leases and the right to receive and apply the Rents to the payment of the Debt;

(g)    all proceeds of and any unearned premiums on any insurance policies covering the Mortgaged Property, including, without limitation, the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage to the Mortgaged Property;

(h)    the right, in the name and on behalf of Mortgagor, to appear in and defend any action or proceeding brought with respect to the Mortgaged Property and to commence any action or proceeding to protect the interest of Mortgagee in the Mortgaged Property; all accounts, escrows, documents, instruments, investment property, chattel paper, claims, deposits and general intangibles, as the foregoing terms are defined in the UCC, and all franchises, trade names, trademarks, symbols, service marks, books, records, plans, specifications, designs, drawings, permits, consents, licenses, management agreements, contract rights (including, without limitation, any contract with any architect or engineer or with any other provider of goods or services for or in connection with any construction, repair, or other work upon the Mortgaged Property), approvals, actions, refunds of real estate taxes and assessments (and any other governmental impositions related to the Mortgaged Property), and causes of action that now or hereafter relate to, are derived from or are used in connection with the Mortgaged Property, or the use, operation, maintenance, occupancy or enjoyment thereof or the conduct of any business or activities thereon (collectively, the "**Intangibles**"); and

(k)    all proceeds, products, offspring, rents and profits from any of the foregoing, including, without limitation, those from sale, exchange,

transfer, collection, loss, damage, disposition, substitution or replacement of any of the foregoing.

B.    The liens of the Existing Mortgages as so spread, are hereby consolidated and coordinated so that together they shall hereafter constitute in law but one mortgage, a single lien, covering the Mortgaged Property and securing the principal sum of TWENTY EIGHT MILLION AND 00/100 DOLLARS ($28,000,000.00), together with interest thereon as hereinafter provided.

C.    The Existing Notes and the respective debts evidenced thereby have been combined and coordinated to constitute one consolidated indebtedness in the principal sum of TWENTY EIGHT MILLION AND 00/100 DOLLARS ($28,000,000.00), payable pursuant to the terms of that certain Consolidated, Amended and Restated Note of even date herewith made by Mortgagor as Maker to the order of Mortgagee as Payee (the "**Restated Note**") (the Existing Notes as modified by the Restated Note as same now exists or may hereinafter be amended, modified, supplemented, extended, renewed, restated or replaced, being hereinafter, collectively, the "**Note**"). All references to the "Note" shall refer to the Existing Notes as combined, consolidated, modified, amended and restated pursuant to the provisions of the Restated Note. All references to the term "**Mortgage**" shall refer to the Existing Mortgages as spread, coordinated, combined, consolidated, modified, amended and restated pursuant to the provisions of this Mortgage.

D.    The Debt shall without notice become immediately due and payable at the option of Mortgagee if any payment required herein is not paid when due or on the happening of any "**Event of Default**" (as hereinafter defined). All of the terms, covenants and conditions contained in this Mortgage are hereby made part of the Note to the same extent and with the same force as if they were fully set forth therein.

E.    Mortgagor waives presentment and demand for payment, notice of dishonor, protest and notice of protest of the Note.

F.    Mortgagor represents, warrants and covenants that (i) there are no offsets, counterclaims or defenses against the Debt, the Existing Mortgage, this Mortgage, or the Note, (ii) the Mortgagor (and the undersigned representative of Mortgagor, if any) has full power, authority and legal right to execute this Mortgage and to keep and observe all of the terms of this Mortgage on Mortgagor's part to be observed or performed, and (iii) the Note, the Existing Mortgage and this Mortgage constitute valid and binding obligations of Mortgagor.

G.    Except as otherwise provided to the contrary in the following numbered sections, all defined terms in the following numbered sections shall have the meaning given to such terms in the body of this Mortgage.

H.    The Existing Mortgage, as herein modified, amended and restated, is hereby ratified and confirmed in all respects by Mortgagor, and the terms, covenants and provisions of the Existing Mortgage are hereby modified, amended and restated so that henceforth the terms, covenants and provisions of this Mortgage shall supersede the terms,

covenants and provisions of the Existing Mortgage and the terms, covenants and provisions of the Existing Mortgage shall read the same as the following numbered Sections:

**Mortgagor represents and warrants to and covenants
and agrees with Mortgagee as follows:**

SECTION 1.  **Payment of Debt; Incorporation of Covenants, Conditions and Agreements; Use of Proceeds.**

Mortgagor will pay the Debt at the time and in the manner provided in the Note and in this Mortgage.  All the covenants, conditions and agreements contained in (a) the Note and (b) all and any of the documents other than the Note or this Mortgage now or hereafter executed by Mortgagor and/or others and by or in favor of Mortgagee, which wholly or partially secure or guaranty payment of the Note (collectively, the "**Other Security Documents**", and together with the Note and this Mortgage, collectively, the "**Loan Documents**"), are hereby made a part of this Mortgage to the same extent and with the same force as if fully set forth herein.

As part of the Debt, Mortgagor shall pay all monitoring fees and all other fees, costs and expenses due and payable by Mortgagee to any third parties in connection with the Loan.  In addition to the foregoing, on the first annual anniversary of the date of this Mortgage, and on each annual anniversary thereafter while the Debt is outstanding, Mortgagor shall pay to Mortgagee an appraisal fee in the amount of Two Thousand Five Hundred and 00/100 Dollars ($2,500.00).

The proceeds of the Loan (as hereinafter defined) shall be used by Mortgagor to retire the existing mortgage on the Mortgaged Property held by Mortgagee's affiliate, closing costs, purchase the membership interests of the existing members of Mortgagor so that the only remaining member will be, directly or indirectly, Bo Jin Zhu, and the balance will be remitted to Mortgagor in accordance with the terms of the Note and this Mortgage.

Notwithstanding anything to the contrary contained herein or in the Other Security Documents, all payments due under the Note, this Mortgage and the Other Security Documents shall be made by means of wire transfer to the order of Mortgagee, as directed by Mortgagee, and Mortgagee shall have the absolute right to reject any payment not made by wire transfer.

SECTION 2.  **Application of Payments.**

Unless applicable law provides otherwise, all payments received by Mortgagee from Mortgagor under the Note or this Mortgage shall be applied by Mortgagee in the following order of priority:  (i) amounts payable to Mortgagee by Mortgagor under Section 6 hereof; (ii) late charges payable under the Note; (iii) interest payable on the Note; (iv) all applicable prepayment premiums, (v) principal of the Note; (vi) interest payable on advances made pursuant to Section 24 hereof; (vii) principal of advances made pursuant to Section 24 hereof; and (viii) any other sums secured by this Mortgage in such order as Mortgagee, at Mortgagee's option, may determine; provided, however, that Mortgagee may, at Mortgagee's option, apply any sums

- 5 -

payable pursuant to Section 24 hereof prior to interest on and principal of the Note, but such application shall not otherwise affect the order of priority of application specified in this Section 2.

SECTION 3.    **Warranty of Title.**

Mortgagor warrants that Mortgagor has good title to the Mortgaged Property and has the right to mortgage, give, grant, bargain, sell, alienate, enfeoff, convey, confirm, pledge, assign and hypothecate the same and that Mortgagor possesses an unencumbered fee estate in the Premises and the Improvements and that it owns the Mortgaged Property free and clear of all liens, encumbrances and charges whatsoever except for those exceptions shown in the title insurance policy insuring the lien of this Mortgage.  Mortgagor shall forever warrant, defend and preserve such title and the validity and priority of the lien of this Mortgage and shall forever warrant and defend the same to Mortgagee against the claims of all persons whomsoever.

SECTION 4.    **Insurance.**

(a)    Mortgagor will keep the Mortgaged Property insured against loss or damage by fire, flood (if in flood hazard area) and such other hazards, risks and matters, including, without limitation, business interruption, rental loss, builder's risk, terrorism, public liability, and boiler damage and liability, as Mortgagee may from time to time require in amounts required by Mortgagee, and shall pay the premiums for such insurance (collectively, the "**Insurance Premiums**") as the same become due and payable.  All policies of insurance (collectively, the "**Policies**") shall be issued by insurers acceptable to Mortgagee and shall contain the standard New York mortgagee non-contribution clauses naming Mortgagee as the person to which all payments made by such insurance company shall be paid.  Mortgagor will assign and deliver the Policies to Mortgagee.  Not later than thirty (30) days prior to the expiration date of each of the Policies, Mortgagor will deliver evidence satisfactory to Mortgagee of the renewal of each of the Policies.    Prior to or on the date hereof, Mortgagor shall deliver evidence satisfactory to Mortgagee that Mortgagor has paid for the Insurance Premiums covering the period commencing on the date hereof up to and including the Maturity Date, as such term is defined in the Note.  All Policies shall be issued by companies approved by Mortgagee and licensed to do business in the state where the Mortgaged Property is located, with a claims paying ability rating of "BBB" or better by Standard & Poor's Ratings Services, a division of McGraw-Hill Companies, Inc. and a rating of "A:IX" or better in the current Best's Insurance Reports.

(b)    In the event of loss, Mortgagor shall give immediate written notice to the insurance carrier and to Mortgagee.  Mortgagor hereby authorizes and empowers Mortgagee as attorney-in-fact, coupled with an interest, for Mortgagor to make proof of loss, to adjust and compromise any claim under insurance policies, to appear in and prosecute any action arising from such insurance policies, to collect and receive insurance proceeds, and to deduct therefrom Mortgagee's expenses incurred in the collection of such proceeds (said insurance proceeds, after such deduction of expenses, being hereinafter the "**Net Proceeds**"); provided, however, that nothing contained in this subsection (b) shall require Mortgagee to incur any expense or take any action hereunder.  Mortgagor further authorizes Mortgagee, at Mortgagee's option, either (i) to hold the Net Proceeds for the account of Mortgagor to be used to reimburse Mortgagor for the

cost of reconstruction or repair of the Mortgaged Property (hereinafter, the "**Restoration**") or (ii) to apply the Net Proceeds to the payment of the sums secured by this Mortgage, whether or not then due, in such priority and proportions as Mortgagee in its discretion shall deem proper, but any such repayment shall not be deemed voluntary prepayment for which a prepayment premium is due.

(c)     If the Net Proceeds are applied to the payment of the sums secured by this Mortgage, any such application of proceeds to principal shall neither, extend or postpone the due dates of the monthly installments to be made pursuant to the Note, nor shall such application change the amounts of such installments. If the Mortgaged Property is sold pursuant to Section 22 hereof or if Mortgagee acquires title to the Mortgaged Property, Mortgagee shall have all of the right, title and interest of Mortgagor in and to any insurance policies and unearned premiums thereon and in and to the proceeds resulting from any damage to the Mortgaged Property prior to such sale or acquisition.

(d)     The excess, if any, of the Net Proceeds remaining after payment of the entire Debt as provided herein shall be paid to Mortgagor.

(e)     Anything in this Section to the contrary notwithstanding in the event of a casualty resulting in damage to the Mortgaged Property, if Mortgagee in its sole discretion makes the Net Proceeds available for Restoration, same shall be made available in accordance with the terms and provisions set forth below and provided that:

(i)     Mortgagor delivers to Mortgagee an opinion of an architect designated by Mortgagor and reasonably satisfactory to Mortgagee (the "**Supervising Architect**"), together with such other documentation as Mortgagee may reasonably request, evidencing to the satisfaction of Mortgagee that the Restoration of the Mortgaged Property may be completed so as to constitute an architecturally whole and economically feasible building at least equal in value and condition to the Mortgaged Property immediately prior to the casualty;

(ii)     no Event of Default has occurred and is continuing hereunder and no default has otherwise occurred under the terms of this Mortgage, the Note, or any of the Other Security Documents which remains uncured beyond the applicable notice and/or grace period;

(iii)     in the event the Net Proceeds are not sufficient in Mortgagee's reasonable opinion to pay in full the Restoration (hereinafter referred to as the "**Work**"), Mortgagor shall deposit with Mortgagee sufficient funds, if necessary in the reasonable opinion of Mortgagee, such that together with the Net Proceeds, sufficient funds shall be readily available for the Restoration of the Mortgaged Property as nearly as practicable to its value and condition immediately prior to such casualty;

(iv)     Mortgagor delivers to Mortgagee complete plans and specifications (the "**Work Plans and Specs**") for the work to be performed in connection with the Restoration prepared and sealed by an architect reasonably

satisfactory to Mortgagee with evidence satisfactory to Mortgagee of the approval of the Work Plans and Specs by all governmental authorities whose approval is required;

(v)    Mortgagor delivers to Mortgagee, in the event that the Work Plans and Specs are prepared by an architect other than the Supervising Architect, written approval of the Work Plans and Specs by the Supervising Architect;

(vi)    Mortgagor delivers to Mortgagee a signed estimate approved in writing by the Supervising Architect, bearing the Supervising Architect's seal, stating the entire cost of completing the Work; and

(vii)    Mortgagor delivers to Mortgagee true copies certified by Mortgagor, or by the Supervising Architect or Mortgagor's general contractor or, if available, the governmental agency having jurisdiction thereof, of all permits and approvals required by law in connection with the commencement and conduct the Work.

(f)    If the Net Proceeds are made available for the Restoration of the Mortgaged Property pursuant to the terms of paragraph (e) above, the costs, if any, to Mortgagee of recovering or paying out such Net Proceeds (including reasonable attorneys' fees and disbursements and reasonable costs incurred by Mortgagee in having the Work inspected and the Work Plans and Specs reviewed by the Supervising Architect) shall be promptly paid to Mortgagee on demand. In the event that the terms and conditions of paragraph (e) above have been satisfied in full, then the Net Proceeds shall be disbursed by Mortgagee as the Work progresses in accordance with customary construction loan advance procedures.

(g)    Upon occurrence of an Event of Default under this Mortgage, or upon the failure by Mortgagor promptly to commence or diligently to continue the Work, Mortgagee may apply all or any portion of the Net Proceeds to the payment of the sums secured by this Mortgage, whether or not then due, in such priority and proportions as Mortgagee in its discretion shall deem proper.

(h)    If at any time the Net Proceeds which are to be applied to the Restoration of the Mortgaged Property will be insufficient, in the reasonable judgment of Mortgagee, to pay the entire unpaid cost of the Restoration, Mortgagor shall pay the deficiency, or make provision satisfactory to Mortgagee for the payment thereof, prior to receiving any part of the Net Proceeds. Any balance of the Net Proceeds not required for the Restoration, upon completion of the Work and the reimbursement of Mortgagor in full of the payment of the Work shall, at Mortgagee's option, (i) be retained by Mortgagee and applied to the sums secured by this Mortgage, whether or not then due without premium or penalty, or (ii) be returned to Mortgagor.

**THE PROVISIONS OF SUBSECTION 4 OF SECTION 254 OF THE NEW YORK REAL PROPERTY LAW COVERING THE INSURANCE OF BUILDINGS AGAINST LOSS BY FIRE SHALL NOT APPLY TO THIS MORTGAGE. IN THE EVENT OF ANY CONFLICT, INCONSISTENCY OR AMBIGUITY BETWEEN THE PROVISIONS OF SECTION 4 OF THIS MORTGAGE AND THE PROVISIONS OF SUBSECTION 4 OF**

SECTION 254 OF THE NEW YORK REAL PROPERTY LAW COVERING THE INSURANCE OF BUILDINGS AGAINST LOSS BY FIRE, THE PROVISIONS OF SECTION 4 OF THIS MORTGAGE SHALL CONTROL.  THE CLAUSES AND COVENANTS CONTAINED IN THIS MORTGAGE THAT ARE CONSTRUED BY SECTION 254 OF THE NEW YORK REAL PROPERTY LAW SHALL BE CONSTRUED AS PROVIDED IN SECTION 254 OF THE NEW YORK REAL PROPERTY LAW.  THE ADDITIONAL CLAUSES AND COVENANTS CONTAINED IN THIS MORTGAGE SHALL AFFORD RIGHTS SUPPLEMENTAL TO AND NOT EXCLUSIVE OF THE RIGHTS CONFERRED BY THE CLAUSES AND COVENANTS OF SECTION 254 OF THE NEW YORK REAL PROPERTY LAW AND SHALL NOT IMPAIR, MODIFY, ALTER OR DEFEAT SUCH RIGHTS, NOTWITHSTANDING THAT SUCH ADDITIONAL CLAUSES AND COVENANTS MAY RELATE TO THE SAME SUBJECT MATTER OR PROVIDE FOR DIFFERENT OR ADDITIONAL RIGHTS IN THE SAME OR SIMILAR CONTINGENCIES AS THE CLAUSES AND COVENANTS CONSTRUED BY SECTION 254 OF THE NEW YORK REAL PROPERTY LAW.  THE RIGHTS OF MORTGAGEE ARISING UNDER THE CLAUSES AND COVENANTS CONTAINED IN THIS MORTGAGE SHALL BE SEPARATE, DISTINCT AND CUMULATIVE AND NONE OF THEM SHALL BE IN EXCLUSION OF THE OTHERS.  NO ACT OF MORTGAGEE SHALL BE CONSTRUED AS AN ELECTION TO PROCEED UNDER ANY ONE PROVISION HEREIN TO THE EXCLUSION OF ANY OTHER PROVISION, ANYTHING HEREIN OR OTHERWISE TO THE CONTRARY NOTWITHSTANDING.  IN THE EVENT OF ANY INCONSISTENCIES BETWEEN THE PROVISIONS OF SECTION 254 OF THE NEW YORK REAL PROPERTY LAW AND THE PROVISIONS OF THIS MORTGAGE, THE PROVISIONS OF THIS MORTGAGE SHALL PREVAIL.

SECTION 5.  **Payment of Taxes, etc.**

Mortgagor shall pay all taxes, assessments, water rates, frontage charges and sewer rents, now or hereafter levied or assessed or imposed against the Mortgaged Property or any part thereof (collectively, the "Taxes") and all ground rents, maintenance charges, other governmental impositions and other charges, including, without limitation, vault charges and license fees for the use of vaults, chutes and similar areas adjoining the Premises, now or hereafter levied or assessed or imposed against the Mortgaged Property or any part thereof (collectively, the "**Other Charges**") as same become due and payable.  Mortgagor will deliver to Mortgagee, promptly upon Mortgagee's request, evidence satisfactory to Mortgagee that the Taxes and Other Charges have been so paid or are not then delinquent.  Mortgagor shall not suffer and shall promptly cause to be paid and discharged any lien or charge whatsoever which may be or become a lien or charge against the Mortgaged Property, and shall promptly pay for all utility services provided to the Mortgaged Property.  Mortgagor shall furnish to Mortgagee receipts for the payment of the Taxes, Other Charges and said utility services prior to the date the same shall become delinquent.

SECTION 6.  **Escrow Fund.**

Mortgagor shall pay to Mortgagee, on the first day of each calendar month for the term of this Mortgage, an amount equal to (a) one-twelfth (1/12) of the amount which would be sufficient to pay the Taxes and the Other Charges which are payable, or estimated by Mortgagee to be payable, during the next ensuing twelve (12) months, and (b) at the option of Mortgagee, one-twelfth (1/12) of the amount which would be sufficient to pay the Insurance Premiums due for the renewal of the coverage afforded by the Policies upon the expiration thereof (said amounts in (a) and (b) above hereinafter collectively called the "**Escrow Fund**").  The Escrow Fund, together with the payments of interest or principal or both which are due pursuant to the provisions of the Note, shall be added together and shall be paid as an aggregate sum by Mortgagor to Mortgagee.  Mortgagor hereby pledges to Mortgagee any and all monies now or hereafter deposited in the Escrow Fund as additional security for the payment of the Debt. Mortgagee will apply the Escrow Fund to payments of Taxes, Other Charges and Insurance Premiums required to be made by Mortgagor pursuant to Sections 4 and 5 hereof.  If the amount of the Escrow Fund shall exceed the amounts due for Taxes and Insurance Premiums pursuant to Sections 4 and 5 hereof, Mortgagee shall, in its discretion, return any excess to Mortgagor or credit such excess against future payments to be made to the Escrow Fund.  In allocating such excess, Mortgagee may deal with the person shown on the records of Mortgagee to be the owner of the Mortgaged Property.  If the Escrow Fund is not sufficient to pay the items set forth in (a) and (b) above, Mortgagor shall promptly pay to Mortgagee, upon demand, an amount which Mortgagee shall estimate as sufficient to make up the deficiency.  Upon the occurrence of an Event of Default (hereinafter defined) Mortgagee may apply any sums then present in the Escrow Fund to the payment of the following items in any order in its sole discretion:

(i)      Taxes and Other Charges;

(ii)     Insurance Premiums;

(iii)    Interest (including interest at the Default Rate when applicable) on the unpaid principal balance of the Note;

(iv)    Amortization of the unpaid principal balance of the Note;

(v)     All other sums payable pursuant to the Note, this Mortgage, and the Other Security Documents, including without limitation advances made by Mortgagee pursuant to the terms of this Mortgage.

Until expended or applied as above provided, any amounts in the Escrow Fund shall constitute additional security for the Debt.  The Escrow Fund shall not constitute a trust fund and may be commingled with other monies held by Mortgagee.  No earnings or interest on the Escrow Fund shall be payable to Mortgagor.

Notwithstanding anything to the contrary contained herein, the Mortgagor and Mortgagee covenant and agree that provided the Mortgagor is not in default under the Note, this Mortgage or any of the Other Security Documents beyond the expiration of any applicable

notice, grace or cure period, and provided further that Mortgagor furnishes Mortgagee with proof that all Taxes and Other Charges are being paid as required under this Mortgage, Mortgagee shall not require Mortgagor to make monthly installments for the payment of Taxes and Other Charges to the Escrow Fund.

### SECTION 7.  **Condemnation.**

(a). Mortgagor shall promptly notify Mortgagee of any action or proceeding relating to any condemnation or other taking, whether direct or indirect, of the Mortgaged Property or any part thereof, and Mortgagor shall appear in and prosecute any such action or proceeding unless otherwise directed by Mortgagee in writing.   Mortgagor authorizes Mortgagee, at Mortgagee's option, as attorney-in-fact, coupled with an interest, for Mortgagor, to commence, appear in and prosecute, in Mortgagee's or Mortgagor's name, any action or proceeding relating to any condemnation or other taking of the Mortgaged Property, whether direct or indirect, and to settle or compromise any claim in connection with such condemnation or other taking.   The proceeds of any award, payment or claim for damages, direct or consequential, in connection with any condemnation or other taking, whether direct or indirect, of the Mortgaged Property or any part thereof, or for conveyances in lieu of condemnation, are hereby assigned to and shall be paid to Mortgagee.

(b) Mortgagor authorizes Mortgagee to apply such awards, payments, proceeds or damages, after the deduction of Mortgagee's expenses incurred in the collection of such amounts, at Mortgagee's option, either (i) to restoration or repair of the Mortgaged Property, or (ii) to payment of the sums secured by this Mortgage, whether or not then due, in the order of application set forth in Section 2 hereof, with the balance, if any, to Mortgagor. Mortgagor agrees to execute such further evidence of assignment of any awards, proceeds, damages or claims arising in connection with such condemnation or taking as Mortgagee shall require.

(c) Notwithstanding any taking by any public or quasi-public authority through eminent domain or otherwise (including but not limited to any transfer made in lieu of or in anticipation of the exercise of such taking), Mortgagor shall continue to pay the Debt at the time and in the manner provided for its payment in the Note and in this Mortgage, and the Debt shall not be reduced until any award or payment therefor shall have been actually received and applied by Mortgagee, after the deduction of expenses of collection, to the reduction or discharge of the Debt.  Mortgagee shall not be limited to the interest paid on the award by the condemning authority but shall be entitled to receive out of the award interest at the rate or rates provided herein and in the Note.   Mortgagee may apply any such award or payment to the reduction or discharge of the Debt whether or not then due and payable.  Any reduction of the Debt pursuant to the terms of this Section 7 shall not be deemed a prepayment of the Debt and no prepayment consideration, if any, shall be due.   If the Mortgaged Property is sold, through foreclosure or otherwise, prior to the receipt by Mortgagee of such award or payment, Mortgagee shall have the right, whether or not a deficiency judgment on the Note shall have been sought, recovered or denied, to receive said award or payment, or a portion thereof sufficient to pay the Debt.

- 11 -

### SECTION 8.  **Leases and Rents.**

(a)     Mortgagor hereby absolutely and unconditionally assigns to Mortgagee all Leases now existing or hereafter made of all or any part of the Mortgaged Property, all Rents payable under such Leases, and all security deposits made by tenants in connection with such Leases.  Mortgagor hereby grants Mortgagee all of the rights and powers possessed by Mortgagor prior to such assignment, and Mortgagee is hereby granted the right to modify, extend or terminate the Leases and to execute new Leases, in Mortgagee's sole discretion.  Mortgagee is hereby granted and assigned by Mortgagor the right to enter the Mortgaged Property for the purpose of enforcing its interest in the Leases and the Rents, this Mortgage constituting a present, absolute assignment of the Leases and the Rents.  Nevertheless, subject to the terms of this Section 8, Mortgagee grants to Mortgagor a revocable license to operate and manage the Mortgaged Property and to collect the Rents, provided, however, that Mortgagor shall not modify, extend or terminate any Leases, or execute any new Leases without first obtaining Mortgagee's prior written consent.  Mortgagor shall hold the Rents, or a portion thereof sufficient to discharge all current sums due on the Debt, for use in the payment of such sums.  Upon or at any time after an Event of Default, the license granted to Mortgagor herein may be revoked by Mortgagee, and Mortgagee may enter upon the Mortgaged Property, and collect, retain and apply the Rents toward payment of the Debt in such priority and proportions as Mortgagee in its discretion shall deem proper.

(b)     All Leases shall be written on the standard form of lease which standard form of lease shall be presented to Mortgagee for approval.  Upon request, Mortgagor shall furnish Mortgagee with executed copies of all Leases and relevant documentation required to be filed with all Federal, State and City housing authorities and agencies.  No changes may be made to the Mortgagee-approved standard lease without the prior written consent of Mortgagee.  In addition, all renewals of Leases and all proposed Leases shall provide for rental rates comparable to existing local market rates, which, in the case of residential Leases, shall not be in excess of the local registered rent for the apartment to which the Lease relates, and shall be arms-length transactions.  All proposed Leases shall be subject to the prior approval of the Mortgagee.  All Leases shall provide that they are subordinate to this Mortgage and that the lessee agrees to attorn to Mortgagee.  Mortgagor (i) shall observe and perform all the obligations imposed upon the lessor under the Leases and shall not do or permit to be done anything to impair the value of the Leases as security for the Debt; (ii) shall promptly send copies to Mortgagee of all notice of default which Mortgagor shall send or receive thereunder; (iii) shall enforce all of the terms, covenants and conditions contained in the Leases upon the part of the lessee thereunder to be observed or performed, short of termination thereof; (iv) shall not collect any of the Rents more than one (1) month in advance; (v) shall not execute any other assignment of lessor's interest in the Leases or the Rents; (vi) shall not alter, modify or change the terms of the Leases without the prior written consent of Mortgagee, or cancel or terminate the Leases or accept a surrender thereof or convey or transfer or suffer or permit a conveyance or transfer of the Premises or of any interest therein so as to effect a merger of the estates and rights of, or a termination or diminution of the obligations of, lessees thereunder; (vii) shall not alter, modify or change the terms of any guaranty of the Leases or cancel or terminate such guaranty without the prior written consent of Mortgagee; (viii) shall not consent to any assignment of or subletting under the Leases not in accordance with their terms, without the prior written consent of Mortgagee;

- 12 -

and (ix) shall execute and deliver at the request of Mortgagee all such further assurances, confirmations and assignments in connection with the Mortgaged Property as Mortgagee shall from time to time require.  Mortgagee shall have all of the rights against lessees of the Mortgaged Property set forth in Section 291-F of the Real Property Law of New York.

(c)    Mortgagor represents and warrants that Mortgagor self-manages the Mortgaged Property.  Mortgagor will not cause or permit Mortgagor to engage a property manager without the written consent of Mortgagee.

### SECTION 9.  **Maintenance of Mortgaged Property.**

Mortgagor shall cause the Mortgaged Property to be maintained in a good and safe condition and repair.  The Improvements and the Equipment shall not be removed, demolished or altered (except for normal replacement of the Equipment) without the consent of Mortgagee.  Mortgagor shall promptly comply with all laws, orders and ordinances affecting the Mortgaged Property or the use thereof.  Mortgagor shall promptly repair, replace or rebuild any part of the Mortgaged Property which may be destroyed by any casualty, or become damaged, worn or dilapidated, or which may be affected by any proceeding of the character referred to in Section 7 hereof, and Mortgagor shall complete and pay for any structure at any time in the process of construction or repair on the Premises.  Mortgagor shall not initiate, join in, acquiesce in, or consent to any change in any private restrictive covenant, zoning law or other public or private restriction, limiting or defining the uses which may be made of the Mortgaged Property or any part thereof.  If under applicable zoning provisions the use of all or any portion of the Mortgaged Property is or shall become a nonconforming use, Mortgagor will not cause or permit such nonconforming use to be discontinued or abandoned without the express written consent of Mortgagee.

### SECTION 10. **Transfer or Encumbrance of the Mortgaged Property.**

(a)    Mortgagor acknowledges that Mortgagee has examined and relied on the creditworthiness of Mortgagor and experience of Mortgagor in owning and operating properties such as the Mortgaged Property in agreeing to make the loan secured hereby, and that Mortgagee will continue to rely on Mortgagor's ownership of the Mortgaged Property as a means of maintaining the value of the Mortgaged Property as security for repayment of the Debt.  Mortgagor acknowledges that Mortgagee has a valid interest in maintaining the value of the Mortgaged Property so as to ensure that, should Mortgagor default in the repayment of the Debt, Mortgagee can recover the Debt by a sale of the Mortgaged Property.  Mortgagor shall not, without the prior written consent of Mortgagee, which consent may be withheld in Mortgagee's sole discretion, have the right to sell, transfer, convey, alienate, mortgage, encumber, pledge or otherwise transfer the Mortgaged Property or any part thereof or permit the Mortgaged Property or any part thereof to be sold, conveyed, alienated, mortgaged, encumbered, pledged or otherwise transferred.

(b)    A sale, conveyance, alienation, mortgage, encumbrance, pledge or transfer within the meaning of this Section 10 shall be deemed to include (i) an installment sales agreement wherein Mortgagor agrees to sell the Mortgaged Property or any part thereof for a price to be paid in installments; (ii) an agreement by Mortgagor leasing all or a substantial part of

the Mortgaged Property for other than actual occupancy by a space tenant thereunder or a sale, assignment or other transfer of, or the grant of a security interest in, Mortgagor's right, title and interest in and to any Leases or any Rents; (iii) if Mortgagor, any Guarantor (hereinafter defined), or any general partner of Mortgagor or Guarantor is a corporation, the voluntary or involuntary sale, conveyance or transfer of such corporation's stock (or an interest in any entity directly or indirectly controlling such corporation by operation of law or otherwise) or the creation or issuance of new stock by which any of such corporation's stock shall be vested in a party or parties who are not now stockholders; (iv) if Mortgagor, any Guarantor or any general partner of Mortgagor or any Guarantor is a limited or general partnership or joint venture, the change, removal or resignation of a general partner or managing partner or the direct or indirect transfer of the partnership interest of any general partner or managing partner; (v) if Mortgagor, any Guarantor or any member of Mortgagor or any Guarantor is a limited liability company, the change, removal or resignation of a member or manager or the transfer of an interest of any member or manager (or an interest in any entity directly or indirectly controlling such limited liability company by operation of law or otherwise) or the creation or issuance of new limited liability company membership interests by which any of such corporation's membership interests shall be vested in a party or parties who are not now members and (vi) any direct or indirect pledge hypothecation, assignment, transfer or other encumbrance of any ownership interest in Mortgagor.

(c)     Mortgagee reserves the right to condition the consent required hereunder upon a modification of the terms hereof and on assumption of this Mortgage as so modified by the proposed transferee, payment of a transfer fee, or such other conditions as Mortgagee shall determine in its sole discretion to be in the interest of Mortgagee.  Mortgagee shall not be required to demonstrate any actual impairment of its security or any increased risk of default hereunder in order to declare the Debt immediately due and payable upon Mortgagor's sale, conveyance, alienation, mortgage, encumbrance, pledge or transfer of the Mortgaged Property without Mortgagee's consent.  This provision shall apply to every sale, conveyance, alienation, mortgage, encumbrance, pledge or transfer of the Mortgaged Property regardless of whether voluntary or not, or whether or not Mortgagee has consented to any previous sale, conveyance, alienation, mortgage, encumbrance, pledge or transfer of the Mortgaged Property.

SECTION 11. **Estoppel Certificates.**

(a)     After request by Mortgagee, Mortgagor, within ten (10) days, shall furnish Mortgagee or those making requests by or on behalf of or through Mortgagee with a statement, duly acknowledged and certified, setting forth (i) the amount of the original principal amount of the Note, (ii) the unpaid principal amount of the Note, (iii) the rate of interest of the Note, (iv) the date installments of interest and/or principal were last paid, (v) any offsets or defenses to the payment of the Debt, if any, and (vi) that the Note and this Mortgage are valid, legal and binding obligations and have not been modified or if modified, giving particulars of such modification.

(b)     After request by Mortgagee, Mortgagor, within ten (10) days, will furnish Mortgagee with estoppel certificates from any lessees under the Leases as required by their respective Leases.

### SECTION 12. **Changes in the Laws Regarding Taxation.**

If any law is enacted or adopted or amended after the date of this Mortgage which deducts the Debt from the value of the Mortgaged Property for the purpose of taxation or which imposes a tax, either directly or indirectly, on the Debt or Mortgagee's interest in the Mortgaged Property, Mortgagor will pay such tax, with interest and penalties thereof, if any. In the event Mortgagee is advised by counsel chosen by it that the payment of such tax or interest and penalties by Mortgagor would be unlawful or taxable to Mortgagee or unenforceable or provide the basis for a defense of usury, then in any such event, Mortgagee shall have the option, by written notice of not less than ninety (90) days, to declare the Debt immediately due and payable.

### SECTION 13. **No Credits on Account of the Debt.**

Mortgagor will not claim or demand or be entitled to any credit or credits on account of the Debt for any part of the Taxes or Other Charges assessed against the Mortgaged Property, or any part thereof, and no deduction shall otherwise be made or claimed from the assessed value of the Mortgaged Property, or any part thereof, for real estate tax purposes by reason of this Mortgage or the Debt. In the event such claim, credit or deduction shall be required by law, Mortgagee shall have the option, by written notice of not less than ninety (90) days, to declare the Debt immediately due and payable.

### SECTION 14. **Documentary Stamps.**

If at any time the United States of America, any State thereof or any subdivision of any such State shall require revenue or other stamps to be affixed to the Note or this Mortgage, or impose any other tax or charge on the same, Mortgagor will pay for the same, with interest and penalties thereon, if any.

### SECTION 15. **Usury Laws.**

This Mortgage and the Note are subject to the express condition that at no time shall Mortgagor be obligated or required to pay interest on the Debt at a rate which could subject the holder of the Note to either civil or criminal liability as a result of being in excess of the maximum interest rate which Mortgagor is permitted by applicable law to contract or agree to pay. If by the terms of either this Mortgage or the Note, Mortgagor is at any time required or obligated to pay interest on the Debt at a rate in excess of such maximum rate, the rate of interest under the same shall be deemed to be immediately reduced to such maximum rate and the interest payable shall be computed at such maximum rate and all prior interest payments in excess of such maximum rate shall be applied and shall be deemed to have been payments in reduction of the principal balance of the Note.

### SECTION 16. **Books and Records.**

(a)     The Mortgagor (and Guarantors, if any) shall keep proper books, records and accounts with respect to the operation of the Mortgaged Property in accordance with generally accepted accounting principles and shall furnish to the Mortgagee (i) within ninety (90) days after the end of each fiscal year of Mortgagor and at any other time upon Mortgagee's

request, financial statements for the operation of the Mortgaged Property, including a balance sheet, a statement of income and expenses of the Mortgaged Property and a statement of changes in financial position, each in reasonable detail and certified by Mortgagor (or a principal of Mortgagor if Mortgagor is not an individual) under penalty of perjury, to be true and complete, and, if Mortgagee shall require audited by an independent certified public accountant; (ii) within thirty (30) days following the close of each calendar quarter, quarter-annual financial statements (including a certified rent roll) in form satisfactory to the Mortgagee, which shall disclose in reasonable detail all earnings and expenses with respect to the operation of the Mortgaged Property certified by Mortgagor (or a principal of Mortgagor if Mortgagor is not an individual) under penalty of perjury, to be true and complete; (iii) together with the foregoing financial statements and at any other time upon Mortgagee's request, a rent schedule for the Mortgaged Property in form acceptable to Mortgagee, certified by Mortgagor (or a principal of Mortgagor if Mortgagor is not an individual) under penalty of perjury, to be true and complete, showing the name of each tenant, the space occupied, the Lease expiration date, the rent payable, the rent paid and any other information requested by Mortgagee; (iv) upon Mortgagee's request, financial statements for any principal of Mortgagor and Guarantor in the form set forth above; (v) upon Mortgagee's request, an accounting of all security deposits held in connection with any Lease of any part of the Mortgaged Property, including the name and identification number of the accounts in which such security deposits are held, name and address of the financial institutions in which such security deposits are held and the name of the person to contact at such financial institutions, along with any authority or release necessary for Mortgagee to obtain information regarding such accounts directly from such financial institutions; and (vi) such other financial information as Mortgagee may request.

(b)     Upon the death of any Guarantor who is an individual, Mortgagor shall give prompt written notice to Mortgagee (i.e., at least within thirty (30) days following his or her death), setting forth the date of death, the state and county where the deceased Guarantor's estate is being administered, and, if then known, the name(s) and address(es) of the executor(s) or administrator(s) appointed to administer the estate of such deceased Guarantor.

## SECTION 17. **Performance of Other Agreements.**

Mortgagor shall observe and perform each and every term to be observed or performed by Mortgagor pursuant to the terms of any agreement or recorded instrument affecting or pertaining to the Mortgaged Property.

## SECTION 18. **Further Acts, etc.**

Mortgagor will, at the cost of Mortgagor, and without expense to Mortgagee, do, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignments, transfers and assurances as Mortgagee shall, from time to time, require, for the better assuring, conveying, assigning, transferring, and confirming unto Mortgagee the property and rights hereby mortgaged, given, granted, bargained, sold, alienated, conveyed, confirmed, pledged, assigned and hypothecated or intended now or hereafter so to be, or which Mortgagor may be or may hereafter become bound to convey or assign to Mortgagee, or for carrying out the intention or facilitating the performance of the terms of this Mortgage or for filing, registering or recording this Mortgage. Mortgagor, on demand,

will execute and deliver and hereby authorizes Mortgagee to execute in the name of Mortgagor or without the signature of Mortgagor to the extent Mortgagee may lawfully do so, one or more financing statements, chattel mortgages or other instruments, to evidence more effectively the security interest of Mortgagee in the Mortgaged Property. Mortgagor grants to Mortgagee an irrevocable power of attorney coupled with an interest for the purpose of exercising and perfecting any and all rights and remedies available to Mortgagee at law and in equity, including without limitation such rights and remedies available to Mortgagee pursuant to this Section 18.

SECTION 19. **Recording of This Mortgage, etc.**

Mortgagor forthwith upon the execution and delivery of this Mortgage and thereafter, from time to time, will cause this Mortgage, and any security instrument creating a lien or security interest or evidencing the lien hereof upon the Mortgaged Property and each instrument of further assurance to be filed, registered or recorded in such manner and in such places as may be required by any present or future law in order to publish notice of and fully to protect the lien or security interest hereof upon, and the interest of Mortgagee in, the Mortgaged Property. Mortgagor will pay all filing, registration or recording fees, and all expenses (including, but not limited to, attorney's fees) incident to the preparation, execution and acknowledgement of this Mortgage, any mortgage supplemental hereto, any security instrument with respect to the Mortgaged Property, and any instrument of further assurance, and all federal, state, county and municipal, taxes, duties, imposts, assessments and charges arising out of or in connection with the execution and delivery of this Mortgage, any mortgage supplemental hereto, any security instrument with respect to the Mortgaged Property or any instrument of further assurance, except where prohibited by law so to do. Mortgagor shall hold harmless and indemnify Mortgagee, its successors and assigns, against any liability incurred by reason of the imposition of any tax on the making and recording of this Mortgage.

SECTION 20. **Prepayment.**

The Debt may not be prepaid in whole or in part except in accordance with the terms and conditions contained in the Note.

SECTION 21. **Events of Default.**

The Debt shall become immediately due and payable at the option of Mortgagee upon any one or more of the following events (each being an "**Event of Default**", and, collectively, "**Events of Default**"):

(a)     if any portion of the Debt is not paid when the same is due and payable;

(b)     if any of the Taxes or Other Charges are not paid when the same are due and payable;

(c)     if the Policies are not kept in full force and effect, or if the Policies are not assigned and delivered to Mortgagee upon request;

- 17 -

(d)      if Mortgagor violates or does not comply with any of the provisions of Sections 3, 7, 8, 9, 10, 11, 14, 19, 35 or 36;

(e)      if any representation or warranty of Mortgagor, or of any person guaranteeing payment of the Debt or any portion thereof or performance by Mortgagor of any of the terms of this Mortgage (a "**Guarantor**"), made herein or in any such guaranty, or in any certificate, report, financial statement or other instrument or document furnished to Mortgagee shall have been false or misleading in any material respect when made;

(f)      if Mortgagor or any Guarantor shall make an assignment for the benefit of creditors or if Mortgagor shall generally not be paying its debts as they become due;

(g)      if a receiver, liquidator or trustee of Mortgagor or of any Guarantor shall be appointed or if Mortgagor or any Guarantor shall be adjudicated a bankrupt or insolvent, or if any petition for bankruptcy, reorganization or arrangement pursuant to federal bankruptcy law, or any similar federal or state law, shall be filed by or against, consented to, or acquiesced in by, Mortgagor or any Guarantor or if any proceeding for the dissolution or liquidation of Mortgagor or of any Guarantor shall be instituted; however, if such appointment, adjudication, petition or proceeding was involuntary and not consented to by Mortgagor or such Guarantor, upon the same not being discharged, stayed or dismissed within thirty (30) days;

(h)      if Mortgagor shall be in default under any other mortgage or security agreement covering any part of the Mortgaged Property whether it be superior or junior in lien to this Mortgage;

(i)      if the Mortgaged Property becomes subject to any mechanic's, materialman's liens or other lien other than a lien for local real estate taxes and assessments not then due and payable and such lien shall remain undischarged of record (by payment, bonding or otherwise) within ten (10) days;

(j)      if Mortgagor fails to cure promptly any violations of laws or ordinances affecting or which may be interpreted to affect the Mortgaged Property;

(k)      if Mortgagor shall be in default under any other term, covenant or condition of the Note, this Mortgage or the Other Security Documents;

(l)      if Mortgagor causes the Mortgaged Property and/or the ownership interests in Mortgagor (whether direct or indirect) to be used as collateral for any additional financing not set forth hereunder;

(m)      if Guarantor or any member of Mortgagor is arrested in connection with a felony criminal offense or the death or incapacity of any Guarantor;

(n)      if an Event of Default occurs under the Mezzanine Loan Agreement and/or Pledge Agreement, as such terms are defined herein;

(o)      except as permitted in this Mortgage, the actual or threatened alteration, improvement, demolition or removal of any of the Improvements without the prior consent of Mortgagee; and

(p)      if Mortgagor fails, within six (6) months from the date hereof, to pay all outstanding Taxes, Other Charges and any other senior liens encumbering the Mortgaged Property. If Mortgagor fails to do so, the interest rate on the Loan shall retroactively accrue to twenty-four percent (24%) per annum from the origination date of the Loan in accordance with the terms of the Note.

SECTION 22. **Remedies of Mortgagee.**

(a) Upon the occurrence of any Event of Default, (x) Mortgagor will pay, from the date of that Event of Default, and until the entire Debt is paid in full, whether prior to or subsequent to the entry of a judgment of foreclosure and sale and the satisfaction of any deficiency judgment, interest on the unpaid principal balance of the Note at the rate of Twenty-Four percent (24%) per annum or at the maximum interest rate which Mortgagor may by law pay, whichever is lower, (the **"Default Rate"**); and (y) Mortgagee may take such action, without notice or demand, as it deems advisable to protect and enforce its rights against Mortgagor and in and to the Mortgaged Property by Mortgagee itself or otherwise, including, without limitation, the following actions, each of which may be pursued concurrently or otherwise, at such time and in such order as Mortgagee may determine, in its sole discretion, without impairing or otherwise affecting the other rights and remedies of Mortgagee:

(i)      declare the entire Debt to be immediately due and payable;

(ii)     institute a proceeding or proceedings, judicial or nonjudicial, by advertisement or otherwise, for the complete foreclosure of this Mortgage in which case the Mortgaged Property or any interest therein may be sold for cash or upon credit in one or more parcels or in several interests or portions and in any order or manner; notwithstanding the foregoing, upon default of the Mortgage or the Note, or other obligation secured thereby, Mortgagee shall have the right to sell the Mortgaged Property by power of sale hereby granted pursuant to Article 14 of the New York Real Property Actions and Proceedings Law or any other statute authorizing nonjudicial foreclosure.

(iii)    with or without entry, to the extent permitted and pursuant to the procedures provided by applicable law, institute proceedings for the partial foreclosure of this Mortgage for the portion of the Debt then due and payable, subject to the continuing lien of this Mortgage for the balance of the Debt not then due;

(iv)    sell for cash or upon credit the Mortgaged Property or any part thereof and all estate, claim, demand, right, title and interest of

Mortgagor therein and rights of redemption thereof, pursuant to the power of sale or otherwise, at one or more sales, as an entirety or in parcels, at such time and place, upon such terms and after such notice thereof as may be required or permitted by law;

(v)     institute an action, suit or proceeding in equity for the specific performance of any covenant, condition or agreement contained herein, or in any of the Other Security Documents;

(vi)    recover judgment on the Note either before, during or after any proceedings for the enforcement of this Mortgage;

(vii)   apply for the appointment of a trustee, receiver, liquidator or conservator of the Mortgaged Property, without notice and without regard for the adequacy of the security for the Debt and without regard for the solvency of the Mortgagor, any Guarantor or of any person, firm or other entity liable for the payment of the Debt;

(viii)  enforce Mortgagee's interest in the Leases and Rents and enter into or upon the Mortgaged Property, either personally or by its agents, nominees or attorneys and dispossess Mortgagor and its agents and servants therefrom, and thereupon Mortgagee may (A) use, operate, manage, control, insure, maintain, repair, restore and otherwise deal with all and every part of the Mortgaged Property and conduct the business thereat; (B) complete any construction on the Mortgaged Property in such manner and form as Mortgagee deems advisable; (C) make alterations, additions, renewals, replacements and improvements to or on the Mortgaged Property; (D) exercise all rights and powers of Mortgagor with respect to the Mortgaged Property, whether in the name of Mortgagor or otherwise, including, without limitation, the right to make, cancel, enforce or modify Leases, obtain and evict tenants, and demand, sue for, collect and receive all Rents; and (E) apply the receipts from the Mortgaged Property to the payment of Debt, after deducting therefrom all expenses (including, without limitation, reasonable attorneys' fees and disbursements) incurred in connection with the aforesaid operations and all amounts necessary to pay the taxes, assessments insurance and other charges in connection with the Mortgaged Property, as well as just and reasonable compensation for the services of Mortgagee, its counsel, agents and employees; or

(ix)    pursue such other rights and remedies as may be available at law or in equity or under the UCC.

In the event of a sale, by foreclosure or otherwise, of less than all of the Mortgaged Property, this Mortgage shall continue as a lien on the remaining portion of the Mortgaged Property.

(b)     The proceeds of any sale made under or by virtue of this Section 22, together with any other sums which then may be held by Mortgagee under this Mortgage, whether under the provisions of this Section 22 or otherwise, shall be applied by Mortgagee to the payment of the Debt in such priority and proportion as Mortgagee in its sole discretion shall deem proper.

(c)     Mortgagee may adjourn from time to time any sale by it to be made under or by virtue of this Mortgage by announcement at the time and place appointed for such sale or for such adjourned sale or sales; and, except as otherwise provided by any applicable provision of law, Mortgagee, without further notice or publication, may make such sale at the time and place to which the same shall be so adjourned.

(d)     Upon the completion of any sale or sales pursuant hereto in accordance with all applicable laws, Mortgagee, or an officer of any court empowered to do so, shall execute and deliver to the accepted purchaser or purchasers a good and sufficient instrument, or good and sufficient instruments, conveying, assigning and transferring all estate, right, title and interest in and to the property and rights sold. Any sale or sales made under or by virtue of this Section 22, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of Mortgagor in and to the properties and rights so sold, and shall be a perpetual bar both at law and in equity against Mortgagor and against any and all persons claiming or who may claim the same, or any part thereof from, through or under Mortgagor.

(e)     Upon any sale made under or by virtue of this Section 22, whether made under a power of sale or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Mortgagee may bid for and acquire the Mortgaged Property or any part thereof and in lieu of paying cash therefor may make settlement for the purchase price by crediting upon the Debt the net sales price after deducting therefrom the expenses of the sale and costs of the action and any other sums which Mortgagee is authorized to deduct under this Mortgage and the Other Security Documents.

(f)     No recovery of any judgment by Mortgagee and no levy of an execution under any judgment upon the Mortgaged Property or upon any other property of Mortgagor shall affect in any manner or to any extent the lien of this Mortgage upon the Mortgaged Property or any part thereof, or any liens, rights, powers or remedies of Mortgagee hereunder, but such liens, rights, powers and remedies of Mortgagee shall continue unimpaired as before.

(g)     Mortgagee may terminate or rescind any proceeding or other action brought in connection with its exercise of the remedies provided in this Section 22 at any time before the conclusion thereof, as determined in Mortgagee's sole discretion and without prejudice to Mortgagee.

(h)     Mortgagee may resort to any remedies and the security given by the Note, this Mortgage or in any of the Other Security Documents in whole or in part, and in such portions and in such order as determined by Mortgagee's sole discretion.  No such action shall in any way be considered a waiver of any rights, benefits or remedies evidenced or provided by the Note, this Mortgage or in any of the Other Security Documents.  The failure of Mortgagee to exercise any right, remedy or option provided in the Note, this Mortgage or any of the Other Security Documents shall not be deemed a waiver of such right, remedy or option or of any covenant or obligation secured by the Note, this Mortgage or any of the Other Security Documents.  No acceptance by Mortgagee of any payment after the occurrence of any Event of Default and no payment by Mortgagee of any obligation for which Mortgagor is liable hereunder shall be deemed to waive or cure any Event of Default with respect to Mortgagor, or Mortgagor's liability to pay such obligation.  No sale of all or any portion of the Mortgaged Property, no forbearance on the part of Mortgagee, and no extension of time for the payment of the whole or any portion of the Debt or any other indulgence given by Mortgagee to Mortgagor, shall operate to release or in any manner affect the interest of Mortgagee in the remaining Mortgaged Property or the liability of Mortgagor to pay the Debt.  No waiver by Mortgagee shall be effective unless it is in writing and then only to the extent specifically stated.  All costs and expenses of Mortgagee in exercising its rights and remedies under this Section 22 (including, without limitation, reasonable attorneys' fees and disbursements to the extent permitted by law), shall be paid by Mortgagor immediately upon notice from Mortgagee, with interest at the Default Rate for the period after notice from Mortgagee and such costs and expenses shall constitute a portion of the Debt and shall be secured by this Mortgage.

(i)     The interests and rights of Mortgagee under the Note, this Mortgage or any of the Other Security Documents shall not be impaired by any indulgence, including, without limitation, (i) any renewal, extension or modification which Mortgagee may grant with respect to any of the Debt, (ii) any surrender, compromise, release, renewal, extension, exchange or substitution which Mortgagee may grant with respect to the Mortgaged Property or any portion thereof; or (iii) any release or indulgence granted to any maker, endorser, Guarantor or surety of any of the Debt.

SECTION 23. **Sale of Mortgaged Property; Multiple Collateral.**

(a)     If the Mortgaged Property consists of two or more distinct parcels and this Mortgage is foreclosed, whether pursuant to the power of sale herein granted to Mortgagee, or otherwise, the Mortgaged Property, or any interest therein, may, at the discretion of Mortgagee, be sold in one or more parcels or in several interests or portions and in any order or manner as the Mortgagee may elect and specify in the notice of sale.

(b)     If the indebtedness secured by this Mortgage is also secured by one or more other mortgages on property consisting of more than one functionally separate and distinct property and an Event of Default occurs under this Mortgage or any such other mortgage which is cross-defaulted with this Mortgage, upon a foreclosure of this Mortgage and such other mortgages, whether pursuant to a power of sale or otherwise, the Mortgaged Property, or any

interest therein, and the property encumbered by such other mortgages may, at the discretion of Mortgagee, be sold in the order designated by Mortgagee in the notice of sale.

SECTION 24. **Right to Cure Defaults.**

Upon the occurrence of any Event of Default, or if Mortgagor fails to make any payment or to do any act as herein provided, Mortgagee may, but without any obligation hereunder, make or do the same in such manner and to such extent as Mortgagee may deem necessary to protect the security hereof. Mortgagee is authorized to enter upon the Mortgaged Property for such purposes, or appear in, defend, or bring any action or proceeding to protect its interest in the Mortgaged Property or to foreclose the Mortgage or collect the Debt, and the cost and expense thereof (including reasonable attorneys' fees to the extent permitted by law), with interest, shall constitute a portion of the Debt and shall be due and payable to Mortgagee upon demand. All such costs and expenses incurred by Mortgagee in remedying such Event of Default or in appearing in, defending, or bringing any such action or proceeding shall bear interest at the Default Rate, for the period from the date that such cost or expense was incurred by Mortgagee to the date of payment to Mortgagee, as provided in Section 22 hereof. All such costs and expenses incurred by Mortgagee together with interest thereon calculated at the Default Rate shall be deemed to constitute a portion of the Debt and be secured by this Mortgage and the Other Security Documents and shall be immediately due and payable upon demand by Mortgagee therefor.

SECTION 25. **Late Payment Charge.**

If any portion of the Debt is not paid when due, Mortgagor shall pay to Mortgagee upon demand an amount equal to ten percent (10%) of such unpaid portion of the Debt, to defray the expense incurred by Mortgagee in handling and processing such delinquent payment and to compensate Mortgagee for the loss of the use of such delinquent payment, and such amount shall be secured by this Mortgage and the Other Security Documents.

SECTION 26. **Prepayment After Event of Default.**

If following the occurrence of any Event of Default, Mortgagor shall tender payment of an amount sufficient to satisfy the Debt in whole or in part at any time prior to a foreclosure sale of the Mortgaged Property, and if at the time of such tender prepayment of the principal balance of the Note is not permitted by the Note, Mortgagor shall, in addition to the entire Debt, also pay to Mortgagee a sum equal to interest which would have accrued on the principal balance of the Note at the interest rate set forth in the Note from the date of such tender to the earlier of (i) the Maturity Date as defined in the Note, or (ii) the first day of the period during which prepayment of the principal balance of the Note would have been permitted together with a prepayment consideration equal to the prepayment consideration which would have been payable as of the first day of the period during which prepayment would have been permitted. If at the time of such tender prepayment of the principal balance of the Note is permitted, such tender by Mortgagor shall be deemed to be a voluntary prepayment of the principal balance of the Note, and Mortgagor shall, in addition to the entire Debt, also pay to Mortgagee the applicable prepayment consideration specified in the Note and this Mortgage.

SECTION 27. **Reasonable Use and Occupancy.**

In addition to the rights which Mortgagee may have herein, upon the occurrence of any Event of Default, Mortgagee, at its option, may require Mortgagor to pay monthly in advance to Mortgagee, or any receiver appointed to collect the Rents, the fair and reasonable rental value for the use and occupation of such part of the Mortgaged Property as may be occupied by Mortgagor or may require Mortgagor to vacate and surrender possession of the Mortgaged Property to Mortgagee or to such receiver and, in default thereof, Mortgagor may be evicted by summary proceedings or otherwise.

SECTION 28. **Right of Entry.**

Mortgagee and its agents shall have the right to enter and inspect the Mortgaged Property at all times.

SECTION 29. **Appointment of Receiver.**

Mortgagee, upon the occurrence of an Event of Default or in any action to foreclose this Mortgage or in any non-judicial foreclosure proceeding commenced pursuant to Article 14 of the Real Property Actions and Proceedings Law or upon the actual or threatened waste to any part of the Mortgaged Property, shall be entitled to the appointment of a receiver without notice and without regard to the value of the Mortgaged Property as security for the Debt, or the solvency or insolvency of any person liable for the payment of the Debt.

SECTION 30. **Security Agreement.**

This Mortgage is both a real property mortgage and a "security agreement" within the meaning of the UCC. The Mortgaged Property includes both real and personal property and all other rights and interests, whether tangible or intangible in nature, including the Intangibles, of Mortgagor in the Mortgaged Property. Mortgagor, by executing and delivering this Mortgage, has granted and hereby grants to Mortgagee, as security for the Debt, a security interest in the Mortgaged Property to the full extent that the Mortgaged Property may be subject to the UCC (said portion of the Mortgaged Property so subject to the UCC being called in this Section 30 the "**Collateral**"). If an Event of Default shall occur, Mortgagee, in addition to any other rights and remedies which it may have, shall have and may exercise immediately and without demand, any and all rights and remedies granted to a secured party upon default under the UCC, including, without limiting the generality of the foregoing, the right to take possession of the Collateral or any part thereof, and to take such other measures as Mortgagee may deem necessary for the care, protection and preservation of the Collateral. Upon request or demand of Mortgagee, Mortgagor shall at its expense assemble the Collateral and make it available to Mortgagee at a convenient place acceptable to Mortgagee. Mortgagor shall pay to Mortgagee on demand any and all expenses, including legal expenses and attorneys' fees, incurred or paid by Mortgagee in protecting its interest in the Collateral and in enforcing its rights hereunder with respect to the Collateral. Any notice of sale, disposition or other intended action by Mortgagee with respect to the Collateral sent to Mortgagor in accordance with the provisions hereof at least five (5) days prior to such action, shall constitute commercially reasonable notice to Mortgagor. The proceeds of any disposition of the Collateral, or any part thereof, may be applied by Mortgagee to the

payment of the Debt in such priority and proportions as Mortgagee in its discretion shall deem proper.

Mortgagor hereby gives to Mortgagee a continuing lien on, security interest in and right of set-off against all moneys, securities and other property of Mortgagor and the proceeds thereof, now on deposit or now or hereafter delivered, remaining with or in transit in any manner to Mortgagee, its correspondents, participants or its agents from or for Mortgagor, whether for safekeeping, custody, pledge, transmission, collection or otherwise or coming into possession of Mortgagee in any way, and also, any balance of any individual deposit account and credits of Mortgagor with, and any and all claims of Mortgagor against Mortgagee, at any time existing, as collateral security for the payment of the Debt and all of the other obligations of the Mortgagor under this Mortgage, including fees, contracted with or acquired by Mortgagee, whether joint, several, absolute, contingent, secured, matured or unmatured (for the purposes of this Section 30, collectively, the "Liabilities"), hereby authorizing Mortgagee at any time or times, without prior notice, to apply such balances, credits or claims, or any part thereof, to the Liabilities in such amounts as it may select, whether contingent, unmatured or otherwise, and whether any collateral security therefor is deemed adequate or not. The collateral security described herein shall be in addition to any collateral security described in any separate agreement executed in connection with this Mortgage.

### SECTION 31. **Actions and Proceedings.**

Mortgagee has the right to appear in and defend any action or proceeding brought with respect to the Mortgaged Property and to bring any action or proceeding, in the name and on behalf of Mortgagor, which Mortgagee, in its discretion, decides should be brought to protect its interest in the Mortgaged Property. Mortgagee shall, at its option, be subrogated to the lien of any mortgage or other security instrument discharged in whole or in part by the Debt, and any such subrogation rights shall constitute additional security for the payment of the Debt.

### SECTION 32. **Waiver of Jury Trial and Counterclaim.**

MORTGAGOR, TO THE FULL EXTENT PERMITTED BY LAW, DOES HEREBY KNOWINGLY, INTENTIONALLY AND VOLUNTARILY, WITH AND UPON THE ADVICE OF COMPETENT COUNSEL, WAIVES, RELINQUISHES AND FOREVER FORGOES THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, ARISING OUT OF, OR IN ANY WAY RELATING TO THIS AGREEMENT OR ANY CONDUCT, ACT OR OMISSION OF MORTGAGEE OR MORTGAGOR, OR ANY OF THEIR DIRECTORS, OFFICERS, PARTNERS, MEMBERS, EMPLOYEES, AGENTS OR ATTORNEYS, OR ANY OTHER PERSONS AFFILIATED WITH MORTGAGEE OR MORTGAGOR, IN EACH OF THE FOREGOING CASES, WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE. MORTGAGOR HEREBY WAIVES THE RIGHT TO ASSERT A COUNTERCLAIM IN ANY ACTION OR PROCEEDING BROUGHT AGAINST IT BY MORTGAGEE.

### SECTION 33. **Marshalling and Other Matters.**

Mortgagor hereby waives, to the extent permitted by law, the benefit of all

appraisement, valuation, stay, extension, reinstatement and redemption laws now or hereafter in force and all rights of marshalling in the event of any sale hereunder of the Mortgaged Property or any part thereof or any interest therein. Further, Mortgagor hereby expressly waives any and all rights of redemption from sale under any order or decree of foreclosure of the Mortgage on behalf of Mortgagor, and on behalf of each and every person acquiring any interest in or title to the Mortgaged Property subsequent to the date of this Mortgage and on behalf of all persons to the extent permitted by applicable law.

### SECTION 34. <u>Recovery of Sums Required To Be Paid.</u>

Mortgagee shall have the right from time to time to take action to recover any sum or sums which constitute a part of the Debt as the same become due, without regard to whether or not the balance of the Debt shall be due, and without prejudice to the right of Mortgagee thereafter to bring an action of foreclosure, or any other action, for a default or defaults by Mortgagor existing at the time such earlier action was commenced.

### SECTION 35. <u>Hazardous Materials.</u>

Mortgagor represents and warrants that, to the best of Mortgagor's knowledge, after due inquiry and investigation, (a) there are no "Hazardous Materials" (as such quoted term is hereinafter defined) on the Mortgaged Property, and (b) no owner or occupant nor any prior owner or occupant of the Mortgaged Property has received any notice or advice from any governmental agency or any source whatsoever with respect to Hazardous Materials on, from or affecting the Mortgaged Property. Mortgagor covenants that the Mortgaged Property shall be kept free of Hazardous Materials, and neither Mortgagor nor any occupant of the Mortgaged Property shall use, transport, store, dispose of or in any manner deal with Hazardous Materials on the Mortgaged Property. Mortgagor shall comply with, and ensure compliance by all occupants of the Mortgaged Property with, all applicable federal, state and local laws, ordinances, rules and regulations, and shall keep the Mortgaged Property free and clear of any liens imposed pursuant to such laws, ordinances, rules and regulations. In the event that Mortgagor receives any notice or advice from any governmental agency or any source whatsoever with respect to Hazardous Materials on, from or affecting the Mortgaged Property, Mortgagor shall immediately notify Mortgagee. Mortgagor shall conduct and complete all investigations, studies, sampling, and testing, and all remedial actions necessary to clean up and remove all Hazardous Materials from the Mortgaged Property in accordance with all applicable federal, state and local laws, ordinances, rules and regulations. The term "**Hazardous Materials**" as used in this Mortgage shall include, without limitation, asbestos, gasoline, petroleum products, explosives, radioactive materials, polychlorinated biphenyls or related or similar materials, or any other substance or material defined as a hazardous or toxic substance or material by any federal, state or local law, ordinance, rule or regulation. The obligations and liabilities of Mortgagor under this Section 35 shall survive any entry of a judgment of foreclosure or the delivery of a deed in lieu of foreclosure of this Mortgage.

### SECTION 36. <u>Indemnification.</u>

Mortgagor shall protect, defend, indemnify and save harmless Mortgagee from and against all liabilities, obligations, claims, damages, penalties, causes of action, costs and

expenses (including without limitation reasonable attorneys' fees and expenses), imposed upon or incurred by or asserted against Mortgagee by reason of (a) ownership of this Mortgage, the Mortgaged Property or any interest therein or receipt of any Rents; (b) any accident, injury to or death of persons or loss of or damage to property occurring in, on or about the Mortgaged Property or any part thereof or on the adjoining sidewalks, curbs, adjacent property or adjacent parking areas, streets or ways; (c) any use, nonuse or condition in, on or about the Mortgaged Property or any part thereof or on the adjoining sidewalks, curbs, adjacent property or adjacent parking areas, streets or ways; (d) any failure on the part of Mortgagor to perform or comply with any of the terms of this Mortgage; (e) performance of any labor or services or the furnishing of any materials or other property in respect of the Mortgaged Property or any part thereof; (f) the failure of any person to file timely with the Internal Revenue Service an accurate Form 1099-B, Statement for Recipients of Proceeds from Real Estate, Broker and Barter Exchange Transactions, which may be required in connection with this Mortgage, or to supply a copy thereof in a timely fashion to the recipient of the proceeds of the transaction in connection with which this Mortgage is made; (g) any claim for brokerage fees or other consideration from any broker in connection with the loan secured by this Mortgage, except to the extent, if any, Mortgagee may have agreed pursuant to a separate agreement to compensate the broker engaged by Mortgagor; (h) the presence, disposal, escape, seepage, leakage, spillage, discharge, emission, release, or threatened release of any Hazardous Materials, from, or affecting the Mortgaged Property or any other property; (i) any personal injury (including wrongful death) or property damage (real or personal) arising out of or related to such Hazardous Materials; (j) any lawsuit brought or threatened, settlement reached, or government order relating to such Hazardous Materials; or (k) any violation of laws, orders, regulations, requirements, or demands of government authorities, which are based upon or in any way related to such Hazardous Materials including, without limitation, the costs and expenses of any remedial action, attorney and consultant fees, investigation and laboratory fees, court costs, and litigation expenses. Any amounts payable to Mortgagee by reason of the application of this Section 36 shall become immediately due and shall bear interest at the Default Rate from the date loss or damage is sustained by Mortgagee until paid. The obligations of Mortgagor under this Section 36 shall survive any termination, satisfaction, assignment, entry of judgment of foreclosure or delivery of a deed in lieu of foreclosure of this Mortgage.

SECTION 37. **Notices.**

Except for any notice required under applicable law to be given in another manner, (a) any notice to Mortgagor, the Mortgagor's successors or assigns provided for in this Mortgage or in the Note or pursuant to Real Property Actions and Proceedings Law Article 14 in a proceeding to foreclose this Mortgage by power of sale shall be given in writing by sending such notice by a recognized overnight courier with postage, freight and any other charges paid, with a receipt therefor, addressed to Mortgagor at Mortgagor's address stated herein or at such other address as Mortgagor may designate by notice to Mortgagee as provided herein, and (b) any notice to Mortgagee shall be given in writing by sending such notice by a recognized overnight courier, with postage, freight and other charges paid, with a receipt therefor, addressed to Mortgagee at Mortgagee's address stated herein or to such other address as Mortgagee may designate by notice to Mortgagor as provided herein, with a copy of same given in the manner herein provided to Kriss & Feuerstein LLP., 360 Lexington Avenue, New York, New York

10017, Attn.: Jerold C. Feuerstein, Esq. Except for any notice deemed under applicable law to have been given at a different time, any notice provided for in this Mortgage shall be deemed to have been given to Mortgagor or Mortgagee on the earlier of (a) the first day after such notice is deposited with a courier in a manner designated herein or (b) the day such notice is actually received.

SECTION 38. **Authority.**

(a)    Mortgagor (and the undersigned representative of Mortgagor, if any) has full power, authority and legal right to execute this Mortgage, and to mortgage, give, grant, bargain, sell, alienate, enfeoff, convey, confirm, pledge, hypothecate and assign the Mortgaged Property pursuant to the terms hereof and to keep and observe all of the terms of this Mortgage on Mortgagor's part to be performed.

(b)    Mortgagor represents and warrants that Mortgagor is not a "foreign person" within the meaning of 1445(f)(3) of the Internal Revenue Code of 1986, as amended and the related Treasury Department regulations, including temporary regulations.

SECTION 39. **Consent to Jurisdiction.**

FOR ANY CLAIM, ACTION, OR DISPUTE ARISING UNDER, OR TO INTERPRET OR APPLY, THIS MORTGAGE, THE NOTE OR ANY OTHER SECURITY DOCUMENTS, OR TO RESOLVE ANY DISPUTE ARISING UNDER THE FOREGOING OR THE RELATIONSHIP BETWEEN THE PARTIES, MORTGAGOR IRREVOCABLY SUBMITS TO THE NONEXCLUSIVE JURISDICTION OF THE COURTS OF THE STATE OF NEW YORK AND THE UNITED STATES DISTRICT COURT LOCATED IN THE BOROUGH OF MANHATTAN IN NEW YORK CITY, NEW YORK, AND APPELLATE COURTS FROM ANY OF SUCH COURTS. MORTGAGOR IRREVOCABLY WAIVES ANY OBJECTION THAT IT MAY HAVE AT ANY TIME TO VENUE OF ANY SUCH SUIT, ACTION, OR PROCEEDING BROUGHT IN ANY SUCH COURT, INCLUDING ANY CLAIM THAT ANY SUCH SUIT, ACTION, OR PROCEEDING SO BROUGHT HAS BEEN BROUGHT IN AN INCONVENIENT FORUM. NOTHING IN THIS MORTGAGE, THE NOTE OR OTHER SECURITY DOCUMENTS SHALL BE DEEMED TO PRECLUDE MORTGAGEE FROM BRINGING ANY SUIT, ACTION, OR PROCEEDING RELATING TO THIS MORTGAGE, THE NOTE OR OTHER SECURITY DOCUMENTS OR THE DEBT IN ANY OTHER JURISDICTION WHERE MORTGAGEE COULD OTHERWISE PROPERLY BRING SUCH SUIT, ACTION, OR PROCEEDING. MORTGAGOR FURTHER CONSENTS AND AGREES TO SERVICE OF ANY SUMMONS, COMPLAINT OR OTHER LEGAL PROCESS IN ANY SUCH SUIT, ACTION OR PROCEEDING BY REGISTERED OR CERTIFIED U.S. MAIL, POSTAGE PREPAID, TO MORTGAGOR AT THE ADDRESS SET FORTH ON PAGE 1 HEREOF, AND CONSENTS AND AGREES THAT SUCH SERVICE SHALL CONSTITUTE IN EVERY RESPECT VALID AND EFFECTIVE SERVICE (BUT NOTHING HEREIN SHALL AFFECT THE VALIDITY OR EFFECTIVENESS OF PROCESS SERVED IN ANY OTHER MANNER PERMITTED BY LAW).

### SECTION 40. **Participation/Assignment of Interests in this Mortgage.**

Mortgagor acknowledges that Mortgagee may sell and assign participation interests or other types of interests in this Mortgage to one or more domestic or foreign banks, insurance companies, pension funds, trusts or other institutional lenders or other persons, parties or investors (including, but not limited to, grantor trusts, owner trusts, special purpose corporations, REMICs, real estate investment trusts or other similar or comparable investment vehicles as may be selected by Mortgagee in its sole and absolute discretion) on terms and conditions satisfactory to Mortgagee in its sole and absolute discretion. Mortgagor grants to Mortgagee, and shall cause each Guarantor and other person or party associated or connected with this Mortgage or the Collateral therefore to grant to Mortgagee the right to distribute on a confidential basis financial and other information concerning Mortgagor, each such Guarantor and other person or party and the property encumbered by this Mortgage and any other pertinent information with respect to this Mortgage to any party who has purchased a participation interest in this Mortgage who has expressed an interest in purchasing any such interest in this Mortgage.

Mortgagee may provide to any actual or potential purchaser, transferee, assignee, servicer, participant or investor or any rating agency, all documents and information which Mortgagee now has or may hereafter acquire relating to the Loan, Mortgagor, Guarantor any other party to the Loan or the Mortgaged Property which shall have been furnished by or on behalf of Mortgagor, Guarantor or any other party to the Loan, as Mortgagee in its discretion determines is desirable. Mortgagor shall cooperate with Mortgagee with the same, including providing such information and documents as Mortgagee may reasonably request.

### SECTION 41. **Waiver of Notice.**

Mortgagor shall not be entitled to any notices of any nature whatsoever from Mortgagee except with respect to matters for which this Mortgage specifically and expressly provides for the giving of notice by Mortgagee to Mortgagor and except with respect to matters for which Mortgagee is required by applicable law to give notice, and Mortgagor hereby expressly waives the right to receive any notice from Mortgagee with respect to any matter for which this Mortgage does not specifically and expressly provide for the giving of notice by Mortgagee to Mortgagor.

### SECTION 42. **Remedies of Mortgagor.**

In the event that a claim or adjudication is made that Mortgagee has acted unreasonably or unreasonably delayed acting in any case where by law or under the Note, this Mortgage or the Other Security Documents, it has an obligation to act reasonably or promptly, Mortgagee shall not be liable for any monetary damages, and Mortgagor's remedies shall be limited to injunctive relief or declaratory judgment. Under no circumstances shall Mortgagee and/or any of its parents, affiliates, subsidiaries or other related parties and/or any of their respective officers, directors, shareholders, agents, and/or employees (all of the foregoing being collectively referred to as the "Mortgagee Parties") have any personal liability in connection with the Note, this Mortgage and/or any of the other Security Documents or anything, matter or circumstance related thereto.

SECTION 43. **Sole Discretion of Mortgagee.**

Wherever pursuant to this Mortgage, Mortgagee exercises any right given to it to approve or disapprove, or any arrangement or term is to be satisfactory to Mortgagee, the decision of Mortgagee to approve or disapprove or to decide that arrangements or terms are satisfactory or not satisfactory shall be in the sole discretion of Mortgagee and shall be final and conclusive, except as may be otherwise expressly and specifically provided herein.

SECTION 44. **Non-Waiver.**

The failure of Mortgagee to insist upon strict performance of any term hereof shall not be deemed to be a waiver of any term of this Mortgage. Mortgagor shall not be relieved of Mortgagor's obligations hereunder by reason of (a) the failure of Mortgagee to comply with any request of Mortgagor or Guarantors to take any action to foreclose this Mortgage or otherwise enforce any of the provisions hereof or of the Note or the Other Security Documents, (b) the release, regardless of consideration, of the whole or any part of the Mortgaged Property, or of any person liable for the Debt or any portion thereof, or (c) any agreement or stipulation by Mortgagee extending the time of payment or otherwise modifying or supplementing the terms of the Note, this Mortgage, or the Other Security Documents. Mortgagee may resort for the payment of the Debt to any other security held by Mortgagee in such order and manner as Mortgagee, in its discretion, may elect. Mortgagee may take action to recover the Debt, or any portion thereof, or to enforce any covenant hereof without prejudice to the right of Mortgagee thereafter to foreclose this Mortgage. The rights of Mortgagee under this Mortgage shall be separate, distinct and cumulative and none shall be given effect to the exclusion of the others. No act of Mortgagee shall be construed as an election to proceed under any one provision herein to the exclusion of any other provision. Mortgagee shall not be limited exclusively to the rights and remedies herein stated but shall be entitled to every right and remedy now or hereafter afforded at law or in equity.

SECTION 45. **Security Deposits.**

Mortgagor shall establish with Mortgagee a rent security account to which shall be transferred and maintained all security deposits in connection with the Leases affecting the Mortgaged Property. Upon an Event of Default under this Mortgage, Mortgagee shall be permitted to utilize the security deposits in accordance with the applicable underlying leases.

SECTION 46. **No Oral Change.**

This Mortgage, and any provisions hereof, may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Mortgagor or Mortgagee, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

SECTION 47. **Liability.**

If Mortgagor consists of more than one person, the obligations and liabilities of

each such person hereunder shall be joint and several. This Mortgage shall be binding upon and inure to the benefit of Mortgagor and Mortgagee and their respective successors and assigns forever.

SECTION 48. **Inapplicable Provisions.**

If any term, covenant or condition of the Note or this Mortgage is held to be invalid, illegal or unenforceable in any respect, the Note and this Mortgage shall be construed without such provision.

SECTION 49. **Headings, etc.**

The headings and captions of various Sections of this Mortgage are for convenience of reference only and are not to be construed as defining or limiting, in any way, the scope or intent of the provisions hereof.

SECTION 50. **Duplicate Originals.**

This Mortgage may be executed in any number of duplicate originals and each such duplicate original shall be deemed to be an original.

SECTION 51. **Definitions.**

Unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, words used in this Mortgage may be used interchangeably in singular or plural form and the word "**Mortgagor**" shall mean "**each Mortgagor and any subsequent owner or owners of the Mortgaged Property or any part thereof or any interest therein**", the word "Mortgagee" shall mean "**Mortgagee and any subsequent holder of the Note**", the word "**person**" shall include an individual, corporation, limited liability company, partnership, trust, unincorporated association, government, governmental authority, and any other entity, and the words "**Mortgaged Property**" shall include any portion of the Mortgaged Property and any interest therein. Whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms, and the singular form of nouns and pronouns shall include the plural and vice versa.

SECTION 52. **Trust Fund.**

Mortgagor will receive the advances secured hereby and will hold the right to receive such advances as a trust fund to be applied first for the purposes of paying the "cost of improvement", as such quoted term is defined in the New York Lien Law and will apply the same first to the payment of such costs before using any part of the total of the same for any other purpose, and will comply with Section 13 of the New York Lien Law. Mortgagor hereby indemnifies and holds Mortgagee harmless from and against any loss or liability, cost or expense, including any judgments, attorneys' fees, costs of appeal bonds and printing costs, arising out of relating to any proceeding instituted by any claimant alleging a violation by Mortgagor of any applicable law, including any section of Article 3-A of the New York Lien Law.

SECTION 53. **Commercial Property.**

Mortgagor represents that this Agreement:

1.   [   ]   Covers real property principally improved or to be improved by one or more structures containing in the aggregate not more than six (6) residential dwelling units, each having its own separate cooking facilities (less than 6).

2.   [   ]   Does not cover real property improved as described above (more than 6).

SECTION 54. **Construction.**

THIS MORTGAGE HAS BEEN EXECUTED AND DELIVERED AT AND SHALL BE DEEMED TO HAVE BEEN MADE IN THE STATE OF NEW YORK AND THIS MORTGAGE, THE NOTE AND EACH OF THE OTHER SECURITY DOCUMENTS SHALL IN ALL RESPECTS BE GOVERNED, CONSTRUED, APPLIED AND ENFORCED IN ACCORDANCE WITH THE INTERNAL LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAW (OTHER THAN SECTION 5-1401 OF THE NEW YORK GENERAL OBLIGATIONS LAW).

SECTION 55. **Joint and Several Obligation.**

Notwithstanding anything to the contrary, the representations, warranties, covenants and/or agreements made by Mortgagor (should the Mortgagor consist of one or more individuals or entities), herein and/or in any of the other Security Documents and the liability of the Mortgagor hereunder or thereunder, is joint and several.

SECTION 56. **Purpose of Loan.**

Mortgagor represents to Mortgagee that the loan evidenced by the Note and secured by this Mortgage (the "**Loan**") is for business or commercial purposes only and not for personal, family, consumer or household purposes. Mortgagor acknowledges that Mortgagee has made the Loan to Mortgagor in reliance upon the above representation by Mortgagor. The above representation by Mortgagor will survive the closing and repayment of the Loan.

SECTION 57. **Felony Criminal Offense.**

The Mortgagor represents that no Guarantor or member of Mortgagor have ever been convicted of a felony criminal offense.

SECTION 58. **Patriot Act.**

Mortgagor will use its good faith and commercially reasonable efforts to comply with the Patriot Act (as defined below) and all applicable requirements of governmental authorities having jurisdiction of the Mortgagor and the Mortgaged Property, including those relating to money laundering and terrorism. Mortgagee shall have the right to audit the

Mortgagor's compliance with the Patriot Act and all applicable requirements of governmental authorities having jurisdiction of the Mortgagor and the Mortgaged Property, including those relating to money laundering and terrorism. In the event that the Mortgagor fails to comply with the Patriot Act or any such requirements of governmental authorities, then the Mortgagee may, at its option, cause the Mortgagor to comply therewith and any and all reasonable costs and expenses incurred by the Mortgagee in connection therewith shall be secured by this Mortgage and the other Loan Documents and shall be immediately due and payable. For purposes hereof, the term "**Patriot Act**" means the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism (USA PATRIOT ACT) Act of 2001, as the same may be amended from time to time, and corresponding provisions of future laws.

Neither the Mortgagor nor any partner in the Mortgagor or member of such partner nor any owner of a direct or indirect interest in the Mortgagor (a) is listed on any Government Lists (as defined below), (b) is a person who has been determined by competent authority to be subject to the prohibitions contained in Presidential Executive Order No. 13224 (Sept. 23, 2001) or any other similar prohibitions contained in the rules and regulations of OFAC (as defined below) or in any enabling legislation or other Presidential Executive Orders in respect thereof, (c) has been previously indicted for or convicted of any felony involving a crime or crimes of moral turpitude or for any Patriot Act Offense (as defined below), or (d) is not currently under investigation by any governmental authority for alleged criminal activity. For purposes hereof, the term "**Patriot Act Offense**" means any violation of the criminal laws of the United States of America or of any of the several states, or that would be a criminal violation if committed within the jurisdiction of the United States of America or any of the several states, relating to terrorism or the laundering of monetary instruments, including any offense under (a) the criminal laws against terrorism; (b) the criminal laws against money laundering, (c) the Bank Secrecy Act, as amended, (d) the Money Laundering Control Act of 1986, as amended, or the (e) Patriot Act. "Patriot Act Offense" also includes the crimes of conspiracy to commit, or aiding and abetting another to commit, a Patriot Act Offense. For purposes hereof, the term "**Government Lists**" means (i) the Specially Designated Nationals and Blocked Persons Lists maintained by Office of Foreign Assets Control ("**OFAC**"), (ii) any other list of terrorists, terrorist organizations or narcotics traffickers maintained pursuant to any of the Rules and Regulations of OFAC that Mortgagee notified Mortgagor in writing is now included in "Governmental Lists", or (iii) any similar lists maintained by the United States Department of State, the United States Department of Commerce or any other government authority or pursuant to any Executive Order of the President of the United States of America that Mortgagee notified Mortgagor in writing is now included in "Governmental Lists".

SECTION 59. **Entire Agreement.**

The Note, this Mortgage and the Other Security Documents constitute the entire understanding and agreement between Mortgagor and Mortgagee with respect to the transactions arising in connection with the Debt (as such term is defined in the Note) and supersede all prior written or oral understandings and agreements between Mortgagor and Mortgagee with respect thereto. Mortgagor hereby acknowledges that, except as incorporated in writing in the Note, this Mortgage and the Other Security Documents, there are not, and were not, and no persons are or were authorized by Mortgagee to make any representations, understandings, stipulations,

agreements or promises, oral or written, with respect to the transaction which is the subject of the Note, this Mortgage and the Other Security Documents. The Mortgagor further recognizes that, in general, borrowers who experience difficulties in honoring their loan obligations, in an effort to inhibit or impede lenders from exercising the rights and remedies available to lenders pursuant to mortgages, notes, loan agreements or other instruments evidencing or affecting loan transactions, frequently present in court the argument, without merit, that some loan officer or administrator of the lender made an oral modification or made some statement that could be interpreted as an extension or modification or amendment of one or more debt instruments and that the borrower relied to its detriment upon such "oral modification of the loan document". For that reason, and in order to protect the Mortgagee from such allegations in connection with the transactions contemplated by this Mortgage and in the Note and Other Security Documents, the Mortgagor acknowledges that this Mortgage, the Note, the Other Security Documents, and all instruments referred to in any of them can be extended, modified or amended only in writing executed by the Mortgagee and that none of the rights and benefits of the Mortgagee can be waived permanently except in a written document executed by the Mortgagee. The Mortgagor further acknowledges the Mortgagor's understanding that no officer or administrator of the mortgagee has the power or the authority from the Mortgagee to make an oral extension or modification or amendment of any such instrument or agreement on behalf of the Mortgagee.

SECTION 60. **Cross-Default.**

This Mortgage shall be and is hereby cross-defaulted as follows:

(a)     Simultaneously herewith Mortgagor's sole member, CLAY RIVERVIEW LLC, a New York limited liability company (the "**Mezzanine Loan Borrower**"), entered into that certain Mezzanine Loan Agreement in the principal sum of $4,850,000.00 with Mortgagee's affiliate **DUPONT STREET 2 LLC** (the "**Mezzanine Loan Agreement**"), and that certain Ownership Interests Pledge and Security Agreement (the "**Pledge Agreement**"), encumbering the Mezzanine Loan Borrower's membership interest in Mortgagor.

(b)     A Default or an Event of Default under the Note, this Mortgage or the Other Security Documents shall also constitute a Default or an Event of Default under the Mezzanine Loan Agreement and the Pledge Agreement.

(c)     A Default or an Event of Default under the Mezzanine Loan Agreement and/or the Pledge Agreement shall also constitute a Default or an Event of Default under the Note, this Mortgage or the Other Security Documents described herein.

(d)     This Mortgage shall be a first (1st) lien against the Mortgaged Property.

SECTION 61. **Financing Right of First Refusal.**

Mortgagor and Guarantor hereby grant to Mortgagee a right of first refusal with respect to any refinancing of the Debt or the Mortgaged Property (the "**First Refusal Right**"), whereby Mortgagee shall have the right but not the obligation (unless and until it commits in writing to do so) to provide replacement financing for the Debt on such terms as Mortgagee and Mortgagor may agree or on such terms as may be set forth in a bona fide executed letter of

intent, term sheet or loan commitment from another lender (which must be a third party lender, unaffiliated with, and unrelated to, Mortgagor or Guarantor) containing all of the material terms and conditions of the proposed refinancing (the "**Other Financing Offer**"). Should Mortgagor or Guarantor receive any such Other Financing Offer which it or they desire to pursue, same shall immediately be delivered to Mortgagee and Mortgagee shall have the right (but not the obligation), exercisable by Mortgagee within ten (10) business days of Mortgagee's receipt of the Other Financing Offer, to provide a loan offer for a refinancing of the Mortgaged Property on substantially the same terms and conditions as set forth in the Other Financing Offer. Should Mortgagee choose to exercise its First Refusal Right hereunder, Mortgagee shall have the right to contact said third party lender and verify the Other Financing Offer and the facts and information on which it was based and Mortgagor shall provide Mortgagee such executed releases and other documents as may be necessary to cause the third party lender to provide all relevant information to Mortgagee. Mortgagee shall be deemed to have properly and effectively exercised its First Refusal Right hereunder if it issues to Mortgagor and Guarantor, Mortgagee's term sheet or loan offer within ten (10) business days of Mortgagee's receipt of the Other Financing Offer. If Mortgagee fails to respond within said ten (10) business day period then Mortgagee shall be deemed to have waived or chosen not to exercise its First Refusal Right as to said Other Financing Offer but said First Refusal Right shall be deemed to have survived as to (a) any other or future Other Financing Offers received by Mortgagor, and (b) any modification to any Other Financing Offer previously delivered to Mortgagee.

SECTION 62. **Single Asset Real Estate.**

Mortgagor hereby represents and warrants that the Mortgaged Property constitutes "single asset real estate" as defined in, and pursuant to, Section 101(51B) of the United States Bankruptcy Code.

SECTION 63. **Savings Clause.**

Mortgagee hereby irrevocably agrees that the obligations of each Mortgagor under this Mortgage and the Note are limited to the maximum amount that would not render each Mortgagor's obligations subject to avoidance under applicable fraudulent conveyance provisions of the United States Bankruptcy Code. Each Mortgagor hereby represents that each of the respective Mortgaged Properties, based on appraisals thereof, are sufficient to secure the Debt. By virtue of the respective contributions of each of the Mortgaged Properties to the lien of this Mortgage, each Mortgagor hereby represents that each is solvent as of the date hereof. Nothing in this Section shall be construed so as to limit the obligations of the Guarantor under their guarantee(s).

SECTION 64. **Counterparts.**

To facilitate execution, this Mortgage may be executed in as many counterparts as may be convenient or required. It shall not be necessary that the signature and acknowledgment of each party, or that the signature and acknowledgment of all persons required to bind any party, appear on each counterpart. All counterparts shall collectively constitute single instrument. It shall not be necessary in making proof of this Mortgage to produce or account for more than a single instrument. It shall not be necessary in making proof of this Mortgage to produce or

account for more than a single counterpart containing the respective signatures and acknowledgment of, or on behalf of, each of the parties hereto.

SECTION 65. **Publicity.**

Mortgagor agrees that Mortgagee may issue press releases concerning its financing of the Mortgaged Property pursuant to the Note, this Mortgage and the Other Security Documents. Further, if Mortgagee is financing any construction at the Mortgaged Property, whether pursuant to the Note, this Mortgage or the Other Security Documents, Mortgagee shall be entitled to maintain a sign of reasonable dimension and location at the construction site advertising and promoting such financing.

SECTION 66. **Existing Mortgages and Notes.**

Mortgagor represents and warrants to Mortgagee that there is no existing default under the provisions of the Existing Mortgages or the Existing Notes, or in the performance of any of the terms, covenants, conditions or warranties thereof on the part of Mortgagor or the Mortgagee to be performed or observed. Mortgagor also covenants and warrants that there are no offsets, counterclaims or defenses against the indebtedness now unpaid or against the Existing Notes or the Existing Mortgages. Mortgagor covenants that Mortgagor is lawfully seized of a fee estate in the Mortgaged Property and has the right to consolidate, amend, restate and extend the Existing Notes and the Existing Mortgages. Mortgagor hereby ratifies and confirms that the Loan is evidenced by the Note, which consolidates, amends and restates the Existing Notes, and Mortgagee and Mortgagor hereby mutually covenant and agree that the lien of this Mortgage consolidates, amends, restates and extends the Existing Mortgages, which are hereby combined, consolidated, made equal and coordinated in lien so that together this Mortgage and Existing Mortgages shall constitute one mortgage on the Mortgaged Property in the principal sum of the Loan with interest thereon, and is to be paid in accordance with the terms hereof and the Note. Mortgagor assumes all of the obligations and agreements of the Existing Notes and Existing Mortgages. Mortgagor also assumes all of the obligations in all agreements, whether or not listed in Exhibit B, which consolidate, modify or extend the Existing Notes and Existing Mortgages. In the event that any of the notes secured by mortgages set forth in Exhibit B (the "Lost Notes"), were lost or misplaced by the current owner or its predecessor in interest and have not been delivered to the Mortgagee with the assignment of the mortgages hereinabove set forth, the Mortgagor hereby agrees that, notwithstanding the fact that the Lost Notes have not been delivered to the Mortgagee, the Mortgagor remains indebted to the Mortgagee in the full amount of the Loan as set forth hereinabove and as set forth in and evidenced by the Note, which amount includes the principal balance now remaining unpaid on the Lost Notes. The Mortgagor further agrees and hereby waives any and all claims and/or rights in any way relating to or arising from the Lost Notes whether as a defense in any action brought by the Mortgagee to enforce any of the terms of this Mortgage or collect the full amount due and owing under this Mortgage or the Note or otherwise. Mortgagor hereby indemnifies and holds the Mortgagee harmless from and against any and all costs, liabilities, claims, damages, loss and expenses, including attorney's fees and expenses which at any time may be made, suffered or incurred by the Mortgagee based upon the failure of the Mortgagee to hold, obtain or deliver the Lost Notes. Mortgagor hereby waives any and all rights and defenses, releases and indemnifies Mortgagee for, assumes liability for, and

agrees to pay, protect, defend and save Mortgagee harmless for, from and against, any and all liabilities, obligations, losses, damages, costs and expenses (including, without limitation, attorneys' fees), causes of action, suits, claims, demands and judgments of any nature or description whatsoever that may at any time be imposed upon, incurred by or awarded against Mortgagee as a result of Mortgagee not having possession of the Existing Notes, the Existing Mortgages, or any part of either thereof, or in connection with any lost note affidavit or similar document with regard to the Existing Notes or the Existing Mortgages or any assignment of any constituent note or mortgage. Mortgagor, for itself and for its successors and assigns, hereby forever waives any requirement that Mortgagee: (i) produce, deliver, display, indorse, exhibit, or otherwise demonstrate possession of the Existing Notes or prove due execution or authority to execute any assignment of any note or mortgage constituting the Existing Notes or the Existing Mortgages; or (ii) deliver any bond, security, indemnity, affidavit or other documentation in connection with the Existing Notes or the Existing Mortgages. Mortgagor will pay any amounts owing to Mortgagee pursuant to this Section 66 within ten (10) days after written demand therefor by Mortgagee.

SECTION 67. **Single Purpose Entity.**

Mortgagor's organizational documents shall provide that until such time that the Debt is paid in full that:

(a) Mortgagor has not owned, does not own and will not own any asset or property other than (i) the Mortgaged Property, and (ii) incidental personal property necessary for the ownership, management or operation of the Mortgaged Property.

(b) Mortgagor has not engaged, does not engage, and will not engage in any business other than the ownership, management and operation of the Mortgaged Property and Mortgagor will conduct and operate its business as presently conducted and operated.

(c) Mortgagor has not entered and is not a party to and will not enter into or be a party to any contract or agreement with any affiliate of Mortgagor, any constituent party of Mortgagor or any affiliate of any constituent party, except in the ordinary course of business and on terms and conditions that are disclosed to Mortgagee in advance and that are intrinsically fair, commercially reasonable and substantially similar to those that would be available on an arms-length basis with third parties other than any such party.

(d) Mortgagor has not incurred and will not incur any indebtedness other than (i) the Loan and (ii) unsecured trade payables and operational debt not evidenced by a note and in an aggregate amount not exceeding one percent (1%) of the original principal amount of the Loan at any one time; provided that any indebtedness incurred pursuant to sub-clause (ii) shall be (x) not more than sixty (60) days past due and (y) incurred in the ordinary course of business. No indebtedness other than the Loan may be secured (subordinate or pari passu) by the Mortgaged Property.

(e) Mortgagor has not made and will not make any loans or advances to any individual, sole proprietorship, partnership, limited liability partnership, joint venture, trust, unincorporated

- 37 -

organization, association, corporation, limited liability company, institution, entity, party or government (whether territorial, national, federal, state, county, city, municipal or otherwise, including, without limitation, any instrumentality, division, agency, body or department thereof) (including any affiliate or constituent party) (a "**Person**"), and has not acquired and shall not acquire obligations or securities of its affiliates.

(f) Mortgagor is and will remain solvent and Mortgagor has paid and will pay its debts and liabilities (including, as applicable, shared personnel and overhead expenses) from its assets as the same shall become due.

(g) Mortgagor has done or caused to be done and will do all things necessary to observe organizational formalities and preserve its existence, and Mortgagor will not (i) terminate or fail to comply with the provisions of its organizational documents, or (ii) unless Mortgagee has consented, amend, modify or otherwise change its partnership certificate, partnership agreement, articles of incorporation and bylaws, operating agreement, trust or other organizational documents.

(h) Mortgagor has maintained and will maintain all of its accounts, books, records, financial statements and bank accounts separate from those of its affiliates and any other Person. Mortgagor's assets have not been and will not be listed as assets on the financial statement of any other Person; provided, however, that Mortgagor's assets may be included in a consolidated financial statement of its affiliates if (i) appropriate notation shall be made on such consolidated financial statements to indicate the separateness of Mortgagor and such affiliates and to indicate that Mortgagor's assets and credit are not available to satisfy the debts and other obligations of such affiliates or any other Person, and (ii) such assets shall be listed on Mortgagor's own separate balance sheet. Mortgagor has and will file its own tax returns (to the extent Mortgagor is required to file any such tax returns) and will not file a consolidated federal income tax return with any other Person. Mortgagor has maintained and shall maintain its books, records, resolutions and agreements as official records.

(i) Mortgagor has been and will be, and has held and at all times will hold itself out to the public as, a legal entity separate and distinct from any other entity (including any affiliate of Mortgagor or any constituent party of Mortgagor), has corrected and shall correct any known misunderstanding regarding its status as a separate entity, has conducted and shall conduct business in its own name, has not identified and shall not identify itself or any of its affiliates as a division or part of the other, and has maintained and shall maintain and utilize separate stationery, invoices and checks bearing its own name.

(j) Mortgagor has maintained and will maintain adequate capital for the normal obligations reasonably foreseeable in a business of its size and character and in light of its contemplated business operations.

(k) Neither Mortgagor nor any constituent party has sought or will seek or effect the liquidation, dissolution, winding up, consolidation or merger, in whole or in part, of Mortgagor.

(l) Mortgagor has not commingled and will not commingle the funds and other assets of Mortgagor with those of any affiliate or constituent party or any other Person, and has held and will hold all of its assets in its own name.

(m) Mortgagor has maintained and will maintain its assets in such a manner that it will not be costly or difficult to segregate, ascertain or identify its individual assets from those of any affiliate or constituent party or any other Person.

(n) Mortgagor has not assumed or guaranteed or become obligated for the debts of any other Person and has not held itself out to be responsible for or have its credit available to satisfy the debts or obligations of any other Person, and Mortgagor will not assume or guarantee or become obligated for the debts of any other Person and does not and will not hold itself out to be responsible for or have its credit available to satisfy the debts or obligations of any other Person.

(o) Mortgagor hereby covenants and agrees that it will comply with or cause the compliance with, (i) all the representations, warranties and covenants contained within the Loan Documents, and (ii) all the organizational documents of Mortgagor.

(p) Mortgagor has not permitted and will not permit any affiliate or constituent party independent access to its bank accounts.

(q) Mortgagor has paid and shall pay the salaries of its own employees (if any) from its own funds and has and shall maintain a sufficient number of employees (if any) in light of its contemplated business operations.

(r) Mortgagor has compensated and shall compensate each of its consultants and agents from its funds for services provided to it and pay from its own assets all obligations of any kind incurred.

(s) Mortgagor has not, and without the unanimous consent of all of its members or managers will not, take any action that might reasonably be expected to cause Mortgagor to become insolvent.

(t) Mortgagor has allocated and will allocate fairly and reasonably any shared expenses, including shared office space.

(u) Notwithstanding any provision of the operating agreement or any amendment thereto, except in connection with the Loan or any prior mortgage financing that has been fully paid and discharged in full prior to the date hereof, Mortgagor has not pledged and will not pledge its assets for the benefit of any other Person.

(v) Mortgagor either (i) has no, and will have no, obligation to indemnify its officers, directors, managers, members, shareholders or partners, as the case may be, or (ii) if it has any such obligation, such obligation is fully subordinated to the Loan and will not constitute a claim against Mortgagor if cash flow in excess of the amount required to pay the Loan is insufficient to pay such obligation.

(w) Mortgagor will consider the interests of Mortgagor's creditors in connection with all limited liability company actions.

(x) Except as provided in the Loan Documents, Mortgagor has not and will not have any of its obligations guaranteed by any affiliate.

### SECTION 68. **Intentionally Omitted.**

### SECTION 69. **Maximum Principal Amount Secured.**

Notwithstanding anything to the contrary contained in this Mortgage, the Note or the other Loan Documents, the maximum amount of principal indebtedness secured by this Mortgage at the time of execution hereof or which under any contingency may become secured by this Mortgage at any time hereafter is $28,000,000.00, plus (a) taxes, charges or assessments which may be imposed by law upon the Mortgaged Property, (b) premiums on insurance policies covering the Mortgaged Property and (c) expenses incurred in upholding the lien of this Mortgage, including, but not limited to (1) the reasonable expenses of any litigation to prosecute or defend the rights and lien created by this Mortgage, (2) any amount, cost or charges to which Mortgagee becomes subrogated, upon payment, whether under recognized principles of law or equity, or under express statutory authority and (3) interest at the Default Rate or at the Interest Rate (in each case, as defined in the Note).

### SECTION 70. **New York Tax Law Section 256.**

If, by reason of the additional sums that may become secured by the lien of this Mortgage pursuant to the terms hereof, a court or other governmental authority having jurisdiction at any time shall determine that this Mortgage is subject to Section 256 of the Tax Law of the State of New York, then Mortgagee reserves the right, in its discretion, to elect not to have such additional sums secured by this Mortgage and thereby reduce the amount of the debt secured hereby to a definite amount equal to the principal amount of the Note, interest thereon at the rate provided in the Note, plus any disbursements made to protect the security of this Mortgage, with interest on such disbursements at the Default Rate, plus any other sums as by statute or judicial interpretation now or hereafter may be permitted to be secured by the lien of a mortgage without incurring any additional mortgage recording tax. Any election by Mortgagee to so reduce the indebtedness secured by this Mortgage shall in no event be deemed a release, waiver or discharge by Mortgagee of Mortgagor's obligation to pay or reimburse Mortgagee for such sums and such obligation shall continue unimpaired and shall be a recourse obligation of Mortgagor and any Guarantor, regardless of any other provisions set forth in this Mortgage, the Note or any guaranty of the obligations secured hereby that may limit recourse against Mortgagor or any other Person.

**[Remainder of Page Intentionally Left Blank]**

IN WITNESS WHEREOF, Mortgagor and Mortgagee have executed this Mortgage the day and year first above written.

MORTGAGOR:

DUPONT STREET DEVELOPERS LLC,
a New York limited liability company

By: _____
Name: Bo Jin Zhu
Title:   Authorized Signatory

MORTGAGEE:

DUPONT STREET 1 LLC

By: _____
Name:
Title:   Joshua Zegen
         Authorized Signatory

STATE OF NEW YORK     )
                            )  ss.:

COUNTY OF NEW YORK   )

On the 15 day of August, in the year 2017, before me, the undersigned, a Notary Public in and for said State, personally appeared Bo Jin Zhu, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

MARIA DI TORO
Notary Public, State of New York
No. 01DI6325059
Qualified in New York County
My Commission Expires 06-08-2019

**SEAL**

STATE OF NEW YORK     )
                            )  ss.:

COUNTY OF NEW YORK   )

On the 9th day of August, in the year 2017, before me, the undersigned, a Notary Public in and for said State, personally appeared Joshua Zegen personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

JIGANASA PARIKH-SILO
Notary Public, State of New York
No. 01PA6179443
Qualified in Richmond County
Certificate on file in New York County
Commission Expires 7-13-08

**SEAL**

## SCHEDULE A

## METES AND BOUNDS DESCRIPTION OF PROPERTY

ALL those certain plots, pieces or parcels of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, bounded and described as follows:

BEGINNING at the corner formed by the intersection of the easterly side of Franklin Street with the northerly side of Dupont Street;

RUNNING THENCE northerly, along the easterly side of Franklin Street, 191 feet 10-3/4 inches to the southerly side of Commercial Street;

THENCE northeasterly, along the southerly side of Commercial Street, 17 feet 0-1/4 inches to the southerly side of Clay Street;

THENCE easterly, along the southerly side of Clay Street, 410 feet;

THENCE southerly, parallel with Manhattan Avenue, 100 feet;

THENCE easterly, parallel with Dupont Street, 130 feet;

THENCE southerly, parallel with Manhattan Avenue, 100 feet to the northerly side of Dupont Street;

THENCE westerly, along the northerly side of Dupont Street, 555 feet to the corner the point or place of BEGINNING.

## SCHEDULE B

## SCHEDULE OF EXISTING MORTGAGES

1.  Mortgage and Security Agreement dated as of May 19, 2014, made by DuPont Street Developers LLC to Maxim Credit Group, LLC, in the principal sum of $25,000,000.00, and recorded in the Office of the Register of the City of New York, Kings County (the "Register's Office"), on May 22, 2014 as CRFN 2014000176361 (Mortgage Tax Paid: $700,000.00).

    Which Mortgage 1 was thereafter assigned by an Assignment of Mortgage dated December 9, 2016, by Maxim Credit Group, LLC to 49 Dupont Street DI LLC, and recorded in the Register's Office on December 28, 2016 as CRFN 2016000461014.

    Which Mortgage 1 was thereafter assigned by an Assignment of Mortgage dated as of August 11, 2017, by 49 Dupont Street DI LLC to Dupont Street 1 LLC, and intended to be recorded in the Register's Office immediately prior hereto.

2.  Gap Mortgage dated as of August 11, 2017, made by DuPont Street Developers LLC to Dupont Street 1 LLC, in the principal sum of $3,000,000.00, and intended to be recorded in the Register's Office immediately prior hereto.



2017081701029003001S9683

| SUPPORTING DOCUMENT COVER PAGE | PAGE 1 OF 1 |
|---|---|

**Document ID: 2017081701029003**    Document Date: 08-11-2017    Preparation Date: 08-17-2017
Document Type: AGREEMENT

---

**SUPPORTING DOCUMENTS SUBMITTED:**

Page Count

255 MORTGAGE TAX EXEMPT AFFIDAVIT    3

## AFFIDAVIT UNDER SECTION 255
## OF ARTICLE II OF THE TAX
## LAW OF THE STATE OF NEW YORK

**(Consolidated, Amended and Restated Mortgage and Security Agreement)**

STATE OF NEW YORK      )
                                 )   **ss.:**
COUNTY OF NEW YORK     )

Bo Jin Zhu (hereinafter, the "**Deponent**") being duly sworn, deposes and says:

He is the Authorized Signatory of DUPONT STREET DEVELOPERS LLC (hereinafter, the "**Owner**").

Owner owns a fee interest in the premises commonly known as 280 Franklin Street, Brooklyn, New York 11222; 10 Clay Street, Brooklyn, New York 11222; 14 Clay Street, Brooklyn, New York 11222; 22 Clay Street, Brooklyn, New York 11222; 26 Clay Street, Brooklyn, New York 11222; 30 Clay Street, Brooklyn, New York 11222; 32 Clay Street, Brooklyn, New York 11222; 93 Dupont Street, Brooklyn, New York 11222; 57 Dupont Street, Brooklyn, New York 11222; and 55 Dupont Street, Brooklyn, New York 11222 (collectively, the "**Premises**") more particularly described in a mortgage of even date herewith, and the undersigned is fully familiar with the facts and circumstances herein.

The Premises is encumbered by the following mortgages (collectively, the "**Existing Mortgages**"):

SEE SCHEDULE A ANNEXED HERETO AND MADE A PART HEREOF

That all mortgage tax on the Existing Mortgages was duly paid upon the recordation thereof.

The unpaid principal amount due under the Existing Mortgages is $25,000,000.00.

Owner has delivered to DUPONT STREET 1 LLC, a mortgage creating a new lien securing a new indebtedness in the amount of $3,000,000.00 (the "**New Mortgage**"). The New Mortgage is being presented for recording concurrently herewith and the mortgage tax is being paid concurrently herewith.

There is offered for recording simultaneously herewith a Consolidated, Amended and Restated Mortgage and Security Agreement (the "**Agreement**"), which consolidates the unpaid principal balance of the Existing Mortgages and the New Mortgage into a single first mortgage lien of $28,000,000.00.

The Agreement does not create or secure any new or further indebtedness or obligation other than the principal indebtedness or obligation secured by, or which under any contingency may be secured by, the Existing Mortgages and the New Mortgage.

2

WHEREFORE, your deponent respectfully requests that the Agreement be declared exempt from taxation pursuant to the provisions of Section 255 of Article II of the Tax Law of the State of New York.

_____
BO JIN ZHU

Sworn to before me this 16ᵗʰ day of August, in the year 2017

_____
NOTARY PUBLIC

MARIA DI TORO
Notary Public, State of New York
No. 01DI6325959
Qualified in New York County
My Commission Expires 06-08-2019

SEAL

## SCHEDULE A

## SCHEDULE OF MORTGAGES

1.  Mortgage and Security Agreement dated as of May 19, 2014, made by DuPont Street Developers LLC to Maxim Credit Group, LLC, in the principal sum of $25,000,000.00, and recorded in the Office of the Register of the City of New York, Kings County (the "Register's Office"), on May 22, 2014 as CRFN 2014000176361 (Mortgage Tax Paid: $700,000.00).

    Which Mortgage 1 was thereafter assigned by an Assignment of Mortgage dated December 9, 2016, by Maxim Credit Group, LLC to 49 Dupont Street DI LLC, and recorded in the Register's Office on December 28, 2016 as CRFN 2016000461014.

    Which Mortgage 1 was thereafter assigned by an Assignment of Mortgage dated as of August 11, 2017, by 49 Dupont Street DI LLC to Dupont Street 1 LLC, and intended to be recorded in the Register's Office immediately prior hereto.

2.  Gap Mortgage dated as of August 11, 2017, made by DuPont Street Developers LLC to Dupont Street 1 LLC, in the principal sum of $3,000,000.00, and intended to be recorded in the Register's Office immediately prior hereto.

    Which Mortgages 1 and 2 were thereafter consolidated into one joint lien in the principal sum of $28,000,000.00, pursuant to the terms of a Consolidated, Amended and Restated Mortgage and Security Agreement dated as of August 11, 2017, between DuPont Street Developers LLC and Dupont Street 1 LLC, and intended to be recorded in the Register's Office.

## FORBEARANCE AGREEMENT

**THIS FORBEARANCE AGREEMENT** (hereinafter, this "**Agreement**") made this 3rd day of October, in the year 2019 (the "**Effective Date**") by and among, **DUPONT STREET 2 LLC**, a Delaware limited liability company, its successors and/or assigns as their interests may appear having offices at 825 Third Avenue, 37th Floor, New York, New York 10022 (the "**Mezz Lender**"), **DUPONT STREET 1 LLC**, a Delaware limited liability company, its successors and/or assigns as their interests may appear having offices at 825 Third Avenue, 37th Floor, New York, New York 10022 ("**Land Loan Lender**" and together with the Mezz Lender, the "**Lender**"), **CLAY RIVERVIEW LLC**, a New York limited liability company having an address at 87-10 Queens Boulevard, Elmhurst, New York 11373 (the "**Mezz Borrower**"), **DUPONT STREET DEVELOPERS LLC**, a New York limited liability company having an address at 87-10 Queens Boulevard, Elmhurst, New York 11373 ( "**Land Loan Borrower**", and together with the Mezz Borrower, the "**Borrower**") and **BO JIN ZHU** having an address at 60 Henry Street, Apt 15C, New York, New York 10002 (the "**Guarantor**").

## RECITALS:

## LAND LOAN

**WHEREAS**, on August 11, 2017, the Land Loan Lender made a loan to Land Loan Borrower in the principal amount of $28,000,000.00 (the "**Land Loan**"), which Land Loan is evidenced by that certain Consolidated, Amended and Restated Note ("**Land Loan Note**").

**WHEREAS**, the Land Loan Note is secured by, among other things, that certain Consolidated, Amended and Restated Mortgage and Security Agreement ("**Land Loan Mortgage**") executed by **DUPONT STREET DEVELOPERS LLC** in favor of the Land Loan Lender in the principal amount of $28,000.000.00, which instruments encumber the premises know as 280 Franklin Street, 10, 14, 22, 26, 30 and 32 Clay Street and 93, 57 and 55 Dupont Street, Brooklyn, NY 11222 (collectively the "**Property**").

**WHEREAS**, the Land Loan Note is further secured by that certain Conditional Guarantee dated August 11, 2017 (the "**Guarantee**") and the Side Letter dated August 11, 2017 ("**Side Letter**", and together with the Land Loan Note, the Land Loan Mortgage, the Guarantee, and all other documents executed by the Land Loan Borrower in connection with the Land Loan, collectively, the "**Land Loan Documents**"), executed by the Guarantor for the benefit of Land Loan Lender.

## MEZZ LOAN

**WHEREAS**, on August 11, 2017, Mezz Lender made a loan to Mezz Borrower in the principal amount of $4,850,000.00 (the "**Mezz Loan**"), which Mezz Loan is evidenced by that certain Mezzanine Promissory Note executed by Mezz Borrower in favor of Mezz Lender (the "**Mezz Note**").

**WHEREAS**, Mezz Lender and Mezz Borrower entered into that certain Mezzanine Loan Agreement, dated as of August 11, 2017 (the "**Mezz Loan Agreement**") and together with the Mezz Note, the Pledge Agreement (defined below) and all other documents executed in connection with the Mezz Loan, (the "**Mezz Loan Documents**") by and among Mezz Borrower and Mezz Lender. Capitalized terms used herein but not otherwise defined shall have the meanings set forth in the Mezz Loan Agreement.

**WHEREAS**, as a condition precedent to the obligation of Mezz Lender to make the Mezz Loan to Mezz Borrower, Mezz Borrower entered into a certain Ownership Interests Pledge and Security Agreement, dated as of August 11, 2017, in favor of Mezz Lender, (the "**Pledge Agreement**") pursuant to which Mezz Borrower has granted to Mezz Lender a first priority security interest in the Pledged Interests (as defined in the Pledge Agreement) and also all amounts on deposit in any reserve account established under the Mezz Loan Documents and any and all other property or collateral in which Mezz Lender is granted a security interest under any of the Mezz Loan Documents, in each case whether existing on August 11, 2017 or thereafter pledged or assigned to Mezz Lender.

**WHEREAS**, the Mezz Loan is guaranteed by that certain Conditional Guarantee, dated as of August 11, 2017 (the "**Mezz Guarantee**") made by Guarantor to Mezz Lender and by that certain Debt Service and Carry Guaranty, dated as of August 11, 2017 (the "**Debt Service Guaranty**") made by Guarantor to Mezz Lender; (the Mezz Note, Mezz Loan Agreement, Mezz Guarantee, Debt Service Guaranty and all other documents evidencing and securing the Mezz Loan are hereinafter referred to as the "**Mezz Loan Documents**", and the Mezz Loan Documents together with Land Loan Documents, collectively, the "**Loan Documents**").

## LAND LOAN AND MEZZ LOAN DEFAULTS

**WHEREAS**, pursuant to the terms, covenants and conditions contained in the Land Loan Documents, the Land Loan Borrower has defaulted upon the Land Loan Documents, by among other things, its (i) failure to pay the monthly payments due for August 2017 through August 2018, (ii) failure to pay off the Land Loan by the maturity date on September 1, 2018 and (iii) failure to pay outstanding real estate taxes in accordance with the terms of the Land Loan Documents (the "**Existing Land Loan Default**").

**WHEREAS**, the Mezz Loan Borrower has defaulted upon the Mezz Loan Agreement by, among other things, (i) failure to pay the monthly payments due for August 2017 through August 2018, (ii) failure to pay off the Mezz Loan by the maturity date on September 1, 2018 and (iii) failure to pay outstanding real estate taxes in accordance with the terms of the Mezz Loan Agreement (the "**Existing Mezz Loan Default**", and together with the Existing Land Loan Default, the "**Existing Loan Defaults**").

## UCC SALE

**WHEREAS**, by notice dated September 9, 2019, Mezz Lender gave due and proper notice of a UCC Sale of the interests pledged under the Pledge Agreement via a public sale to take place on October 3, 2019 at 10:00am (the "**UCC Sale**");

WHEREAS, Borrower has requested that Lender agree to forbear from exercising its remedies under the Mezz Loan Documents, including but not limited to adjourning the UCC Sale due to the Existing Mezz Loan Default and conducting a sale of the Property or otherwise, until no later than *November 5, 2019* (the "**Termination Date**", the period between the Effective Date and the Termination Date being known herein as the "**Forbearance Period**"), to afford Borrower time to payoff the outstanding balance of the Obligations (as defined below); and

WHEREAS, conditioned on Borrower's timely performance and full compliance with this Agreement, Lender is willing to agree to such forbearance until no later than the Termination Date, on the terms, covenants and conditions set forth herein below;

NOW THEREFORE, for the mutual covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, it is hereby agreed by and among the Borrower and Lender, as follows:

## Acknowledgment of Continuing Effectiveness of Mezz Loan Documents

1. Borrower and Guarantor hereby ratify, confirm, and reaffirm all and singular the terms and conditions of the Loan Documents. The Borrower and Guarantor further acknowledges and agree that except as specifically modified in this Agreement, all terms and conditions of those documents, instruments, and agreements that compose Loan Documents shall remain in full force and effect. All defined terms used herein and not otherwise defined herein, shall have the meanings ascribed thereto in the Loan Documents. Borrower and Guarantor agree and acknowledge that the above recitals are true and correct.

## Acknowledgment of Indebtedness

2. Borrower and Guarantor hereby acknowledge and agree that, in accordance with the terms and conditions of the Loan Documents, the following sums are due and owing to Lender (for the avoidance of doubt, the obligations under the Land Loan and the Mezz Loan are separate and distinct obligations):

   a. Through September 26, 2019 (with per diem accruing at the Default Rate after September 26, 2019), the payoff amounts set forth on the payoff letters for the Land Loan and the Mezz Loan attached hereto as **Schedule A-1 and Schedule A-2, respectively**.

   b. For all fees, costs, expenses, and costs of collection heretofore or hereafter accruing or incurred by the Lender in connection with the Loan Documents, including, without limitation, all attorney's fees and expenses incurred in connection with the negotiation and preparation of this Agreement and all documents, instruments, and agreements incidental hereto.

(Hereinafter all amounts due as set forth in this Paragraph 2, and all amounts payable under this Agreement, shall be referred to collectively as the "**Obligations**").

**Forbearance**

3.     a) As consideration of the Borrower's and Guarantor's performance and agreement to the terms in accordance with the terms of this Agreement, except as otherwise set forth herein, the Mezz Lender will forbear from conducting a sale of the Pledged Interest under the Pledge Agreement, until the earlier of (i) the occurrence of a Termination Event (as defined below), or (ii) the Termination Date. Notwithstanding the foregoing, nothing contained in this Agreement shall constitute a waiver by Lender of any default or event of default, whether now existing or hereafter arising (including, without limitation, Existing Loan Defaults). This Agreement shall only constitute an agreement by the Lender to forbear from enforcing its rights and remedies upon the terms and conditions set forth herein.

b) Land Loan Borrower, Mezz Borrower, and Guarantor further agree and acknowledge that it shall be commercially reasonable for the Lender to publish one (1) notice in the New York Post regarding the adjournment, postponement and rescheduling of the UCC Sale to occur on or after November 5, 2019. Notwithstanding anything to the contrary set forth in this Agreement, the publication and advertisement of the notice of sale for the adjournment and rescheduling of the UCC Sale and any other applicable required notices for the UCC Sale of the Collateral, including without limitation marketing the UCC Sale, shall not be deemed a violation or breach of Mezz Lender's obligation to forbear under this Agreement and Mezz Borrower expressly consents to such notices, publications and advertisements.

c) As consideration for Borrower's performance and agreement to the terms in accordance with the terms of this Agreement, Land Loan Lender shall forbear from enforcing its rights and remedies under the Land Loan until the earlier of (i) the occurrence of a Termination Event (as defined below), or (ii) the Termination Date. Notwithstanding the foregoing, Lender shall be permitted to make protective advances in accordance with the Loan Documents to pay insurance costs, real estate taxes, water and sewer charges and real estate tax liens related to the Property.

**Waiver of Claims and Release**

4.     In consideration for Lender's forbearance under this Agreement, the Borrower and Guarantor each hereby:

a.     Acknowledge and agree that they have no offsets, defenses, claims, or counterclaims against the Lender, Lender's affiliates, member of Lender or any of its affiliates and agents, or the such parties' officers, principals, directors, employees, attorneys, representatives, predecessors, successors, and assigns (collectively, the "**Lender Parties**") with respect to the duly executed Loan Documents, the Land Loan, the Mezz Loan, and the Obligations and facts and circumstances in connection therewith, including, without limitation, the Existing Loan Defaults, or otherwise, and that if the Borrower, Guarantor, now have, or ever did have, any offsets, defenses, claims, or counterclaims against the Lender Parties, whether known or unknown, at law or in equity, from the beginning of the world through this date and through the time of execution of this Agreement, all of them are hereby expressly **WAIVED**, and the Borrower, Guarantor, each hereby

**RELEASE** the Lender Parties from any liability therefor.  It is understood and agreed that this Paragraph shall not be deemed or construed as an admission by Lender of liability of any nature whatsoever arising from or related to the subject of this Paragraph or otherwise; and

b.  Agree to defend, indemnify, and hold the Lender Parties harmless from and against any losses, damages, costs (including, without limitation, attorneys' fees, court costs, and costs of appeal), expenses, judgments, liens, decrees, fines, penalties, liabilities, claims, actions, suits, and causes of action (collectively, the "**Claims**") arising, directly or indirectly, from: (a) any breach by Borrower of any warranty or representation contained in this Agreement or in the documents executed and delivered by Borrower pursuant to this Agreement (with this Agreement, sometimes collectively referred to as the "**Borrower Documents**") or (b) any breach, default, or violation by any Borrower of any covenant, agreement, or provision of the Borrower Documents.

## Ratification of Loan Documents; Representations, Warranties and Covenants; Further Assurances

5.   The Borrower and Guarantor each:

a.  Hereby ratifies, confirms, and reaffirms all and singular the terms and conditions of the Loan Documents. The Borrower further acknowledges and agrees that except as specifically modified in this Agreement, all terms and conditions of those documents, instruments, and agreements that compose the Loan Documents shall remain in full force and effect;

b.  Hereby ratifies, confirms, and reaffirms that (i) the obligations secured by the Loan Documents including, without limitation, the Obligations, and any future modifications, amendments, substitutions or renewals thereof, and (ii) all collateral, whether now existing or hereafter acquired, granted to the Lender pursuant to the Loan Documents or otherwise, shall secure all of the Obligations until full and final payment of the Obligations;

c.  Hereby confirms and agrees that that a novation is expressly denied and not intended to be effected, and except as amended or modified by this Agreement, the terms, provisions, conditions, rights, duties and obligations contained in the Loan Documents shall remain unchanged and unimpaired by this Agreement and are in full force and effect;

d.  Shall, from and after the execution of this Agreement, execute and deliver to the Lender whatever additional documents, instruments, and agreements that the Lender may require, to the extent commercially reasonable, in order to vest or perfect the Loan Documents and the collateral granted therein more securely in the Lender and to otherwise give effect to the terms and conditions of this Agreement;

e.  Hereby represents Borrower, each, has the capacity, right, power and authority to execute this Agreement and to perform their respective obligations hereunder and

to consummate the transaction described herein, and to execute and deliver all documentation required by this Agreement;

f.    Hereby represents that any Borrower or Guarantor has not filed a petition in any case, action, or proceeding under the United States Bankruptcy Code or any similar state law; no petition in any case, action, or proceeding under the United States Bankruptcy Code or any similar state law has been filed against Borrower that has not been dismissed or vacated; and Borrower has not filed an answer or otherwise admitted in writing insolvency or inability to pay their debts or made an assignment for the benefit of creditors or consented to an appointment of a receiver or trustee of all or a material part of their property. To Borrower's knowledge, the transaction contemplated herein is not a preference, voidable transfer, fraudulent conveyance, or otherwise in violation of the United States Bankruptcy Code or any other similar state or federal law;

g.    Hereby represents that Borrower has not received any written notice of any, nor is there any, pending or, to Borrower's knowledge any threatened, litigation or administrative proceeding involving, in any manner the Property, or the ownership, leasing, operation, management, use, or maintenance thereof or this transaction;

h.    Hereby represents that Borrower has not received written notice from any governmental agency that it is in default or breach in any respect under any applicable law or order of any court, administrative agency, or other governmental entity, or any agreement or document, to which Borrower is a party, or by which Borrower may be bound or to which the Property, the Collateral or any portion of its properties or assets may be subject;

i.    Hereby represents that there are no unpaid bills or invoices for labor, services, or work performed upon the Collateral, the Property or within the improvements thereon, or for materials or supplies furnished or delivered to, or in connection with, the Property, that could result in the filing of mechanic's or materialmen's liens;

j.    Hereby represents that Borrower has not received any notice of, and have no knowledge of, any pending condemnation proceeding or conveyance in lieu thereof, or threatened rezoning, of the Property or any portion thereof;

k.    Mezz Borrower and Guarantor acknowledge the UCC Sale was: (i) duly and properly noticed, (ii) advertised in a commercially reasonable manner, and (iii) was scheduled to occur on October 3, 2019. The sole reason the UCC Sale has been cancelled is in accordance with this Agreement, solely to give Borrower until the Termination Date to pay off the Obligations in full. Further, Mezz Borrower acknowledges that Mezz Lender has no obligation to enter into any further agreement of Forbearance. Accordingly, and as a material inducement for Mezz Lender to cancel the UCC Sale, Borrower consents that it shall not move or apply for any stay or injunction, by whatever name known, in any court, with either the intent or effect of either: (x) extending the Forbearance Period, or (y) otherwise

delaying Mezz Lender in its enforcement of this Agreement or otherwise under the Mezz Loan Documents;

l.　Borrower and Guarantor agree and acknowledge that, as of the date hereof, the Mezz Lender and Land Loan Lender are both oversecured creditors; and

m.　Borrower and Guarantor agree and acknowledge that the Property has a value of no less than $60,000,000.00.

### Repayment of the Obligations

6.　From and after the execution of this Agreement, interest shall accrue upon, and the Borrower shall repay, the Obligations as follows:

a.　All Obligations shall be paid in full in good and collected funds by federal funds wire transfer on the earlier of (i) the occurrence of a Termination Event (as defined below), or (ii) 3:00 P.M. (New York Time) on the Termination Date TIME BEING OF THE ESSENCE ("**Payoff**"). Borrower and Guarantor hereby expressly acknowledge and agree that interest shall continue to accrue during the Forbearance Period at the Default Rate of 24% per annum ("**Default Rate**", a such term is defined in the Loan Documents), and thus, without limitation, such accrued Default Rate interest, as applicable hereunder, together with all other sums due under the Loan Documents and hereunder, must be paid on or prior to the Termination Date as part of the Obligations.

### Termination Events

7.　The occurrence of any one or more of the following events shall constitute a termination event (hereinafter, a "**Termination Event**") under this Agreement:

a.　The failure of the Borrower to pay any amount required to be paid to the Lender under this Agreement as and when due, including without limitation the failure of the Borrower to pay the Obligations in full on or before the Termination Date, it being expressly acknowledged and agreed that **TIME IS OF THE ESSENCE**;

b.　The failure of the Borrower to comply with any other term or condition of this Agreement as and when due, it being expressly acknowledged and agreed that **TIME IS OF THE ESSENCE**;

c.　The determination by the Lender that any warranty or representation made by the Borrower or Guarantor in connection with this Agreement or otherwise was materially false or misleading in any respect; and

d.　The occurrence of any default or Event of Default (other than the Existing Loan Defaults), under the Loan Documents, without regard to any grace or cure periods.

### Rights Upon Occurrence of a Termination Event

8.  Upon the occurrence of any Termination Event:

    a.    The Lender's agreement to forbear as set forth in this Agreement shall automatically terminate and the Lender may immediately commence enforcing all of its rights and remedies pursuant to the Loan Documents and/or otherwise;

    b.    All Obligations shall be immediately due and payable in full, without demand, notice, or protest, all of which are hereby expressly **WAIVED**;

    c.    Mezz Lender may proceed with conducting of a sale of the Pledged Interests which sale shall be conducted by a licensed auctioneer following written notice of sale published in the New York Post once and such notice is acknowledged to be commercially reasonable and in accordance with the accepted practices and procedures for the disposition of the Collateral and Pledged Interests.

### Costs of Collection

9.  The Borrower shall reimburse the Lender on demand for any and all unreimbursed costs, expenses, and costs of collection (including reasonable attorneys' fees and expenses) heretofore or hereafter incurred by the Lender in connection with the protection, preservation, and enforcement by the Lender of its rights and remedies under the Loan Documents and/or this Agreement, including, without limitation, the negotiation and preparation of this Agreement and such fees and costs shall become part of the Obligations until reimbursed.

### Waivers

10. <u>Non-Interference</u>. From and after the occurrence of any Termination Event, the Borrower agrees not to interfere with the exercise by the Lender of any of its rights and remedies. The Borrower further agrees that they shall not seek to distrain or otherwise hinder, delay, or impair the Lender's efforts to realize upon any collateral granted to the Lender, or otherwise to enforce its rights and remedies pursuant to the Loan Documents. The provisions of this Paragraph shall be specifically enforceable by the Lender.

11. <u>Automatic Stay</u>. As additional consideration for Lender entering into this Agreement, the Borrower agrees that upon the filing of any Petition for Relief by or against any of the Borrower under the United States Bankruptcy Code, the Lender shall be entitled to seek the immediate and complete relief from the automatic stay with respect to such Borrower, and Lender shall be permitted to proceed to protect and enforce its rights and remedies under state law. The Borrower hereby expressly assents to any motion filed by the Lender seeking relief from the automatic stay unless for cause it can oppose but solely related to the sale of the Property or the refinancing of the Obligation. The Borrower further hereby expressly WAIVES the protections afforded under Section 362 of the United States Bankruptcy Code with respect to the Lender except as provide for in the previous sentence. Further, Borrower hereby represents that the Property constitutes a "single asset real

estate", as defined in, and pursuant to, Section 105(51B) of the United States Bankruptcy Code.

12.    <u>Jury Trial</u>.    The Borrower and Guarantor hereby makes the following waiver knowingly, voluntarily, and intentionally, and understand that the Lender, in entering into this Agreement or making any financial accommodations to the Borrower, whether now or in the future, is relying on such a waiver: THE BORROWER AND GUARANTOR HEREBY IRREVOCABLY WAIVES ANY PRESENT OR FUTURE RIGHT TO A JURY IN ANY TRIAL OF ANY CASE OR CONTROVERSY IN WHICH THE LENDER BECOMES A PARTY (WHETHER SUCH CASE OR CONTROVERSY IS INITIATED BY OR AGAINST THE LENDER OR IN WHICH THE LENDER IS JOINED AS A PARTY LITIGANT), WHICH CASE OR CONTROVERSY ARISES OUT OF, OR IS IN RESPECT OF, ANY RELATIONSHIP BETWEEN THE BORROWER OR ANY OTHER PERSON, AND THE LENDER.

13.    <u>No Reinstatement</u>.    It is expressly understood that Lender's execution of this Agreement and acceptance of payments in accordance herewith shall by no means be considered or construed a reinstatement or de-acceleration of the Mezz Note, an extension of the Mezz Loan, or a waiver of Lender's rights or remedies at law, in equity or under the Mezz Note, or any of the Mezz Loan Documents.

## Entire Agreement

14.    This Agreement shall be binding upon the Guarantor, the Borrower and their respective employees, representatives, successors, and assigns, and shall inure to the benefit of the Lender and the Lender's successors and assigns. This Agreement and all documents, instruments, and agreements executed in connection herewith incorporate all of the discussions and negotiations between the Borrower and the Lender, either expressed or implied, concerning the matters included herein and in such other documents, instruments and agreements, any statute, custom, or usage to the contrary notwithstanding. No such discussions or negotiations shall limit, modify, or otherwise affect the provisions hereof. No modification, amendment, or waiver of any provision of this Agreement, or any provision of any other document, instrument, or agreement between the Borrower and the Lender shall be effective unless executed in writing by the party to be charged with such modification, amendment, or waiver, and if such party be the Lender, then by a duly authorized officer thereof.

## Construction of Agreement

15.    In connection with the interpretation of this Agreement and all other documents, instruments, and agreements incidental hereto:

a.    All rights and obligations hereunder and thereunder, including matters of construction, validity, and performance, shall be governed by and construed in accordance with the law of the State of New York, without regard to conflicts of law.

b. The captions of this Agreement are for convenience purposes only, and shall not be used in construing the intent of the Lender and, Borrower and under this Agreement.

c. In the event of any inconsistency between the provisions of this Agreement and any other document, instrument, or agreement entered into by and between the Lender and the Borrower, the provisions of this Agreement shall govern and control.

d. The Lender, Guarantor, and the Borrower have prepared this Agreement and all documents, instruments, and agreements incidental hereto with the aid and assistance of their respective counsel. Accordingly, all of them shall be deemed to have been drafted by both the Lender and the Borrower and shall not be construed against either the Lender or the Borrower.

### Illegality or Unenforceability

16. Any determination that any provision or application of this Agreement is invalid, illegal, or unenforceable in any respect, or in any instance, shall not affect the validity, legality, or enforceability of any such provision in any other instance, or the validity, legality, or enforceability of any other provision of this Agreement.

### Informed Execution

17. The Guarantor and Borrower warrant and represent to the Lender that the Borrower and Guarantor:

a. Have read and understand all of the terms and conditions of this Agreement;

b. Intend to be bound by the terms and conditions of this Agreement;

c. Acknowledge that they have been advised by Lender to seek the advice of legal counsel, as well as the assistance of an applicable language interpreter, if necessary, in connection with the negotiation and preparation of this Agreement. If Borrower and Guarantor have chosen not to obtain legal representation or seek such interpreter assistance, whether due to cost considerations or for other reasons, the lack of such representation and/or assistance shall not furnish Borrower or Guarantor with any defense to the enforcement of this Agreement by Lender; and

d. Are executing this Agreement freely and voluntarily, without duress, after consultation with independent counsel of their own selection.

### Recitals

18. All recitals contained in this Agreement are ratified and confirmed.

### Reservation of Rights

19.  By agreeing to forbear from the exercise of those rights and remedies granted to Mezz Loan Lender under the Mezz Loan Documents until the Termination Date, Lender does not waive any of its rights or remedies with respect to the Existing Mezz Default. All rights and remedies of the Lender with respect to the Existing Loan Defaults are hereby preserved pending fulfillment of the Mezz Borrower's obligations under this Agreement and under the Mezz Loan Documents. The granting of the forbearance hereunder shall not, other than as expressly provided herein, be deemed a waiver of the Lender's rights and remedies or constitute a course of conduct or dealing on behalf of the Lender. As of the Termination Date, as set forth herein, Lender shall have the right to exercise one or more of its rights and remedies hereunder or pursuant to the Mezz Loan Documents including, without limitation: (i) commencement of judicial foreclosure; (ii) enforcement of its rights in and to all other collateral securing the Loan, in whole or in part, including the sale thereof or other disposition as provided in the Loan Documents or applicable provisions of the Uniform Commercial Code in effect in the State of New York; (iii) commencement of proceedings to enforce the Mezz Note, the Note and any guaranty executed in connection therewith; and (iv) all other remedies available to Lender hereunder, pursuant to the Loan Documents or at law or in equity. Lender's agreements contained herein are limited to the express terms of this Agreement, and except as expressly set forth herein, shall not impair any right or remedy of Lender or any of Mezz Borrower obligations to Lender, as applicable, or Lender's right to enforce full and strict performance of all of the terms of the Loan Documents.  For avoidance of doubt, nothing in this Agreement shall prevent the Land Loan Lender from immediately exercising its rights and remedies under the Land Loan Documents.

## Counterparts; Electronic Signatures

20.  This Agreement may be executed in counterparts, which counterparts, when taken together, shall constitute this Agreement.  Further, facsimile or electronic (e.g., .pdf format) copies of signatures shall be considered originals for purposes of binding the parties hereto.

## Representations, Warranties and Covenants Concerning Multiple Borrowers

21.  Borrower and Guarantor hereby agree that the following shall constitute additional representations, warranties and/or covenants (as applicable) under the Loan Documents:

a.  The Mezz Borrower and Lender intend that each of the Mezz Borrowers (if more than one) shall be fully liable, jointly and severally, for all of the Debt (as defined in the Mezz Loan Documents).  Nonetheless, in case a court finds that any Mezz Borrower is not such a primary obligor with respect to all or any part of such obligations, the Mezz Borrower expressly waives the benefit of any and all defenses and discharges available to a guarantor, surety, endorser or accommodation party dependent on an obligor's character as such.  Without limiting the generality of the foregoing, the liability of the Mezz Borrower hereunder shall not be affected or impaired in any way by any of the following acts or things (which the Lender is hereby expressly authorized to do, omit or suffer from time to time without notice to or consent of anyone): (i) any acceptance of collateral security, guarantors, accommodation parties or sureties for any or all indebtedness arising under the

Mezz Note or the Mezz Loan Documents; (ii) any extension or renewal of any such indebtedness (whether or not for longer than the original period) or any modification of the interest rate, maturity or other terms of any such indebtedness; (iii) any waiver or indulgence granted to either Mezz Borrower, and any delay or lack of diligence in the enforcement of the indebtedness arising under the Mezz Note or the Mezz Loan Documents; (iv) any full or partial release of, compromise or settlement with, or agreement not to sue, either Borrower or any guarantor or other person liable on any such indebtedness; (v) any release, surrender, cancellation or other discharge of any indebtedness arising under the Mezz Note or the Mezz Loan Documents, or the acceptance of any instrument in renewal or substitution for any instrument evidencing any such indebtedness; (vi) any failure to obtain collateral security (including rights of setoff) for any indebtedness arising under the Mezz Note, or the Mezz Loan Documents, or to see to the proper or sufficient creation and perfection thereof, or to establish the priority thereof, or to preserve, protect, insure, care for, exercise or enforce any collateral security for any such indebtedness; (vii) any modification, alteration, substitution, exchange, surrender, cancellation, termination, release or other change, impairment, limitation, loss or discharge of any collateral security for any such indebtedness; (viii) any assignment, sale, pledge or other transfer of any of the indebtedness arising under the Mezz Note, or the Mezz Loan Documents; or (ix) any manner, order or method of application of any payments or credits on any indebtedness arising under the Mezz Note or the Mezz Loan Documents. Each Mezz Borrower also hereby waives any right of contribution, subrogation, indemnification or other right arising as a result of any payment made toward the Obligations or Debt of the other Mezz Borrower.

b.    Each of the Mezz Borrowers (if more than one) hereby waives, for the benefit of the Mezz Lender: (i) any right the Mezz Lender, as a condition of payment or performance by either Mezz Borrower, to (A) proceed against the other Mezz Borrower or any other person or entity, (B) proceed against or exhaust any collateral for the Obligations held from the other Borrower or any other person or entity, (C) proceed against or have resort to any balance of any deposit account, securities account, or credit on the books of the Mezz Lender in favor of the other Mezz Borrower or any other person or entity, or (D) pursue any other remedy in the power of the Mezz Lender whatsoever; (ii) any defense rising by reason of the incapacity, lack of authority or any disability or other defense of the other Mezz Borrower, including any defense based on or arising out of the lack of validity or the unenforceability of the Obligations or any agreement or instrument relating thereto or by reason of the cessation of the liability of the other Mezz Borrower from any cause other than payment in full of the Obligations; (iii) any defense based upon any statute or rule of law which provides  that the Obligations are of a surety must be neither larger in amount nor in other respects more burdensome than that of the principal; (iv) any defense based upon the Lender's errors or omissions in the administration of the Obligations; (v) (1) any principles or provisions of law, statutory or otherwise, which are or might be in conflict with the terms hereof and any legal or equitable discharge of its obligations hereunder, (2) the benefit of any statute of limitations affecting its liability hereunder or the enforcement hereof, (3)

any rights to set-offs, recoupments and counterclaims, and (4) promptness, diligence and any requirement that the Lender protect, secure, perfect or insure any security interest or lien or any property subject thereto; (vi) notices, demands, presentments, protests, notices of protest, notices of dishonor and notices of any action or inaction, including acceptance hereof, notices of default thereunder or under the Mezz Note, or the Mezz Loan Documents, any agreement or instrument related thereto, notices of any renewal, extension or modification of the Obligations or any agreement related thereto, notices of any extension of credit to the other Mezz Borrower and notices of any matters referred to in any guaranty securing the Mezz Note and any right to consent to any thereof; and (vii) any defenses or benefits that may be derived from or afforded by law which limit the liability of or exonerate sureties, or which may conflict with the terms hereof.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

IN WITNESS WHEREOF, this Agreement has been executed as of the date first set forth above.

**MEZZ LOAN LENDER**

DUPONT STREET 2 LLC

By: _____
Name: Joshua Zegen
Title: Authorized Signatory

**LAND LOAN LENDER**

DUPONT STREET 1 LLC

By: _____
Name: Joshua Zegen
Title: Authorized Signatory

**MEZZ LOAN BORROWER**

CLAY RIVERVIEW LLC

By: _____
Name: Bo Jin zhu
Title:

**LAND LOAN BORROWER**

DUPONT STREET DEVELOPERS LLC

By: _____
Name: Bo Jin zhu
Title:

**GUARANTOR**

_____
BO JIN ZHU

State of New York )
)ss.:
County of New York )

_Joshua Zegen_

On the 4th day of October in the year 2019, before me, the undersigned, a notary public in and for said state, personally appeared ~~Jason Silverstein~~, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of, which the individual acted, executed the instrument.

_____
NOTARY PUBLIC

State of New York )
)ss.:
County of )

TOM KORDENBROCK
Notary Public, State of New York
No. 01KO6371148
Qualified in New York County
Commission Expires February 20, 2022

On the _____ day of October in the year 2019, before me, the undersigned, a notary public in and for said state, personally appeared David Shorenstein, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
NOTARY PUBLIC

State of New York )
)ss .
County of New York )

On the 3rd day of October in the year 2019, before me, the undersigned, a notary public in and for said state, personally appeared _Bo Jin Zhu_, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____

NOTARY PUBLIC

ROBERT M. SASLOFF
Notary Public, State of New York
No. 02SA4966401
Qualified in Kings County
Commission Expires 5-7-20

**SCHEDULE A-1**

**LAND LOAN PAYOFF LETTER**

**[see attached]**

**MRFS LLC**
520 Madison Avenue, Suite 3501
New York, NY 10022
Telephone: 646-472-1900

RE: Loan to:                                              Dupont Street Developers LLC
    Date of Loan:                                       8/11/2017
    Gross Loan Amount:                        $   28,000,000.00

To Whom It May Concern:

In accordance with the recent request, please be advised that the outstanding indebtedness of the Borrower under the above-referenced loan as of the date set forth below will be as follows:

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Unpaid Principal Balance | | | | | | | | : | $ 28,000,000.00 |
| Nominal Interest on | $ | 25,000,000.00 | at | 12.000% | from | 4/1/2017 | to | 9/12/2019 | : $ 500,000.00 |
| Default Interest on | $ | 25,000,000.00 | at | 24.000% | from | 6/1/2017 | to | 7/31/2017 | : $ 1,016,666.67 |
| Default Interest on | $ | 25,000,000.00 | at | 24.000% | from | 8/1/2017 | to | 8/10/2017 | : $ 166,666.67 |
| Default Interest on | $ | 28,000,000.00 | at | 24.000% | from | 8/11/2017 | to | 9/26/2019 | : $ 14,504,000.00 |
| Nominal Interest Received | | | | | | | | : | $ (1,574,894.03) |
| Entity Fees | | | | | | | | : | $ 3,101.80 |
| Environmental Fee | | | | | | | | : | $ 989.41 |
| Appraisal Fees | | | | | | | | : | $ 5,000.00 |
| Legal Fees | | | | | | | | : | $ 17,994.02 |
| Recording Fees | | | | | | | | : | $ 3,210.00 |
| Exit Fee | | | | | | | | : | $ 280,000.00 |
| Tax Monitoring Fees | | | | | | | | : | $ 78.65 |
| Servicing Fees | | | | | | | | : | $ 56,000.00 |

Total Amount Due on:                          9/26/2019                                    $   42,978,813.19

Please note that the per diem rate thereafter is:          $18,666.67
This payoff letter shall expire on:                              9/30/2019

Please be aware that we reserve the right to make adjustments to the above amounts in the event that a mathematical, typographical, or clerical error has occurred. This payoff letter shall not be binding until verified with Lender.

**SCHEDULE A-2**

**MEZZ LOAN PAYOFF LETTER**

**[see attached]**

**MRFS LLC**
520 Madison Avenue, Suite 3501
New York, NY 10022
Telephone: 646-472-1900

RE: Loan to:                                Clay Riverview LLC
    Date of Loan:                           8/11/2017
    Gross Loan Amount:              $    4,850,000.00

To Whom It May Concern:

In accordance with the recent request, please be advised that the outstanding indebtedness of the Borrower under the above-referenced loan as of the date set forth below will be as follows:

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Unpaid Principal Balance | | | | | | | : | $ | 4,850,000.00 |
| Default Interest on | $ | 4,850,000.00 | at | 24.000% | from | 8/11/2017 | to | 9/26/2019 : | $ | 2,512,300.00 |
| Exit Fee | | | | | | | : | $ | 48,500.00 |
| Servicing Fees | | | | | | | : | $ | 9,700.00 |
| Legal Fees | | | | | | | : | $ | 20,000.00 |

Total Amount Due on:                          9/26/2019                                       $    7,440,500.00

Please note that the per diem rate thereafter is:          $3,233.33
This payoff letter shall expire on:                        9/30/2019

Please be aware that we reserve the right to make adjustments to the above amounts in the event that a mathematical, typographical, or clerical error has occurred. This payoff letter shall not be binding until verified with Lender.

## FIRST AMENDMENT TO FORBEARANCE AGREEMENT

This First Amendment to Forbearance Agreement ("**Amendment**") is made and entered into this 5ᵗʰ day of November, 2019, by and among **DUPONT STREET 2 LLC**, a Delaware limited liability company, its successors and/or assigns as their interests may appear having offices at 825 Third Avenue, 37ᵗʰ Floor, New York, New York 10022 (the "**Mezz Lender**"), **DUPONT STREET 1 LLC**, a Delaware limited liability company, its successors and/or assigns as their interests may appear having offices at 825 Third Avenue, 37ᵗʰ Floor, New York, New York 10022 ("**Land Loan Lender**" and together with the Mezz Lender, the "**Lender**"), **CLAY RIVERVIEW LLC**, a New York limited liability company having an address at 87-10 Queens Boulevard, Elmhurst, New York 11373 (the "**Mezz Borrower**"), **DUPONT STREET DEVELOPERS LLC**, a New York limited liability company having an address at 87-10 Queens Boulevard, Elmhurst, New York 11373("**Land Loan Borrower**", and together with the Mezz Borrower, the "**Borrower**") (and **BO JIN ZHU** having an address at 60 Henry Street, Apt 15C, New York, New York 10002 (the "**Guarantor**", and together with the Lender, and the Borrower, collectively, the "**Parties**").

WHEREAS, on October 2, 2019, the Parties duly executed a Forbearance Agreement ("**FB Agreement**") and desire to amend the terms of the FB Agreement as set forth below.

WHEREAS, in accordance with FB Agreement, the UCC Sale was adjourned from October 3, 2019 to November 5, 2019.

WHEREAS, the Borrower and Guarantor have requested that Lender modify the FB Agreement, by among other things, extending the Termination Date, and the Lender has agreed to so in accordance with the terms and conditions of this Amendment.

NOW, THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the receipt, adequacy and sufficiency of which are hereby acknowledged, the parties agree to amend the FB Agreement as follows:

1.     The Parties agree and acknowledge the above recitals as well as the recitals in the FB Agreement are true and correct.

2.     Unless otherwise amended or modified herein, all existing obligations and rights and remedies set forth in the terms and provisions of the FB Agreement and the Loan Documents, shall remain in full force and effect, and the Parties acknowledge the validity of the FB Agreement and the Loan Documents. Except as set forth herein, all capitalized terms shall have the same meaning as set forth in the FB Agreement and the Loan Documents.

3.     The Parties agree and acknowledge that, in accordance with the terms and conditions of the Loan Documents, that the Obligations due and owing to the Lender under the Land Loan and the Mezz Loan, as of November 5, 2019, are set forth in **Exhibit "A-1"** and **"A-2"** annexed hereto, respectively.

4.      The Parties agree and acknowledge that the Termination Date set forth in the FB Agreement is extended through to and including November 14, 2019 TIME BEING OF THE ESSENCE ("**Extended Termination Date**", the period between the Effective Date and the Extended Termination Date being known herein as the "**Extended Forbearance Period**"),.

5.      The Parties agree and acknowledge the UCC Sale is adjourned from November 5, 2019, to November 15, 2019 ("**UCC Sale Adjournment Date**").

6.      Borrower and Guarantor agree and acknowledge the UCC Sale: (i) was duly and properly noticed, (ii) advertised in a commercially reasonable manner by the Lender by publishing the UCC Sale in the New York Post three (3) time, and such notice is acknowledged to be commercially reasonable and in accordance with the accepted practices and procedures for the disposition of the Collateral and Pledged Interests, (iii) shall be held at the offices of Kriss & Feuerstein LLP, attorneys for the Lender, at 360 Lexington Avenue, 12ª Floor, New York, New York 10017 ("**UCC Sale Location**"), and it shall be commercially reasonable to conduct the UCC Sale at the UCC Sale Location, (iv) was scheduled to occur on October 5, 2019, and it is commercially reasonable for the Lender to announce the UCC Sale Adjournment Date on October 5, 2019 at the UCC Sale Location without re-publishing the UCC Sale Adjournment Date in any publication. The sole reason the UCC Sale has been adjourned is in accordance with this Amendment, solely to give Borrower until the Extended Termination Date to pay off the Obligations in full. Further, Borrower acknowledges that Lender has no obligation to enter into any further agreement of forbearance. Accordingly, and as a material inducement for Lender to adjourn the UCC Sale, Borrower consents that it shall not move or apply for any stay or injunction, by whatever name known, in any court, with either the intent or effect of either: (a) extending the Extended Forbearance Period, or (b) otherwise delaying Mezz Lender in its enforcement of the FB Agreement or otherwise under the Mezz Loan Documents

7.      The Borrower and Guarantor hereby acknowledge and agree that they have no offsets, defenses, claims, or counterclaims against the Lender, Lender's affiliates, member of Lender or any of its affiliates and agents, or the such parties' officers, principals, directors, employees, attorneys, representatives, predecessors, successors, and assigns (collectively, the "**Lender Parties**") with respect to the duly executed Loan Documents and the Obligations and facts and circumstances in connection therewith, including, without limitation, the FB Agreement, the Existing Default, or otherwise, and that if the Borrower or Guarantor now have, or ever did have, any offsets, defenses, claims, or counterclaims against the Lender Parties, whether known or unknown, at law or in equity, from the beginning of the world through this date and through the time of execution of this Amendment, all of them are hereby expressly **WAIVED**, and the Borrower and Guarantor each hereby **RELEASE** the Lender Parties from any liability therefor. It is understood and agreed that this Paragraph shall not be deemed or construed as an admission by Lender of liability of any nature whatsoever arising from or related to the subject of this Paragraph or otherwise.

8.      This Amendment may be executed in counterparts, or electronic transmission, and when taken together shall constitute one single agreement. Facsimile or electronic copies of signatures shall have the same force and effect as an original.

**IN WITNESS WHEREOF**, this Amendment has been executed as of the date first set forth above.

| MEZZ LOAN LENDER | MEZZ LOAN BORROWER |
|---|---|
| **DUPONT STREET 2 LLC**<br><br>By: _____<br>Name: Joshua Zegen<br>Title: Authorized Signatory | **CLAY RIVERVIEW LLC**<br><br>By: _____<br>Name: _Bojin Zhu_<br>Title: _President_ |
| **LAND LOAN LENDER** | **LAND LOAN BORROWER** |
| **DUPONT STREET 1 LLC**<br><br>By: _____<br>Name: Joshua Zegen<br>Title: Authorized Signatory | **DUPONT STREET DEVELOPERS LLC**<br><br>By: _____<br>Name: _Bojin Zhu_<br>Title: _President_ |
| | **GUARANTOR**<br><br>_____<br>BO JIN ZHU |
| | |

State of New York      )
                       )ss.:
County of Newyok       )

On the 5ᵗʰ day of November in the year 2019 before me, the undersigned, a notary public in and for said state, personally appeared ___Bo Jin Zhu___, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
NOTARY PUBLIC

ROBERT M. SASLOFF
Notary Public, State of New York
No. 02SA4966401
Qualified in Kings County
Commission Expires 5-7-20 22

State of New York      )
                       )ss.:
County of Newyok       )

On the 5ᵗʰ day of November in the year 2019, before me, the undersigned, a notary public in and for said state, personally appeared Bo Jin Zhu, personally personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
NOTARY PUBLIC

ROBERT M. SASLOFF
Notary Public, State of New York
No. 02SA4966401
Qualified in Kings County
Commission Expires 5-7-20 22

State of New York      )
                       )ss.:
County of New York     )

On the 6ᵗʰ day of November in the year 2019, before me, the undersigned, a notary public in and for said state, personally appeared ___Joshua Tegen___, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
NOTARY PUBLIC

TOM KORDENBROCK
Notary Public, State of New York
No. 01KO6371148
Qualified in New York County
Commission Expires February 20, 2022

**Exhibit A**

**LAND LOAN AND MEZZ LOAN PAYOFF LETTERS**

Exhibit "A-1"

Land Loan Payoff

**MRFS LLC**
520 Madison Avenue, Suite 3501
New York, NY 10022
Telephone: 646-472-1900

RE: Loan to:                                    Dupont Street Developers LLC
    Date of Loan:                               8/11/2017
    Gross Loan Amount:                          $   28,000,000.00

To Whom It May Concern:

In accordance with the recent request, please be advised that the outstanding indebtedness of the Borrower under the above-referenced loan as of the date set forth below will be as follows:

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Unpaid Principal Balance | | | | | | | : | $ | 28,000,000.00 |
| Nominal Interest on | $ | 25,000,000.00 | at | 12.000% | from | 4/1/2017 | to | 9/12/2019 | : | $ | 500,000.00 |
| Default Interest on | $ | 25,000,000.00 | at | 24.000% | from | 6/1/2017 | to | 7/31/2017 | : | $ | 1,016,666.67 |
| Default Interest on | $ | 25,000,000.00 | at | 24.000% | from | 8/1/2017 | to | 8/10/2017 | : | $ | 166,666.67 |
| Default Interest on | $ | 28,000,000.00 | at | 24.000% | from | 8/11/2017 | to | 11/5/2019 | : | $ | 15,250,666.67 |
| Nominal Interest Received | | | | | | | : | $ | (1,574,894.03) |
| Entity Fees | | | | | | | : | $ | 3,101.80 |
| Environmental Fee | | | | | | | : | $ | 989.41 |
| Appraisal Fees | | | | | | | : | $ | 5,000.00 |
| Legal Fees | | | | | | | : | $ | 17,994.02 |
| Recording Fee | | | | | | | : | $ | 3,210.00 |
| Exit Fee | | | | | | | : | $ | 280,000.00 |
| Tax Monitoring Fees | | | | | | | : | $ | 78.65 |
| Servicing Fees | | | | | | | : | $ | 56,000.00 |

**Total Amount Due on:**                       11/5/2019                          $   43,725,479.85

Please note that the per diem rate thereafter is:        $18,666.67
This payoff letter shall expire on:                      11/5/2019

Please be aware that we reserve the right to make adjustments to the above amounts in the event that a mathematical, typographical, or clerical error has occurred. This payoff letter shall not be binding until verified with Lender.

Exhibit "A-2"

Mezz Loan Payoff

**MRFS LLC**
520 Madison Avenue, Suite 3501
New York, NY 10022
Telephone: 646-472-1900

RE: Loan to:              Clay Riverview LLC
      Date of Loan:        8/11/2017
      Gross Loan Amount:   $    4,850,000.00

To Whom It May Concern:

In accordance with the recent request, please be advised that the outstanding indebtedness of the Borrower under the above-referenced loan as of the date set forth below will be as follows:

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Unpaid Principal Balance | | | | | | | : | $ | 4,850,000.00 |
| Default Interest on | $ | 4,850,000.00 | at | 24.000% | from | 8/11/2017 | to | 11/5/2019 | : | $ | 2,641,633.33 |
| Exit Fee | | | | | | | : | $ | 48,500.00 |
| Servicing Fees | | | | | | | : | $ | 9,700.00 |
| Legal Fees | | | | | | | : | $ | 20,000.00 |

Total Amount Due on:                         11/5/2019                              $   7,569,833.33

Please note that the per diem rate thereafter is:      $3,233.33
This payoff letter shall expire on:                    11/5/2019

Please be aware that we reserve the right to make adjustments to the above amounts in the event that a mathematical, typographical, or clerical error has occurred. This payoff letter shall not be binding until verified with Lender.

## SECOND AMENDMENT TO FORBEARANCE AGREEMENT

This Second Amendment to Forbearance Agreement ("**Amendment**") is made and entered into as of this 14th day of November, 2019, by and among **DUPONT STREET 2 LLC**, a Delaware limited liability company, its successors and/or assigns as their interests may appear having offices at 825 Third Avenue, 37th Floor, New York, New York 10022 (the "**Mezz Lender**"), **DUPONT STREET 1 LLC**, a Delaware limited liability company, its successors and/or assigns as their interests may appear having offices at 825 Third Avenue, 37th Floor, New York, New York 10022 ("**Land Loan Lender**" and together with the Mezz Lender, the "**Lender**"), **CLAY RIVERVIEW LLC,** a New York limited liability company having an address at 87-10 Queens Boulevard, Elmhurst, New York 11373 (the "**Mezz Borrower**"), **DUPONT STREET DEVELOPERS LLC**, a New York limited liability company having an address at 87-10 Queens Boulevard, Elmhurst, New York 11373( "**Land Loan Borrower**", and together with the Mezz Borrower, the "**Borrower**") (and **BO JIN ZHU** having an address at 60 Henry Street, Apt 15C, New York, New York 10002 (the "**Guarantor**", and together with the Lender, and the Borrower, collectively, the "**Parties**").

WHEREAS, on October 2, 2019, the Parties duly executed a Forbearance Agreement ("**FB Agreement**") and desire to amend the terms of the FB Agreement as set forth below.

WHEREAS, in accordance with FB Agreement, the UCC Sale was adjourned from October 3, 2019 to November 5, 2019.

WHEREAS, on or about November 4, 2019, the Parties duly executed a First Amendment to Forbearance Agreement ("**First Amendment**"), which, among other things, adjourned the UCC Sale from November 5, 2019 to November 15, 2019.

WHEREAS, the Land Loan Borrower and DuPont Realty NY LLC ("**Purchaser**") entered into a contract of sale for the Property dated March 30, 2018 ("**Property Sale Contract**").

WHEREAS, the Borrower and Guarantor have requested that Lender modify the FB Agreement and First Amendment, by among other things, extending the Termination Date, and the Lender has agreed to so in accordance with the terms and conditions of this Amendment.

NOW, THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the receipt, adequacy and sufficiency of which are hereby acknowledged, the parties agree to amend the FB Agreement as follows:

1.      The Parties agree and acknowledge the above recitals as well as the recitals in the FB Agreement, the First Amendment and this Amendment are true and correct.

2.      Unless otherwise amended or modified herein, all existing obligations and rights and remedies set forth in the terms and provisions of the FB Agreement and the Loan Documents, shall remain in full force and effect, and the Parties acknowledge the validity of the FB Agreement (as amended from time to time) and the Loan Documents and ratify and affirm same. Except as

set forth herein, all capitalized terms shall have the same meaning as set forth in the FB Agreement and the Loan Documents.

3.      The Parties agree and acknowledge that, in accordance with the terms and conditions of the Loan Documents, that the Obligations due and owing to the Lender under the Land Loan and the Mezz Loan, as of November 15, 2019, are set forth in **Exhibit "A-1"** and **"A-2"** annexed hereto, respectively.

4.      The Parties agree and acknowledge that the Termination Date set forth in the FB Agreement is extended through to and including January 14, 2020 TIME BEING OF THE ESSENCE (**"First Extended Termination Date"**, the period between the Effective Date and the First Extended Termination Date being known herein as the **"First Extended Forbearance Period"**).

5.      The Parties agree and acknowledge the UCC Sale is adjourned from November 15, 2019, to a date no earlier than November 22, 2019 and if the Amended Property Sale Contract is provided during the Re-Negotiation Period (as defined below), on the earlier of (i) a Termination Event occurring and (ii) the first available sale date after the First Extended Termination Date (**"UCC Sale Adjournment Date"**).

6.      Borrower and Guarantor agree and acknowledge the UCC Sale: (i) was duly and properly noticed, (ii) advertised in a commercially reasonable manner by the Lender by publishing the UCC Sale in the New York Post three (3) time, and such notice is acknowledged to be commercially reasonable and in accordance with the accepted practices and procedures for the disposition of the Collateral and Pledged Interests, (iii) shall be held at the offices of Kriss & Feuerstein LLP, attorneys for the Lender, at 360 Lexington Avenue, 12th Floor, New York, New York 10017 (**"UCC Sale Location"**), and it shall be commercially reasonable to conduct the UCC Sale at the UCC Sale Location, (iv) was scheduled to occur on November 15, 2019, and it is commercially reasonable for the Lender to announce the adjournment of the UCC Sale on November 15, 2019 at the UCC Sale Location without the need for any further publication, (v) to the extent applicable, it shall be commercially reasonable for the Lender to announce the adjournment of the UCC Sale on November 22, 2019, at the UCC Sale Location and it shall also be commercially reasonable for Lender to, in its sole discretion, to advertise the UCC Sale Adjournment Date one (1) time in any publication or to not advertise the UCC Sale Adjournment Date in any publication. The sole reason the UCC Sale has been adjourned is in accordance with this Amendment, is solely to give Borrower until the First Extended Termination Date to pay off the Obligations in full. Further, Borrower acknowledges that Lender has no obligation to enter into any further agreement of forbearance. Accordingly, and as a material inducement for Lender to adjourn the UCC Sale, Borrower consents that it shall not move or apply for any stay or injunction, by whatever name known, in any court, with either the intent or effect of either: (a) extending the First Extended Forbearance Period, or (b) otherwise delaying Mezz Lender in its enforcement of the FB Agreement or otherwise under the Mezz Loan Documents.

7.      As consideration for Lender's continuing to forbear in accordance with the FB Agreement and this Amendment, Borrower and Guarantor agree that by no later than November 22, 2019 at 5:00 P.M ET. (**"Re-Negotiation Period"**), the Land Loan Borrower shall renegotiate

the existing Property Sale Contract to secure an increase of the Purchase Price (as that term is defined in the Property Sale Contract) in the amount of no less than $2,125,000.00 ("**Property Sale Price Increase**"). For avoidance of doubt, during the Re-Negotiation Period, the Land Loan Borrower must have a written amendment to the Property Sale Contract reflecting the Property Sale Price Increase that is signed by both the Land Loan Borrower and the Purchaser ("**Amended Property Sale Contract**"). Upon execution of the Amended Property Sale Contract, Land Loan Borrower shall provide proof of same to the Lender. The failure of the Land Loan Borrower to secure the Amended Property Sale Contract reflecting the Property Sale Price Increase by the end the Re-Negotiation Period shall constitute a Termination Event, and Borrower and Guarantor agree and acknowledge that Paragraphs 8 and 9 below shall be of no force and effect.

8. The Parties agree and acknowledge, that for the first thirty (30) days from the date of this Amendment, the amounts set forth on Exhibit "A-1" and "A-2" shall not accrue any interest ("**Interest Freeze Period**"), however notwithstanding the foregoing, interest on the Obligations shall continue to accrue until the Amended Property Sale Contract is secured by the Land Loan Borrower in accordance with Paragraph 7 above. For avoidance of doubt, if for example, the Land Loan Borrower secures the Amended Property Sale Contract on November 22, 2019, per diem interest would have accrued and be added to the Obligations for seven (7) days, and interest would only be frozen from November 23, 2019 through December 14, 2019. For avoidance of doubt, except for the foregoing, there shall be no per diem accruing during the Interest Freeze Period. If the Borrower fails to payoff the Obligations during the Interest Freeze Period, then commencing immediately thereafter beginning on December 15, 2019, the Obligations shall continue to accrue at the Default Rate in accordance with the terms and conditions of the Mezz Loan and of the Land Loan respectively.

9. Provided Borrower and the Guarantor comply with all the terms and conditions of the FB Agreement and this Amendment, and provided a Termination Event does not occur, then, upon a Payoff of the Obligations occurring on or before the First Extended Termination Date, TIME BEING OF THE ESSENCE, Lender shall make a concession with respect to the Obligations due under the Mezz Loan and Mezz Loan Documents by decreasing the sum due under the Mezz Loan by $1,375,000 ("**Reduced Payoff**"). For the avoidance of doubt, the Obligations shall continue to accrue at the Default Rate after the Interest Freeze Period as set forth in Paragraph 8 above, and the Reduced Payoff shall only apply if a Termination Event does not occur. For the avoidance of doubt, if a Termination Event occurs or the Loan is paid off after the First Extended Termination Date, then the Borrower shall be obligated to pay Obligations in full, and the Reduced Payoff shall be null and void and of no force and effect.

10. The Borrower and Guarantor hereby acknowledge and agree that they have no offsets, defenses, claims, or counterclaims against the Lender, Lender's affiliates, member of Lender or any of its affiliates and agents, or the such parties' officers, principals, directors, employees, attorneys, representatives, predecessors, successors, and assigns (collectively, the "**Lender Parties**") with respect to the duly executed Loan Documents and the Obligations and facts and circumstances in connection therewith, including, without limitation, the FB Agreement, the First Amendment, the Existing Default, or otherwise, and that if the Borrower or Guarantor now have, or ever did have, any offsets, defenses, claims, or counterclaims against the Lender Parties, whether known or unknown, at law or in equity, from the beginning of the world

through this date and through the time of execution of this Amendment, all of them are hereby expressly **WAIVED**, and the Borrower and Guarantor each hereby **RELEASE** the Lender Parties from any liability therefor. It is understood and agreed that this Paragraph shall not be deemed or construed as an admission by Lender of liability of any nature whatsoever arising from or related to the subject of this Paragraph or otherwise.

11.    This Amendment may be executed in counterparts, or electronic transmission, and when taken together shall constitute one single agreement. Facsimile or electronic copies of signatures shall have the same force and effect as an original.

**IN WITNESS WHEREOF**, this Amendment has been executed as of the date first set forth above.

| **MEZZ LOAN LENDER** | **MEZZ LOAN BORROWER** |
|---|---|
| **DUPONT STREET 2 LLC**<br>By:<br>Name: Brian Shatz<br>Title: **Authorized Signatory** | **CLAY RIVERVIEW LLC**<br>By:<br>Name: Bo Jin Zhu<br>Title: President |
| **LAND LOAN LENDER** | **LAND LOAN BORROWER** |
| **DUPONT STREET 1 LLC**<br>By:<br>Name: Brian Shatz<br>Title: **Authorized Signatory** | **DUPONT STREET DEVELOPERS LLC**<br>By:<br>Name: Bo Jin Zhu<br>Title: President |
|  | **GUARANTOR**<br><br>**BO JIN ZHU** |
|  |  |

State of New York    )
                     )ss.:
County of  New York  )

On the 26 day of November in the year 2019, before me, the undersigned, a notary public in and for said state, personally appeared ___Brian Shutt___, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

NOTARY PUBLIC

TOM KORDENBROCK
Notary Public, State of New York
No. 01KO6371148
Qualified in New York County
Commission Expires February 20, 2022

State of New York    )
                     )ss.:
County of            )

On the 26 day of November in the year 2019, before me, the undersigned, a notary public in and for said state, personally appeared ___Bo Jin Zhu___, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

NOTARY PUBLIC

ROBERT M. SASLOFF
Notary Public, State of New York
No. 02SA4966401
Qualified in Kings County
Commission Expires 5-7-20

State of New York      )
                       )ss.:
County of New York     )

On the 26 day of November in the year 2019, before me, the undersigned, a notary public in and for said state, personally appeared ___Bo Jin Zhu___, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

ROBERT M. SASLOFF
Notary Public, State of New York
No. 02SA4966401
Qualified in Kings County
Commission Expires 5-7-20

## Exhibit A

### LAND LOAN AND MEZZ LOAN PAYOFF LETTERS

Exhibit "A-1"

Land Loan Payoff

**MRFS LLC**
520 Madison Avenue, Suite 3501
New York, NY 10022
Telephone: 646-472-1900

RE: Loan to:               Dupont Street Developers LLC
    Date of Loan:          8/11/2017
    Gross Loan Amount:     $   28,000,000.00

To Whom It May Concern:

In accordance with the recent request, please be advised that the outstanding indebtedness of the Borrower under the above-referenced loan as of the date set forth below will be as follows:

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Unpaid Principal Balance | | | | | | | | : | $ | 28,000,000.00 |
| Nominal Interest on | $ | 25,000,000.00 | at | 12.000% | from | 4/1/2017 | to | 9/12/2019 | : | $ | 500,000.00 |
| Default Interest on | $ | 25,000,000.00 | at | 24.000% | from | 6/1/2017 | to | 7/31/2017 | : | $ | 1,016,666.67 |
| Default Interest on | $ | 25,000,000.00 | at | 24.000% | from | 8/1/2017 | to | 8/10/2017 | : | $ | 166,666.67 |
| Default Interest on | $ | 28,000,000.00 | at | 24.000% | from | 8/11/2017 | to | 11/15/2019 | : | $ | 15,437,333.33 |
| Nominal Interest Received | | | | | | | | : | $ | (1,574,894.03) |
| Protective Advance for Taxes | | | | | | | | : | $ | 525,328.68 |
| Default Interest on Protective Advance | | | at | 24.000% | from | 11/6/2019 | to | 11/15/2019 | : | $ | 3,502.19 |
| Protective Advance for Taxes | | | | | | | | : | $ | 1,198,530.13 |
| Default Interest on Protective Advance | | | at | 24.000% | from | 11/13/2019 | to | 11/15/2019 | : | $ | 2,397.06 |
| Entity Fees | | | | | | | | : | $ | 3,101.80 |
| Environmental Fee | | | | | | | | : | $ | 989.41 |
| Appraisal Fees | | | | | | | | : | $ | 5,000.00 |
| Legal Fees | | | | | | | | : | $ | 17,994.02 |
| Recording Fee | | | | | | | | : | $ | 3,210.00 |
| Exit Fee | | | | | | | | : | $ | 280,000.00 |
| Tax Monitoring Fees | | | | | | | | : | $ | 78.65 |
| Servicing Fees | | | | | | | | : | $ | 56,000.00 |

Total Amount Due on:                  11/15/2019                              $   45,641,904.58

Please note that the per diem rate thereafter is:        $19,815.91
This payoff letter shall expire on:                      11/18/2019

Please be aware that we reserve the right to make adjustments to the above amounts in the event that a mathematical, typographical, or clerical error has occurred. This payoff letter shall not be binding until verified with Lender.

**MRFS LLC**
520 Madison Avenue, Suite 3501
New York, NY 10022
Telephone: 646-472-1900

RE: Loan to:                                    Clay Riverview LLC
      Date of Loan:                              8/11/2017
      Gross Loan Amount:                         $    4,850,000.00

To Whom It May Concern:

In accordance with the recent request, please be advised that the outstanding indebtedness of the Borrower under the above-referenced loan as of the date set forth below will be as follows:

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Unpaid Principal Balance | | | | | | | : | $ | 4,850,000.00 |
| Default Interest on | $ | 4,850,000.00 | at | 24.000% | from | 8/11/2017 to 11/15/2019 | : | $ | 2,673,966.67 |
| Exit Fee | | | | | | | : | $ | 48,500.00 |
| Servicing Fees | | | | | | | : | $ | 9,700.00 |
| Legal Fees | | | | | | | : | $ | 20,000.00 |

Total Amount Due on:                11/15/2019                                              $    7,602,166.67

Please note that the per diem rate thereafter is:        $3,233.33
This payoff letter shall expire on:                      11/18/2019

Please be aware that we reserve the right to make adjustments to the above amounts in the event that a mathematical, typographical, or clerical error has occurred. This payoff letter shall not be binding until verified with Lender.



2017081701029004001E98B7

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 12 |
|---|---|

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

**Document ID:** 2017081701029004     **Document Date:** 08-11-2017     **Preparation Date:** 08-17-2017
**Document Type:** ASSIGNMENT OF LEASES AND RENTS
**Document Page Count:** 10

| PRESENTER: | RETURN TO: |
|---|---|
| KENSINGTON VANGUARD NATIONAL LAND 39 WEST 37TH ST TITLE NO. 835217(S-NY-CR-KV) HOLD FOR PICKUP / SEARCH NY NEW YORK, NY 10018 212-532-8686 jrenaldo@KVNATIONAL.COM | DUPONT STREET 1 LLC C/O MADISON REALTY CAPITAL 825 THIRD AVE 37TH FLR ATTN SHOSHANA CARMEL NEW YORK, NY 10022 |

## PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 2487 | 1 Entire Lot | | 280 FRANKLIN STREET |

**Property Type:** INDUSTRIAL BUILDING

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 2487 | 10 Entire Lot | | 10 CLAY STREET |

**Property Type:** INDUSTRIAL BUILDING
☒ Additional Properties on Continuation Page

## CROSS REFERENCE DATA

**CRFN:** 2014000176361
☒ Additional Cross References on Continuation Page

## PARTIES

| ASSIGNOR: | ASSIGNEE: |
|---|---|
| DUPONT STREET DEVELOPERS LLC 87-10 QUEENS BOULEVARD ELMHURST, NY 11373 | DUPONT STREET 1 LLC C/O MADISON REALTY CAPITAL, 825 THIRD AVENUE 37TH FLOOR NEW YORK, NY 10022 |

## FEES AND TAXES

| Mortgage : | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 28,000,000.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | 255 | | | $ | 0.00 |
| TAXES:  County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 0.00 | | | |
| MTA: | $ | 0.00 | | | |
| NYCTA: | $ | 0.00 | | | |
| Additional MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 0.00 | | | |
| Recording Fee: | $ | 114.00 | | | |
| Affidavit Fee: | $ | 8.00 | | | |

**RECORDED OR FILED IN THE OFFICE**
**OF THE CITY REGISTER OF THE**
**CITY OF NEW YORK**
Recorded/Filed     08-23-2017 12:44
City Register File No.(CRFN):
**2017000314509**

*Annette M Hill*

**City Register Official Signature**



**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

2017081701029004001C9A37

| RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION) | | PAGE 2 OF 12 |
|---|---|---|

Document ID: 2017081701029004    Document Date: 08-11-2017    Preparation Date: 08-17-2017
Document Type: ASSIGNMENT OF LEASES AND RENTS

---

**PROPERTY DATA**

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 2487 | 12 | Entire Lot | 14 CLAY STREET |

Property Type: INDUSTRIAL BUILDING

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 2487 | 17 | Entire Lot | 22 CLAY STREET |

Property Type: INDUSTRIAL BUILDING

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 2487 | 18 | Entire Lot | 26 CLAY STREET |

Property Type: INDUSTRIAL BUILDING

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 2487 | 20 | Entire Lot | 30 CLAY STREET |

Property Type: INDUSTRIAL BUILDING

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 2487 | 21 | Entire Lot | 32 CLAY STREET |

Property Type: INDUSTRIAL BUILDING

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 2487 | 57 | Entire Lot | 93 DUPONT STREET |

Property Type: INDUSTRIAL BUILDING

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 2487 | 72 | Entire Lot | 57 DUPONT STREET |

Property Type: INDUSTRIAL BUILDING

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 2487 | 78 | Entire Lot | 55 DUPONT STREET |

Property Type: INDUSTRIAL BUILDING

---

**CROSS REFERENCE DATA**
Document ID: 2017081701029002
Document ID: 2017081701029003

**DUPONT STREET DEVELOPERS LLC**
(Assignor)

To

**DUPONT STREET 1 LLC**
(Assignee)

---

## ASSIGNMENT OF LEASES AND RENTS

---

| | |
|---|---|
| Dated: | As of August 11, 2017 |
| Premises: | 280 Franklin Street, 10, 14, 22, 26, 30 and 32 Clay Street and 93, 57 and 55 Dupont Street Brooklyn, New York 11222 |
| Block: | 2487 |
| Lot: | 1, 10, 12, 17, 18, 20, 21, 57, 72, 78 |
| County: | Kings |

### RECORD AND RETURN TO:

DUPONT STREET 1 LLC
c/o Madison Realty Capital
825 Third Avenue, 37th Floor
New York, New York 10022
Attention: Shoshana Carmel

Title No.:    835217

Title Co.:    Kensington Vanguard National Land Services, as agent for Stewart Title Insurance Company

           **THIS ASSIGNMENT OF LEASES AND RENTS** (the "**Assignment**") is made as of the 11th day of August, 2017, by **DUPONT STREET DEVELOPERS LLC**, a New York limited liability company, having an address at 87-10 Queens Boulevard, Elmhurst, New York 11373 ("**Assignor**"), to **DUPONT STREET 1 LLC**, a Delaware limited liability company, its successors and/or assigns, as their interests may appear, having offices at 825 Third Avenue, 37th Floor, New York, New York 10022 ("**Assignee**").

## WITNESSETH:

           **THAT** Assignor, for good and valuable consideration, receipt whereof is hereby acknowledged, hereby grants, transfers and absolutely assigns to Assignee the entire lessor's interest in and to all leases and other agreements affecting the use, enjoyment, or occupancy of all or any part of that certain lot or piece of land, more particularly described in Schedule "A" annexed hereto and made a part hereof (the "**Premises**"), together with the buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and improvements now or hereafter located thereon (hereinafter collectively referred to as the "**Mortgaged Property**");

           **TOGETHER WITH** all other leases and other agreements affecting the use, enjoyment or occupancy of the Mortgaged Property now or hereafter made affecting the Mortgaged Property or any portion thereof, together with any extension or renewal of the same, this Assignment of other present and future leases and present and future agreements being effective without further or supplemental assignment (the leases and other agreements described above together with all other present and future leases and present and future agreements and any extension or renewal of the same are hereinafter collectively referred to as the "**Leases**");

           **TOGETHER WITH** all rents, income, issues and profits arising from the Leases and renewals thereof and together with all rents, income, issues and profits (including all oil and gas or other mineral royalties and bonuses) from the use, enjoyment and occupancy of the Mortgaged Property (hereinafter collectively referred to as the "**Rents**").

           **THIS ASSIGNMENT** is made for the purposes of securing:

           A.     The payment of the principal sum, interest and all other sums (hereinafter collectively referred to as the "**Debt**") secured by, inter alia, that certain Consolidated, Amended and Restated Mortgage and Security Agreement of even date herewith in the principal amount of $28,000,000.00 by Assignor as mortgagor and Assignee as mortgagee covering the Premises (hereinafter referred to as the "**Mortgage**") and evidenced by that certain Consolidated, Amended and Restated Note as granted of even date herewith in the principal amount of $28,000,000.00 made by Assignor as maker and Assignee as payee (hereinafter collectively referred to as the "**Note**").

           B.     The performance and discharge of each and every obligation, covenant and agreement of Assignor contained herein, in the Mortgage, in the Note and in all and any of the documents other than this Assignment, the Note or the Mortgage now or hereafter executed by Assignor and/or others and by or in favor of Assignee which wholly or partially secure or

guarantee payment of the Debt (hereinafter collectively referred to as the "**Other Security Documents**").

        **ASSIGNOR WARRANTS** that (i) Assignor is the sole owner of the entire lessor's interest in the Leases; (ii) the Leases are valid and enforceable and have not been altered, modified or amended in any manner whatsoever except as herein set forth; (iii) none of the Rents reserved in the Leases have been assigned or otherwise pledged or hypothecated; (iv) none of the Rents have been collected for more than one (1) month in advance; (v) Assignor has full power and authority to execute and deliver this Assignment and the execution and delivery of this Assignment has been duly authorized and does not conflict with or constitute a default under any law, judicial order or other agreement affecting Assignor or the Mortgaged Property; (vi) the premises demised under the Leases have been completed and the tenants under the Leases have accepted the same and have taken possession of the same on a rent-paying basis; and (vii) there exist no offsets or defenses to the payment of any portion of the Rents.

        **ASSIGNOR COVENANTS** with Assignee that Assignor (a) shall observe and perform all the obligations imposed upon the lessor under the Leases and shall not do or permit to be done anything to impair the value of the Leases as security for the Debt; (b) shall promptly send copies to Assignee of all notices of default which Assignor shall send or receive thereunder; (c) shall enforce all of the terms, covenants and conditions contained in the Leases upon the part of the lessees thereunder to be observed or performed, short of termination thereof; (d) shall not collect any of the Rents more than one (1) month in advance; (e) shall not execute any other assignment of lessor's interest in the Leases or the Rents; (f) shall not alter, modify or change the terms of the Leases without the prior written consent of Assignee, or cancel or terminate the Leases or accept a surrender thereof or convey or transfer or suffer or permit a conveyance or transfer of the Mortgaged Property or of any interest therein so as to effect a merger of the estates and rights of, or a termination or diminution of the obligations of, lessees thereunder; (g) shall not alter, modify or change the terms of any guaranty of any of the Leases or cancel or terminate any such guaranty without the prior written consent of Assignee; (h) shall execute and deliver at the request of Assignee all such further assurances, confirmations and assignments in connection with the Mortgaged Property as Assignee shall from time to time require; and (i) shall not enter into any new lease of the Mortgaged Property without the prior written consent of Assignee.

        **ASSIGNOR FURTHER COVENANTS** with Assignee that (A) all Leases shall be written on the standard form of lease which standard form lease shall be submitted to Assignee for approval; (B) upon request, Assignor shall furnish Assignee with executed copies of all Leases; (C) no material changes may be made to the Assignee-approved standard lease without the prior written consent of Assignee; (D) in addition, all renewals of Leases and all proposed Leases shall provide for rental rates comparable to existing local market rates, which, in the case of residential Leases, shall not be in excess of the local registered rent for the apartment to which the Lease relates, and shall be arms-length transactions); (E) all Leases shall provide that they are subordinate to the Mortgage and that the lessees agree to attorn to Assignee, and (F) that, in the case of residential Leases, Assignor will comply with all requirements to register such Leases with the Division of Housing and Community Renewal or other applicable municipal agency.

2

**THIS ASSIGNMENT** is made on the following terms, covenants and conditions:

1.     **Present Assignment**. Assignee is hereby granted and assigned by Assignor the right to enter the Mortgaged Property for the purpose of enforcing its interest in the Leases and the Rents, this Assignment constituting a present, absolute assignment of the Leases and Rents. Nevertheless, subject to the terms of this paragraph 1, Assignee grants to Assignor a revocable license to operate and manage the Mortgaged Property and to collect the Rents. Assignor shall hold the Rents, or a portion thereof sufficient to discharge all current sums due on the Debt, for use in the payment of such sums. Upon or at any time after an Event of Default (as defined in the Mortgage), the license granted to Assignor herein may be revoked by Assignee.

2.     **Remedies of Assignee**. Upon or at any time after an Event of Default, Assignee may, at its option, without waiving such Event of Default, without notice and without regard to the adequacy of the security for the Debt, either in person or by agent, with or without bringing any action or proceeding, or by a receiver appointed by a court, revoke the license granted in paragraph 1 of this Assignment and take possession of the Mortgaged Property and have, hold, manage, lease and operate the Mortgaged Property on such terms and for such period of time as Assignee may deem proper and either with or without taking possession of the Mortgaged Property in its own name, demand, sue for and otherwise collect and receive all Rents, including those past due and unpaid with full power to make from time to time all alterations, renovations, repairs or replacements thereto or thereof as may seem proper to Assignee and may apply the Rents to the payment of the following in such order and proportion as Assignee in its sole discretion may determine, any law, custom or use to the contrary notwithstanding: (a) all expenses of managing and securing the Mortgaged Property, including, without being limited thereto, the salaries, fees and wages of a managing agent and such other employees or agents as Assignee may deem necessary or desirable and all expenses of operating and maintaining the Mortgaged Property, including, without being limited thereto, all taxes, charges, claims, assessments, water charges, sewer rents and any other liens, and premiums for all insurance which Assignee may deem necessary or desirable, and the cost of all alterations, renovations, repairs or replacements, and all expenses incident to taking and retaining possession of the Mortgaged Property; and (b) the Debt, together with all costs and attorneys' fees. In addition to the rights which Assignee may have herein, upon the occurrence of an Event of Default, Assignee, at its option, may either require Assignor to pay monthly in advance to Assignee, or any receiver appointed to collect the Rents, the fair and reasonable rental value for the use and occupation of such part of the Mortgaged Property as may be in possession of Assignor or may require Assignor to vacate and surrender possession of the Mortgaged Property to Assignee or to such receiver and, in default thereof, Assignor may be evicted by summary proceedings or otherwise. For purposes of this paragraph 2, Assignor grants to Assignee its irrevocable power of attorney, coupled with an interest, to take any and all of the aforementioned actions and any or all other actions designated by Assignee for the proper management and preservation of the Mortgaged Property. The exercise by Assignee of the option granted it in this paragraph 2 and the collection of the Rents and the application thereof as herein provided shall not be considered a waiver of any default by Assignor under the Note, the Mortgage, the Leases, this Assignment or the Other Security Documents.

3.     **No Liability of Assignee**. Assignee shall not be liable for any loss sustained by Assignor resulting from Assignee's failure to let the Mortgaged Property after an

3

Event of Default or from any other act or omission of Assignee in managing the Mortgaged Property after default unless such loss is caused by the willful misconduct and bad faith of Assignee. Assignee shall not be obligated to perform or discharge any obligation, duty or liability under the Leases or under or by reason of this Assignment and Assignor shall, and hereby agrees, to indemnify Assignee for, and to hold Assignee harmless from, any and all liability, loss or damage which may or might be incurred under the Leases or under or by reason of this Assignment and from any and all claims and demands whatsoever, including the defense of any such claims or demands which may be asserted against Assignee by reason of any alleged obligations and undertakings on its part to perform or discharge any of the terms, covenants or agreements contained in the Leases. Should Assignee incur any such liability, the amount thereof, including costs, expenses and reasonable attorneys' fees, shall be secured hereby and by the Mortgage and the Other Security Documents and Assignor shall reimburse Assignee therefor immediately upon demand and upon the failure of Assignor to do so Assignee may, at its option, declare all sums secured hereby and the Mortgage and the Other Security Documents immediately due and payable. This Assignment shall not operate to place any obligation or liability for the control, care, management or repair of the Mortgaged Property upon Assignee, nor for the carrying out of any of the terms and conditions of the Leases; nor shall it operate to make Assignee responsible or liable for any waste committed on the Mortgaged Property by the tenants or any other parties, or for any dangerous or defective condition of the Mortgaged Property, including without limitation the presence of any Hazardous Materials (as defined in the Mortgage), or for any negligence in the management, upkeep, repair or control of the Mortgaged Property resulting in loss or injury or death to any tenant, licensee, employee or stranger.

         4.     **Notice to Lessees.** Assignor hereby authorizes and directs the lessees named in the Leases or any other or future lessees or occupants of the Mortgaged Property upon receipt from Assignee of written notice to the effect that Assignee is then the holder of the Mortgage and that a default exists thereunder or under this Assignment, the Note or the Other Security Documents to pay over to Assignee all Rents and to continue so to do until otherwise notified by Assignee.

         5.     **Other Security.** Assignee may take or release other security for the payment of the Debt, may release any party primarily or secondarily liable therefor and may apply any other security held by it to the reduction or satisfaction of the Debt without prejudice to any of its rights under this Assignment.

         6.     **Other Remedies.** Nothing contained in this Assignment and no act done or omitted by Assignee pursuant to the power and rights granted to Assignee hereunder shall be deemed to be a waiver by Assignee of its rights and remedies under the Note, the Mortgage, or the Other Security Documents and this Assignment is made and accepted without prejudice to any of the rights and remedies possessed by Assignee under the terms thereof. The right of Assignee to collect the Debt and to enforce any other security therefor held by it may be exercised by Assignee either prior to, simultaneously with, or subsequent to any action taken by it hereunder.

         7.     **No Mortgagee in Possession.** Nothing contained in this Assignment shall be construed as constituting Assignee a "mortgagee in possession" in the absence of the taking of actual possession of the Mortgaged Property by Assignee. In the exercise of the powers herein

4

granted Assignee, no liability shall be asserted or enforced against Assignee, all such liability being expressly waived and released by Assignor.

8.    **Conflict of Terms.**   In case of any conflict between the terms of this Assignment and the terms of the Mortgage, the terms of the Mortgage shall prevail.

9.    **No Oral Change.**   This Assignment and any provisions hereof may not be modified, amended, waived, extended, changed, discharged or terminated orally, or by any act or failure to act on the part of Assignor or Assignee, but only by an agreement in writing signed by the party against whom the enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

10.    **Certain Definitions.**   Unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, words used in this Assignment may be used interchangeably in singular or plural form and the word **"Assignor "** shall mean **"each Assignor and any subsequent owner or owners of the Mortgaged Property or any part thereof or any interest therein,"** the word **"Assignee"** shall mean **"Assignee and any subsequent holder of the Note,"** the word **"Note"** shall mean **"the Note and any other evidence of indebtedness secured by the Mortgage,"** the word **"person"** shall include an individual, corporation, partnership, limited liability company, trust, unincorporated association, government, governmental authority, and any other entity, the words **"Mortgaged Property"** shall include any portion of the Mortgaged Property and any interest therein, and the word **"Debt"** shall mean the principal balance of the Note with interest thereon as provided in the Note and the Mortgage and all other sums due pursuant to the Note, the Mortgage, this Assignment and the Other Security Documents; whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms, and the singular form of nouns and pronouns shall include the plural and vice versa.

11.    **Non-Waiver.**   The failure of Assignee to insist upon strict performance of any term hereof shall not be deemed to be a waiver of any term of this Assignment.  Assignor shall not be relieved of Assignor's obligations hereunder by reason of (i) failure of Assignee to comply with any request of Assignor or any other party to take any action to enforce any of the provisions hereof or of the Mortgage, the Note or the Other Security Documents, (ii) the release regardless of consideration, of the whole or any part of the Mortgaged Property, or (iii) any agreement or stipulation by Assignee extending the time of payment or otherwise modifying or supplementing the terms of this Assignment, the Note, the Mortgage or the Other Security Documents.  Assignee may resort for the payment of the Debt to any other security held by Assignee in such order and manner as Assignee, in its discretion, may elect.  Assignee may take any action to recover the Debt, or any portion thereof, or to enforce any covenant hereof without prejudice to the right of Assignee thereafter to enforce its rights under this Assignment.  The rights of Assignee under this Assignment shall be separate, distinct and cumulative and none shall be given effect to the exclusion of the others.  No act of Assignee shall be construed as an election to proceed under any one provision herein to the exclusion of any other provision.

12.    **Applicable Provisions.**   If any term, covenant or condition of this Assignment is held to be invalid, illegal or unenforceable in any respect, this Assignment shall be construed without such provision.

5

13.  **Duplicate Original.** This Assignment may be executed in any number of duplicate originals and each such duplicate original shall be deemed to be an original.

14.  **Governing Law.** THIS ASSIGNMENT, THE NOTE, THE MORTGAGE AND EACH OF THE OTHER SECURITY DOCUMENTS SHALL IN ALL RESPECTS BE GOVERNED, CONSTRUED, APPLIED AND ENFORCED IN ACCORDANCE WITH THE INTERNAL LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAW (OTHER THAN SECTION 5-1401 OF THE NEW YORK GENERAL OBLIGATIONS LAW).

15.  **Termination of Assignment.** Upon payment in full of the Debt and the delivery and recording of a satisfaction or discharge of Mortgage duly executed by Assignee, this Assignment shall become and be void and of no effect.

16.  **Rights of Assignee.** Assignee shall have all the rights against lessees of the Mortgaged Property as set forth in Section 291-f of the Real Property Law of New York.

17.  **Joint and Several Obligations.** Notwithstanding anything to the contrary, if the Assignor consists of more than one (1) person or entity, the representations, warranties, covenants and agreements made by Assignor herein and/or in any of the Other Security Documents, and the liability of the Assignor hereunder or thereunder, is joint and several.

18.  **Consent to Jurisdiction.** FOR ANY CLAIM, ACTION, OR DISPUTE ARISING UNDER, OR TO INTERPRET OR APPLY, THIS ASSIGNMENT, THE NOTE, THE MORTGAGE OR ANY OTHER SECURITY DOCUMENTS, OR TO RESOLVE ANY DISPUTE ARISING UNDER THE FOREGOING OR THE RELATIONSHIP BETWEEN THE PARTIES, ASSIGNOR IRREVOCABLY SUBMITS TO THE NONEXCLUSIVE JURISDICTION OF THE COURTS OF THE STATE OF NEW YORK AND THE UNITED STATES DISTRICT COURT LOCATED IN THE BOROUGH OF MANHATTAN IN NEW YORK CITY, NEW YORK, AND APPELLATE COURTS FROM ANY OF SUCH COURTS. ASSIGNOR IRREVOCABLY WAIVES ANY OBJECTION THAT IT MAY HAVE AT ANY TIME TO VENUE OF ANY SUCH SUIT, ACTION, OR PROCEEDING BROUGHT IN ANY SUCH COURT, INCLUDING ANY CLAIM THAT ANY SUCH SUIT, ACTION, OR PROCEEDING SO BROUGHT HAS BEEN BROUGHT IN AN INCONVENIENT FORUM. NOTHING IN THIS ASSIGNMENT, THE NOTE, THE MORTGAGE OR ANY OTHER SECURITY DOCUMENTS SHALL BE DEEMED TO PRECLUDE ASSIGNEE FROM BRINGING ANY SUIT, ACTION, OR PROCEEDING RELATING TO THIS ASSIGNMENT, THE NOTE, THE MORTGAGE, ANY OTHER SECURITY DOCUMENTS OR THE DEBT (AS SUCH TERM IS DEFINED IN THE MORTGAGE) IN ANY OTHER JURISDICTION WHERE ASSIGNEE COULD OTHERWISE PROPERLY BRING SUCH SUIT, ACTION, OR PROCEEDING. ASSIGNOR FURTHER CONSENTS AND AGREES TO SERVICE OF ANY SUMMONS, COMPLAINT OR OTHER LEGAL PROCESS IN ANY SUCH SUIT, ACTION OR PROCEEDING BY REGISTERED OR CERTIFIED U.S. MAIL, POSTAGE PREPAID, TO ASSIGNOR AT THE ADDRESS SET FORTH ON PAGE 1 HEREOF, AND CONSENTS AND AGREES THAT SUCH SERVICE SHALL CONSTITUTE IN EVERY RESPECT VALID AND EFFECTIVE SERVICE (BUT NOTHING HEREIN SHALL AFFECT THE

6

VALIDITY OR EFFECTIVENESS OF PROCESS SERVED IN ANY OTHER MANNER PERMITTED BY LAW).

**THIS ASSIGNMENT,** together with the covenants and warranties herein contained, shall inure to the benefit of Assignee and any subsequent holder of the Mortgage and shall be binding upon Assignor, his heirs, executors, administrators, successors and assigns and any subsequent owner of the Mortgaged Property.

**[Remainder of Page Intentionally Left Blank]**

7

**IN WITNESS WHEREOF**, Assignor has executed this Assignment the day and year first above written.

> **DUPONT STREET DEVELOPERS LLC**,
> a New York limited liability company
>
> By: _____
> Name: Bo Jin Zhu
> Title: Authorized Signatory

STATE OF NEW YORK     )
                         )   ss.:
COUNTY OF NEW YORK   )

On the 10 day of August, in the year 2017, before me, the undersigned, a Notary Public in and for said State, personally appeared Bo Jin Zhu, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

MARIA DI TORO
Notary Public, State of New York
No. 01DI6325959
Qualified in New York County
My Commission Expires 06-08-2019

SEAL

## SCHEDULE A

### Legal Description

ALL those certain plots, pieces or parcels of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, bounded and described as follows:

BEGINNING at the corner formed by the intersection of the easterly side of Franklin Street with the northerly side of Dupont Street;

RUNNING THENCE northerly, along the easterly side of Franklin Street, 191 feet 10-3/4 inches to the southerly side of Commercial Street;

THENCE northeasterly, along the southerly side of Commercial Street, 17 feet 0-1/4 inches to the southerly side of Clay Street;

THENCE easterly, along the southerly side of Clay Street, 410 feet;

THENCE southerly, parallel with Manhattan Avenue, 100 feet;

THENCE easterly, parallel with Dupont Street, 130 feet;

THENCE southerly, parallel with Manhattan Avenue, 100 feet to the northerly side of Dupont Street;

THENCE westerly, along the northerly side of Dupont Street, 555 feet to the corner the point or place of BEGINNING.



**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

2017081701029004001S5636

| SUPPORTING DOCUMENT COVER PAGE | PAGE 1 OF 1 |
|---|---|

**Document ID:** 2017081701029004     **Document Date:** 08-11-2017     **Preparation Date:** 08-17-2017
**Document Type:** ASSIGNMENT OF LEASES AND RENTS

**SUPPORTING DOCUMENTS SUBMITTED:**

| | Page Count |
|---|---|
| 255 MORTGAGE TAX EXEMPT AFFIDAVIT | 3 |

**AFFIDAVIT UNDER SECTION 255
OF ARTICLE II OF THE TAX
LAW OF THE STATE OF NEW YORK**

**(Assignment of Leases and Rents)**

| | | |
|---|---|---|
| STATE OF NEW YORK | ) | |
| | ) | ss.: |
| COUNTY OF NEW YORK | ) | |

BO JIN ZHU (hereinafter, the "**Deponent**") being duly sworn, deposes and says:

He is the Authorized Signatory of **DUPONT STREET DEVELOPERS LLC** (the "**Owner**").

The Owner is the holder of a fee interest in the premises located at 280 Franklin Street, Brooklyn, New York 11222; 10 Clay Street, Brooklyn, New York 11222; 14 Clay Street, Brooklyn, New York 11222; 22 Clay Street, Brooklyn, New York 11222; 26 Clay Street, Brooklyn, New York 11222; 30 Clay Street, Brooklyn, New York 11222; 32 Clay Street, Brooklyn, New York 11222; 93 Dupont Street, Brooklyn, New York 11222; 57 Dupont Street, Brooklyn, New York 11222; and 55 Dupont Street, Brooklyn, New York 11222 (collectively, the "**Premises**") more particularly described in a Consolidated, Amended and Restated Mortgage and Security Agreement (the "**Mortgage**") of even date herewith, and the undersigned is fully familiar with the facts and circumstances herein.

That all mortgage tax on the Mortgage was duly paid upon the recordation thereof.

That there is offered for recording simultaneously herewith an Assignment of Leases and Rents. That the said Assignment of Leases and Rents offered for recording does not create or secure any new or further indebtedness or obligation other than the principal indebtedness or obligation secured by, or which under any contingency may be secured by the Mortgage.

**WHEREFORE**, your deponent respectfully requests that said Assignment of Leases and Rents be declared exempt from taxation pursuant to the provisions of Section 255 of Article II of the Tax Law of the State of New York.

Dated: As of August 11, 2017

[SIGNATURE PAGE TO FOLLOW]

**IN WITNESS WHEREOF**, Deponent has duly executed this Section 255 Affidavit the day and year first above written.

BO JIN ZHU

Sworn to before me this _10_ day of August, in the year 2017

NOTARY PUBLIC

MARIA DI TORO
Notary Public, State of New York
No. 01DI6325959
Qualified in New York County
My Commission Expires 06-08-2019

SEAL

- 2 -

## SCHEDULE A

## SCHEDULE OF MORTGAGES

1.  Mortgage and Security Agreement dated as of May 19, 2014, made by DuPont Street Developers LLC to Maxim Credit Group, LLC, in the principal sum of $25,000,000.00, and recorded in the Office of the Register of the City of New York, Kings County (the "Register's Office"), on May 22, 2014 as CRFN 2014000176361 (Mortgage Tax Paid: $700,000.00).

    Which Mortgage 1 was thereafter assigned by an Assignment of Mortgage dated December 9, 2016, by Maxim Credit Group, LLC to 49 Dupont Street DI LLC, and recorded in the Register's Office on December 28, 2016 as CRFN 2016000461014.

    Which Mortgage 1 was thereafter assigned by an Assignment of Mortgage dated as of August 11, 2017, by 49 Dupont Street DI LLC to Dupont Street 1 LLC, and intended to be recorded in the Register's Office immediately prior hereto.

2.  Gap Mortgage dated as of August 11, 2017, made by DuPont Street Developers LLC to Dupont Street 1 LLC, in the principal sum of $3,000,000.00, and intended to be recorded in the Register's Office immediately prior hereto.

    Which Mortgages 1 and 2 were thereafter consolidated into one joint lien in the principal sum of $28,000,000.00, pursuant to the terms of a Consolidated, Amended and Restated Mortgage and Security Agreement dated as of August 11, 2017, between DuPont Street Developers LLC and Dupont Street 1 LLC, and intended to be recorded in the Register's Office.

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2017081701029005001E588A

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 7 |
|---|---|

| | | |
|---|---|---|
| **Document ID:** 2017081701029005 | Document Date: 08-11-2017 | Preparation Date: 08-17-2017 |
| **Document Type:** INITIAL UCC1 | | FIXTURE FILING |
| Document Page Count: 5 | | |

**PRESENTER:**
KENSINGTON VANGUARD NATIONAL LAND
39 WEST 37TH ST TITLE NO. 835217(S-NY-CR-KV)
HOLD FOR PICKUP / SEARCH NY
NEW YORK, NY 10018
212-532-8686
jrenaldo@KVNATIONAL.COM

**RETURN TO:**
DUPONT STREET 1 LLC
C/O MADISON REALTY CAPITAL
825 THIRD AVE 37TH FLR ATTN SHOSHANA CARMEL
NEW YORK, NY 10022

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 2487 | 1 Entire Lot | | 280 FRANKLIN STREET |

**Property Type:** INDUSTRIAL BUILDING

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 2487 | 10 Entire Lot | | 10 CLAY STREET |

**Property Type:** INDUSTRIAL BUILDING

☒ Additional Properties on Continuation Page

### CROSS REFERENCE DATA

CRFN_____ or DocumentID_____ or _____Year____ Reel____Page____ or File Number_____

### PARTIES

**DEBTOR:**
DUPONT STREET DEVELOPERS LLC
87-10 QUEENS BOULEVARD
ELMHURST, NY 11373

**SECURED PARTY:**
DUPONT STREET 1 LLC
C/O MADISON REALTY CAPITAL, 825 THIRD
AVENUE 37TH FLOOR
NEW YORK, NY 10022

### FEES AND TAXES

| Mortgage : | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 0.00 | **RECORDED OR FILED IN THE OFFICE** | | |
| MTA: | $ | 0.00 | **OF THE CITY REGISTER OF THE** | | |
| NYCTA: | $ | 0.00 | **CITY OF NEW YORK** | | |
| Additional MRT: | $ | 0.00 | Recorded/Filed    08-23-2017 12:44 | | |
| TOTAL: | $ | 0.00 | City Register File No.(CRFN): | | |
| Recording Fee: | $ | 67.00 | **2017000314510** | | |
| Affidavit Fee: | $ | 0.00 | | | |

*Annette M. Hill*
**City Register Official Signature**

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



2017081701029005001C5A0A

| RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION) | PAGE 2 OF 7 |
|---|---|

Document ID: 2017081701029005    Document Date: 08-11-2017    Preparation Date: 08-17-2017
Document Type: INITIAL UCC1

---

**PROPERTY DATA**

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 2487 | 12 | Entire Lot | 14 CLAY STREET |

Property Type: INDUSTRIAL BUILDING

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 2487 | 17 | Entire Lot | 22 CLAY STREET |

Property Type: INDUSTRIAL BUILDING

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 2487 | 18 | Entire Lot | 26 CLAY STREET |

Property Type: INDUSTRIAL BUILDING

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 2487 | 20 | Entire Lot | 30 CLAY STREET |

Property Type: INDUSTRIAL BUILDING

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 2487 | 21 | Entire Lot | 32 CLAY STREET |

Property Type: INDUSTRIAL BUILDING

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 2487 | 57 | Entire Lot | 93 DUPONT STREET |

Property Type: INDUSTRIAL BUILDING

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 2487 | 72 | Entire Lot | 57 DUPONT STREET |

Property Type: INDUSTRIAL BUILDING

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 2487 | 78 | Entire Lot | 55 DUPONT STREET |

Property Type: INDUSTRIAL BUILDING

835217

BlK 2487

LoTs, 1, 10, 12, 17, 18, 20, 21,
57, 72 and 78

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER (optional)**

**B. SEND ACKNOWLEDGMENT TO: (Name and Address)**

DUPONT STREET 1 LLC
c/o Madison Realty Capital
825 Third Avenue, 37th Floor
New York, New York 10022
Attention: Shoshana Carmel

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** – insert only one debtor name (1a or 1b) – do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME |  |  |  |  |
|---|---|---|---|---|
| DUPONT STREET DEVELOPERS LLC |  |  |  |  |

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 87-10 Queens Boulevard | Elmhurst | NY | 11373 | |

| 1d. SEE INSTRUCTIONS | ADD'TL INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL I.D.#, if any |
|---|---|---|---|---|
| | | lim. liability company | New York | ☐ NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** – insert only one debtor name (2a or 2b) – do not combine or abbreviate names

| 2a. ORGANIZATION'S NAME |  |  |  |  |
|---|---|---|---|---|

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. SEE INSTRUCTIONS | ADD'TL INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL I.D.#, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

**3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P)** – insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME |  |  |  |  |
|---|---|---|---|---|
| DUPONT STREET 1 LLC |  |  |  |  |

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 825 Third Avenue, 37th Floor | New York | NY | 10022 | |

**4. This FINANCING STATEMENT covers the following collateral:**

SEE EXHIBIT "A" ANNEXED HERETO AND MADE A PART HEREOF

Location of property commonly known as:

280 Franklin Street, 10, 14, 22, 26, 30 and 32 Clay Street;
and 93, 57 and 55 Dupont Street
Brooklyn, New York 11222
Block:        2487
Lot:          1, 10, 12, 17, 18, 20, 21, 57, 72, and 78
County:      Kings
State:        New York

| 5. ALTERNATIVE DESIGNATION (if applicable) | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|

| 6. ☒ This FINANCING STATEMENT is to be filed (for record) (or recorded) in the REAL ESTATE RECORDS. Attach Addendum (if applicable) | 7. Check to REQUEST SEARCH REPORT(s) on Debtor(s) (ADDITIONAL FEE) (optional) | ☐ All Debtors | ☐ Debtor 1 | ☐ Debtor 2 |
|---|---|---|---|---|

**8. OPTIONAL FILER REFERENCE DATA**
Filed in the County of Kings

FILING OFFICE COPY – NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV05/22/02)

# UNIFORM COMMERCIAL CODE ADDENDUM
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

## 9. NAME OF FIRST DEBTOR (1a OR 1b) ON RELATED FINANCING STATEMENT

9a. ORGANIZATION'S NAME

**DUPONT STREET DEVELOPERS LLC**

| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME, SUFFIX |
|---|---|---|
| | | |

10. MISCELLANEOUS:

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

## 11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME – insert only one name (11a OR 11b) – Do Not Abbreviate or Combine Names

11a. ORGANIZATION'S NAME

| 11b. INDIVIDUAL'S LAST NAME | | FIRST NAME | | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|---|---|
| 11c. MAILING ADDRESS | | CITY | | STATE | POSTAL CODE | COUNTRY |
| 11d. SEE INSTRUCTIONS | ADD'L INFO RE: ORGANIZATION DEBTOR | 11e. TYPE OF ORGANIZATION | 11f. JURISDICTION OF ORGANIZATION | | 11g. ORGANIZATIONAL ID# | ☐ NONE |

## 12. ☐ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR'S S/P's – insert only one secured party name (12a OR 12b)

12a. ORGANIZATION'S NAME

| 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| 12c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

13. This FINANCING STATEMENT covers ☐ timber to be cut or ☐ as-extracted collateral, or is filed as a ☒ fixture filing.

14. Description of real estate:

280 Franklin Street, 10, 14, 22, 26, 30 and 32 Clay Street;
and 93, 57 and 55 Dupont Street
Brooklyn, New York 11222
Block: 2487
Lot: 1, 10, 12, 17, 18, 20, 21, 57, 72, and 78
County: Kings
State: New York

16. Additional collateral description:

17. Check only if applicable and check only one box.

Debtor is a ☐ Trust or ☐ Trustee acting with respect to property held in trust or ☐ Decedent's Estate

15. Name and address of a RECORD OWNER of above-described real estate (if Debtor does not have a record interest):

18. Check only if applicable and check only one box.

☐ Debtor is a TRANSMITTING UTILITY
☐ Filed in connection with a Manufactured-Home Transaction – effective 30 years
☐ Filed in connection with a Public-Finance Transaction – effective 30 years

**FILING OFFICE COPY** - UCC FINANCING STATEMENT ADDENDUM (FORM REV. 05/22/02)

EXHIBIT A
TO
UNIFORM COMMERCIAL CODE FINANCING STATEMENT (FORM UCC-1)

**DEBTOR:**         **DUPONT STREET DEVELOPERS LLC**

**SECURED PARTY:**  **DUPONT STREET 1 LLC**

**ITEM 4** *(CONTINUED)*: This FINANCING STATEMENT covers the following types or items of property (which, together with the Real Property, as defined below, constitutes and is referred to herein as the "**Property**") in which Debtor has any interest, whether currently owned or hereafter acquired, relating to, generated from, arising out of or incidental to the ownership, development, use or operation of the real property (the "**Real Property**") more particularly described on Schedule "1" attached hereto (whether or not subsequently removed from the Real Property), including, without limitation, the follows:

(a)    all easements, rights-of-way, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, air rights and development rights, all rights to oil, gas, minerals, coal and other substances of any kind or character, and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments and appurtenances of any nature whatsoever, in any way belonging, relating or pertaining to the Premises and the Improvements and the reversion and reversions, remainder and remainders, and all land lying in the bed of any street, road, highway, alley or avenue, opened, vacated or proposed, in front of or adjoining the Premises, to the center line thereof and all the estates, rights, titles, interests, dower and rights of dower, curtsey and rights of curtsey, property, possession, claim and demand whatsoever, both at law and in equity, of Mortgagor of, in and to the Premises and the Improvements and every part and parcel thereof, with the appurtenances thereto;

(b)    all machinery, furniture, furnishings, equipment, computer software and hardware, fixtures (including, without limitation, all heating, air conditioning, plumbing, lighting, communications and elevator fixtures) and other property of every kind and nature, whether tangible or intangible, whatsoever owned by Mortgagor, or in which Mortgagor has or shall have an interest, now or hereafter located upon the Premises and the Improvements, or appurtenant thereto, and usable in connection with the present or future operation and occupancy of the Premises and the Improvements and all building equipment, materials and supplies of any nature whatsoever owned by Mortgagor, or in which Mortgagor has or shall have an interest, now or hereafter located upon the Premises and the Improvements, or appurtenant thereto, or usable in connection with the present or future operation, enjoyment and occupancy of the Premises and the Improvements (hereinafter collectively referred to as the "**Equipment**"), including any leases of any of the foregoing, any deposits existing at any time in connection with any of the foregoing, and the proceeds of any sale or transfer of the foregoing, and the right, title and interest of Mortgagor in and to any of the Equipment that may be subject to any "security interests" as defined in the Uniform Commercial Code, as adopted and enacted by the State or States where any of the Mortgaged Property is located (the "**Uniform Commercial Code**"), superior in lien to the lien of the Mortgage.

(c)    all awards or payments, including interest thereon, that may heretofore and hereafter be made with respect to the Premises and the Improvements, whether from the exercise of the right of eminent domain or condemnation (including, without limitation, any transfer made in lieu of or in anticipation of the exercise of said rights), or for a change of grade, or for any other injury to or decrease in the value of the Premises and Improvements;

EXHIBIT A (Continued)

**DEBTOR:**          **DUPONT STREET DEVELOPERS LLC**

**SECURED PARTY:**          **DUPONT STREET 1 LLC**

(d)      all leases and other agreements or arrangements heretofore or hereafter entered into affecting the use, enjoyment or occupancy of, or the conduct of any activity upon or in, the Premises and the Improvements, including any extensions, renewals, modifications or amendments thereof (hereinafter collectively referred to as the "**Leases**") and all rents, rent equivalents, moneys payable as damages or in lieu of rent or rent equivalents, royalties (including, without limitation, all oil and gas or other mineral royalties and bonuses), income, fees, receivables, receipts, revenues, deposits (including, without limitation, security, utility and other deposits), accounts, cash, issues, profits, charges for services rendered, and other payment and consideration of whatever form or nature received by or paid to or for the account of or benefit of Mortgagor or its agents or employees from any and all sources arising from or attributable to the Premises and the Improvements (hereinafter collectively referred to as the "**Rents**"), together with all proceeds from the sale or other disposition of the Leases and the right to receive and apply the Rents to the payment of the Debt;

(e)      all proceeds of and any unearned premiums on any insurance policies covering the Mortgaged Property, including, without limitation, the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage to the Mortgaged Property;

(f)      the right, in the name and on behalf of Debtor, to appear in and defend any action or proceeding brought with respect to the Mortgaged Property and to commence any action or proceeding to protect the interest of Mortgagee in the Mortgaged Property; all accounts, escrows, documents, instruments, investment property, chattel paper, claims, deposits and general intangibles, as the foregoing terms are defined in the Uniform Commercial Code, and all franchises, trade names, trademarks, symbols, service marks, books, records, plans, specifications, designs, drawings, permits, consents, licenses, management agreements, contract rights (including, without limitation, any contract with any architect or engineer or with any other provider of goods or services for or in connection with any construction, repair, or other work upon the Mortgaged Property), approvals, actions, refunds of real estate taxes and assessments (and any other governmental impositions related to the Mortgaged Property), and causes of action that now or hereafter relate to, are derived from or are used in connection with the Mortgaged Property, or the use, operation, maintenance, occupancy or enjoyment thereof or the conduct of any business or activities thereon (hereinafter collectively referred to as the "**Intangibles**");

(g)      the Prepaid Interest, as defined and governed by that certain Prepaid Interest Agreement among Debtor and Secured Party, dated the date hereof, if any;

(h)      all contracts, permits, development rights, plans, specifications, blueprints, and tax abatements, including Section 421-A tax abatements related to the Mortgaged Property; and

(i)      all proceeds, products, offspring, rents and profits from any of the foregoing, including, without limitation, those from sale, exchange, transfer, collection, loss, damage, disposition, substitution or replacement of any of the foregoing.

Any capitalized term not defined herein shall have the meaning prescribed in the mortgage executed simultaneously herewith (hereinafter referred to as the "**Mortgage**") between Debtor and Secured Party, and dated as of August 11, 2017, and intended to be recorded herewith in the New York City Register's Office, Kings County.

**SCHEDULE 1 TO EXHIBIT A TO**
**UNIFORM COMMERCIAL CODE FINANCING**
**STATEMENT (FORM UCC-1)**

**DEBTOR:**          **DUPONT STREET DEVELOPERS LLC**

**SECURED PARTY:**          **DUPONT STREET 1 LLC**

Legal Description of Property

ALL those certain plots, pieces or parcels of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, bounded and described as follows:

BEGINNING at the corner formed by the intersection of the easterly side of Franklin Street with the northerly side of Dupont Street;

RUNNING THENCE northerly, along the easterly side of Franklin Street, 191 feet 10-3/4 inches to the southerly side of Commercial Street;

THENCE northeasterly, along the southerly side of Commercial Street, 17 feet 0-1/4 inches to the southerly side of Clay Street;

THENCE easterly, along the southerly side of Clay Street, 410 feet;

THENCE southerly, parallel with Manhattan Avenue, 100 feet;

THENCE easterly, parallel with Dupont Street, 130 feet;

THENCE southerly, parallel with Manhattan Avenue, 100 feet to the northerly side of Dupont Street;

THENCE westerly, along the northerly side of Dupont Street, 555 feet to the corner the point or place of BEGINNING.

# CONDITIONAL GUARANTEE

**THIS CONDITIONAL GUARANTEE** (this "**Guarantee**"), dated as of the 11th day of August, 2017, by **BO JIN ZHU**, an individual residing at 60 Henry Street, Apt 15C, New York, New York 10002 (the "**Guarantor**"), in favor of **DUPONT STREET 1 LLC**, a Delaware limited liability company, its successor and/or assigns, as their interests may appear, having offices at 825 Third Avenue, 37th Floor, New York, New York 10022 ("**Lender**").

Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed thereto in the Consolidated, Amended and Restated Mortgage and Security Agreement dated as of the date hereof, between **DUPONT STREET DEVELOPERS LLC**, a New York limited liability company (the "**Borrower**"), as mortgagor, and Lender, as mortgagee (as the same may hereafter be amended, modified or supplemented from time to time, collectively, "**Mortgage**").

## W I T N E S S E T H:

**WHEREAS**, Borrower is the owner of land and improvements located at 280 Franklin Street, Brooklyn, New York 11222; 10 Clay Street, Brooklyn, New York 11222; 14 Clay Street, Brooklyn, New York 11222; 22 Clay Street, Brooklyn, New York 11222; 26 Clay Street, Brooklyn, New York 11222; 30 Clay Street, Brooklyn, New York 11222; 32 Clay Street, Brooklyn, New York 11222; 93 Dupont Street, Brooklyn, New York 11222; 57 Dupont Street, Brooklyn, New York 11222; and 55 Dupont Street, Brooklyn, New York 11222, as more particularly described in the Mortgage (collectively, the "**Property**");

**WHEREAS**, Borrower has requested a mortgage loan (the "**Loan**") from Lender in the original principal amount of $28,000,000.00, and Lender has agreed to make such Loan upon the terms and conditions as set forth in that certain Consolidated, Amended and Restated Note dated the date hereof (as the same may hereafter from time to time be amended, modified or supplemented, collectively, the "**Note**"), the Mortgage and certain other loan documents dated as of the date hereof and this Guarantee (the Note, the Mortgage and any other documents executed in connection herewith are sometimes collectively referred to herein as the "**Loan Documents**");

**WHEREAS**, simultaneously herewith, the Loan Documents have been executed and delivered to Lender;

**WHEREAS**, Guarantor acknowledges that (i) Lender has declined to make the Loan to Borrower unless this Guarantee is executed by Guarantor and duly delivered to Lender, (ii) Guarantor desires that Lender make the Loan to Borrower, (iii) Guarantor is being directly or indirectly benefitted by the making of the Loan by Lender to Borrower, and (iv) such benefit constitutes good, valuable and sufficient consideration for the execution and delivery to Lender of this Guarantee.

**NOW, THEREFORE**, in consideration of the premises and for other good and valuable consideration, the receipt, adequacy and sufficiency of which are hereby acknowledged, the Guarantor hereby agrees with Lender as follows:

1

1.    <u>Indemnity and Guarantee.</u>    Guarantor hereby assumes liability as a primary obligor for, hereby unconditionally guarantees payment to Lender of, hereby agrees to pay, protect, defend and save Lender harmless from and against, and hereby indemnifies Lender from and against any and all liabilities, obligations, losses, damages (including punitive damages and those resulting from the diminution in value of the Property), costs and expenses (including, without limitation, attorneys' fees), causes of action, suits, claims, demands and judgments of any nature or description whatsoever (collectively, **"Costs"**) which may at any time be imposed upon, incurred by or awarded against Lender as a result of:

(a)    fraud or misrepresentation or failure to disclose a material fact by Borrower, any of Borrower's officers, agents, attorneys, principals, general partners, managing members or employees, or other person authorized or apparently authorized to make statements, representations or disclosures on behalf of Borrower or any guarantor or indemnitor in connection with the Loan, including without limitation, the origination of the Loan and the performance of Borrower's obligations under the Loan Documents;

(b)    the gross negligence or willful misconduct of Borrower;

(c)    waste committed on the Mortgaged Property (as such term is defined in the Mortgage), or damage to the Mortgaged Property as a result of the misconduct or gross negligence of Borrower or any of its principals, officers, general partners or members, any guarantor, any indemnitor, or any agent or employee of any such persons;

(d)    intentionally left blank;

(e)    the removal or disposal of any portion of the Mortgaged Property in violation of the terms of the Loan Documents, to the full extent of the losses or damages incurred by Lender on account of such occurrence;

(f)    the misapplication, misappropriation or conversion by Borrower of (i) any insurance proceeds paid by reason of any loss, damage or destruction to the Mortgaged Property, (ii) any awards or other amounts received in connection with the condemnation of all or a portion of the Mortgaged Property, (iii) Rents (as defined in the Mortgage) received by Borrower or applicable to a period after the occurrence of an Event of Default or any event which with notice or the passage of time, or both, would constitute an Event of Default, which are not either applied to the ordinary and necessary expenses of owning and operating the Mortgaged Property or paid to Lender, or (iv) any Rents paid more than one month in advance;

(g)    if the Property becomes subject to any mechanic's, materialman's liens or other lien other than a lien for local real estate taxes and assessments not then due and payable and such lien shall remain undischarged of record (by payment, bonding or otherwise) within ten (10) days;

(h)    all tenant security deposits or other refundable deposits paid to or held by Borrower or any other person or entity in connection with the Leases (as defined in the Mortgage) which are not applied in accordance with the terms of the applicable Leases;

2

(i)       the failure to obtain and maintain or cause to be maintained the fully paid for Policies (as defined in the Mortgage) in accordance with <u>Section 4</u> of the Mortgage, or to pay or provide or cause to be provided the amount of any insurance deductible, to the extent of the applicable deductible, following a casualty event or other insured event;

(j)       intentionally left blank;

(k)       intentionally left blank;

(l)       Unauthorized transfer of or other encumbrance on the Property; and

(m)       Borrower's and/or Guarantor's failure to fund the additional Prepaid Interest as provided in the Loan Documents.

Notwithstanding anything to the contrary in the Note, the Mortgage or any of the Loan Documents, (A) Lender shall not be deemed to have waived any right which Lender may have under Section 506(a), 506(b), 1111(b) or any other provisions of the U.S. Bankruptcy Code to file a claim for the full amount of the Debt (as defined below) or to require that all collateral shall continue to secure all of the Debt owing to Lender in accordance with the Note, the Mortgage and the Loan Documents, and (B) the Guarantor shall liable for the full amount of the Debt in the event that: (i) Borrower fails to obtain Lender's prior written consent to any subordinate financing or other voluntary lien encumbering the Property; (ii) Borrower fails to obtain Lender's prior written consent to any assignment, transfer, or conveyance of the Property or any interest therein as required by the Mortgage, or any breach or default by Borrower of <u>Section 10</u> of the Mortgage, or (iii) a receiver, liquidator or trustee of Borrower or of any Guarantor shall be appointed or if Borrower or any Guarantor shall be adjudicated a bankrupt or insolvent, or if any petition for bankruptcy, reorganization or arrangement pursuant to federal bankruptcy law, or any similar federal or state law, shall be filed by, consented to, or acquiesced in by, Borrower or any Guarantor or if any proceeding for the dissolution or liquidation of Borrower or of any Guarantor shall be instituted by Borrower or any Guarantor, or (iv) Borrower or any Guarantor (or any person comprising such Guarantor) or any Related Party (as hereinafter defined) of any of the foregoing shall, in connection with any enforcement action or exercise or assertion of any right or remedy by or on behalf of Lender under or in connection with the Note, the Mortgage or any of the Loan Documents, asserts a defense, seeks judicial intervention or injunctive or other equitable relief of any kind or asserts in a pleading filed in connection with a judicial proceeding any defense against Lender or any right in connection with any security for the Loan which the court in such action or proceeding determines is without merit (in respect of a defense) or unwarranted (in respect of a request for judicial intervention or injunctive or other equitable relief), (v) a claim is made by any party that the Loan Documents were not properly authorized or otherwise consented to upon the origination of the Loan or at any other time; and/or (vi) Borrower fails to maintain its status as a single asset entity, as required by, and in accordance with the terms and provisions of, the Mortgage. "**Related Party**" shall mean any person or entity which owns a direct or indirect interest in Borrower or any Guarantor (or any person comprising such Guarantor), or which is owned or controlled by or under common ownership or control with Borrower or any such Guarantor.

The term "**Debt**" as used in this Guarantee shall mean the principal sum evidenced by the Note and secured by the Mortgage, or so much thereof as may be outstanding from time to time, together with interest thereon at the rate of interest specified in the Note and all other sums other than principal or interest which may or shall become due and payable pursuant to the provisions of the Note, the Mortgage or the other Loan Documents.

The Guarantor also agrees to pay any and all costs and expenses (including, without limitation, all fees and disbursements of counsel) which may be paid or incurred by Lender in connection with the enforcement of this Guarantee. The foregoing shall not in any manner impair or release the debt evidenced by the Note or the other Loan Documents or otherwise impair or derogate from the Lender's ability to enforce its rights under the Loan Documents.

The term "**Guaranteed Recourse Obligations of Borrower**" means all obligations and liabilities of Guarantor set forth in this Paragraph 1 for which Borrower shall be personally liable pursuant to the Note.

2.      <u>Guarantee Absolute.</u>  The Guarantor guarantees that, to the extent of the Guaranteed Recourse Obligations of Borrower, the Debt (as such term is defined in the Mortgage) will be paid strictly in accordance with the terms of the Note or any requirement of law, regulation or order now or hereafter in effect in any jurisdiction affecting any of such terms or the rights of Lender with respect thereto. The liability of the Guarantor hereunder shall be absolute and unconditional irrespective of:

(a)   any lack of validity or enforceability of the Note, the Mortgage the other Loan Documents or any other agreement between Lender and the Borrower relating thereto;

(b)   any change in the time, manner, place of payment of the indebtedness under, or in any other term of, or any other amendment or waiver of, or any consent to, departure from, or any agreement between the Borrower and Lender, including, without limitation, the Note, the Mortgage or the other Loan Documents;

(c)   the insolvency of, or voluntary or involuntary bankruptcy, assignment for the benefit of creditors, reorganization or other similar proceedings affecting, the Borrower or any of its assets; or

(d)   any other circumstance which might otherwise constitute a defense available to, or a discharge of, the Borrower in respect of the Debt or of the Guarantor in respect of this Guarantee.

No payment made by the Guarantor, any other guarantor or any other person or entity, or received or collected by the Lender from the Guarantor, any other guarantor or any other person or entity by virtue of any action or proceeding or set off or application at any time in reduction of or in payment of the Debt shall be deemed to modify, release or otherwise affect the liability of Guarantor under this Guarantee. Notwithstanding any such payments received or collected by the Lender in connection with the Debt, Guarantor shall remain liable for the balance of the

Guaranteed Recourse Obligations of the Borrower until the Debt is paid in full. This Guarantee shall continue to be effective or be reinstated, as the case may be, if at any time any payment of the Debt or any portion thereof is rescinded or must otherwise be returned by the Lender upon the insolvency, bankruptcy or reorganization of the Borrower or otherwise, all as though such payment had not been made.

Lender shall not be required to inquire into the powers of the Borrower or any of its members, partners, managers or other agents acting or purporting to act on its behalf, and monies, advances, renewals or credits described in the Loan Documents in fact borrowed or obtained from Lender in professed exercise of such powers shall be deemed to form part of the debts and liabilities hereby guaranteed, notwithstanding that such borrowing or obtaining of monies, advances, renewals, or credits shall be in excess of the powers of the Borrower, or of its members, partners, managers or other agents aforesaid, or be in any way irregular, defective or informal.

3.     Dealing with the Borrower and Others.

(a)  The Guaranteed Recourse Obligations of Borrower shall not be released, discharged, limited or in any way affected by anything done, suffered or permitted by Lender in connection with any monies or credit advanced by Lender to the Borrower or any security therefor, including any loss of or in respect of any security received by Lender from the Borrower or others. It is agreed that Lender, without releasing, discharging, limiting or otherwise affecting in whole or in part the Guaranteed Recourse Obligations of Borrower and liabilities hereunder, may, without limiting the generality of the foregoing:

(i) grant time, renewals, extensions, indulgences, releases and discharges to the Borrower and any other person or entity guaranteeing payment of or otherwise liable with respect to the Debt (each such person and entity, an "**Obligor**");

(ii) take or abstain from taking security or collateral from the Borrower or any Obligor or from perfecting security or collateral of the Borrower or any Obligor;

(iii) accept compromises from the Borrower or any Obligor;

(iv) apply all monies at any time received from the Borrower or any Obligor upon such part of the obligations as Lender may see fit; or

(v) otherwise deal with the Borrower or any Obligor as Lender may see fit.

(b)   Lender shall not be bound or obliged to exhaust recourse against the Borrower or any other Obligor or any security, guarantee, indemnity, mortgage or collateral it may hold or take any other action (other than make demand pursuant to this Guarantee) before being entitled to payment from the Guarantor hereunder; and

(c)   Any account settled by or between Lender and the Borrower shall be accepted by the Guarantor as conclusive evidence that the balance or amount thereby appearing due to Lender is so due.

4.   <u>Subrogation.</u>  The Guarantor shall not exercise any right of subrogation with respect to payments made to Lender hereunder until such time as all indebtedness of the Borrower to Lender shall have been irrevocably paid in full in cash.   In the case of the liquidation, winding-up or bankruptcy of the Borrower (whether voluntary or involuntary) or in the event that the Borrower shall make an arrangement or composition with its creditors, Lender shall have the right to rank first for its full claim and to receive all payments in respect thereof until its claim has been paid in full and the Guarantor shall continue to be liable to Lender for any balance of the Guaranteed Recourse Obligations of Borrower.  The Guarantor, to the extent permitted by law, irrevocably releases and waives any subrogation rights or right of contribution or indemnity (whether arising by operation of law, contract or otherwise) Guarantor-may have against the Borrower or any person or entity constituting the Borrower if and to the extent any such right or rights would give rise to a claim under the U.S. Bankruptcy Code that payments to Lender with respect to the obligations constitute a preference in favor of Guarantor or a claim under the Bankruptcy Code that any such preference is recoverable from Lender.

5.   <u>Representations and Warranties.</u>   The   Guarantor   hereby   represents   and warrants to Lender that:

(a)   the Guarantor is not insolvent (as such term is defined in the debtor/creditor laws of the State of New York);

(b)   the execution, delivery and performance of this Guarantee will not (i) make Guarantor insolvent (as such term is defined in the debtor/creditor laws of the State of New York), or (ii) violate any provision of any requirement of law or contractual obligation of Guarantor and will not result in or require the creation or imposition of any lien on any of the properties or revenues of Guarantor pursuant to any requirement of law or contractual obligation of Guarantor;

(c)   the Guarantor has all requisite power and authority to execute, deliver and perform his obligations under this Guarantee;

(d)   the execution, delivery of this Guarantee and the performance by the Guarantor of his obligations hereunder does not and will not contravene, violate or conflict with any requirement of law, and does not and will not contravene, violate or conflict with, or result in a breach of or default under, the operating agreement of Borrower, or any contractual obligation to which Guarantor or his assets is or are subject, and does not require or result in the creation or imposition of any lien in favor of any person or entity other than Lender;

(e)   the execution and delivery hereof and the performance by the Guarantor of his obligations hereunder does not and will not contravene, violate or conflict with, or result in a breach of or default under, any indenture, security instrument, deed of trust, ground lease,

contract, assignment, agreement or other instrument to which the Borrower or the assets of the Borrower are subject;

(f) no consent of any other party (including, without limitation, any partner, or any creditor of the Guarantor or Borrower) is required that has not been obtained by the Guarantor; and

(g) this Guarantee has been duly executed and delivered by Guarantor and is the legal, valid and binding obligation of Guarantor, enforceable against Guarantor in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, moratorium, insolvency, reorganization or similar laws affecting creditors' rights generally.

6.    Demand for Payment. The Guarantor shall make payment of the Guaranteed Recourse Obligations of Borrower and other amounts payable by the Guarantor hereunder forthwith after demand therefor is made by Lender to the Guarantor in writing. Lender shall not be required to seek payment of the Debt from Borrower or any other person, prior to demanding payment of the Guaranteed Recourse Obligations of Borrower from the Guarantor.

7.    Waiver of Notice of Acceptance. The Guarantor hereby waives notice of acceptance of this Guarantee.

8.    Additional Guaranties. This Guarantee is in addition and without prejudice to any guaranties of any kind (including, without limitation, guaranties whether or not in the same form as this instrument) now or hereafter held by Lender. Lender shall not be obligated to proceed under any other guaranty or security with respect to all or any portion of the Debt before being entitled to payment from Guarantor under this Guarantee. Guarantor's liability under this Guarantee shall be joint and several with any other guarantor under any other guaranty.

9.    GOVERNING LAW. THIS INSTRUMENT SHALL BE CONSTRUED IN ACCORDANCE WITH AND GOVERNED BY THE LAWS OF THE STATE OF NEW YORK.

10.    Addresses of Notices. All notices, demands, and other communications provided for hereunder shall be in writing and shall be personally delivered, sent by overnight delivery, or mailed (certified mail, return receipt requested and postage prepaid), to and addressed as follows: if to the Guarantor, delivered to him at his address set forth above, and if to Lender, delivered to it at the address herein above (with a copy to Kriss & Feuerstein LLP, 360 Lexington Avenue, New York, New York 10017, Attn. Jerold C. Feuerstein, Esq.), or as to each party at such other address or addresses within the continental United States of America as shall be designated by such party in written notice to each other party complying as to delivery with the terms of this Section 10.

11.    No Waiver; Remedies. No failure on the part of Lender to exercise, and no delay in exercising, any right hereunder shall operate as a waiver thereof nor shall any single or partial exercise of any right hereunder preclude any other or further exercise thereof or the exercise of any other right. The remedies herein provided are cumulative and not exclusive of any remedies

7

provided by law. Any amendments to, revisions of, or waivers of any provisions of this Guarantee must be in writing to be effective.

12. Benefit and Binding Nature. This Guarantee is a continuing guaranty of payment and shall (a) remain in full force and effect until irrevocable payment in full of the Guaranteed Recourse Obligations of Borrower and all other amounts payable hereunder in cash, (b) be binding upon the Guarantor, his personal representatives, executors, administrators, heirs, distributees and successors and assigns, and (c) inure to the benefit of and be enforceable by Lender and its successors and assigns.

13. WAIVER OF TRIAL BY JURY. THE GUARANTOR AND LENDER WAIVE TRIAL BY JURY IN ANY ACTION, PROCEEDING, CLAIM, OR COUNTERCLAIM, WHETHER IN CONTRACT OR TORT, AT LAW OR IN EQUITY, WITH RESPECT TO, IN CONNECTION WITH OR ARISING OUT OF OR IN ANY WAY RELATED TO THIS GUARANTEE OR THE MORTGAGE OR THE NOTE OR ANY OTHER DOCUMENT DELIVERED IN CONNECTION HEREWITH OR THEREWITH.

14. Jurisdiction. The Guarantor hereby irrevocably submits to the nonexclusive jurisdiction of any New York State or Federal court sitting in the County of New York in any action or proceeding arising out of or relating to this Guarantee, the Note, the Mortgage or any other document delivered in connection herewith or therewith and the Guarantor hereby irrevocably agrees that all claims in respect of such action or proceeding may be heard and determined in such New York State court, or to the extent permitted by law, in such Federal court. The Guarantor hereby irrevocably waives, to the fullest extent he may effectively do so, the defense of an inconvenient forum to the maintenance of such action or proceeding. To the extent permitted by law, the Guarantor also irrevocably consents to the service of any and all process in any such action or proceeding by the mailing of copies (certified mail, return receipt requested and postage prepaid) of such process to him at his address specified in Section 10 hereof. The Guarantor agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

15. CPLR. Guarantor hereby agrees and acknowledges that this Guarantee is an instrument for the payment of money, and hereby consents that Lender, at its sole option, in the event of a default by Guarantor in the payment of any of the moneys due hereunder, shall have the right to bring a motion and/or action under New York CPLR Section 3213.

**INTENTIONALLY LEFT BLANK
SIGNATURE PAGE TO FOLLOW**

IN WITNESS WHEREOF, the Guarantor has executed this Guarantee as of the date and year set forth above.

**GUARANTOR:**

_____

BO JIN ZHU
60 Henry Street, Apt 15C
New York, New York 10002

STATE OF NEW YORK          )
                                              ) ss:
COUNTY OF NEW YORK      )

On the 1st day of August, in the year 2017, before me, the undersigned, a Notary Public in and for said State, personally appeared, BO JIN ZHU, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed this instrument.

_____
                    Notary Public

MARIA DI TORO
Notary Public, State of New York
No. 01DI6325959
Qualified in New York County
My Commission Expires 06-08-2019